IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRANSMETA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No.06-633 (GMS) |
| | ) | |
| INTEL CORPORATION, | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

**DECLARATION OF NORMAN H. BEAMER**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Attorneys for plaintiff Transmeta Corporation

OF COUNSEL:

Robert C. Morgan
Laurence S. Rogers
Steven Pepe
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
ROPES & GRAY LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

Original Filing Date: August 17, 2007
Redacted Filing Date: August 20, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRANSMETA CORPORATION,    )
       )
     Plaintiff,      /   )
       )   C.A. No. 06-633 (GMS)
       )
    v.       )   **REDACTED**
       )   **PUBLIC VERSION**
INTEL CORPORATION,    )
       )
     Defendant.    )

## DECLARATION OF NORMAN H. BEAMER

I, Norman H. Beamer, declare as follows:

1.     I am a member of the firm of Ropes & Gray LLP, 525 University Avenue, Palo Alto, California, counsel to Plaintiff Transmeta Corporation in this action. I make this declaration in support of Transmeta Corporation's Answering Brief In Opposition To Intel Corporation's Motion To Stay This Action Pending Reexamination Of Transmeta's Patents In Suit. Unless otherwise stated, I make this declaration based on personal knowledge.

2.     In this action, Transmeta has responded to 22 Interrogatories, Intel has responded to 26 Interrogatories, and the parties have agreed to supplement contention interrogatories on August 23, 2007. Transmeta has produced over 305,000 pages of documents, Intel has produced over 1,500,000 pages of documents, and both parties have made hundreds of millions of lines of source code available for inspection. After the Protective Order for confidentiality was entered on June 11, 2007, Transmeta identified its expert consultants pursuant to the protective order, and commenced inspection of Intel's code. Intel has served 39 third party subpoenas on inventors and prosecuting attorneys of the Transmeta patents in suit, and in response over 115,000 pages of documents have been produced, with privilege logs. Transmeta has served 7 subpoenas on third parties.

3.    Intel submitted its first request for reexamination on March 16, 2007, five months after this lawsuit was filed.  That first request was defective and had to be resubmitted with a later filing date.  Intel submitted ten additional requests over the next three months.  Six of the eleven reexamination requests have been granted, and they are at the earliest stages of the reexamination process.

4.    The patents in suit can be characterized as being made up of four families.  The "Speculative Address Translation family" consists of U.S. Patents Nos. 5,895,503; 6,226,733; 6,430,668 and 6,813,699.  The "Instruction Scheduling family" consists of U.S. Patents Nos. 5,737,624; 5,974,526 and 6,289,433.  The "Multiple Typed Register family" consists of U.S. Patents Nos. 5,493,687; 5,838,986 and 6,044,449.  The fourth family consists of one patent, U.S. Patent No. 7,100,061 ("the '061 patent"), and relates to adaptive power control.

5.    U.S. Patent No. 5,895,503 of the Speculative Address Translation family issued April 20, 1999.  The continuation application that led to U.S. Patent No. 6,226,733 was pending in late 2000.  The remaining patents in the Speculative Address Translation family were applied for and issued after Transmeta acquired that patent family.  As of 2001, U.S. Patent Nos. 5,493,687, 5,838,986 and 6,044,449 of the Multiple Typed Register family had issued; and U.S. Patent Nos. 5,737,624 and 5,974,526 of the Instruction Scheduling family had issued.

6.    For each of the three patent families in suit that include multiple patents, the specifications of the patents are substantively identical.  All of the patents in a given family claim the benefit of the same priority date.  For each patent family, the same Intel product families of microprocessors are accused of infringement, and the same principle prior art references are relied on by Intel for its invalidity contentions.

7.     Attached as Exhibit 1 is a copy of a presentation, "New Microarchitecture Challenges in the Coming Generations of CMOS Process Technologies," presented at the November 1999 "Micro32" proceedings by Fred Pollack, Intel Fellow and Director of Intel's Microprocessor Research Labs, bearing production numbers TMTA0009313-9346.  At Slide 8 of that presentation (TMTA0009320), Mr. Pollock states that the "Power density [of Intel's microprocessors] continues to get worse," and that it is "Not too long" before microprocessors will reach the power density of a nuclear reactor.

8.     Attached as Exhibit 2 is a copy of a ███████████████████████████ ████████████████████ bearing production number 50047DOC001233.

9.     Attached as Exhibit 3 is a copy of a ███████████████████████████ █████████████████████████████ bearing production numbers 51441DOC000046-48.

10.     Attached as Exhibit 4 is a copy of ███████████████████████████ █████████████████████████ bearing production numbers 50205DOC000042-43.

11.     Attached as Exhibit 5 is a copy of selected pages from a ███████████████ ███████████████ book produced by Intel, bearing production numbers 50187DOC001400 and 1418.

12.     Attached as Exhibit 6 is a copy of an ███████████████████████████ ████████████████████████████ bearing production number 51093DOC000344.

13.     Attached as Exhibit 7 is a copy of selected pages from a ███████████████ ████████████████████████████████████████████████ bearing production numbers 51093DOC003402, 3405, 3407 and 3423-27.

14.    Attached as Exhibit 8 is a copy of a July 27, 2007 press release of the European Commission regarding Statement of Objections issued by the European Commission to Intel on July 26, 2007.

15.    Attached as Exhibit 9 is a copy of a ███████████████████████████████ ███████████████████████████████████ produced in response to a subpoena served on Mr. Belgard in this action, bearing production number RAB0003890.

16.    Attached as Exhibit 10 is a copy of a ████████████████████████████ ████████████████████████████████ produced in response to a subpoena served on Mr. Belgard in this action, bearing production number RAB0003906.

17.    Of the 41 references relied on in Intel's requests for reexamination, all but eleven were cited during the prosecution of one or more of the patents in suit (13 references), are themselves Intel patents or products (9 references), and/or were cited years ago during the prosecution of Intel patents in the field (20 references).

18.    Since 1980, when the *ex parte* reexamination procedure started, there have been 8,774 *ex parte* reexamination applications submitted to date, and 5,839 reexamination certificates have issued.  Records for each *ex parte* reexamination proceeding are accessible on the web site of the United States Patent And Trademark Office (USPTO) at http://portal.uspto.gov/external/portal/pair.  Each reexamination is given an application number.  The first *ex parte* reexamination is application no. 90/000,001, filed July 1, 1981.  As of August 1, 2007, the latest *ex parte* reexamination is 90/008,774.

19.    Attached as Exhibit 11 is a copy of "*Ex parte* Reexamination Filing Data – June 30, 2007" obtained from the USPTO.  As of that date, the average pendency of all *ex parte*

reexaminations that have issued since 1980 was 23.4 months. These statistics are based on the entire history of reexaminations, dating from 1981.

20.    In order to obtain more recent statistics, persons under my supervision collected pertinent data from 1000 *ex parte* reexamination proceedings spanning July 2003 through August 2005. This consisted of reexamination application nos. 90/006,700 through 90/007,999. Attached as Exhibit 12 is a copy of a spreadsheet summarizing the collected data. Of those 1000 reexaminations, 637 have issued or been noticed to issue, with an average pendency of 27.64 months. (For un-issued applications with a notice of issue, the issue date has been estimated based on the average time between notice of issue and issue). Twenty-five percent of these reexaminations had a pendency greater than 33 months. Of the 513 still-pending reexaminations brought in this time period, the average pendency so far is 32.2 months, with 25% exceeding pendencies of 37 months.

21.    Persons under my supervision also collected data on all the 384 *ex parte* reexamination certificates that have issued in the twelve months prior to July 3, 2007. Attached as Exhibit 13 is a copy of the collected data. Those 384 *ex parte* reexamination certificates had an average pendency of 33.38 months, with 25% exceeding 39 months' pendency.

22.    Similar to the procedure adopted by the USPTO for *ex parte* reexaminations, each *inter partes* reexamination is assigned an application number, starting with 95/000,001, filed July 27, 2001. As of August 1, 2007, the most recent application, 95/000,280, was filed July 27, 2007.

23.    Attached as Exhibit 14 is a copy of "*Inter partes* Reexamination Filing Data – June 30, 2007" obtained from the USPTO. In addition, persons under my supervision collected

pertinent data from the 274 *inter partes* reexamination proceedings that had been filed as of July 11, 2007. Attached as Exhibit 15 is a copy of a spreadsheet summarizing the collected data.

24.     Of the 280 *inter partes* reexamination applications submitted through August 1, 2007, nine reexamination certificates have issued. Of the nine issued certificates, four were defaults, prematurely terminated for failure to timely respond. Those applications are 95/000,004; 95/000,037; 95/000,041; and 95/000,095.

25.     Five *inter partes* reexaminations have a "notice of intent" entered in the record, indicating that a certificate will soon issue. Of the five notices of intent, three are defaults, with application numbers 95/000,117; 95/000,131; and 95/000,176.

26.     As of July 11, 2007, the average pendency of all issued *inter partes* reexaminations has been 31.3 months. Not counting the default instances, the average pendency has been 37 months. One reexamination took 50 months. Of the 254 *inter partes* reexaminations that are still pending as of that date, 86 were commenced two years ago or more, with an average pendency so far of 36 months, with 25% exceeding 43 months' pendency.

27.     According to the most recent USPTO statistics, set forth in Exhibit 11 attached hereto, 90% of reexamination certificates issued with at least one original or amended claim in force (there have not been enough *inter partes* reexamination certificates to provide reliable statistics).

28.     According to the most recent USPTO statistics set forth in Exhibits 11 and 14 attached hereto, to date, 92% of all *ex parte* reexamination requests, and 96% of all *inter partes* reexamination requests, have been granted by the Patent Office

29.     Attached as Exhibit 16 is a copy of Wegner, *Thirty-Four (Plus) Patent Topics Of Current Interest.*

30.     Attached as Exhibit 17 is a copy of McCombs, et al., "The New Role Of Reexamination In Patent Litigation," *2006 Advanced Patent Law Institute* (November 16-17, 2006).

31.     Attached as Exhibit 18 is a copy of Shang, et al., "*Inter partes* Reexamination of Patents: An Empirical Evaluation," *Texas Intellectual Property Law Journal*, Vol. 15:1 (Feb. 2007).

32.     Attached as Exhibit 19 is a copy of Cohen, *What's Really Happening in Inter partes Reexamination.*

33.     Based on my review of the pertinent public records, on August 19, 1993, Cyrix Corporation, which sold X86 compatible microprocessors in competition with Intel, applied for a broadening reissue of its US Patent No. 5,042,001. It is my understanding that the broadened claims were directed to a feature of Intel's Pentium chip, and that Intel was notified of the reissue. On November 10, 1994, Intel filed a protest in the reissue application under 37 C.F.R. 1.291, submitting prior art that it asserted invalidated the pending claims of the reissue. On September 6, 1995, and then again on December 4, 1995, Intel filed petitions to the Commissioner seeking orders that Cyrix's interviews with the Examiner be transcribed. The USPTO denied the petitions in an order dated February 22, 1996. On February 8, 1996, in a "combined" document, Intel submitted a second protest to the reissue application and a request for reexamination of the '001 patent. These submissions again asserted invalidity in light of the previously submitted art and new art. On May 31, 1996, Intel submitted a "petition for a public use proceeding." On October 7, 1996, the USPTO denied Intel's petition for public use proceeding. On October 16, 1996, the USPTO *sua sponte* merged the reissue and reexamination proceedings. On November 14, 1996, Intel petitioned for reconsideration and reversal of the

-7-

decision not to institute public use proceedings. On December 5, 1996, the USPTO sustained its decision not to institute public use proceedings. On December 17, 1996, Intel petitioned to sever the merged reissue and reexamination proceedings, which was denied January 2, 1997. On January 14, 1997, Intel filed a complaint in the Northern District California regarding the PTO's decision not to institute public use proceeding. That action was dismissed March 4, 1998. Substantive examination, including appeal, followed. The patent issued on November 7, 2006 as Re39,385, over 13 years after the application was submitted.

34. Attached as Exhibit 20 is a copy of the August 15, 2005 slip opinion in *Microunity Systems Engineering, Inc. v. Dell, Inc. and Intel Corp.* (C.A. 2-040-CV-0120) (D.I. 152).

35. Attached as Exhibit 21 is a copy of the November 27, 2002 slip opinion in *ArthroCare Corp. v. Smith & Nephew, Inc.* (D. Del. No. 01-504).

36. Attached as Exhibit 22 is a copy of Section 2217 of the Manual of Patent Examining Procedure (MPEP), Eighth Edition, August 2001, Latest Revision August 2006, which provides that, for reexaminations, "The prior art applied may only consist of prior art patents or printed publications."

37. Attached as Exhibit 23 is a copy of a July 29, 2005 USPTO Press Release regarding establishment of a Central Reexamination Unit.

38. Attached as Exhibit 24 is a copy of selected pages from the legislative history of the statute establishing *ex parte* reexamination procedure, H.R. Rep. No. 96-1307(I) (1980), reprinted in 1980 U.S.C.C.A.N. 6460, et seq.

39.     Attached as Exhibit 25 is a copy of selected pages from the legislative history of the statute establishing *inter partes* reexamination procedure HR. Rep. No. 106-287, at 33 (1999).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of August, 2007, at Palo Alto, California.

Norman H. Beamer

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 20, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Josy W. Ingersoll

I also certify that copies were caused to be served on August 20, 2007, upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll
John W. Shaw
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Flr.
Wilmington, DE 19801

### BY EMAIL

Steven S. Cherensky
Jessica L. Davis
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

*/s/ Richard J. Bauer (#4828)*
_____
Richard J. Bauer (#4828)

# EXHIBIT 1

New Microarchitecture Challenges in the Coming Generations of CMOS Process Technologies

Fred Pollack

Intel Fellow

Director of Microprocessor Research Labs

fred.pollack@intel.com

Contributors: Shekhar Borkar, Ronny Ronen

Micro32
Fred Pollack

intel®

TMTA 0009313



TMTA 0009314

# Performance Efficiency of μArchitectures

| Tech | Old μArch | mm (linear) | New μArch | mm (linear) | Area |
|------|-----------|-------------|-----------|-------------|------|
| 1.0μ | i386C | 6.5 | i486 | 11.5 | 3.1 |
| 0.7μ | i486C | 9.5 | Pentium® proc | 17 | 3.2 |
| 0.5μ | Pentium® proc | 12.2 | Pentium Pro® | 17.3 | 2.1 |
| 0.18μ | Pentium III® proc | 10.3 | Next Gen | ? | 2–3 |

Implications:  (in the same technology)

1. New μArch ~ 2-3X die area of the last μArch
2. Provides 1.5-1.7X integer performance of the last μArch

*We are on the Wrong Side of a Square Law*

intel®

4

Micro32
Fred Pollack

TMTA 0009316



TMTA 0009317

5

# Power Efficiency

## Power is proportional to Die-area * Frequency

## ~2X frequency with each process generation

- Normally expect 1.5X from process technology
- Less gates per pipeline stage, e.g. due to deeper pipelines
- Pushing process technology

## Examples

- On 0.35μ Pentium® processor at 200MHz vs Pentium II processor at 300Mhz. Difference due to pipeline depth.
- Pentium II processor at 300MHz on .35u vs. Pentium III processor at 600Mhz on 0.25u
  - » Same core μarchitecture
  - » ~50Mhz in speed-path work. The rest was pushing the process technology

## Other Factors

⇩ Decreasing voltage and capacitance with each new process technology

⇩ Increasing use of circuit & μarch techniques for lower power

⇧ Increasing transistor sizing to push frequency

Micro32
Fred Pollack

# Trends and expectations

**With Each Process Generation:**

**Frequency increased by ~2X (not 1.5X)**

**Vcc will scale by only ~0.8 (not 0.7)**

**Active power will scale by ~0.9 (not 0.5)**

**Active power density will increase by ~30-80% (not stay constant)**

**Leakage power will make it even worse, and**



Frequency doubles each generation

Mhz
10,000
1,000
100
10

Pentium® III proc
Pentium II proc
Pentium Pro proc
Pentium proc
i486
i386

1.5μ
1.0μ
0.7μ
0.5μ
0.35μ
0.25μ
0.18μ
0.13μ
0.1μ

intel®

6

Micro32
Fred Pollack

TMTA 0009318

# As the technology scales...





$Width = W = 0.7, Length = L = 0.7, t_{ox} = 0.7$

## 1. Dimensions reduce 30%, this is good

$Area\ Cap = C_a = \dfrac{0.7 \times 0.7}{0.7} = 0.7,$

$Fringing\ Cap = C_f = 0.7,$

$Total\ Cap \Rightarrow C = 0.7$

## 2. Capacitance on a node reduces by 30%, this is good

$Die\ Area = X \times Y = 0.7 \times 0.7 = 0.7^2$

## 3. Transistor density (integration) doubles, this is good

$\dfrac{Cap}{Area}\ \dfrac{0.7}{0.7 \times 0.7} = \dfrac{1}{0.7}$

## 4. Capacitance per unit area increases 43%, this is not good

intel®

TMTA 0009319

Micro32
Fred Pollack

7



TMTA 0009320

# Some implications

## We can't build microprocessors with ever increasing die sizes

## The constraint is power – not manufacturability

## Given the trends:

– What happens to power if we hold die size constant at each generation

– What happens to die size, if we hold power constant at each generation

intel®

Micro32
Fred Pollack

9

TMTA 0009321





If you limit die size due to power...

~66 Watts total, 1.5X freq increase each generation

Die size has to reduce ~25% in area each generation
– Implies ~50% vs. the 200+% historical growth in transistors

Limits performance

Power density does not improve

Micro32
Fred Pollack

intel®

TMTA 0009323

12

intel ®

# Therefore

## Business-as-usual won't work

## We need to look at alternatives – and we all are

Micro32
Fred Pollack

TMTA 0009324

13

intel®

TMTA 0009325

# Current Directions

*Low-power circuit and μarch techniques*\*

*SIMD ISA extensions*\*

On-die L2 caches

Multiple CPU cores on die

Multithreaded CPU On-Die L2 Caches

\* Not discussed

Micro32
Fred Pollack

14

intel®

TMTA 0009326

# Memory is more power efficient

Static memory has 10X lower
active power density

Lower leakage than logic

Leakage control is also easier
to implement than logic

Integrated L2 provides:

1. Higher bandwidth

2. Lower latency

So on-die L2 caches make
sense





Micro32
Fred Pollack



# Can easily double the on-die L2 ...

66 Watts constant, 1.5X freq increase each generation

Die space not used for logic can be used for on-die L2 cache
 – To improve performance  with <10% increase in max power

>512KB L2 good for server performance, but small impact on PC desktop performance

And little help in "real" power density



intel®

Micro32
Fred Pollack

15

TMTA 0009327

16

intel®

# Example: Pentium® III processor on .18μ process technology



- 256KB L2
- 28 million transistors
- 106 mm² die size
- Multi-voltage capability: 1.1V-1.7V
- On-die GTL+ termination



**Advanced System Buffering**

**Advanced Transfer Cache**

Micro32
Fred Pollack

TMTA 0009328

# Advanced System Buffering

## Balanced increase in buffers to minimize bottlenecks

– Buffer sizes maximize utilization of the 133MHz system bus bandwidth

## 6 Fill buffers (vs 4)

– 50% increase in concurrent non-blocking data cache operations

## 8 Bus queue entries (vs 4)

– Allows more outstanding memory/bus operations

## 4 Writeback buffers (vs 1)

– Reduced blocking during cache replacement operations
– Faster deallocation time for fill buffers



**Memory Bandwidth**
Prefetch

MB/s

1010

679

0.25μ
Pentium® III
processor

0.18μ
Pentium® III
processor

intel®

17

TMTA 0009329

0.18μ Pentium® III processor 600 MHz (with ATC, ASB) vs. 0.25μ Pentium III processor 600 MHz.
System configuration. Pre-production intel VC820 board with 133 MHz system bus, 128MB RDRAM, Seagate
Barracuda SCSI, STB4400 Velocity AGP 2X. Intel internal design analysis tools used to obtain measurement data.

**Micro32**
**Fred Pollack**

18

# Advanced Transfer Cache

## Size

– 256KB on-die level 2 cache

## Organization

– 8-way set associative, 1024 sets

– 32 byte line (32 bytes data, 4 bytes ECC)

– 36-bit physical address space

## Cache Bus

– Full speed, scaleable with core frequency

– 288-bit transfer width (256 data, 32 ECC)

– 2 cycle back-to-back throughput

– >4x reduction in latency (as compared to 0.25µ Pentium® III processor)

**Performance Gain at Equal MHz (600MHz)**



% Improvement

12%

20%

SPECint_base95        SPECfp_base95

intel®

0.18µ Pentium III processor 600 MHz (with ATC, ASB) vs. 0.25µ Pentium III processor 600B MHz. Source: Intel MAP. Results estimated using Intel C/C++ Compiler 4.5 and Intel Fortran Compiler 4.5 System configuration: Pre-production Intel VC820 board with 133 MHz system bus, 256MB RDRAM, IBM371800 ATA-66, Diamond Viper 770 Ultra TNT2 AGP4X

**Micro32**
**Fred Pollack**

TMTA 0009330

# Power Density: Cache vs. Logic

## Past: Thermal Uniformity






## Present: Logic vs. Cache




As die temperature increases, CMOS logic slows down

With low power density (past), can assume uniformity

With increasing power density and on-die L2 cache, need to consider simplistic non-uniformity

Micro32

Fred Pollack

intel®

TMTA 0009331

TMTA 0009332

# Power Density: The Future





**With high power density, cannot assume uniformity**
- As die temperature increases, CMOS logic slows down
- At high die temperatures, long-term reliability can be compromised

**Silicon is not a good heat conductor**
- Impact on packaging, w.r.t. cooling

Micro32
Fred Pollack

intel®

20

# Packaging Implications

- Power removal for non-uniform heating is a big challenge since we need to
  - spread the heat (smooth local concentrations) &
  - then dissipate it in the ambient
  - Hot spots created on die since we cannot completely smooth them away



Die Attach

Spreader

Need to spread out local concentrations

intel®

TMTA 0009333

Micro32
Fred Pollack

21

# Multiple CPU on Die

**Shared L2 more efficient than separate L2's of ½ size**

**About linear performance with die size vs. historical square law**

**Unlikely that both CPUs are at Max Power at same time**

– Typical application power << max power on each CPU

– Can throttle performance if both CPUs approach max power at same time.

**Can simplify interconnect in SMP system**

**Also, can be used to build highly reliable system via FRC**

intel®

TMTA  0009334

22

Micro32
Fred Pollack

TMTA 0009335

intel®

24

TMTA 0009336

# Key Challenges for future Microarchitectures

## Special Purpose Performance

## Increased Execution Efficiency

## Breaking the Dataflow Barrier
– With efficiency

Micro32
Fred Pollack

25

intel®

# Special vs. General Purpose Performance

**Special purpose performance can deliver more MIPS/mm².**

**To Date: SIMD integer and floating-point instructions added to several ISAs**

- <10% in die area and power increase, and 1.5–4x increase in multimedia/3D kernels

**With future silicon budgets approaching 100M transistors, we need to consider:**

- Integration of other platform components (e.g. Memory controller, graphics)

- Special purpose logic, programmable logic, & separately programmable engines

- But all have very complex/costly software issues

*Challenge:  Design for "Valued Performance"*

Micro32
Fred Pollack

TMTA 0009337

26

intel®

# Increased Execution Efficiency

**Max Power Occurs on Code that Keeps Pipeline full and all superscalar units busy**

– Thermal solution designed for Max Power

– Power delivery designed for Max Power

**But few apps spend any significant time operating at Max Power**

**And the wider and deeper the execution core, the greater the inefficiency**

**Thus, with power constraints, need to focus on techniques that increase execution core efficiency and only add modest additional logic and power**

Micro32
Fred Pollack

TMTA 0009338

# Challenges to Increased Efficiency

## Improved prediction for less unused speculation

## Establish & use *Confidence* measures

– For example, don't speculate on a flaky branch if another thread can better use the execution resources

intel®

27

TMTA 0009339

Micro32
Fred Pollack

# Data Flow Execution

## In Order Processors

**B = A**
**D = C**

Source

1
2
3
4
R1 ← A
B ← R1
R2 ← C
D ← R2
Scalar
1
2
3
4
R1 ← A
B ← R1
D ← R2
R2 ← C
Superscalar

## Out-of-Order Processors

– Order is not important, data flow (dependencies) matters

1
3
2
4
R1 ← A
B ← R1
R2 ← C
D ← R2
Out-of-Order Superscalar

## The Goal: Shortest length as possible!

## … But still limited by instruction dependencies

1. *How much limited?*
2. *Can we break the Data Flow Barrier?*

1
2
3
4
Our Wet Dreams?

Micro32
Fred Pollack

intel®

TMTA 0009341

intel®

29

# Breaking the Barrier:
# Beyond Data-Flow Execution

## Driving Idea:

– Transform the DFG into an improved DFG which:

» Has a shorter critical path (higher parallelism)

» Has less instructions

## Families of Transformations

– Safe transformations

» Like compilers do, but using dynamic information

– Speculative transformations

» Guess intermediate values (results, addresses, flags,…)

» Ignore dependencies

» Verify and redo if wrong

» Do it smart to reduce unused speculation (use confidence factor)

Micro32
Fred Pollack



# Simple Transformation Examples

## Move Elimination & Memory Bypass



Source - before & after OOO

```
R1 = R2
[M1] = R1
   :
R3 = [M2]
R4 = R3+1
```

After Move Elimination (use R2 for R1)

```
[M1] = R2
R3 = [M2]
R4 = R3 + 1
```

```
R1 = R2
   :
   :
```

**Safe Transformation**

**Predict M1==M2**

After Memory Bypass

```
[M1] = R2
R3 = [M2]
```

```
R4 = R2 + 1
   :
```

**Need Verification M1==M2**

Micro32
Fred Pollack

30

intel®

TMTA  0009342

TMTA 0009343

intel®

31

# Value Prediction

Predict the outcome value of an instruction instead of waiting for it to be ready/produced

– But confidence factor is key to avoiding unused speculation

Enables *Dependency Elimination* thus collapsing the DFG



Don't wait for the outcome of "2" in order to execute "3" but predict it's value

Micro32
Fred Pollack

# Value Identity Predictor

If you can't predict the actual value, try to predict if it is
identical to a value produced by a prior instruction

Enables *Dependency Redirection* thus collapsing the DFG



After    Gen  eax
         ...
         Gen  ebx
         ...
         Use  ebx

*But with confidence*

intel®

Micro32
Fred Pollack

32

TMTA  0009344

intel®

33

# Summary

## Logic Transistor growth constrained by power – not mfg

– At constant power, 50% per process generation vs. over 200% in past

## Current Directions in microarchitecture that help

– SIMD ISA extensions
– On-die L2 caches
– Multiple CPU cores on die
– Multithreaded CPU

## Key Challenges for future Microarchitectures

– Special purpose performance
– Increased execution efficiency: improved prediction and *confidence*
– Break the data-flow barrier, but in a power efficient manner

## CMOS Challenges beyond thermal power

– Increasing power density
– Leakage Power becoming a significant factor
– Increasing and quickly-changing current with lower voltage (dI/dt)
– SER (soft error rate) – not just a memory problem

Micro32
Fred Pollack

TMTA 0009345

TMTA 0009346

# EXHIBIT 2

# EXHIBIT 2

## FULLY REDACTED

# EXHIBIT 3

# EXHIBIT 3

## FULLY REDACTED

EXHIBIT 4

# EXHIBIT 4

## FULLY REDACTED

# EXHIBIT 5

# EXHIBIT 5

## FULLY REDACTED

# EXHIBIT 6

# EXHIBIT 6

## FULLY REDACTED

# EXHIBIT 7

# EXHIBIT 7

## FULLY REDACTED

# EXHIBIT 8



**PRESS RELEASES** *Rapid*

Important legal notice

English ▼

EUROPA > Press Room > Press Releases                    Contact | Search on EUROPA

 RSS | Midday Express | Recent Press Releases

Select a topic ▼    Search

**PRESS RELEASES** *Rapid*

◈ Login

◈ Register

◈ Documentation

◈ What's New

◈ About

## Competition: Commission confirms sending of Statement of Objections to Intel

Reference: MEMO/07/314   Date: 27/07/2007

HTML: EN
PDF: EN
DOC: EN

**MEMO/07/314**

Brussels, 27 July 2007

**Competition: Commission confirms sending of Statement of Objections to Intel**

*The European Commission can confirm that it has sent a Statement of Objections (SO) to Intel on 26th July 2007. The SO outlines the Commission's preliminary view that Intel has infringed the EC Treaty rules on abuse of a dominant position (Article 82) with the aim of excluding its main rival, AMD, from the x86 Computer Processing Units (CPU) market.*

In the SO, the Commission outlines its preliminary conclusion that Intel has engaged in three types of abuse of a dominant market position. First, Intel has provided substantial rebates to various Original Equipment Manufacturers (OEMs) conditional on them obtaining all or the great majority of their CPU requirements from Intel. Secondly, in a number of instances, Intel made payments in order to induce an OEM to either delay or cancel the launch of a product line incorporating an AMD-based CPU. Thirdly, in the context of bids against AMD-based products for strategic customers in the server segment of the market, Intel has offered CPUs on average below cost.

These three types of conduct are aimed at excluding AMD, Intel's main rival, from the market. Each of them is provisionally considered to constitute an abuse of a dominant position in its own right. However, the Commission also considers at this stage of its analysis that the three types of conduct reinforce each other and are part of a single overall anti-competitive strategy.

Intel has 10 weeks to reply to the SO, and will then have the right to be heard in an Oral Hearing. If the preliminary views expressed in the SO are confirmed, the Commission may require Intel to cease the abuse and may impose a fine.

**Background**

A Statement of Objections is a formal step in Commission antitrust investigations in which the Commission informs the parties concerned in writing of the objections raised against them. The addressee of a Statement of Objections can reply in writing to the Statement of Objections, setting out all facts known to it which are relevant to its defence against the objections raised by the Commission. The party may also

request an oral hearing to present its comments on the case.

The Commission may then take a decision on whether conduct addressed in the Statement of Objections is compatible or not with the EC Treaty's antitrust rules. Sending a Statement of Objections does not prejudge the final outcome of the procedure.

# EXHIBIT 9

# EXHIBIT 9

## FULLY REDACTED

# EXHIBIT 10

# EXHIBIT 10

## FULLY REDACTED

# EXHIBIT 11



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Ex Parte* Reexamination Filing Data - June 30, 2007

1. Total requests filed since start of ex parte reexam on 07/01/81 . . . . . . . . . . . . . . . . . 8732[1]

   |     |                          |      |     |
   |-----|--------------------------|------|-----|
   | a.  | By patent owner          | 3446 | 39% |
   | b.  | By other member of public| 5121 | 59% |
   | c.  | By order of Commissioner | 165  | 2%  |

2. Number of filings by discipline

   |     |                      |      |     |
   |-----|----------------------|------|-----|
   | a.  | Chemical Operation   | 2634 | 30% |
   | b.  | Electrical Operation | 2890 | 33% |
   | c.  | Mechanical Operation | 3208 | 37% |

3. Annual Ex Parte Reexam Filings

   | Fiscal Yr. | No.        | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
   |-----------|------------|-----------|-----|-----------|-----|-----------|-----|
   | 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
   | 1982 | 187         | 1990 | 297 | 1998 | 350 | 2006 | 511 |
   | 1983 | 186         | 1991 | 307 | 1999 | 385 | 2007 | 477 |
   | 1984 | 189         | 1992 | 392 | 2000 | 318 |      |     |
   | 1985 | 230         | 1993 | 359 | 2001 | 296 |      |     |
   | 1986 | 232         | 1994 | 379 | 2002 | 272 |      |     |
   | 1987 | 240         | 1995 | 392 | 2003 | 392 |      |     |
   | 1988 | 268         | 1996 | 418 | 2004 | 441 |      |     |

4. Number known to be in litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2145     25%

5. Determinations on requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8373

   a. No. granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7662 . . . . . . . . . 92%

      | (1) | By examiner              | 7551 |
      |-----|--------------------------|------|
      | (2) | By Director (on petition)| 111  |

   b. No. denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 711 . . . . . . . . . 8%

      | (1) | By examiner    | 676 |
      |-----|----------------|-----|
      | (2) | Order vacated  | 35  |

---

[1]Of the requests received through June 30, 2007, 28 requests have not yet been accorded a filing date, and preprocessing of 25 requests was terminated, for failure to comply with the requirements of 37 CFR 1.510. See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

6.    Total examiner denials (includes denials reversed by Director)  . . . . . . . . . . . . . . . . . . 787

    a.   Patent owner requester    442    56%
    b.   Third party requester    345    44%

7.    Overall reexamination pendency  (Filing date to certificate issue date)

    a.   Average pendency    23.4 (mos.)
    b.   Median pendency    18.2 (mos.)

8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.   All claims confirmed | 23% | 29% | 13% | 26% |
| b.   All claims cancelled | 7% | 12% | 21% | 10% |
| c.   Claims changes | 70% | 59% | 66% | 64% |

9.    Total ex parte reexamination certificates issued (1981 - present)  . . . . . . . . . . . . . . . . 5795

    a.  Certificates with all claims confirmed    1513    26%
    b.  Certificates with all claims canceled    596    10%
    c.  Certificates with claims changes    3686    64%

10.  Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates - PATENT OWNER REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2503

        (1)  All claims confirmed    578    23%
        (2)  All claims canceled    181    7%
        (3)  Claim changes    1744    70%

    b.  Certificates - 3rd PARTY REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3149

        (1)  All claims confirmed    917    29%
        (2)  All claims canceled    385    12%
        (3)  Claim changes    1847    59%

    c.  Certificates - COMM'R INITIATED REEXAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . 143

        (1)  All claims confirmed    18    13%
        (2)  All claims canceled    30    21%
        (3)  Claim changes    95    66%

# EXHIBIT 12

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 1 | 90/006,700 | 10/19/2005 | Issued | 4/27/2005 | Notice of Intent to Issue | 7/8/2003 | Receipt of Original Ex Parte Reexam Request | 172 | 27.37 |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 90/006,701 | 10/18/2006 | Issued | 7/14/2005 | Notice of Intent to Issue | 7/10/2003 | Receipt of Original Ex Parte Reexam Request | 454 | 39.27 |
| 3 | 90/006,702 | 6/14/2006 | Issued | 5/25/2005 | Notice of Intent to Issue | 7/10/2003 | Receipt of Original Ex Parte Reexam Request | 379 | 35.13 |
| 5 | 90/006,704 | 4/12/2006 | Issued | 6/16/2005 | Notice of Intent to Issue | 6/30/2003 | Receipt of Original Ex Parte Reexam Request | 296 | 33.40 |
| 6 | 90/006,705 | 7/20/2005 | Issued | 4/14/2005 | Notice of Intent to Issue | 6/27/2003 | Receipt of Original Ex Parte Reexam Request | 96 | 24.77 |
| 10 | 90/006,709 | 5/17/2006 | Issued | 8/30/2005 | Notice of Intent to Issue | 7/14/2003 | Receipt of Original Ex Parte Reexam Request | 257 | 34.10 |
| 12 | 90/006,711 | 7/27/2005 | Issued | 3/8/2005 | Notice of Intent to Issue | 7/14/2003 | Receipt of Original Ex Parte Reexam Request | 139 | 24.43 |
| 15 | 90/006,714 | 2/2/2005 | Issued | 9/16/2004 | Notice of Intent to Issue | 7/15/2003 | Receipt of Original Ex Parte Reexam Request | 136 | 18.57 |
| 16 | 90/006,715 | 1/26/2005 | Issued | 9/27/2004 | Notice of Intent to Issue | 7/17/2003 | Receipt of Original Ex Parte Reexam Request | 119 | 18.30 |
| 17 | 90/006,716 | 3/8/2006 | Issued | 6/1/2005 | Notice of Intent to Issue | 7/17/2003 | Receipt of Original Ex Parte Reexam Request | 277 | 31.70 |
| 18 | 90/006,717 | 4/19/2006 | Issued | 8/10/2005 | Notice of Intent to Issue | 7/17/2003 | Receipt of Original Ex Parte Reexam Request | 249 | 33.07 |
| 19 | 90/006,718 | 10/27/2004 | Issued | 7/9/2004 | Notice of Intent to Issue | 7/17/2003 | Receipt of Original Ex Parte Reexam Request | 108 | 15.33 |
| 20 | 90/006,719 | 11/3/2004 | Issued | 8/24/2004 | Notice of Intent to Issue | 7/18/2003 | Receipt of Original Ex Parte Reexam Request | 69 | 15.50 |
| 21 | 90/006,720 | 3/16/2006 | Issued | 12/13/2004 | Notice of Intent to Issue | 7/21/2003 | Receipt of Original Ex Parte Reexam Request | 93 | 19.83 |
| 22 | 90/006,721 | 10/12/2005 | Issued | 5/11/2005 | Notice of Intent to Issue | 7/21/2003 | Receipt of Original Ex Parte Reexam Request | 151 | 26.70 |
| 23 | 90/006,722 | 12/14/2005 | Issued | 5/13/2005 | Notice of Intent to Issue | 7/22/2003 | Receipt of Original Ex Parte Reexam Request | 211 | 28.73 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 24 | 90/006,723 | 10/18/2006 | Issued | 4/25/2005 | Notice of Intent to Issue | 7/23/2003 | Receipt of Original Ex Parte Reexam Request | 533 | 38.83 |
|----|------------|------------|--------|-----------|---------------------------|-----------|---------------------------------------------|-----|-------|
| 31 | 90/006,730 | 6/9/2004 | Issued | 4/13/2004 | Notice of Intent to Issue | 7/30/2003 | Receipt of Original Ex Parte Reexam Request | 56 | 10.30 |
| 32 | 90/006,731 | 11/22/2006 | Issued | 4/6/2006 | Notice of Intent to Issue | 7/31/2003 | Receipt of Original Ex Parte Reexam Request | 226 | 39.73 |
| 33 | 90/006,732 | 3/7/2007 | Issued | 8/22/2006 | Notice of Intent to Issue | 7/31/2003 | Receipt of Original Ex Parte Reexam Request | 195 | 43.23 |
| 34 | 90/006,733 | 11/8/2006 | Issued | 4/6/2006 | Notice of Intent to Issue | 7/31/2003 | Receipt of Original Ex Parte Reexam Request | 212 | 39.27 |
| 35 | 90/006,734 | 2/23/2005 | Issued | 10/22/2004 | Notice of Intent to Issue | 8/4/2003 | Receipt of Original Ex Parte Reexam Request | 121 | 18.63 |
| 36 | 90/006,735 | 12/8/2004 | Issued | 9/17/2004 | Notice of Intent to Issue | 8/7/2003 | Receipt of Original Ex Parte Reexam Request | 81 | 16.03 |
| 37 | 90/006,736 | 12/21/2005 | Issued | 6/20/2005 | Notice of Intent to Issue | 8/8/2003 | Receipt of Original Ex Parte Reexam Request | 181 | 28.43 |
| 39 | 90/006,738 | 2/16/2005 | Issued | 10/26/2004 | Notice of Intent to Issue | 8/11/2003 | Receipt of Original Ex Parte Reexam Request | 110 | 18.17 |
| 40 | 90/006,739 | 4/12/2006 | Issued | 8/8/2005 | Notice of Intent to Issue | 8/11/2003 | Receipt of Original Ex Parte Reexam Request | 244 | 32.03 |
| 41 | 90/006,740 | 1/18/2006 | Issued | 8/4/2005 | Notice of Intent to Issue | 8/11/2003 | Receipt of Original Ex Parte Reexam Request | 164 | 29.23 |
| 42 | 90/006,741 | 11/2/2005 | Issued | 4/28/2005 | Notice of Intent to Issue | 8/12/2003 | Receipt of Original Ex Parte Reexam Request | 184 | 26.67 |
| 43 | 90/006,742 | 5/17/2006 | Issued | 10/3/2005 | Notice of Intent to Issue | 8/12/2003 | Receipt of Original Ex Parte Reexam Request | 224 | 33.17 |
| 44 | 90/006,743 | 5/31/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 8/13/2003 | Receipt of Original Ex Parte Reexam Request | 248 | 33.60 |
| 45 | 90/006,744 | 1/25/2006 | Issued | 6/22/2005 | Notice of Intent to Issue | 8/13/2003 | Receipt of Original Ex Parte Reexam Request | 213 | 29.40 |
| 46 | 90/006,745 | 2/1/2006 | Issued | 6/23/2005 | Notice of Intent to Issue | 8/13/2003 | Receipt of Original Ex Parte Reexam Request | 218 | 29.60 |

2

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 47 | 90/006,746 | 2/8/2006 | Issued | 6/22/2005 | Notice of Intent to Issue | 8/13/2003 | Receipt of Original Ex Parte Reexam Request | 226 | 29.83 |
| 48 | 90/006,747 | 2/8/2006 | Issued | 8/16/2005 | Notice of Intent to Issue | 8/14/2003 | Receipt of Original Ex Parte Reexam Request | 172 | 29.80 |
| 49 | 90/006,748 | 6/28/2006 | Issued | 7/22/2005 | Notice of Intent to Issue | 8/14/2003 | Receipt of Original Ex Parte Reexam Request | 336 | 34.47 |
| 50 | 90/006,749 | 6/21/2006 | Issued | 7/27/2005 | Notice of Intent to Issue | 8/14/2003 | Receipt of Original Ex Parte Reexam Request | 324 | 34.23 |
| 51 | 90/006,750 | 6/29/2005 | Issued | 4/28/2005 | Notice of Intent to Issue | 8/15/2003 | Receipt of Original Ex Parte Reexam Request | 61 | 22.47 |
| 53 | 90/006,752 | 11/2/2005 | Issued | 3/30/2005 | Notice of Intent to Issue | 8/18/2003 | Receipt of Original Ex Parte Reexam Request | 212 | 26.47 |
| 54 | 90/006,753 | 12/28/2005 | Issued | 3/2/2005 | Notice of Intent to Issue | 8/19/2003 | Receipt of Original Ex Parte Reexam Request | 296 | 28.30 |
| 55 | 90/006,754 | 5/31/2006 | Issued | 8/22/2005 | Notice of Intent to Issue | 8/19/2003 | Receipt of Original Ex Parte Reexam Request | 279 | 33.40 |
| 59 | 90/006,758 | 8/17/2005 | Issued | 8/17/2004 | Notice of Intent to Issue | 9/24/2003 | Commissioner Initiated Order | 360 | 22.77 |
| 60 | 90/006,759 | 7/5/2007 | Issued | 10/3/2005 | Notice of Intent to Issue | 9/24/2003 | Commissioner Initiated Order | 632 | 45.37 |
| 61 | 90/006,760 | 11/17/2004 | Issued | 4/14/2004 | Notice of Intent to Issue | 9/24/2003 | Commissioner Initiated Order | 213 | 13.77 |
| 62 | 90/006,761 | 6/14/2006 | Issued | 9/28/2005 | Notice of Intent to Issue | 8/25/2003 | Receipt of Original Ex Parte Reexam Request | 256 | 33.63 |
| 63 | 90/006,762 | 1/18/2006 | Issued | 7/14/2005 | Notice of Intent to Issue | 8/25/2003 | Receipt of Original Ex Parte Reexam Request | 184 | 28.77 |
| 64 | 90/006,763 | 8/15/2006 | Issued | 9/16/2004 | Notice of Intent to Issue | 8/26/2003 | Receipt of Original Ex Parte Reexam Request | 689 | 35.63 |
| 65 | 90/006,764 | 9/28/2005 | Issued | 5/31/2005 | Notice of Intent to Issue | 8/29/2003 | Receipt of Original Ex Parte Reexam Request | 118 | 24.97 |
| 66 | 90/006,765 | 4/19/2006 | Issued | 8/31/2005 | Notice of Intent to Issue | 8/29/2003 | Receipt of Original Ex Parte Reexam Request | 229 | 31.67 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 67 | 90/006,766 | 1/11/2006 | Issued | 6/27/2005 | Notice of Intent to Issue | 8/28/2003 | Receipt of Original Ex Parte Reexam Request | 194 | 28.43 |
|---|---|---|---|---|---|---|---|---|---|
| 68 | 90/006,767 | 3/2/2005 | Issued | 9/21/2004 | Notice of Intent to Issue | 8/29/2003 | Receipt of Original Ex Parte Reexam Request | 161 | 18.10 |
| 69 | 90/006,768 | 2/22/2006 | Issued | 6/13/2005 | Notice of Intent to Issue | 8/29/2003 | Receipt of Original Ex Parte Reexam Request | 249 | 29.77 |
| 70 | 90/006,769 | 7/12/2006 | Issued | 10/28/2005 | Notice of Intent to Issue | 8/29/2003 | Receipt of Original Ex Parte Reexam Request | 254 | 34.43 |
| 71 | 90/006,770 | 6/14/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 8/29/2003 | Receipt of Original Ex Parte Reexam Request | 261 | 33.50 |
| 72 | 90/006,771 | 11/10/2004 | Issued | 8/9/2004 | Notice of Intent to Issue | 9/2/2003 | Receipt of Original Ex Parte Reexam Request | 91 | 14.27 |
| 73 | 90/006,772 | 2/22/2006 | Issued | 6/13/2005 | Notice of Intent to Issue | 9/8/2003 | Receipt of Original Ex Parte Reexam Request | 249 | 29.47 |
| 75 | 90/006,774 | 10/4/2006 | Issued | 12/20/2005 | Notice of Intent to Issue | 9/11/2003 | Receipt of Original Ex Parte Reexam Request | 284 | 36.77 |
| 77 | 90/006,776 | 6/14/2006 | Issued | 11/14/2005 | Notice of Intent to Issue | 9/16/2003 | Receipt of Original Ex Parte Reexam Request | 210 | 32.93 |
| 78 | 90/006,777 | 5/17/2006 | Issued | 8/30/2005 | Notice of Intent to Issue | 9/19/2003 | Receipt of Original Ex Parte Reexam Request | 257 | 31.93 |
| 79 | 90/006,778 | 5/30/2007 | Issued | 6/6/2006 | Notice of Intent to Issue | 9/22/2003 | Receipt of Original Ex Parte Reexam Request | 354 | 44.27 |
| 80 | 90/006,779 | 5/24/2006 | Issued | 6/27/2005 | Notice of Intent to Issue | 9/22/2003 | Receipt of Original Ex Parte Reexam Request | 327 | 32.07 |
| 82 | 90/006,781 | 11/10/2004 | Issued | 7/7/2004 | Notice of Intent to Issue | 9/23/2003 | Receipt of Original Ex Parte Reexam Request | 123 | 13.57 |
| 84 | 90/006,783 | 6/14/2006 | Issued | 9/29/2005 | Notice of Intent to Issue | 9/25/2003 | Receipt of Original Ex Parte Reexam Request | 255 | 32.63 |
| 89 | 90/006,788 | 3/14/2006 | Issued | 3/29/2005 | Notice of Intent to Issue | 10/10/2003 | Receipt of Original Ex Parte Reexam Request | 345 | 29.13 |
| 91 | 90/006,790 | 7/5/2007 | Issued | 1/3/2006 | Notice of Intent to Issue | 10/14/2003 | Receipt of Original Ex Parte Reexam Request | 542 | 44.70 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 92 | 90/006,791 | 2/15/2006 | Issued | 6/10/2005 | Notice of Intent to Issue | 10/15/2003 | Receipt of Original Ex Parte Reexam Request | 245 | 28.00 |
| 96 | 90/006,795 | 9/7/2005 | Issued | 4/5/2005 | Notice of Intent to Issue | 10/15/2003 | Receipt of Original Ex Parte Reexam Request | 152 | 22.73 |
| 97 | 90/006,796 | 10/26/2005 | Issued | 4/27/2005 | Notice of Intent to Issue | 10/15/2003 | Receipt of Original Ex Parte Reexam Request | 179 | 24.37 |
| 98 | 90/006,797 | 7/27/2005 | Issued | 1/21/2005 | Notice of Intent to Issue | 10/3/2003 | Receipt of Original Ex Parte Reexam Request | 186 | 21.80 |
| 100 | 90/006,799 | 2/9/2005 | Issued | 9/13/2004 | Notice of Intent to Issue | 10/6/2003 | Receipt of Original Ex Parte Reexam Request | 146 | 16.10 |
| 105 | 90/006,804 | 11/9/2005 | Issued | 12/15/2004 | Notice of Intent to Issue | 10/9/2003 | Receipt of Original Ex Parte Reexam Request | 324 | 25.00 |
| 106 | 90/006,805 | 6/13/2007 | Issued | 2/6/2006 | Notice of Intent to Issue | 10/9/2003 | Receipt of Original Ex Parte Reexam Request | 487 | 44.13 |
| 108 | 90/006,807 | 5/10/2006 | Issued | 7/8/2005 | Notice of Intent to Issue | 10/8/2003 | Receipt of Original Ex Parte Reexam Request | 302 | 31.07 |
| 109 | 90/006,808 | 3/16/2005 | Issued | 11/17/2004 | Notice of Intent to Issue | 10/10/2003 | Receipt of Original Ex Parte Reexam Request | 119 | 17.20 |
| 110 | 90/006,809 | 4/4/2007 | Issued | 9/18/2006 | Notice of Intent to Issue | 10/14/2003 | Receipt of Original Ex Parte Reexam Request | 196 | 41.67 |
| 112 | 90/006,811 | 6/20/2007 | Issued | 11/25/2006 | Notice of Intent to Issue | 10/17/2003 | Receipt of Original Ex Parte Reexam Request | 205 | 44.10 |
| 113 | 90/006,812 | 3/29/2006 | Issued | 12/1/2005 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 118 | 29.30 |
| 114 | 90/006,813 | 3/28/2007 | Issued | 6/1/2005 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 657 | 41.27 |
| 115 | 90/006,814 | 12/6/2006 | Issued | 8/9/2006 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 117 | 37.53 |
| 116 | 90/006,815 | 8/15/2006 | Issued | 8/12/2004 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 723 | 33.83 |
| 117 | 90/006,816 | 7/5/2007 | Issued | 8/25/2006 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 310 | 44.50 |

5

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 120 | 90/006,819 | 8/16/2006 | Issued | 3/29/2006 | Notice of Intent to Issue | 10/22/2003 | Receipt of Original Ex Parte Reexam Request | 137 | 33.80 |
| 121 | 90/006,820 | 9/13/2006 | Issued | 4/6/2006 | Notice of Intent to Issue | 10/22/2003 | Receipt of Original Ex Parte Reexam Request | 157 | 34.70 |
| 122 | 90/006,821 | 8/23/2006 | Issued | 5/4/2006 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 109 | 34.10 |
| 124 | 90/006,823 | 9/20/2006 | Issued | 10/11/2005 | Notice of Intent to Issue | 10/21/2003 | Receipt of Original Ex Parte Reexam Request | 339 | 34.97 |
| 128 | 90/006,827 | 6/13/2007 | Issued | 4/13/2007 | Notice of Intent to Issue | 10/24/2003 | Receipt of Original Ex Parte Reexam Request | 60 | 43.63 |
| 129 | 90/006,828 | 10/27/2004 | Issued | 8/12/2004 | Notice of Intent to Issue | 10/23/2003 | Receipt of Original Ex Parte Reexam Request | 75 | 12.13 |
| 130 | 90/006,829 | 11/1/2006 | Issued | 5/1/2006 | Notice of Intent to Issue | 10/24/2003 | Receipt of Original Ex Parte Reexam Request | 180 | 36.23 |
| 131 | 90/006,830 | 2/28/2007 | Issued | 9/20/2006 | Notice of Intent to Issue | 10/28/2003 | Receipt of Original Ex Parte Reexam Request | 158 | 40.00 |
| 132 | 90/006,831 | 5/17/2006 | Issued | 1/20/2006 | Notice of Intent to Issue | 10/30/2003 | Commissioner Initiated Order | 117 | 30.57 |
| 134 | 90/006,833 | 10/18/2006 | Issued | 4/11/2006 | Notice of Intent to Issue | 10/28/2003 | Receipt of Original Ex Parte Reexam Request | 187 | 35.67 |
| 136 | 90/006,835 | 1/17/2007 | Issued | 7/20/2006 | Notice of Intent to Issue | 10/29/2003 | Receipt of Original Ex Parte Reexam Request | 177 | 38.60 |
| 137 | 90/006,836 | 8/9/2006 | Issued | 2/14/2006 | Notice of Intent to Issue | 10/29/2003 | Receipt of Original Ex Parte Reexam Request | 175 | 33.33 |
| 141 | 90/006,840 | 5/30/2007 | Issued | 4/25/2005 | Notice of Intent to Issue | 11/3/2003 | Receipt of Original Ex Parte Reexam Request | 755 | 42.90 |
| 143 | 90/006,842 | 4/4/2007 | Issued | 9/18/2006 | Notice of Intent to Issue | 11/4/2003 | Receipt of Original Ex Parte Reexam Request | 196 | 41.00 |
| 146 | 90/006,845 | 9/27/2006 | Issued | 2/28/2006 | Notice of Intent to Issue | 11/6/2003 | Receipt of Original Ex Parte Reexam Request | 207 | 34.70 |
| 147 | 90/006,846 | 4/20/2005 | Issued | 1/12/2005 | Notice of Intent to Issue | 11/7/2003 | Receipt of Original Ex Parte Reexam Request | 98 | 17.43 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 149 | 90/006,848 | 6/8/2005 | Issued | 1/24/2005 | Notice of Intent to Issue | 11/7/2003 | Receipt of Original Ex Parte Reexam Request | 134 | 19.03 |
| 150 | 90/006,849 | 8/3/2005 | Issued | 1/24/2005 | Notice of Intent to Issue | 11/7/2003 | Receipt of Original Ex Parte Reexam Request | 189 | 20.87 |
| 153 | 90/006,852 | 1/3/2007 | Issued | 3/21/2006 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 282 | 37.77 |
| 155 | 90/006,854 | 1/3/2007 | Issued | 3/21/2006 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 282 | 37.77 |
| 156 | 90/006,855 | 3/7/2007 | Issued | 9/18/2006 | Notice of Intent to Issue | 11/12/2003 | Receipt of Original Ex Parte Reexam Request | 169 | 39.83 |
| 157 | 90/006,856 | 12/20/2006 | Issued | 3/21/2006 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 269 | 37.33 |
| 158 | 90/006,857 | 8/24/2005 | Issued | 4/11/2005 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 133 | 21.47 |
| 159 | 90/006,858 | 8/17/2005 | Issued | 4/11/2005 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 126 | 21.23 |
| 160 | 90/006,859 | 11/10/2004 | Issued | 7/28/2004 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 102 | 12.00 |
| 163 | 90/006,862 | 9/6/2006 | Issued | 5/2/2006 | Notice of Intent to Issue | 11/14/2003 | Receipt of Original Ex Parte Reexam Request | 124 | 33.73 |
| 164 | 90/006,863 | 5/2/2007 | Issued | 12/7/2006 | Notice of Intent to Issue | 11/14/2003 | Receipt of Original Ex Parte Reexam Request | 145 | 41.60 |
| 165 | 90/006,864 | 5/31/2006 | Issued | 9/16/2005 | Notice of Intent to Issue | 11/13/2003 | Receipt of Original Ex Parte Reexam Request | 255 | 30.60 |
| 167 | 90/006,866 | 9/27/2006 | Issued | 3/28/2006 | Notice of Intent to Issue | 11/17/2003 | Receipt of Original Ex Parte Reexam Request | 179 | 34.33 |
| 170 | 90/006,869 | 9/20/2006 | Issued | 3/28/2006 | Notice of Intent to Issue | 11/17/2003 | Receipt of Original Ex Parte Reexam Request | 172 | 34.10 |
| 172 | 90/006,871 | 12/27/2006 | Issued | 7/24/2006 | Notice of Intent to Issue | 11/21/2003 | Receipt of Original Ex Parte Reexam Request | 153 | 37.20 |
| 173 | 90/006,872 | 5/24/2006 | Issued | 8/31/2005 | Notice of Intent to Issue | 11/12/2003 | Receipt of Original Ex Parte Reexam Request | 264 | 30.40 |

7

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 174 | 90/006,873 | 6/29/2005 | Issued | 2/10/2005 | Notice of Intent to Issue | 11/20/2003 | Receipt of Original Ex Parte Reexam Request | 139 | 19.30 |
|-----|------------|-----------|--------|-----------|---------------------------|------------|---------------------------------------------|-----|-------|
| 178 | 90/006,877 | 9/13/2006 | Issued | 4/27/2006 | Notice of Intent to Issue | 11/26/2003 | Receipt of Original Ex Parte Reexam Request | 136 | 33.57 |
| 179 | 90/006,878 | 7/5/2007 | Issued | 3/13/2007 | Notice of Intent to Issue | 12/1/2003 | Receipt of Original Ex Parte Reexam Request | 112 | 43.13 |
| 180 | 90/006,879 | 4/13/2005 | Issued | 1/26/2005 | Notice of Intent to Issue | 12/2/2003 | Receipt of Original Ex Parte Reexam Request | 77 | 16.37 |
| 181 | 90/006,880 | 9/6/2006 | Issued | 5/5/2006 | Notice of Intent to Issue | 12/3/2003 | Receipt of Original Ex Parte Reexam Request | 121 | 33.10 |
| 185 | 90/006,884 | 2/14/2007 | Issued | 9/19/2006 | Notice of Intent to Issue | 12/10/2003 | Receipt of Original Ex Parte Reexam Request | 145 | 38.13 |
| 186 | 90/006,885 | 10/11/2006 | Issued | 5/4/2006 | Notice of Intent to Issue | 12/5/2003 | Receipt of Original Ex Parte Reexam Request | 157 | 34.20 |
| 188 | 90/006,887 | 3/22/2006 | Issued | 7/1/2005 | Notice of Intent to Issue | 12/10/2003 | Receipt of Original Ex Parte Reexam Request | 261 | 27.40 |
| 191 | 90/006,890 | 6/29/2005 | Issued | 2/14/2005 | Notice of Intent to Issue | 12/16/2003 | Receipt of Original Ex Parte Reexam Request | 135 | 18.43 |
| 192 | 90/006,891 | 8/23/2006 | Issued | 11/22/2005 | Notice of Intent to Issue | 12/18/2003 | Receipt of Original Ex Parte Reexam Request | 271 | 32.17 |
| 193 | 90/006,892 | 2/8/2006 | Issued | 9/26/2005 | Notice of Intent to Issue | 12/19/2003 | Receipt of Original Ex Parte Reexam Request | 132 | 25.63 |
| 196 | 90/006,895 | 3/29/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 12/23/2003 | Receipt of Original Ex Parte Reexam Request | 207 | 27.20 |
| 198 | 90/006,897 | 9/6/2006 | Issued | 9/26/2005 | Notice of Intent to Issue | 12/29/2003 | Receipt of Original Ex Parte Reexam Request | 340 | 32.23 |
| 201 | 90/006,900 | 5/24/2006 | Issued | 9/26/2005 | Notice of Intent to Issue | 1/5/2004 | Receipt of Original Ex Parte Reexam Request | 238 | 28.63 |
| 202 | 90/006,901 | 2/23/2005 | Issued | 8/12/2004 | Notice of Intent to Issue | 1/9/2004 | Commissioner Initiated Order | 191 | 13.47 |
| 203 | 90/006,902 | 11/22/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 1/8/2004 | Receipt of Original Ex Parte Reexam Request | 419 | 34.47 |

8

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 204 | 90/006,903 | 8/24/2005 | Issued | 4/11/2005 | Notice of Intent to Issue | 1/9/2004 | Receipt of Original Ex Parte Reexam Request | 133 | 19.50 |
| 205 | 90/006,904 | 5/25/2005 | Issued | 12/15/2004 | Notice of Intent to Issue | 1/12/2004 | Receipt of Original Ex Parte Reexam Request | 160 | 16.43 |
| 207 | 90/006,906 | 2/28/2007 | Issued | 9/21/2006 | Notice of Intent to Issue | 1/14/2004 | Receipt of Original Ex Parte Reexam Request | 157 | 37.47 |
| 210 | 90/006,909 | 1/11/2006 | Issued | 7/1/2005 | Notice of Intent to Issue | 1/14/2004 | Receipt of Original Ex Parte Reexam Request | 190 | 23.90 |
| 211 | 90/006,910 | 2/9/2005 | Issued | 9/7/2004 | Notice of Intent to Issue | 1/16/2004 | Receipt of Original Ex Parte Reexam Request | 152 | 12.77 |
| 213 | 90/006,912 | 12/27/2006 | Issued | 5/24/2006 | Notice of Intent to Issue | 1/15/2004 | Receipt of Original Ex Parte Reexam Request | 213 | 35.40 |
| 215 | 90/006,914 | 8/17/2005 | Issued | 3/22/2005 | Notice of Intent to Issue | 1/21/2004 | Receipt of Original Ex Parte Reexam Request | 145 | 18.87 |
| 216 | 90/006,915 | 5/23/2007 | Issued | 1/6/2006 | Notice of Intent to Issue | 8/25/2003 | Receipt of Original Ex Parte Reexam Request | 497 | 44.93 |
| 217 | 90/006,916 | 7/12/2006 | Issued | 1/31/2006 | Notice of Intent to Issue | 1/20/2004 | Receipt of Original Ex Parte Reexam Request | 162 | 29.73 |
| 219 | 90/006,918 | 4/18/2007 | Issued | 3/10/2006 | Notice of Intent to Issue | 1/26/2004 | Receipt of Original Ex Parte Reexam Request | 398 | 38.73 |
| 220 | 90/006,919 | 6/14/2006 | Issued | 11/23/2005 | Notice of Intent to Issue | 1/26/2004 | Receipt of Original Ex Parte Reexam Request | 201 | 28.60 |
| 221 | 90/006,920 | 7/27/2005 | Issued | 4/5/2005 | Notice of Intent to Issue | 1/26/2004 | Receipt of Original Ex Parte Reexam Request | 112 | 18.03 |
| 222 | 90/006,921 | 3/22/2006 | Issued | 8/24/2005 | Notice of Intent to Issue | 1/26/2004 | Receipt of Original Ex Parte Reexam Request | 208 | 25.87 |
| 227 | 90/006,926 | 3/7/2007 | Issued | 8/9/2005 | Notice of Intent to Issue | 1/28/2004 | Receipt of Original Ex Parte Reexam Request | 568 | 37.30 |
| 229 | 90/006,928 | 5/2/2007 | Issued | 5/30/2006 | Notice of Intent to Issue | 2/2/2004 | Receipt of Original Ex Parte Reexam Request | 332 | 39.00 |
| 230 | 90/006,929 | 2/28/2007 | Issued | 9/26/2006 | Notice of Intent to Issue | 2/5/2004 | Receipt of Original Ex Parte Reexam Request | 152 | 36.77 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 231 | 90/006,930 | 3/9/2005 | Issued | 11/17/2004 | Notice of Intent to Issue | 2/9/2004 | Receipt of Original Ex Parte Reexam Request | 112 | 13.00 |
| 232 | 90/006,931 | 2/21/2007 | Issued | 9/12/2006 | Notice of Intent to Issue | 2/12/2004 | Commissioner Initiated Order | 159 | 36.30 |
| 234 | 90/006,933 | 7/5/2006 | Issued | 12/12/2005 | Notice of Intent to Issue | 2/11/2004 | Receipt of Original Ex Parte Reexam Request | 203 | 28.80 |
| 235 | 90/006,934 | 9/27/2006 | Issued | 5/9/2006 | Notice of Intent to Issue | 2/13/2004 | Receipt of Original Ex Parte Reexam Request | 138 | 31.47 |
| 236 | 90/006,935 | 5/17/2006 | Issued | 1/17/2006 | Notice of Intent to Issue | 2/12/2004 | Receipt of Original Ex Parte Reexam Request | 120 | 27.17 |
| 237 | 90/006,936 | 3/22/2006 | Issued | 8/25/2005 | Notice of Intent to Issue | 2/13/2004 | Receipt of Original Ex Parte Reexam Request | 207 | 25.30 |
| 239 | 90/006,938 | 8/3/2005 | Issued | 2/14/2005 | Notice of Intent to Issue | 2/17/2004 | Receipt of Original Ex Parte Reexam Request | 169 | 17.53 |
| 240 | 90/006,939 | 5/17/2006 | Issued | 7/19/2005 | Notice of Intent to Issue | 2/13/2004 | Receipt of Original Ex Parte Reexam Request | 298 | 27.13 |
| 246 | 90/006,945 | 6/7/2006 | Issued | 8/4/2005 | Notice of Intent to Issue | 2/23/2004 | Receipt of Original Ex Parte Reexam Request | 303 | 27.47 |
| 251 | 90/006,950 | 3/15/2006 | Issued | 11/1/2005 | Notice of Intent to Issue | 2/25/2004 | Receipt of Original Ex Parte Reexam Request | 134 | 24.67 |
| 253 | 90/006,952 | 10/4/2006 | Issued | 5/22/2006 | Notice of Intent to Issue | 2/25/2004 | Receipt of Original Ex Parte Reexam Request | 132 | 31.30 |
| 259 | 90/006,958 | 7/5/2006 | Issued | 3/16/2006 | Notice of Intent to Issue | 3/10/2004 | Receipt of Original Ex Parte Reexam Request | 109 | 27.83 |
| 260 | 90/006,959 | 6/14/2006 | Issued | 12/27/2005 | Notice of Intent to Issue | 3/10/2004 | Receipt of Original Ex Parte Reexam Request | 167 | 27.13 |
| 262 | 90/006,961 | 1/3/2007 | Issued | 3/21/2006 | Notice of Intent to Issue | 3/11/2004 | Receipt of Original Ex Parte Reexam Request | 282 | 33.73 |
| 264 | 90/006,963 | 5/11/2005 | Issued | 2/9/2005 | Notice of Intent to Issue | 3/12/2004 | Receipt of Original Ex Parte Reexam Request | 92 | 13.97 |
| 268 | 90/006,967 | 4/12/2006 | Issued | 6/20/2005 | Notice of Intent to Issue | 3/12/2004 | Receipt of Original Ex Parte Reexam Request | 292 | 25.00 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 271 | 90/006,970 | 8/9/2006 | Issued | 2/27/2006 | Notice of Intent to Issue | 3/16/2004 | Receipt of Original Ex Parte Reexam Request | 162 | 28.77 |
| 272 | 90/006,971 | 6/14/2006 | Issued | 11/9/2005 | Notice of Intent to Issue | 3/16/2004 | Receipt of Original Ex Parte Reexam Request | 215 | 26.93 |
| 273 | 90/006,972 | 1/3/2007 | Issued | 3/21/2006 | Notice of Intent to Issue | 3/22/2004 | Receipt of Original Ex Parte Reexam Request | 282 | 33.37 |
| 274 | 90/006,973 | 2/28/2007 | Issued | 9/20/2006 | Notice of Intent to Issue | 3/22/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 35.20 |
| 276 | 90/006,975 | 6/7/2006 | Issued | 9/12/2005 | Notice of Intent to Issue | 3/25/2004 | Receipt of Original Ex Parte Reexam Request | 265 | 26.40 |
| 282 | 90/006,981 | 8/30/2006 | Issued | 4/11/2006 | Notice of Intent to Issue | 3/25/2004 | Receipt of Original Ex Parte Reexam Request | 139 | 29.17 |
| 284 | 90/006,983 | 7/5/2006 | Issued | 3/27/2006 | Notice of Intent to Issue | 3/26/2004 | Receipt of Original Ex Parte Reexam Request | 98 | 27.30 |
| 286 | 90/006,985 | 11/15/2006 | Issued | 7/19/2006 | Notice of Intent to Issue | 3/30/2004 | Receipt of Original Ex Parte Reexam Request | 116 | 31.50 |
| 287 | 90/006,986 | 6/7/2006 | Issued | 9/14/2005 | Notice of Intent to Issue | 3/30/2004 | Receipt of Original Ex Parte Reexam Request | 263 | 26.23 |
| 289 | 90/006,988 | 8/24/2005 | Issued | 5/13/2005 | Notice of Intent to Issue | 4/1/2004 | Receipt of Original Ex Parte Reexam Request | 101 | 16.77 |
| 291 | 90/006,990 | 1/5/2005 | Issued | 10/5/2004 | Notice of Intent to Issue | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 90 | 9.10 |
| 292 | 90/006,991 | 8/24/2005 | Issued | 5/13/2005 | Notice of Intent to Issue | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 101 | 16.73 |
| 294 | 90/006,993 | 10/5/2005 | Issued | 5/13/2005 | Notice of Intent to Issue | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 142 | 18.10 |
| 296 | 90/006,995 | 9/14/2005 | Issued | 5/13/2005 | Notice of Intent to Issue | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 121 | 17.40 |
| 299 | 90/006,998 | 10/11/2006 | Issued | 5/10/2006 | Notice of Intent to Issue | 4/6/2004 | Receipt of Original Ex Parte Reexam Request | 151 | 30.17 |
| 300 | 90/006,999 | 12/13/2006 | Issued | 7/11/2006 | Notice of Intent to Issue | 4/7/2004 | Receipt of Original Ex Parte Reexam Request | 152 | 32.20 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 303 | 90/007,002 | 6/1/2005 | Issued | 1/11/2005 | Notice of Intent to Issue | 4/8/2004 | Receipt of Original Ex Parte Reexam Request | 140 | 13.77 |
|---|---|---|---|---|---|---|---|---|---|
| 304 | 90/007,003 | 4/20/2005 | Issued | 1/11/2005 | Notice of Intent to Issue | 4/9/2004 | Receipt of Original Ex Parte Reexam Request | 99 | 12.37 |
| 308 | 90/007,007 | 11/8/2006 | Issued | 1/3/2006 | Notice of Intent to Issue | 4/9/2004 | Receipt of Original Ex Parte Reexam Request | 305 | 30.97 |
| 309 | 90/007,008 | 4/26/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 4/19/2004 | Receipt of Original Ex Parte Reexam Request | 213 | 24.23 |
| 311 | 90/007,010 | 2/28/2007 | Issued | 9/14/2006 | Notice of Intent to Issue | 4/15/2004 | Receipt of Original Ex Parte Reexam Request | 164 | 34.43 |
| 312 | 90/007,011 | 3/28/2007 | Issued | 9/29/2006 | Notice of Intent to Issue | 4/22/2004 | Receipt of Original Ex Parte Reexam Request | 179 | 35.20 |
| 314 | 90/007,013 | 3/16/2005 | Issued | 12/13/2004 | Notice of Intent to Issue | 4/22/2004 | Receipt of Original Ex Parte Reexam Request | 93 | 10.80 |
| 315 | 90/007,014 | 5/23/2007 | Issued | 9/21/2006 | Notice of Intent to Issue | 4/23/2004 | Receipt of Original Ex Parte Reexam Request | 242 | 37.00 |
| 318 | 90/007,017 | 7/5/2006 | Issued | 12/6/2005 | Notice of Intent to Issue | 4/26/2004 | Receipt of Original Ex Parte Reexam Request | 209 | 26.30 |
| 319 | 90/007,018 | 9/20/2006 | Issued | 7/21/2006 | Notice of Intent to Issue | 4/26/2004 | Receipt of Original Ex Parte Reexam Request | 59 | 28.80 |
| 320 | 90/007,019 | 6/15/2005 | Issued | 3/1/2005 | Notice of Intent to Issue | 4/26/2004 | Receipt of Original Ex Parte Reexam Request | 104 | 13.63 |
| 322 | 90/007,021 | 9/20/2006 | Issued | 9/19/2005 | Notice of Intent to Issue | 4/29/2004 | Receipt of Original Ex Parte Reexam Request | 361 | 28.70 |
| 324 | 90/007,023 | 6/29/2005 | Issued | 1/10/2005 | Notice of Intent to Issue | 4/30/2004 | Receipt of Original Ex Parte Reexam Request | 169 | 13.97 |
| 329 | 90/007,028 | 9/27/2006 | Issued | 6/16/2006 | Notice of Intent to Issue | 5/7/2004 | Receipt of Original Ex Parte Reexam Request | 101 | 28.67 |
| 330 | 90/007,029 | 9/27/2006 | Issued | 5/8/2006 | Notice of Intent to Issue | 5/4/2004 | Receipt of Original Ex Parte Reexam Request | 139 | 28.77 |
| 332 | 90/007,031 | 8/30/2006 | Issued | 5/8/2006 | Notice of Intent to Issue | 5/4/2004 | Receipt of Original Ex Parte Reexam Request | 112 | 27.87 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 333 | 90/007,032 | 9/13/2006 | Issued | 2/9/2006 | Notice of Intent to Issue | 5/6/2004 | Receipt of Original Ex Parte Reexam Request | 214 | 28.23 |
|---|---|---|---|---|---|---|---|---|---|
| 334 | 90/007,033 | 5/3/2006 | Issued | 8/1/2005 | Notice of Intent to Issue | 5/7/2004 | Receipt of Original Ex Parte Reexam Request | 272 | 23.87 |
| 336 | 90/007,035 | 6/22/2005 | Issued | 3/2/2005 | Notice of Intent to Issue | 5/10/2004 | Receipt of Original Ex Parte Reexam Request | 110 | 13.40 |
| 339 | 90/007,038 | 10/18/2006 | Issued | 8/2/2006 | Notice of Intent to Issue | 5/11/2004 | Receipt of Original Ex Parte Reexam Request | 76 | 29.23 |
| 344 | 90/007,043 | 11/9/2005 | Issued | 11/19/2004 | Notice of Intent to Issue | 5/17/2004 | Receipt of Original Ex Parte Reexam Request | 350 | 17.73 |
| 345 | 90/007,044 | 5/2/2007 | Issued | 2/28/2007 | Notice of Intent to Issue | 5/20/2004 | Receipt of Original Ex Parte Reexam Request | 62 | 35.40 |
| 346 | 90/007,045 | 11/15/2006 | Issued | 6/12/2006 | Notice of Intent to Issue | 5/21/2004 | Receipt of Original Ex Parte Reexam Request | 153 | 29.80 |
| 347 | 90/007,046 | 2/28/2007 | Issued | 7/19/2006 | Notice of Intent to Issue | 5/22/2004 | Receipt of Original Ex Parte Reexam Request | 219 | 33.20 |
| 348 | 90/007,047 | 3/8/2006 | Issued | 7/22/2005 | Notice of Intent to Issue | 5/24/2004 | Receipt of Original Ex Parte Reexam Request | 226 | 21.47 |
| 349 | 90/007,048 | 9/13/2006 | Issued | 2/13/2006 | Notice of Intent to Issue | 5/24/2004 | Receipt of Original Ex Parte Reexam Request | 210 | 27.63 |
| 350 | 90/007,049 | 6/6/2007 | Issued | 1/8/2007 | Notice of Intent to Issue | 5/24/2004 | Receipt of Original Ex Parte Reexam Request | 148 | 36.40 |
| ·354 | 90/007,053 | 1/24/2007 | Issued | 8/16/2006 | Notice of Intent to Issue | 5/26/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 31.93 |
| 355 | 90/007,054 | 6/7/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 5/28/2004 | Receipt of Original Ex Parte Reexam Request | 275 | 24.30 |
| 356 | 90/007,055 | 5/24/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 5/28/2004 | Receipt of Original Ex Parte Reexam Request | 262 | 23.87 |
| 357 | 90/007,056 | 8/23/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 5/28/2004 | Receipt of Original Ex Parte Reexam Request | 351 | 26.83 |
| 358 | 90/007,057 | 10/4/2006 | Issued | 4/3/2006 | Notice of Intent to Issue | 6/1/2004 | Receipt of Original Ex Parte Reexam Request | 181 | 28.10 |

13

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 360 | 90/007,059 | 8/9/2006 | Issued | 3/13/2006 | Notice of Intent to Issue | 6/2/2004 | Receipt of Original Ex Parte Reexam Request | 146 | 26.23 |
| 361 | 90/007,060 | 8/9/2006 | Issued | 3/13/2006 | Notice of Intent to Issue | 6/2/2004 | Receipt of Original Ex Parte Reexam Request | 146 | 26.23 |
| 362 | 90/007,061 | 9/27/2006 | Issued | 7/17/2006 | Notice of Intent to Issue | 6/2/2004 | Receipt of Original Ex Parte Reexam Request | 70 | 27.83 |
| 363 | 90/007,062 | 2/14/2007 | Issued | 8/25/2006 | Notice of Intent to Issue | 6/3/2004 | Receipt of Original Ex Parte Reexam Request | 169 | 32.37 |
| 364 | 90/007,063 | 6/13/2007 | Issued | 4/27/2007 | Notice of Intent to Issue | 6/3/2004 | Receipt of Original Ex Parte Reexam Request | 46 | 36.33 |
| 365 | 90/007,064 | 6/6/2007 | Issued | 12/29/2006 | Notice of Intent to Issue | 6/4/2004 | Receipt of Original Ex Parte Reexam Request | 157 | 36.07 |
| 366 | 90/007,065 | 6/14/2006 | Issued | 9/30/2005 | Notice of Intent to Issue | 6/7/2004 | Receipt of Original Ex Parte Reexam Request | 254 | 24.23 |
| 367 | 90/007,066 | 1/17/2007 | Issued | 8/28/2006 | Notice of Intent to Issue | 6/8/2004 | Receipt of Original Ex Parte Reexam Request | 139 | 31.30 |
| 370 | 90/007,069 | 9/20/2006 | Issued | 6/23/2006 | Notice of Intent to Issue | 6/14/2004 | Receipt of Original Ex Parte Reexam Request | 87 | 27.20 |
| 371 | 90/007,070 | 11/23/2005 | Issued | 7/25/2005 | Notice of Intent to Issue | 6/9/2004 | Receipt of Original Ex Parte Reexam Request | 118 | 17.47 |
| 372 | 90/007,071 | 8/9/2006 | Issued | 11/1/2005 | Notice of Intent to Issue | 6/9/2004 | Receipt of Original Ex Parte Reexam Request | 278 | 26.00 |
| 379 | 90/007,078 | 2/28/2007 | Issued | 10/26/2005 | Notice of Intent to Issue | 6/14/2004 | Receipt of Original Ex Parte Reexam Request | 482 | 32.47 |
| 380 | 90/007,079 | 6/27/2007 | Issued | 1/9/2007 | Notice of Intent to Issue | 6/14/2004 | Receipt of Original Ex Parte Reexam Request | 168 | 36.43 |
| 383 | 90/007,082 | 1/3/2007 | Issued | 4/7/2006 | Notice of Intent to Issue | 6/16/2004 | Receipt of Original Ex Parte Reexam Request | 266 | 30.57 |
| 385 | 90/007,084 | 10/25/2006 | Issued | 9/27/2005 | Notice of Intent to Issue | 6/16/2004 | Receipt of Original Ex Parte Reexam Request | 388 | 28.30 |
| 386 | 90/007,085 | 1/3/2007 | Issued | 6/26/2006 | Notice of Intent to Issue | 6/16/2004 | Receipt of Original Ex Parte Reexam Request | 187 | 30.57 |

14

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 394 | 90/007,093 | 11/2/2005 | Issued | 8/9/2005 | Notice of Intent to Issue | 6/18/2004 | Receipt of Original Ex Parte Reexam Request | 83 | 16.47 |
|-----|------------|-----------|--------|----------|---------------------------|-----------|---------------------------------------------|-----|-------|
| 396 | 90/007,095 | 11/29/2006 | Issued | 10/4/2006 | Notice of Intent to Issue | 6/21/2004 | Receipt of Original Ex Parte Reexam Request | 55 | 29.27 |
| 400 | 90/007,099 | 6/7/2006 | Issued | 9/13/2005 | Notice of Intent to Issue | 6/25/2004 | Receipt of Original Ex Parte Reexam Request | 264 | 23.40 |
| 403 | 90/007,102 | 2/14/2007 | Issued | 9/12/2006 | Notice of Intent to Issue | 6/25/2004 | Receipt of Original Ex Parte Reexam Request | 152 | 31.63 |
| 405 | 90/007,104 | 10/4/2006 | Issued | 3/24/2006 | Notice of Intent to Issue | 7/2/2004 | Receipt of Original Ex Parte Reexam Request | 190 | 27.07 |
| 406 | 90/007,105 | 3/7/2007 | Issued | 9/15/2006 | Notice of Intent to Issue | 6/30/2004 | Receipt of Original Ex Parte Reexam Request | 172 | 32.23 |
| 410 | 90/007,109 | 6/20/2007 | Issued | 6/29/2006 | Notice of Intent to Issue | 7/7/2004 | Receipt of Original Ex Parte Reexam Request | 351 | 35.43 |
| 412 | 90/007,111 | 1/3/2007 | Issued | 8/11/2006 | Notice of Intent to Issue | 7/7/2004 | Receipt of Original Ex Parte Reexam Request | 142 | 29.87 |
| 413 | 90/007,112 | 3/7/2007 | Issued | 9/29/2006 | Notice of Intent to Issue | 7/7/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 32.00 |
| 416 | 90/007,115 | 5/10/2006 | Issued | 8/26/2005 | Notice of Intent to Issue | 7/13/2004 | Receipt of Original Ex Parte Reexam Request | 254 | 21.90 |
| 417 | 90/007,116 | 8/23/2006 | Issued | 1/10/2006 | Notice of Intent to Issue | 7/13/2004 | Receipt of Original Ex Parte Reexam Request | 223 | 25.33 |
| 418 | 90/007,117 | 2/14/2007 | Issued | 9/29/2006 | Notice of Intent to Issue | 7/13/2004 | Receipt of Original Ex Parte Reexam Request | 135 | 31.03 |
| 420 | 90/007,119 | 2/21/2007 | Issued | 10/17/2006 | Notice of Intent to Issue | 7/15/2004 | Receipt of Original Ex Parte Reexam Request | 124 | 31.20 |
| 421 | 90/007,120 | 6/13/2007 | Issued | 5/10/2006 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 393 | 34.80 |
| 422 | 90/007,121 | 3/14/2007 | Issued | 9/28/2006 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 166 | 31.83 |
| 423 | 90/007,122 | 5/24/2006 | Issued | 11/1/2005 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 203 | 22.17 |

15

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 424 | 90/007,123 | 4/5/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 192 | 20.53 |
| 425 | 90/007,124 | 7/12/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 289 | 23.77 |
| 426 | 90/007,125 | 7/19/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 296 | 24.00 |
| 427 | 90/007,126 | 4/12/2006 | Issued | 9/27/2005 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 195 | 20.77 |
| 428 | 90/007,127 | 5/24/2006 | Issued | 9/27/2005 | Notice of Intent to Issue | 7/19/2004 | Receipt of Original Ex Parte Reexam Request | 237 | 22.17 |
| 432 | 90/007,131 | 8/23/2006 | Issued | 2/10/2006 | Notice of Intent to Issue | 7/22/2004 | Receipt of Original Ex Parte Reexam Request | 193 | 25.03 |
| 433 | 90/007,132 | 1/10/2007 | Issued | 8/21/2006 | Notice of Intent to Issue | 7/26/2004 | Receipt of Original Ex Parte Reexam Request | 139 | 29.47 |
| 434 | 90/007,133 | 4/11/2007 | Issued | 9/28/2006 | Notice of Intent to Issue | 7/27/2004 | Receipt of Original Ex Parte Reexam Request | 193 | 32.47 |
| 435 | 90/007,134 | 7/13/2005 | Issued | 4/3/2005 | Notice of Intent to Issue | 10/14/2004 | Receipt of Original Ex Parte Reexam Request | 100 | 8.97 |
| 436 | 90/007,135 | 5/23/2007 | Issued | 4/4/2006 | Notice of Intent to Issue | 10/18/2004 | Receipt of Original Ex Parte Reexam Request | 409 | 31.17 |
| 439 | 90/007,138 | 10/25/2006 | Issued | 6/7/2006 | Notice of Intent to Issue | 7/27/2004 | Receipt of Original Ex Parte Reexam Request | 138 | 26.93 |
| 441 | 90/007,140 | 6/20/2007 | Issued | 3/14/2007 | Notice of Intent to Issue | 7/28/2004 | Receipt of Original Ex Parte Reexam Request | 96 | 34.73 |
| 442 | 90/007,141 | 10/12/2005 | Issued | 3/18/2005 | Notice of Intent to Issue | 7/29/2004 | Receipt of Original Ex Parte Reexam Request | 204 | 14.43 |
| 443 | 90/007,142 | 3/7/2007 | Issued | 9/29/2006 | Notice of Intent to Issue | 7/28/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 31.30 |
| 444 | 90/007,143 | 6/7/2006 | Issued | 12/22/2005 | Notice of Intent to Issue | 7/29/2004 | Receipt of Original Ex Parte Reexam Request | 165 | 22.27 |
| 445 | 90/007,144 | 8/23/2006 | Issued | 2/2/2006 | Notice of Intent to Issue | 7/29/2004 | Receipt of Original Ex Parte Reexam Request | 201 | 24.80 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 449 | 90/007,148 | 9/20/2006 | Issued | 5/5/2006 | Notice of Intent to Issue | 7/30/2004 | Receipt of Original Ex Parte Reexam Request | 135 | 25.67 |
|---|---|---|---|---|---|---|---|---|---|
| 451 | 90/007,150 | 4/11/2007 | Issued | 9/30/2005 | Notice of Intent to Issue | 8/2/2004 | Receipt of Original Ex Parte Reexam Request | 551 | 32.30 |
| 452 | 90/007,151 | 12/13/2006 | Issued | 8/21/2006 | Notice of Intent to Issue | 7/30/2004 | Receipt of Original Ex Parte Reexam Request | 112 | 28.43 |
| 454 | 90/007,153 | 8/23/2006 | Issued | 3/13/2006 | Notice of Intent to Issue | 8/3/2004 | Receipt of Original Ex Parte Reexam Request | 160 | 24.67 |
| 457 | 90/007,156 | 11/8/2006 | Issued | 5/15/2006 | Notice of Intent to Issue | 8/6/2004 | Receipt of Original Ex Parte Reexam Request | 173 | 27.07 |
| 460 | 90/007,159 | 2/28/2007 | Issued | 9/25/2006 | Notice of Intent to Issue | 8/9/2004 | Receipt of Original Ex Parte Reexam Request | 153 | 30.63 |
| 462 | 90/007,161 | 11/8/2006 | Issued | 6/14/2006 | Notice of Intent to Issue | 8/5/2004 | Receipt of Original Ex Parte Reexam Request | 144 | 27.10 |
| 463 | 90/007,162 | 12/13/2006 | Issued | 8/16/2006 | Notice of Intent to Issue | 8/5/2004 | Receipt of Original Ex Parte Reexam Request | 117 | 28.27 |
| 468 | 90/007,167 | 5/24/2006 | Issued | 10/27/2005 | Notice of Intent to Issue | 8/11/2004 | Receipt of Original Ex Parte Reexam Request | 207 | 21.43 |
| 474 | 90/007,173 | 8/23/2006 | Issued | 3/30/2006 | Notice of Intent to Issue | 8/13/2004 | Receipt of Original Ex Parte Reexam Request | 143 | 24.33 |
| 477 | 90/007,176 | 10/18/2006 | Issued | 4/6/2006 | Notice of Intent to Issue | 8/18/2004 | Receipt of Original Ex Parte Reexam Request | 192 | 26.00 |
| 478 | 90/007,177 | 3/7/2007 | Issued | 11/17/2006 | Notice of Intent to Issue | 8/18/2004 | Receipt of Original Ex Parte Reexam Request | 110 | 30.63 |
| 480 | 90/007,179 | 4/26/2006 | Issued | 8/25/2005 | Notice of Intent to Issue | 8/23/2004 | Receipt of Original Ex Parte Reexam Request | 241 | 20.10 |
| 481 | 90/007,180 | 3/15/2006 | Issued | 8/24/2005 | Notice of Intent to Issue | 8/23/2004 | Receipt of Original Ex Parte Reexam Request | 201 | 18.73 |
| 482 | 90/007,181 | 11/8/2006 | Issued | 8/3/2006 | Notice of Intent to Issue | 8/23/2004 | Receipt of Original Ex Parte Reexam Request | 95 | 26.50 |
| 483 | 90/007,182 | 8/23/2006 | Issued | 5/8/2006 | Notice of Intent to Issue | 8/25/2004 | Receipt of Original Ex Parte Reexam Request | 105 | 23.93 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 484 | 90/007,183 | 3/15/2006 | Issued | 7/27/2005 | Notice of Intent to Issue | 8/24/2004 | Receipt of Original Ex Parte Reexam Request | 228 | 18.70 |
| 486 | 90/007,185 | 7/19/2006 | Issued | 1/18/2006 | Notice of Intent to Issue | 8/23/2004 | Receipt of Original Ex Parte Reexam Request | 181 | 22.87 |
| 487 | 90/007,186 | 5/23/2007 | Issued | 4/4/2006 | Notice of Intent to Issue | 8/26/2004 | Receipt of Original Ex Parte Reexam Request | 409 | 32.90 |
| 489 | 90/007,188 | 2/8/2006 | Issued | 7/14/2005 | Notice of Intent to Issue | 9/1/2004 | Receipt of Original Ex Parte Reexam Request | 204 | 17.23 |
| 491 | 90/007,190 | 5/16/2007 | Issued | 3/2/2006 | Notice of Intent to Issue | 9/2/2004 | Receipt of Original Ex Parte Reexam Request | 434 | 32.47 |
| 492 | 90/007,191 | 7/12/2006 | Issued | 11/1/2005 | Notice of Intent to Issue | 9/3/2004 | Receipt of Original Ex Parte Reexam Request | 251 | 22.30 |
| 495 | 90/007,194 | 4/19/2006 | Issued | 8/25/2005 | Notice of Intent to Issue | 9/8/2004 | Receipt of Original Ex Parte Reexam Request | 234 | 19.37 |
| 498 | 90/007,197 | 5/23/2007 | Issued | 3/5/2007 | Notice of Intent to Issue | 9/10/2004 | Receipt of Original Ex Parte Reexam Request | 78 | 32.43 |
| 499 | 90/007,198 | 8/9/2006 | Issued | 12/22/2005 | Notice of Intent to Issue | 9/10/2004 | Receipt of Original Ex Parte Reexam Request | 227 | 22.97 |
| 501 | 90/007,200 | 7/26/2006 | Issued | 2/14/2006 | Notice of Intent to Issue | 9/13/2004 | Receipt of Original Ex Parte Reexam Request | 162 | 22.43 |
| 502 | 90/007,201 | 1/10/2007 | Issued | 7/14/2006 | Notice of Intent to Issue | 9/13/2004 | Receipt of Original Ex Parte Reexam Request | 176 | 27.90 |
| 504 | 90/007,203 | 2/21/2007 | Issued | 9/29/2006 | Notice of Intent to Issue | 9/15/2004 | Receipt of Original Ex Parte Reexam Request | 142 | 29.20 |
| 505 | 90/007,204 | 3/21/2007 | Issued | 12/18/2006 | Notice of Intent to Issue | 9/15/2004 | Receipt of Original Ex Parte Reexam Request | 93 | 30.20 |
| 507 | 90/007,206 | 12/20/2006 | Issued | 11/28/2005 | Notice of Intent to Issue | 9/16/2004 | Receipt of Original Ex Parte Reexam Request | 382 | 27.13 |
| 509 | 90/007,208 | 12/13/2006 | Issued | 8/23/2006 | Notice of Intent to Issue | 9/17/2004 | Receipt of Original Ex Parte Reexam Request | 110 | 26.87 |
| 510 | 90/007,209 | 9/6/2006 | Issued | 4/5/2006 | Notice of Intent to Issue | 9/17/2004 | Receipt of Original Ex Parte Reexam Request | 151 | 23.63 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 512 | 90/007,211 | 11/22/2006 | Issued | 8/16/2006 | Notice of Intent to Issue | 9/20/2004 | Receipt of Original Ex Parte Reexam Request | 96 | 26.07 |
|---|---|---|---|---|---|---|---|---|---|
| 515 | 90/007,214 | 3/28/2007 | Issued | 5/2/2006 | Notice of Intent to Issue | 9/23/2004 | Receipt of Original Ex Parte Reexam Request | 326 | 30.17 |
| 519 | 90/007,218 | 3/7/2007 | Issued | 9/29/2006 | Notice of Intent to Issue | 9/24/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 29.43 |
| 521 | 90/007,220 | 3/8/2006 | Issued | 7/29/2005 | Notice of Intent to Issue | 9/24/2004 | Receipt of Original Ex Parte Reexam Request | 219 | 17.47 |
| 522 | 90/007,221 | 4/11/2007 | Issued | 12/7/2005 | Notice of Intent to Issue | 9/24/2004 | Receipt of Original Ex Parte Reexam Request | 484 | 30.57 |
| 523 | 90/007,222 | 2/14/2007 | Issued | 8/3/2006 | Notice of Intent to Issue | 9/24/2004 | Receipt of Original Ex Parte Reexam Request | 191 | 28.67 |
| 524 | 90/007,223 | 8/30/2006 | Issued | 1/26/2006 | Notice of Intent to Issue | 9/28/2004 | Receipt of Original Ex Parte Reexam Request | 214 | 23.07 |
| 525 | 90/007,224 | 7/26/2006 | Issued | 2/10/2006 | Notice of Intent to Issue | 9/29/2004 | Receipt of Original Ex Parte Reexam Request | 166 | 21.90 |
| 527 | 90/007,226 | 9/20/2006 | Issued | 5/23/2006 | Notice of Intent to Issue | 9/27/2004 | Receipt of Original Ex Parte Reexam Request | 117 | 23.77 |
| 531 | 90/007,230 | 9/6/2006 | Issued | 1/9/2006 | Notice of Intent to Issue | 10/4/2004 | Receipt of Original Ex Parte Reexam Request | 237 | 23.07 |
| 533 | 90/007,232 | 9/6/2006 | Issued | 2/14/2006 | Notice of Intent to Issue | 10/4/2004 | Receipt of Original Ex Parte Reexam Request | 202 | 23.07 |
| 536 | 90/007,235 | 9/6/2006 | Issued | 10/18/2005 | Notice of Intent to Issue | 10/6/2004 | Reexamination requested by third party | 318 | 23.00 |
| 538 | 90/007,237 | 9/6/2006 | Issued | 2/8/2006 | Notice of Intent to Issue | 10/7/2004 | Receipt of Original Ex Parte Reexam Request | 208 | 22.97 |
| 539 | 90/007,238 | 2/7/2007 | Issued | 8/24/2006 | Notice of Intent to Issue | 10/6/2004 | Receipt of Original Ex Parte Reexam Request | 163 | 28.03 |
| 540 | 90/007,239 | 6/6/2007 | Issued | 3/19/2007 | Notice of Intent to Issue | 10/6/2004 | Receipt of Original Ex Parte Reexam Request | 77 | 32.00 |
| 542 | 90/007,241 | 10/18/2006 | Issued | 5/11/2006 | Notice of Intent to Issue | 10/7/2004 | Receipt of Original Ex Parte Reexam Request | 157 | 24.37 |

19

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 543 | 90/007,242 | 9/27/2006 | Issued | 3/31/2006 | Notice of Intent to Issue | 10/8/2004 | Reexamination requested by third party | 177 | 23.63 |
|-----|-----------|-----------|--------|-----------|---------------------------|-----------|-----------------------------------------|-----|-------|
| 547 | 90/007,246 | 12/28/2005 | Issued | 6/2/2005 | Notice of Intent to Issue | 10/5/2004 | Receipt of Original Ex Parte Reexam Request | 206 | 14.77 |
| 549 | 90/007,248 | 8/9/2006 | Issued | 10/18/2005 | Notice of Intent to Issue | 10/5/2004 | Receipt of Original Ex Parte Reexam Request | 291 | 22.13 |
| 550 | 90/007,249 | 6/6/2007 | Issued | 3/19/2007 | Notice of Intent to Issue | 11/23/2004 | Notice of Reexam Published | 77 | 30.43 |
| 551 | 90/007,250 | 3/21/2007 | Issued | 2/6/2007 | Notice of Intent to Issue | 11/30/2004 | Notice of Reexam Published | 45 | 27.70 |
| 552 | 90/007,251 | 2/14/2007 | Issued | 8/21/2006 | Notice of Intent to Issue | 10/12/2004 | Receipt of Original Ex Parte Reexam Request | 173 | 28.07 |
| 553 | 90/007,252 | 6/28/2006 | Issued | 11/29/2005 | Notice of Intent to Issue | 11/30/2004 | Notice of Reexam Published | 209 | 18.93 |
| 555 | 90/007,254 | 9/27/2006 | Issued | 5/12/2006 | Notice of Intent to Issue | 10/13/2004 | Reexamination requested by third party | 135 | 23.47 |
| 564 | 90/007,263 | 10/19/2005 | Issued | 5/11/2005 | Notice of Intent to Issue | 10/21/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 11.93 |
| 567 | 90/007,266 | 1/3/2007 | Issued | 3/21/2006 | Notice of Intent to Issue | 10/25/2004 | Receipt of Original Ex Parte Reexam Request | 282 | 26.27 |
| 568 | 90/007,267 | 12/20/2006 | Issued | 3/21/2006 | Notice of Intent to Issue | 10/25/2004 | Reexamination requested by third party | 269 | 25.83 |
| 571 | 90/007,270 | 8/30/2006 | Issued | 3/3/2006 | Notice of Intent to Issue | 10/27/2004 | Receipt of Original Ex Parte Reexam Request | 177 | 22.10 |
| 573 | 90/007,272 | 2/22/2006 | Issued | 5/9/2005 | Notice of Intent to Issue | 10/28/2004 | Receipt of Original Ex Parte Reexam Request | 283 | 15.80 |
| 574 | 90/007,273 | 1/3/2007 | Issued | 12/5/2005 | Notice of Intent to Issue | 10/29/2004 | Receipt of Original Ex Parte Reexam Request | 388 | 26.13 |
| 575 | 90/007,274 | 8/9/2006 | Issued | 10/31/2005 | Notice of Intent to Issue | 10/29/2004 | Receipt of Original Ex Parte Reexam Request | 279 | 21.33 |
| 576 | 90/007,275 | 2/28/2007 | Issued | 9/20/2006 | Notice of Intent to Issue | 10/29/2004 | Receipt of Original Ex Parte Reexam Request | 158 | 27.97 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 579 | 90/007,278 | 12/27/2006 | Issued | 7/31/2006 | Notice of Intent to Issue | 11/2/2004 | Receipt of Original Ex Parte Reexam Request | 147 | 25.83 |
|-----|------------|------------|--------|-----------|---------------------------|-----------|---------------------------------------------|-----|-------|
| 580 | 90/007,279 | 1/24/2007 | Issued | 8/11/2006 | Notice of Intent to Issue | 11/2/2004 | Receipt of Original Ex Parte Reexam Request | 163 | 26.73 |
| 581 | 90/007,280 | 2/7/2007 | Issued | 8/14/2006 | Notice of Intent to Issue | 11/2/2004 | Receipt of Original Ex Parte Reexam Request | 173 | 27.17 |
| 583 | 90/007,282 | 7/12/2006 | Issued | 5/16/2006 | Notice of Intent to Issue | 11/2/2004 | Reexamination requested by third party | 56 | 20.33 |
| 593 | 90/007,292 | 6/28/2006 | Issued | 10/24/2005 | Notice of Intent to Issue | 11/23/2004 | Receipt of Original Ex Parte Reexam Request | 244 | 19.17 |
| 596 | 90/007,295 | 3/14/2007 | Issued | 10/17/2006 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 147 | 27.97 |
| 602 | 90/007,301 | 5/24/2006 | Issued | 9/13/2005 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 251 | 18.30 |
| 603 | 90/007,302 | 8/16/2006 | Issued | 10/11/2005 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 305 | 21.03 |
| 606 | 90/007,305 | 12/21/2005 | Issued | 5/18/2005 | Notice of Intent to Issue | 11/19/2004 | Receipt of Original Ex Parte Reexam Request | 213 | 13.07 |
| 608 | 90/007,307 | 3/22/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 11/17/2004 | Receipt of Original Ex Parte Reexam Request | 179 | 16.17 |
| 609 | 90/007,308 | 10/18/2006 | Issued | 6/29/2006 | Notice of Intent to Issue | 11/18/2004 | Receipt of Original Ex Parte Reexam Request | 109 | 23.00 |
| 611 | 90/007,310 | 1/24/2007 | Issued | 1/8/2007 | Notice of Intent to Issue | 11/18/2004 | Receipt of Original Ex Parte Reexam Request | 16 | 26.20 |
| 615 | 90/007,314 | 1/4/2006 | Issued | 6/24/2005 | Notice of Intent to Issue | 11/22/2004 | Receipt of Original Ex Parte Reexam Request | 190 | 13.40 |
| 617 | 90/007,316 | 2/15/2007 | Issued | 8/8/2005 | Notice of Intent to Issue | 11/23/2004 | Receipt of Original Ex Parte Reexam Request | 187 | 14.73 |
| 618 | 90/007,317 | 7/19/2006 | Issued | 9/23/2005 | Notice of Intent to Issue | 11/23/2004 | Receipt of Original Ex Parte Reexam Request | 296 | 19.87 |
| 620 | 90/007,319 | 7/13/2005 | Issued | 4/5/2005 | Notice of Intent to Issue | 11/26/2004 | Receipt of Original Ex Parte Reexam Request | 98 | 7.57 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 621 | 90/007,320 | 6/21/2006 | Issued | 11/4/2005 | Notice of Intent to Issue | 11/26/2004 | Receipt of Original Ex Parte Reexam Request | 227 | 18.83 |
|-----|-----------|-----------|--------|-----------|---------------------------|------------|---------------------------------------------|-----|-------|
| 622 | 90/007,321 | 1/3/2007 | Issued | 3/21/2006 | Notice of Intent to Issue | 11/23/2004 | Receipt of Original Ex Parte Reexam Request | 282 | 25.33 |
| 623 | 90/007,322 | 4/12/2006 | Issued | 9/26/2005 | Notice of Intent to Issue | 11/30/2004 | Reexamination requested by third party | 196 | 16.40 |
| 624 | 90/007,323 | 8/2/2006 | Issued | 5/15/2006 | Notice of Intent to Issue | 4/19/2005 | Reexamination requested by third party | 77 | 15.43 |
| 627 | 90/007,326 | 3/22/2006 | Issued | 9/27/2005 | Notice of Intent to Issue | 11/30/2004 | Receipt of Original Ex Parte Reexam Request | 175 | 15.73 |
| 629 | 90/007,328 | 2/8/2006 | Issued | 6/15/2005 | Notice of Intent to Issue | 12/2/2004 | Receipt of Original Ex Parte Reexam Request | 233 | 14.20 |
| 631 | 90/007,330 | 9/27/2006 | Issued | 6/23/2006 | Notice of Intent to Issue | 12/3/2004 | Reexamination requested by third party | 94 | 21.80 |
| 633 | 90/007,332 | 3/14/2007 | Issued | 10/19/2006 | Notice of Intent to Issue | 12/6/2004 | Receipt of Original Ex Parte Reexam Request | 145 | 27.27 |
| 637 | 90/007,336 | 8/30/2006 | Issued | 5/2/2006 | Notice of Intent to Issue | 12/8/2004 | Reexamination requested by third party | 118 | 20.73 |
| 638 | 90/007,337 | 4/4/2007 | Issued | 11/9/2006 | Notice of Intent to Issue | 12/9/2004 | Reexamination requested by third party | 145 | 27.83 |
| 639 | 90/007,338 | 5/2/2007 | Issued | 11/21/2006 | Notice of Intent to Issue | 12/8/2004 | Receipt of Original Ex Parte Reexam Request | 161 | 28.80 |
| 640 | 90/007,339 | 6/13/2007 | Issued | 2/10/2006 | Notice of Intent to Issue | 12/9/2004 | Receipt of Original Ex Parte Reexam Request | 483 | 30.13 |
| 641 | 90/007,340 | 8/23/2006 | Issued | 2/7/2006 | Notice of Intent to Issue | 12/8/2004 | Receipt of Original Ex Parte Reexam Request | 196 | 20.50 |
| 642 | 90/007,341 | 6/13/2007 | Issued | 10/17/2006 | Notice of Intent to Issue | 12/9/2004 | Receipt of Original Ex Parte Reexam Request | 236 | 30.13 |
| 643 | 90/007,342 | 6/13/2007 | Issued | 10/17/2006 | Notice of Intent to Issue | 12/9/2004 | Receipt of Original Ex Parte Reexam Request | 236 | 30.13 |
| 644 | 90/007,343 | 6/13/2007 | Issued | 1/26/2007 | Notice of Intent to Issue | 12/8/2004 | Receipt of Original Ex Parte Reexam Request | 137 | 30.17 |

1000 EX PARTE REEXAMINATIONS – 2003-2005

| 646 | 90/007,345 | 1/3/2007 | Issued | 8/15/2006 | Notice of Intent to Issue | 2/1/2005 | Notice of Reexam Published | 138 | 23.07 |
|---|---|---|---|---|---|---|---|---|---|
| 649 | 90/007,348 | 11/8/2006 | Issued | 5/3/2006 | Notice of Intent to Issue | 12/21/2004 | Reexamination requested by third party | 185 | 22.57 |
| 652 | 90/007,351 | 9/13/2006 | Issued | 4/27/2006 | Notice of Intent to Issue | 12/21/2004 | Reexamination requested by third party | 136 | 20.73 |
| 653 | 90/007,352 | 6/27/2007 | Issued | 11/24/2006 | Notice of Intent to Issue | 12/22/2004 | Receipt of Original Ex Parte Reexam Request | 213 | 30.17 |
| 662 | 90/007,361 | 4/25/2007 | Issued | 10/18/2006 | Notice of Intent to Issue | 1/3/2005 | Reexamination requested by third party | 187 | 27.73 |
| 663 | 90/007,362 | 11/1/2006 | Issued | 6/20/2006 | Notice of Intent to Issue | 12/22/2004 | Receipt of Original Ex Parte Reexam Request | 131 | 22.30 |
| 665 | 90/007,364 | 9/20/2006 | Issued | 5/18/2006 | Notice of Intent to Issue | 1/3/2005 | Receipt of Original Ex Parte Reexam Request | 122 | 20.57 |
| 667 | 90/007,366 | 10/4/2006 | Issued | 6/8/2006 | Notice of Intent to Issue | 1/4/2005 | Receipt of Original Ex Parte Reexam Request | 116 | 21.00 |
| 669 | 90/007,368 | 7/19/2006 | Issued | 11/28/2005 | Notice of Intent to Issue | 12/3/2004 | Receipt of Original Ex Parte Reexam Request | 231 | 19.53 |
| 672 | 90/007,371 | 11/8/2006 | Issued | 1/3/2006 | Notice of Intent to Issue | 1/8/2005 | Receipt of Original Ex Parte Reexam Request | 305 | 22.00 |
| 673 | 90/007,372 | 9/20/2006 | Issued | 1/3/2006 | Notice of Intent to Issue | 1/8/2005 | Receipt of Original Ex Parte Reexam Request | 257 | 20.40 |
| 677 | 90/007,376 | 6/14/2006 | Issued | 12/2/2005 | Notice of Intent to Issue | 3/1/2005 | Notice of Reexam Published | 192 | 15.43 |
| 678 | 90/007,377 | 9/6/2006 | Issued | 3/8/2006 | Notice of Intent to Issue | 1/19/2005 | Reexamination requested by third party | 178 | 19.57 |
| 680 | 90/007,379 | 1/25/2006 | Issued | 7/21/2005 | Notice of Intent to Issue | 1/11/2005 | Receipt of Original Ex Parte Reexam Request | 184 | 12.47 |
| 681 | 90/007,380 | 9/27/2006 | Issued | 4/20/2006 | Notice of Intent to Issue | 1/14/2005 | Reexamination requested by third party | 157 | 20.43 |
| 685 | 90/007,384 | 7/12/2006 | Issued | 5/16/2006 | Notice of Intent to Issue | 1/21/2005 | Receipt of Original Ex Parte Reexam Request | 56 | 17.70 |

23

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 686 | 90/007,385 | 7/12/2006 | Issued | 5/17/2006 | Notice of Intent to Issue | 1/21/2005 | Receipt of Original Ex Parte Reexam Request | 55 | 17.70 |
|---|---|---|---|---|---|---|---|---|---|
| 687 | 90/007,386 | 12/27/2006 | Issued | 7/31/2006 | Notice of Intent to Issue | 1/21/2005 | Receipt of Original Ex Parte Reexam Request | 147 | 23.20 |
| 688 | 90/007,387 | 2/7/2007 | Issued | 8/14/2006 | Notice of Intent to Issue | 1/21/2005 | Receipt of Original Ex Parte Reexam Request | 173 | 24.53 |
| 699 | 90/007,398 | 8/23/2006 | Issued | 3/17/2006 | Notice of Intent to Issue | 1/28/2005 | Reexamination requested by third party | 156 | 18.83 |
| 700 | 90/007,399 | 12/20/2006 | Issued | 9/12/2006 | Notice of Intent to Issue | 1/27/2005 | Receipt of Original Ex Parte Reexam Request | 98 | 22.77 |
| 702 | 90/007,401 | 12/20/2006 | Issued | 9/12/2006 | Notice of Intent to Issue | 1/28/2005 | Reexamination requested by third party | 98 | 22.73 |
| 705 | 90/007,404 | 5/23/2007 | Issued | 11/14/2006 | Notice of Intent to Issue | 1/31/2005 | Receipt of Original Ex Parte Reexam Request | 189 | 27.77 |
| 707 | 90/007,406 | 10/18/2006 | Issued | 8/5/2006 | Notice of Intent to Issue | 1/31/2005 | Receipt of Original Ex Parte Reexam Request | 73 | 20.60 |
| 710 | 90/007,409 | 11/15/2006 | Issued | 6/9/2006 | Notice of Intent to Issue | 2/3/2005 | Receipt of Original Ex Parte Reexam Request | 156 | 21.40 |
| 715 | 90/007,414 | 5/23/2007 | Issued | 11/6/2006 | Notice of Intent to Issue | 2/9/2005 | Receipt of Original Ex Parte Reexam Request | 197 | 27.47 |
| 716 | 90/007,415 | 9/27/2006 | Issued | 7/17/2006 | Notice of Intent to Issue | 2/10/2005 | Receipt of Original Ex Parte Reexam Request | 70 | 19.57 |
| 717 | 90/007,416 | 7/5/2007 | Issued | 12/7/2006 | Notice of Intent to Issue | 2/9/2005 | Receipt of Original Ex Parte Reexam Request | 208 | 28.87 |
| 725 | 90/007,424 | 11/29/2006 | Issued | 1/6/2006 | Notice of Intent to Issue | 2/16/2005 | Reexamination requested by third party | 323 | 21.43 |
| 728 | 90/007,427 | 9/27/2006 | Issued | 6/30/2006 | Notice of Intent to Issue | 2/17/2005 | Receipt of Original Ex Parte Reexam Request | 87 | 19.33 |
| 731 | 90/007,430 | 6/21/2006 | Issued | 10/11/2005 | Notice of Intent to Issue | 2/22/2005 | Receipt of Original Ex Parte Reexam Request | 250 | 15.97 |
| 734 | 90/007,433 | 7/19/2006 | Issued | 3/2/2006 | Notice of Intent to Issue | 2/23/2005 | Receipt of Original Ex Parte Reexam Request | 137 | 16.87 |

24

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 745 | 90/007,444 | 8/30/2006 | Issued | 3/17/2006 | Notice of Intent to Issue | 3/3/2005 | Receipt of Original Ex Parte Reexam Request | 163 | 17.90 |
| 746 | 90/007,445 | 6/7/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 3/4/2005 | Receipt of Original Ex Parte Reexam Request | 275 | 15.10 |
| 747 | 90/007,446 | 8/23/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 3/4/2005 | Receipt of Original Ex Parte Reexam Request | 351 | 17.63 |
| 748 | 90/007,447 | 5/24/2006 | Issued | 9/2/2005 | Notice of Intent to Issue | 3/4/2005 | Receipt of Original Ex Parte Reexam Request | 262 | 14.67 |
| 749 | 90/007,448 | 9/6/2006 | Issued | 2/27/2006 | Notice of Intent to Issue | 3/4/2005 | Receipt of Original Ex Parte Reexam Request | 189 | 18.07 |
| 758 | 90/007,457 | 7/19/2006 | Issued | 11/22/2005 | Notice of Intent to Issue | 3/9/2005 | Receipt of Original Ex Parte Reexam Request | 237 | 16.33 |
| 766 | 90/007,465 | 9/27/2006 | Issued | 6/23/2006 | Notice of Intent to Issue | 3/14/2005 | Receipt of Original Ex Parte Reexam Request | 94 | 18.43 |
| 767 | 90/007,466 | 10/4/2006 | Issued | 6/27/2006 | Notice of Intent to Issue | 3/16/2005 | Receipt of Original Ex Parte Reexam Request | 97 | 18.60 |
| 768 | 90/007,467 | 5/23/2007 | Issued | 11/9/2006 | Notice of Intent to Issue | 3/16/2005 | Reexamination requested by third party | 194 | 26.23 |
| 770 | 90/007,469 | 9/27/2006 | Issued | 6/16/2006 | Notice of Intent to Issue | 3/18/2005 | Reexamination requested by third party | 101 | 18.30 |
| 774 | 90/007,473 | 1/31/2007 | Issued | 8/7/2006 | Notice of Intent to Issue | 3/21/2005 | Receipt of Original Ex Parte Reexam Request | 174 | 22.33 |
| 777 | 90/007,476 | 4/11/2007 | Issued | 10/18/2006 | Notice of Intent to Issue | 3/25/2005 | Receipt of Original Ex Parte Reexam Request | 173 | 24.53 |
| 786 | 90/007,485 | 8/9/2006 | Issued | 1/24/2006 | Notice of Intent to Issue | 3/28/2005 | Receipt of Original Ex Parte Reexam Request | 195 | 16.37 |
| 790 | 90/007,489 | 9/6/2006 | Issued | 1/12/2006 | Notice of Intent to Issue | 3/31/2005 | Receipt of Original Ex Parte Reexam Request | 234 | 17.20 |
| 791 | 90/007,490 | 9/6/2006 | Issued | 1/12/2006 | Notice of Intent to Issue | 3/31/2005 | Receipt of Original Ex Parte Reexam Request | 234 | 17.20 |
| 798 | 90/007,497 | 7/19/2006 | Issued | 2/14/2006 | Notice of Intent to Issue | 4/6/2005 | Receipt of Original Ex Parte Reexam Request | 155 | 15.43 |

25

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 806 | 90/007,505 | 5/23/2007 | Issued | 11/14/2006 | Notice of Intent to Issue | 4/8/2005 | Reexamination requested by third party | 189 | 25.50 |
|---|---|---|---|---|---|---|---|---|---|
| 809 | 90/007,508 | 2/14/2007 | Issued | 8/25/2006 | Notice of Intent to Issue | 4/13/2005 | Receipt of Original Ex Parte Reexam Request | 169 | 22.03 |
| 816 | 90/007,515 | 7/5/2007 | Issued | 12/8/2006 | Notice of Intent to Issue | 4/22/2005 | Receipt of Original Ex Parte Reexam Request | 207 | 26.43 |
| 818 | 90/007,517 | 8/30/2006 | Issued | 3/30/2006 | Notice of Intent to Issue | 4/22/2005 | Receipt of Original Ex Parte Reexam Request | 150 | 16.27 |
| 822 | 90/007,521 | 2/21/2007 | Issued | 11/16/2006 | Notice of Intent to Issue | 4/25/2005 | Receipt of Original Ex Parte Reexam Request | 95 | 21.87 |
| 823 | 90/007,522 | 6/20/2007 | Issued | 11/16/2006 | Notice of Intent to Issue | 4/25/2005 | Receipt of Original Ex Parte Reexam Request | 214 | 25.83 |
| 824 | 90/007,523 | 3/28/2007 | Issued | 10/25/2006 | Notice of Intent to Issue | 4/26/2005 | Receipt of Original Ex Parte Reexam Request | 153 | 23.07 |
| 826 | 90/007,525 | 10/4/2006 | Issued | 7/20/2006 | Notice of Intent to Issue | 4/27/2005 | Receipt of Original Ex Parte Reexam Request | 74 | 17.23 |
| 827 | 90/007,526 | 11/15/2006 | Issued | 6/8/2006 | Notice of Intent to Issue | 4/27/2005 | Receipt of Original Ex Parte Reexam Request | 157 | 18.60 |
| 835 | 90/007,534 | 2/28/2007 | Issued | 7/27/2006 | Notice of Intent to Issue | 5/6/2005 | Reexamination requested by third party | 211 | 21.73 |
| 839 | 90/007,538 | 11/15/2006 | Issued | 6/9/2006 | Notice of Intent to Issue | 5/11/2005 | Receipt of Original Ex Parte Reexam Request | 156 | 18.13 |
| 841 | 90/007,540 | 11/1/2006 | Issued | 6/9/2006 | Notice of Intent to Issue | 5/11/2005 | Reexamination requested by third party | 142 | 17.67 |
| 846 | 90/007,545 | 6/20/2007 | Issued | 11/22/2006 | Notice of Intent to Issue | 5/18/2005 | Receipt of Original Ex Parte Reexam Request | 208 | 25.07 |
| 849 | 90/007,548 | 7/5/2007 | Issued | 12/15/2006 | Notice of Intent to Issue | 5/19/2005 | Receipt of Original Ex Parte Reexam Request | 200 | 25.53 |
| 855 | 90/007,554 | 8/30/2006 | Issued | 2/27/2006 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 183 | 15.33 |
| 856 | 90/007,555 | 3/28/2007 | Issued | 7/10/2006 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 258 | 22.27 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 858 | 90/007,557 | 1/31/2007 | Issued | 8/23/2006 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 158 | 20.37 |
| 861 | 90/007,560 | 6/27/2007 | Issued | 12/28/2006 | Notice of Intent to Issue | 5/27/2005 | Receipt of Original Ex Parte Reexam Request | 179 | 25.00 |
| 866 | 90/007,565 | 4/4/2007 | Issued | 9/13/2006 | Notice of Intent to Issue | 6/2/2005 | Receipt of Original Ex Parte Reexam Request | 201 | 22.07 |
| 868 | 90/007,567 | 2/14/2007 | Issued | 8/23/2006 | Notice of Intent to Issue | 6/2/2005 | Receipt of Original Ex Parte Reexam Request | 171 | 20.40 |
| 869 | 90/007,568 | 5/23/2007 | Issued | 9/14/2006 | Notice of Intent to Issue | 6/2/2005 | Receipt of Original Ex Parte Reexam Request | 249 | 23.70 |
| 871 | 90/007,570 | 8/16/2006 | Issued | 3/20/2006 | Notice of Intent to Issue | 6/3/2005 | Receipt of Original Ex Parte Reexam Request | 146 | 14.43 |
| 880 | 90/007,579 | 6/27/2007 | Issued | 12/28/2006 | Notice of Intent to Issue | 6/9/2005 | Receipt of Original Ex Parte Reexam Request | 179 | 24.60 |
| 896 | 90/007,595 | 2/21/2007 | Issued | 9/14/2006 | Notice of Intent to Issue | 6/17/2005 | Receipt of Original Ex Parte Reexam Request | 157 | 20.13 |
| 897 | 90/007,596 | 8/30/2006 | Issued | 5/16/2006 | Notice of Intent to Issue | 6/20/2005 | Receipt of Original Ex Parte Reexam Request | 104 | 14.33 |
| 900 | 90/007,599 | 10/25/2006 | Issued | 6/29/2006 | Notice of Intent to Issue | 6/21/2005 | Receipt of Original Ex Parte Reexam Request | 116 | 16.13 |
| 901 | 90/007,600 | 10/25/2006 | Issued | 6/29/2006 | Notice of Intent to Issue | 6/21/2005 | Receipt of Original Ex Parte Reexam Request | 116 | 16.13 |
| 902 | 90/007,601 | 5/16/2007 | Issued | 1/8/2007 | Notice of Intent to Issue | 6/22/2005 | Receipt of Original Ex Parte Reexam Request | 128 | 22.80 |
| 903 | 90/007,602 | 3/21/2007 | Issued | 8/21/2006 | Notice of Intent to Issue | 6/23/2005 | Receipt of Original Ex Parte Reexam Request | 210 | 20.93 |
| 906 | 90/007,605 | 1/3/2007 | Issued | 4/4/2006 | Notice of Intent to Issue | 6/27/2005 | Receipt of Original Ex Parte Reexam Request | 269 | 18.20 |
| 909 | 90/007,608 | 4/11/2007 | Issued | 8/10/2006 | Notice of Intent to Issue | 6/29/2005 | Receipt of Original Ex Parte Reexam Request | 241 | 21.40 |
| 910 | 90/007,609 | 7/26/2006 | Issued | 3/13/2006 | Notice of Intent to Issue | 6/30/2005 | Receipt of Original Ex Parte Reexam Request | 133 | 12.87 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 913 | 90/007,612 | 4/11/2007 | Issued | 10/26/2006 | Notice of Intent to Issue | 7/5/2005 | Receipt of Original Ex Parte Reexam Request | 165 | 21.20 |
| 922 | 90/007,621 | 3/7/2007 | Issued | 8/15/2006 | Notice of Intent to Issue | 7/5/2005 | Receipt of Original Ex Parte Reexam Request | 202 | 20.07 |
| 923 | 90/007,622 | 9/20/2006 | Issued | 5/10/2006 | Notice of Intent to Issue | 7/12/2005 | Receipt of Original Ex Parte Reexam Request | 130 | 14.27 |
| 929 | 90/007,628 | 9/13/2006 | Issued | 4/26/2006 | Notice of Intent to Issue | 7/13/2005 | Receipt of Original Ex Parte Reexam Request | 137 | 14.00 |
| 942 | 90/007,641 | 11/15/2006 | Issued | 5/12/2006 | Notice of Intent to Issue | 7/21/2005 | Receipt of Original Ex Parte Reexam Request | 183 | 15.80 |
| 943 | 90/007,642 | 11/1/2006 | Issued | 7/19/2006 | Notice of Intent to Issue | 7/21/2005 | Receipt of Original Ex Parte Reexam Request | 102 | 15.33 |
| 949 | 90/007,648 | 11/8/2006 | Issued | 2/10/2006 | Notice of Intent to Issue | 7/29/2005 | Receipt of Original Ex Parte Reexam Request | 268 | 15.30 |
| 973 | 90/007,672 | 2/14/2007 | Issued | 8/21/2006 | Notice of Intent to Issue | 8/17/2005 | Receipt of Original Ex Parte Reexam Request | 173 | 17.90 |
| 975 | 90/007,674 | 1/31/2007 | Issued | 7/19/2006 | Notice of Intent to Issue | 8/19/2005 | Receipt of Original Ex Parte Reexam Request | 192 | 17.40 |
| 981 | 90/007,680 | 12/6/2006 | Issued | 8/15/2006 | Notice of Intent to Issue | 8/19/2005 | Receipt of Original Ex Parte Reexam Request | 111 | 15.57 |
| 990 | 90/007,689 | 2/14/2007 | Issued | 8/25/2006 | Notice of Intent to Issue | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 169 | 17.73 |
| 991 | 90/007,690 | 5/23/2007 | Issued | 8/24/2006 | Notice of Intent to Issue | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 269 | 21.03 |
| 994 | 90/007,693 | 3/7/2007 | Issued | 9/11/2006 | Notice of Intent to Issue | 8/26/2005 | Receipt of Original Ex Parte Reexam Request | 176 | 18.37 |
| 997 | 90/007,696 | 2/14/2007 | Issued | 8/28/2006 | Notice of Intent to Issue | 8/29/2005 | Receipt of Original Ex Parte Reexam Request | 166 | 17.50 |
| 999 | 90/007,698 | 6/6/2007 | Issued | 11/9/2006 | Notice of Intent to Issue | 8/30/2005 | Receipt of Original Ex Parte Reexam Request | 207 | 21.20 |
| 9 | 90/006,708 | 7/10/2007 | Still Pending | 6/26/2007 | Notice of Intent to Issue | 7/14/2003 | Receipt of Original Ex Parte Reexam Request | | 47.87 |

28

1000 EX PARTE REEXAMINATIONS – 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11 | 90/006,710 | 6/20/2007 | Still Pending | 12/4/2006 | Notice of Intent to Issue | 7/14/2003 | Receipt of Original Ex Parte Reexam Request | 47.20 |
| 27 | 90/006,726 | 3/28/2007 | Still Pending | 9/11/2006 | Notice of Intent to Issue | 7/24/2003 | Receipt of Original Ex Parte Reexam Request | 44.13 |
| 29 | 90/006,728 | 7/10/2007 | Still Pending | 1/22/2007 | Notice of Intent to Issue | 7/29/2003 | Receipt of Original Ex Parte Reexam Request | 47.37 |
| 30 | 90/006,729 | 7/10/2007 | Still Pending | 1/29/2007 | Notice of Intent to Issue | 7/29/2003 | Receipt of Original Ex Parte Reexam Request | 47.37 |
| 38 | 90/006,737 | 3/5/2006 | Still Pending | 8/19/2005 | Notice of Intent to Issue | 8/8/2003 | Receipt of Original Ex Parte Reexam Request | 30.90 |
| 81 | 90/006,780 | 7/10/2007 | Still Pending | 1/5/2007 | Notice of Intent to Issue | 9/22/2003 | Receipt of Original Ex Parte Reexam Request | 45.60 |
| 94 | 90/006,793 | 7/10/2007 | Still Pending | 1/17/2007 | Notice of Intent to Issue | 10/15/2003 | Receipt of Original Ex Parte Reexam Request | 44.83 |
| 99 | 90/006,798 | 3/6/2006 | Still Pending | 8/20/2005 | Notice of Intent to Issue | 10/3/2003 | Receipt of Original Ex Parte Reexam Request | 29.10 |
| 102 | 90/006,801 | 7/10/2007 | Still Pending | 2/28/2007 | Notice of Intent to Issue | 10/6/2003 | Receipt of Original Ex Parte Reexam Request | 45.13 |
| 107 | 90/006,806 | 7/10/2007 | Still Pending | 1/17/2007 | Notice of Intent to Issue | 10/9/2003 | Receipt of Original Ex Parte Reexam Request | 45.03 |
| 118 | 90/006,817 | 7/10/2007 | Still Pending | 12/26/2006 | Notice of Intent to Issue | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 44.67 |
| 126 | 90/006,825 | 9/10/2006 | Still Pending | 2/24/2006 | Notice of Intent to Issue | 10/24/2003 | Receipt of Original Ex Parte Reexam Request | 34.53 |
| 135 | 90/006,834 | 7/10/2007 | Still Pending | 1/9/2007 | Notice of Intent to Issue | 10/28/2003 | Receipt of Original Ex Parte Reexam Request | 44.40 |
| 138 | 90/006,837 | 7/10/2007 | Still Pending | 4/17/2007 | Notice of Intent to Issue | 10/30/2003 | Receipt of Original Ex Parte Reexam Request | 44.33 |
| 144 | 90/006,843 | 7/10/2007 | Still Pending | 12/28/2006 | Notice of Intent to Issue | 11/5/2003 | Receipt of Original Ex Parte Reexam Request | 44.17 |
| 148 | 90/006,847 | 7/10/2007 | Still Pending | 2/28/2007 | Notice of Intent to Issue | 11/6/2003 | Receipt of Original Ex Parte Reexam Request | 44.13 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 154 | 90/006,853 | 7/10/2007 | Still Pending | 5/16/2007 | Notice of Intent to Issue | 11/10/2003 | Receipt of Original Ex Parte Reexam Request | 44.00 |
| 168 | 90/006,867 | 4/13/2007 | Still Pending | 9/27/2006 | Notice of Intent to Issue | 11/17/2003 | Receipt of Original Ex Parte Reexam Request | 40.87 |
| 171 | 90/006,870 | 7/10/2007 | Still Pending | 6/4/2007 | Notice of Intent to Issue | 11/21/2003 | Receipt of Original Ex Parte Reexam Request | 43.63 |
| 176 | 90/006,875 | 7/10/2007 | Still Pending | 2/12/2007 | Notice of Intent to Issue | 11/25/2003 | Receipt of Original Ex Parte Reexam Request | 43.50 |
| 177 | 90/006,876 | 3/22/2007 | Still Pending | 9/5/2006 | Notice of Intent to Issue | 11/25/2003 | Receipt of Original Ex Parte Reexam Request | 39.90 |
| 184 | 90/006,883 | 7/10/2007 | Still Pending | 3/2/2007 | Notice of Intent to Issue | 12/9/2003 | Receipt of Original Ex Parte Reexam Request | 43.03 |
| 208 | 90/006,907 | 7/10/2007 | Still Pending | 6/4/2007 | Notice of Intent to Issue | 1/14/2004 | Receipt of Original Ex Parte Reexam Request | 41.87 |
| 209 | 90/006,908 | 4/21/2007 | Still Pending | 10/5/2006 | Notice of Intent to Issue | 1/15/2004 | Receipt of Original Ex Parte Reexam Request | 39.20 |
| 214 | 90/006,913 | 4/18/2007 | Still Pending | 10/2/2006 | Notice of Intent to Issue | 1/16/2004 | Receipt of Original Ex Parte Reexam Request | 39.07 |
| 218 | 90/006,917 | 7/10/2007 | Still Pending | 5/10/2007 | Notice of Intent to Issue | 1/21/2004 | Receipt of Original Ex Parte Reexam Request | 41.63 |
| 224 | 90/006,923 | 7/10/2007 | Still Pending | 2/21/2007 | Notice of Intent to Issue | 1/27/2004 | Receipt of Original Ex Parte Reexam Request | 41.43 |
| 225 | 90/006,924 | 7/10/2007 | Still Pending | 1/8/2007 | Notice of Intent to Issue | 1/27/2004 | Receipt of Original Ex Parte Reexam Request | 41.43 |
| 228 | 90/006,927 | 7/10/2007 | Still Pending | 7/5/2007 | Notice of Intent to Issue | 1/30/2004 | Receipt of Original Ex Parte Reexam Request | 41.33 |
| 242 | 90/006,941 | 4/16/2007 | Still Pending | 9/30/2006 | Notice of Intent to Issue | 2/17/2004 | Receipt of Original Ex Parte Reexam Request | 37.97 |
| 243 | 90/006,942 | 7/10/2007 | Still Pending | 5/16/2007 | Notice of Intent to Issue | 2/18/2004 | Receipt of Original Ex Parte Reexam Request | 40.73 |
| 244 | 90/006,943 | 7/10/2007 | Still Pending | 5/22/2007 | Notice of Intent to Issue | 2/18/2004 | Receipt of Original Ex Parte Reexam Request | 40.73 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 245 | 90/006,944 | 7/10/2007 | Still Pending | 3/13/2007 | Notice of Intent to Issue | 2/19/2004 | Receipt of Original Ex Parte Reexam Request | 40.70 |
| 248 | 90/006,947 | 4/1/2007 | Still Pending | 9/15/2006 | Notice of Intent to Issue | 2/24/2004 | Receipt of Original Ex Parte Reexam Request | 37.23 |
| 249 | 90/006,948 | 7/10/2007 | Still Pending | 1/29/2007 | Notice of Intent to Issue | 2/23/2004 | Receipt of Original Ex Parte Reexam Request | 40.57 |
| 250 | 90/006,949 | 7/10/2007 | Still Pending | 1/29/2007 | Notice of Intent to Issue | 2/23/2004 | Receipt of Original Ex Parte Reexam Request | 40.57 |
| 255 | 90/006,954 | 5/18/2007 | Still Pending | 11/1/2006 | Notice of Intent to Issue | 3/1/2004 | Receipt of Original Ex Parte Reexam Request | 38.57 |
| 261 | 90/006,960 | 4/8/2007 | Still Pending | 9/22/2006 | Notice of Intent to Issue | 3/10/2004 | Receipt of Original Ex Parte Reexam Request | 36.93 |
| 266 | 90/006,965 | 7/10/2007 | Still Pending | 3/13/2007 | Notice of Intent to Issue | 3/12/2004 | Receipt of Original Ex Parte Reexam Request | 39.93 |
| 267 | 90/006,966 | 7/10/2007 | Still Pending | 6/20/2007 | Notice of Intent to Issue | 3/12/2004 | Receipt of Original Ex Parte Reexam Request | 39.93 |
| 269 | 90/006,968 | 6/17/2007 | Still Pending | 12/1/2006 | Notice of Intent to Issue | 3/15/2004 | Receipt of Original Ex Parte Reexam Request | 39.07 |
| 275 | 90/006,974 | 4/15/2007 | Still Pending | 9/29/2006 | Notice of Intent to Issue | 3/19/2004 | Receipt of Original Ex Parte Reexam Request | 36.87 |
| 281 | 90/006,980 | 10/26/2006 | Still Pending | 4/11/2006 | Notice of Intent to Issue | 3/25/2004 | Receipt of Original Ex Parte Reexam Request | 31.03 |
| 283 | 90/006,982 | 7/10/2007 | Still Pending | 1/30/2007 | Notice of Intent to Issue | 3/25/2004 | Receipt of Original Ex Parte Reexam Request | 39.50 |
| 288 | 90/006,987 | 7/10/2007 | Still Pending | 6/7/2007 | Notice of Intent to Issue | 3/29/2004 | Receipt of Original Ex Parte Reexam Request | 39.37 |
| 290 | 90/006,989 | 6/29/2007 | Still Pending | 12/13/2006 | Notice of Intent to Issue | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 38.90 |
| 297 | 90/006,996 | 5/18/2007 | Still Pending | 11/1/2006 | Notice of Intent to Issue | 4/5/2004 | Receipt of Original Ex Parte Reexam Request | 37.43 |
| 305 | 90/007,004 | 7/10/2007 | Still Pending | 1/8/2007 | Notice of Intent to Issue | 4/9/2004 | Receipt of Original Ex Parte Reexam Request | 39.03 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 306 | 90/007,005 | 7/10/2007 | Still Pending | 3/29/2007 | Notice of Intent to Issue | 4/12/2004 | Receipt of Original Ex Parte Reexam Request | 38.93 |
| 307 | 90/007,006 | 7/10/2007 | Still Pending | 3/6/2007 | Notice of Intent to Issue | 4/13/2004 | Receipt of Original Ex Parte Reexam Request | 38.90 |
| 313 | 90/007,012 | 4/9/2006 | Still Pending | 9/23/2005 | Notice of Intent to Issue | 4/23/2004 | Receipt of Original Ex Parte Reexam Request | 23.53 |
| 327 | 90/007,026 | 4/6/2007 | Still Pending | 9/20/2006 | Notice of Intent to Issue | 5/4/2004 | Receipt of Original Ex Parte Reexam Request | 35.07 |
| 335 | 90/007,034 | 6/30/2007 | Still Pending | 12/14/2006 | Notice of Intent to Issue | 5/7/2004 | Receipt of Original Ex Parte Reexam Request | 37.77 |
| 337 | 90/007,036 | 6/21/2007 | Still Pending | 12/5/2006 | Notice of Intent to Issue | 5/10/2004 | Receipt of Original Ex Parte Reexam Request | 37.37 |
| 338 | 90/007,037 | 7/10/2007 | Still Pending | 1/26/2007 | Notice of Intent to Issue | 5/10/2004 | Receipt of Original Ex Parte Reexam Request | 38.00 |
| 343 | 90/007,042 | 7/10/2007 | Still Pending | 4/27/2007 | Notice of Intent to Issue | 5/19/2004 | Receipt of Original Ex Parte Reexam Request | 37.70 |
| 351 | 90/007,050 | 12/29/2006 | Still Pending | 6/14/2006 | Notice of Intent to Issue | 6/19/2003 | Receipt of Original Ex Parte Reexam Request | 42.33 |
| 352 | 90/007,051 | 7/10/2007 | Still Pending | 3/19/2007 | Notice of Intent to Issue | 5/21/2004 | Receipt of Original Ex Parte Reexam Request | 37.63 |
| 377 | 90/007,076 | 6/29/2007 | Still Pending | 12/13/2006 | Notice of Intent to Issue | 6/14/2004 | Receipt of Original Ex Parte Reexam Request | 36.50 |
| 384 | 90/007,083 | 7/10/2007 | Still Pending | 1/31/2007 | Notice of Intent to Issue | 6/16/2004 | Receipt of Original Ex Parte Reexam Request | 36.80 |
| 387 | 90/007,086 | 5/30/2007 | Still Pending | 11/13/2006 | Notice of Intent to Issue | 6/17/2004 | Receipt of Original Ex Parte Reexam Request | 35.43 |
| 389 | 90/007,088 | 6/24/2007 | Still Pending | 12/8/2006 | Notice of Intent to Issue | 6/17/2004 | Receipt of Original Ex Parte Reexam Request | 36.23 |
| 392 | 90/007,091 | 7/1/2007 | Still Pending | 12/15/2006 | Notice of Intent to Issue | 6/18/2004 | Receipt of Original Ex Parte Reexam Request | 36.43 |
| 395 | 90/007,094 | 7/10/2007 | Still Pending | 5/14/2007 | Notice of Intent to Issue | 6/19/2004 | Receipt of Original Ex Parte Reexam Request | 36.70 |

32

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 404 | 90/007,103 | 6/21/2007 | Still Pending | 12/5/2006 | Notice of Intent to Issue | 6/28/2004 | Receipt of Original Ex Parte Reexam Request | 35.77 |
| 414 | 90/007,113 | 6/30/2007 | Still Pending | 12/14/2006 | Notice of Intent to Issue | 7/13/2004 | Receipt of Original Ex Parte Reexam Request | 35.57 |
| 430 | 90/007,129 | 4/15/2007 | Still Pending | 9/29/2006 | Notice of Intent to Issue | 7/21/2004 | Receipt of Original Ex Parte Reexam Request | 32.80 |
| 437 | 90/007,136 | 7/10/2007 | Still Pending | 1/30/2007 | Notice of Intent to Issue | 10/19/2004 | Receipt of Original Ex Parte Reexam Request | 32.70 |
| 438 | 90/007,137 | 7/10/2007 | Still Pending | 1/3/2007 | Notice of Intent to Issue | 7/28/2004 | Receipt of Original Ex Parte Reexam Request | 35.40 |
| 440 | 90/007,139 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 7/28/2004 | Receipt of Original Ex Parte Reexam Request | 35.40 |
| 447 | 90/007,146 | 4/7/2007 | Still Pending | 9/21/2006 | Notice of Intent to Issue | 7/30/2004 | Receipt of Original Ex Parte Reexam Request | 32.23 |
| 448 | 90/007,147 | 3/28/2007 | Still Pending | 9/11/2006 | Notice of Intent to Issue | 7/30/2004 | Receipt of Original Ex Parte Reexam Request | 31.93 |
| 456 | 90/007,155 | 7/10/2007 | Still Pending | 3/20/2007 | Notice of Intent to Issue | 8/4/2004 | Receipt of Original Ex Parte Reexam Request | 35.20 |
| 458 | 90/007,157 | 7/10/2007 | Still Pending | 4/2/2007 | Notice of Intent to Issue | 8/6/2004 | Receipt of Original Ex Parte Reexam Request | 35.13 |
| 459 | 90/007,158 | 6/10/2007 | Still Pending | 11/24/2006 | Notice of Intent to Issue | 8/5/2004 | Receipt of Original Ex Parte Reexam Request | 34.17 |
| 466 | 90/007,165 | 7/10/2007 | Still Pending | 1/9/2007 | Notice of Intent to Issue | 8/10/2004 | Receipt of Original Ex Parte Reexam Request | 35.00 |
| 467 | 90/007,166 | 3/22/2007 | Still Pending | 9/5/2006 | Notice of Intent to Issue | 8/10/2004 | Receipt of Original Ex Parte Reexam Request | 31.40 |
| 469 | 90/007,168 | 7/10/2007 | Still Pending | 2/28/2007 | Notice of Intent to Issue | 8/10/2004 | Receipt of Original Ex Parte Reexam Request | 35.00 |
| 476 | 90/007,175 | 7/5/2007 | Still Pending | 12/19/2006 | Notice of Intent to Issue | 8/16/2004 | Receipt of Original Ex Parte Reexam Request | 34.63 |
| 497 | 90/007,196 | 7/10/2007 | Still Pending | 3/1/2007 | Notice of Intent to Issue | 9/9/2004 | Receipt of Original Ex Parte Reexam Request | 34.03 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 503 | 90/007,202 | 7/10/2007 | Still Pending | 1/11/2007 | Notice of Intent to Issue | 9/14/2004 | Receipt of Original Ex Parte Reexam Request | 33.87 |
| 513 | 90/007,212 | 7/10/2007 | Still Pending | 2/22/2007 | Notice of Intent to Issue | 9/20/2004 | Receipt of Original Ex Parte Reexam Request | 33.67 |
| 517 | 90/007,216 | 5/30/2007 | Still Pending | 11/13/2006 | Notice of Intent to Issue | 9/21/2004 | Receipt of Original Ex Parte Reexam Request | 32.30 |
| 520 | 90/007,219 | 6/15/2007 | Still Pending | 11/29/2006 | Notice of Intent to Issue | 9/22/2004 | Receipt of Original Ex Parte Reexam Request | 32.77 |
| 526 | 90/007,225 | 8/4/2006 | Still Pending | 1/18/2006 | Notice of Intent to Issue | 9/24/2004 | Receipt of Original Ex Parte Reexam Request | 22.33 |
| 528 | 90/007,227 | 7/10/2007 | Still Pending | 12/26/2006 | Notice of Intent to Issue | 9/27/2004 | Receipt of Original Ex Parte Reexam Request | 33.43 |
| 529 | 90/007,228 | 7/10/2007 | Still Pending | 1/10/2007 | Notice of Intent to Issue | 10/1/2004 | Receipt of Original Ex Parte Reexam Request | 33.30 |
| 530 | 90/007,229 | 7/10/2007 | Still Pending | 1/10/2007 | Notice of Intent to Issue | 10/1/2004 | Receipt of Original Ex Parte Reexam Request | 33.30 |
| 532 | 90/007,231 | 7/4/2007 | Still Pending | 12/18/2006 | Notice of Intent to Issue | 10/4/2004 | Receipt of Original Ex Parte Reexam Request | 33.00 |
| 541 | 90/007,240 | 7/10/2007 | Still Pending | 5/1/2007 | Notice of Intent to Issue | 10/6/2004 | Receipt of Original Ex Parte Reexam Request | 33.13 |
| 545 | 90/007,244 | 7/10/2007 | Still Pending | 6/28/2007 | Notice of Intent to Issue | 10/4/2004 | Receipt of Original Ex Parte Reexam Request | 33.20 |
| 554 | 90/007,253 | 7/10/2007 | Still Pending | 5/24/2007 | Notice of Intent to Issue | 10/12/2004 | Reexamination requested by third party | 32.93 |
| 557 | 90/007,256 | 7/10/2007 | Still Pending | 6/7/2007 | Notice of Intent to Issue | 10/13/2004 | Receipt of Original Ex Parte Reexam Request | 32.90 |
| 558 | 90/007,257 | 7/10/2007 | Still Pending | 6/6/2007 | Notice of Intent to Issue | 10/14/2004 | Receipt of Original Ex Parte Reexam Request | 32.87 |
| 562 | 90/007,261 | 9/21/2006 | Still Pending | 3/7/2006 | Notice of Intent to Issue | 10/21/2004 | Receipt of Original Ex Parte Reexam Request | 23.00 |
| 563 | 90/007,262 | 7/10/2007 | Still Pending | 4/26/2007 | Notice of Intent to Issue | 10/21/2004 | Receipt of Original Ex Parte Reexam Request | 32.63 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 569 | 90/007,268 | 7/10/2007 | Still Pending | 5/3/2007 | Notice of Intent to Issue | 10/26/2004 | Reexamination requested by third party | 32.47 |
|-----|------------|-----------|---------------|----------|---------------------------|------------|----------------------------------------|-------|
| 570 | 90/007,269 | 7/10/2007 | Still Pending | 4/12/2007 | Notice of Intent to Issue | 12/14/2004 | Notice of Reexam Published | 30.87 |
| 578 | 90/007,277 | 7/10/2007 | Still Pending | 1/3/2007 | Notice of Intent to Issue | 11/1/2004 | Receipt of Original Ex Parte Reexam Request | 32.30 |
| 586 | 90/007,285 | 7/5/2007 | Still Pending | 12/19/2006 | Notice of Intent to Issue | 11/3/2004 | Receipt of Original Ex Parte Reexam Request | 32.07 |
| 587 | 90/007,286 | 7/10/2007 | Still Pending | 1/16/2007 | Notice of Intent to Issue | 11/3/2004 | Receipt of Original Ex Parte Reexam Request | 32.23 |
| 588 | 90/007,287 | 7/10/2007 | Still Pending | 3/26/2007 | Notice of Intent to Issue | 12/21/2004 | Notice of Reexam Published | 30.63 |
| 591 | 90/007,290 | 7/10/2007 | Still Pending | 4/23/2007 | Notice of Intent to Issue | 11/12/2004 | Receipt of Original Ex Parte Reexam Request | 31.93 |
| 592 | 90/007,291 | 7/10/2007 | Still Pending | 4/6/2007 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.83 |
| 594 | 90/007,293 | 6/17/2007 | Still Pending | 12/1/2006 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.07 |
| 597 | 90/007,296 | 6/22/2007 | Still Pending | 12/6/2006 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.23 |
| 598 | 90/007,297 | 7/5/2007 | Still Pending | 12/19/2006 | Notice of Intent to Issue | 11/16/2004 | Receipt of Original Ex Parte Reexam Request | 31.63 |
| 600 | 90/007,299 | 6/20/2007 | Still Pending | 12/4/2006 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.17 |
| 601 | 90/007,300 | 6/20/2007 | Still Pending | 12/4/2006 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.17 |
| 604 | 90/007,303 | 7/10/2007 | Still Pending | 5/21/2007 | Notice of Intent to Issue | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.83 |
| 612 | 90/007,311 | 7/10/2007 | Still Pending | 3/22/2007 | Notice of Intent to Issue | 11/18/2004 | Receipt of Original Ex Parte Reexam Request | 31.73 |
| 626 | 90/007,325 | 7/10/2007 | Still Pending | 12/28/2006 | Notice of Intent to Issue | 11/30/2004 | Receipt of Original Ex Parte Reexam Request | 31.33 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 634 | 90/007,333 | 7/20/2006 | Still Pending | 1/3/2006 | Notice of Intent to Issue | 12/7/2004 | Receipt of Original Ex Parte Reexam Request | 19.43 |
|---|---|---|---|---|---|---|---|---|
| 650 | 90/007,349 | 7/10/2007 | Still Pending | 3/30/2007 | Notice of Intent to Issue | 12/21/2004 | Receipt of Original Ex Parte Reexam Request | 30.63 |
| 651 | 90/007,350 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 12/21/2004 | Receipt of Original Ex Parte Reexam Request | 30.63 |
| 657 | 90/007,356 | 7/10/2007 | Still Pending | 5/25/2007 | Notice of Intent to Issue | 12/22/2004 | Receipt of Original Ex Parte Reexam Request | 30.60 |
| 659 | 90/007,358 | 7/10/2007 | Still Pending | 3/13/2007 | Notice of Intent to Issue | 1/3/2005 | Receipt of Original Ex Parte Reexam Request | 30.23 |
| 671 | 90/007,370 | 7/10/2007 | Still Pending | 12/28/2006 | Notice of Intent to Issue | 1/7/2005 | Receipt of Original Ex Parte Reexam Request | 30.10 |
| 674 | 90/007,373 | 7/10/2007 | Still Pending | 3/12/2007 | Notice of Intent to Issue | 1/11/2005 | Receipt of Original Ex Parte Reexam Request | 29.97 |
| 675 | 90/007,374 | 7/10/2007 | Still Pending | 3/13/2007 | Notice of Intent to Issue | 1/11/2005 | Receipt of Original Ex Parte Reexam Request | 29.97 |
| 676 | 90/007,375 | 7/8/2007 | Still Pending | 12/22/2006 | Notice of Intent to Issue | 3/1/2005 | Notice of Reexam Published | 28.23 |
| 682 | 90/007,381 | 7/10/2007 | Still Pending | 4/25/2007 | Notice of Intent to Issue | 1/14/2005 | Receipt of Original Ex Parte Reexam Request | 29.87 |
| 683 | 90/007,382 | 7/10/2007 | Still Pending | 5/22/2007 | Notice of Intent to Issue | 1/14/2005 | Receipt of Original Ex Parte Reexam Request | 29.87 |
| 684 | 90/007,383 | 4/19/2007 | Still Pending | 10/3/2006 | Notice of Intent to Issue | 1/18/2005 | Receipt of Original Ex Parte Reexam Request | 27.03 |
| 690 | 90/007,389 | 7/10/2007 | Still Pending | 2/9/2007 | Notice of Intent to Issue | 1/21/2005 | Reexamination requested by third party | 29.63 |
| 692 | 90/007,391 | 7/10/2007 | Still Pending | 1/29/2007 | Notice of Intent to Issue | 1/25/2005 | Reexamination requested by third party | 29.50 |
| 695 | 90/007,394 | 7/10/2007 | Still Pending | 4/2/2007 | Notice of Intent to Issue | 1/26/2005 | Receipt of Original Ex Parte Reexam Request | 29.47 |
| 706 | 90/007,405 | 6/17/2007 | Still Pending | 12/1/2006 | Notice of Intent to Issue | 1/31/2005 | Receipt of Original Ex Parte Reexam Request | 28.57 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 729 | 90/007,428 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 2/18/2005 | Receipt of Original Ex Parte Reexam Request | 28.73 |
|-----|-----------|-----------|---------------|-----------|---------------------------|-----------|---------------------------------------------|-------|
| 743 | 90/007,442 | 7/10/2007 | Still Pending | 3/29/2007 | Notice of Intent to Issue | 2/25/2005 | Receipt of Original Ex Parte Reexam Request | 28.50 |
| 744 | 90/007,443 | 7/10/2007 | Still Pending | 2/23/2007 | Notice of Intent to Issue | 2/28/2005 | Receipt of Original Ex Parte Reexam Request | 28.33 |
| 750 | 90/007,449 | 7/10/2007 | Still Pending | 6/28/2007 | Notice of Intent to Issue | 3/4/2005 | Receipt of Original Ex Parte Reexam Request | 28.20 |
| 757 | 90/007,456 | 7/10/2007 | Still Pending | 3/14/2007 | Notice of Intent to Issue | 3/8/2005 | Receipt of Original Ex Parte Reexam Request | 28.07 |
| 759 | 90/007,458 | 7/10/2007 | Still Pending | 1/10/2007 | Notice of Intent to Issue | 3/10/2005 | Receipt of Original Ex Parte Reexam Request | 28.00 |
| 760 | 90/007,459 | 7/10/2007 | Still Pending | 5/24/2007 | Notice of Intent to Issue | 3/11/2005 | Receipt of Original Ex Parte Reexam Request | 27.97 |
| 761 | 90/007,460 | 7/10/2007 | Still Pending | 6/4/2007 | Notice of Intent to Issue | 3/11/2005 | Receipt of Original Ex Parte Reexam Request | 27.97 |
| 764 | 90/007,463 | 7/10/2007 | Still Pending | 12/29/2006 | Notice of Intent to Issue | 3/14/2005 | Receipt of Original Ex Parte Reexam Request | 27.87 |
| 773 | 90/007,472 | 6/22/2007 | Still Pending | 12/6/2006 | Notice of Intent to Issue | 3/21/2005 | Receipt of Original Ex Parte Reexam Request | 27.03 |
| 776 | 90/007,475 | 10/18/2006 | Still Pending | 4/3/2006 | Notice of Intent to Issue | 3/23/2005 | Reexamination requested by third party | 18.83 |
| 780 | 90/007,479 | 7/10/2007 | Still Pending | 1/29/2007 | Notice of Intent to Issue | 5/17/2005 | Notice of Reexam Published | 25.77 |
| 785 | 90/007,484 | 6/20/2007 | Still Pending | 12/4/2006 | Notice of Intent to Issue | 3/28/2005 | Receipt of Original Ex Parte Reexam Request | 26.73 |
| 787 | 90/007,486 | 7/10/2007 | Still Pending | 3/12/2007 | Notice of Intent to Issue | 2/23/2005 | Receipt of Original Ex Parte Reexam Request | 28.57 |
| 788 | 90/007,487 | 7/10/2007 | Still Pending | 4/19/2007 | Notice of Intent to Issue | 3/29/2005 | Reexamination requested by third party | 27.37 |
| 795 | 90/007,494 | 4/27/2007 | Still Pending | 10/11/2006 | Notice of Intent to Issue | 4/4/2005 | Receipt of Original Ex Parte Reexam Request | 24.77 |

37

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 797 | 90/007,496 | 3/31/2007 | Still Pending | 9/14/2006 | Notice of Intent to Issue | 4/5/2005 | Receipt of Original Ex Parte Reexam Request | 23.87 |
|-----|-----------|-----------|---------------|-----------|---------------------------|----------|---------------------------------------------|-------|
| 799 | 90/007,498 | 7/10/2007 | Still Pending | 4/3/2007 | Notice of Intent to Issue | 4/6/2005 | Receipt of Original Ex Parte Reexam Request | 27.13 |
| 807 | 90/007,506 | 6/17/2007 | Still Pending | 12/1/2006 | Notice of Intent to Issue | 4/8/2005 | Reexamination requested by third party | 26.30 |
| 808 | 90/007,507 | 7/10/2007 | Still Pending | 6/14/2007 | Notice of Intent to Issue | 4/8/2005 | Reexamination requested by third party | 27.07 |
| 814 | 90/007,513 | 5/16/2007 | Still Pending | 10/30/2006 | Notice of Intent to Issue | 4/22/2005 | Reexamination requested by third party | 24.80 |
| 828 | 90/007,527 | 7/10/2007 | Still Pending | 4/17/2007 | Notice of Intent to Issue | 4/28/2005 | Receipt of Original Ex Parte Reexam Request | 26.40 |
| 829 | 90/007,528 | 7/10/2007 | Still Pending | 5/22/2007 | Notice of Intent to Issue | 4/29/2005 | Receipt of Original Ex Parte Reexam Request | 26.37 |
| 830 | 90/007,529 | 7/10/2007 | Still Pending | 5/22/2007 | Notice of Intent to Issue | 4/29/2005 | Receipt of Original Ex Parte Reexam Request | 26.37 |
| 831 | 90/007,530 | 7/10/2007 | Still Pending | 5/22/2007 | Notice of Intent to Issue | 4/29/2005 | Receipt of Original Ex Parte Reexam Request | 26.37 |
| 834 | 90/007,533 | 11/22/2006 | Still Pending | 5/8/2006 | Notice of Intent to Issue | 5/5/2005 | Receipt of Original Ex Parte Reexam Request | 18.57 |
| 836 | 90/007,535 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 5/12/2005 | Reexamination requested by third party | 25.93 |
| 844 | 90/007,543 | 7/6/2007 | Still Pending | 12/20/2006 | Notice of Intent to Issue | 5/16/2005 | Reexamination requested by third party | 25.67 |
| 848 | 90/007,547 | 7/10/2007 | Still Pending | 3/23/2007 | Notice of Intent to Issue | 5/18/2005 | Receipt of Original Ex Parte Reexam Request | 25.73 |
| 851 | 90/007,550 | 7/10/2007 | Still Pending | 5/22/2007 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 25.67 |
| 853 | 90/007,552 | 7/10/2007 | Still Pending | 4/12/2007 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 25.67 |
| 854 | 90/007,553 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 25.67 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 857 | 90/007,556 | 2/17/2007 | Still Pending | 8/3/2006 | Notice of Intent to Issue | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 20.90 |
|---|---|---|---|---|---|---|---|---|
| 859 | 90/007,558 | 7/10/2007 | Still Pending | 1/26/2007 | Notice of Intent to Issue | 5/25/2005 | Receipt of Original Ex Parte Reexam Request | 25.50 |
| 872 | 90/007,571 | 7/10/2007 | Still Pending | 2/20/2007 | Notice of Intent to Issue | 6/2/2005 | Receipt of Original Ex Parte Reexam Request | 25.27 |
| 875 | 90/007,574 | 7/10/2007 | Still Pending | 5/17/2007 | Notice of Intent to Issue | 6/3/2005 | Receipt of Original Ex Parte Reexam Request | 25.23 |
| 885 | 90/007,584 | 7/10/2007 | Still Pending | 6/27/2007 | Notice of Intent to Issue | 6/13/2005 | Reexamination requested by third party | 24.90 |
| 886 | 90/007,585 | 7/10/2007 | Still Pending | 3/30/2007 | Notice of Intent to Issue | 6/13/2005 | Reexamination requested by third party | 24.90 |
| 887 | 90/007,586 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 6/13/2005 | Reexamination requested by third party | 24.90 |
| 907 | 90/007,606 | 7/10/2007 | Still Pending | 6/12/2007 | Notice of Intent to Issue | 6/28/2005 | Receipt of Original Ex Parte Reexam Request | 24.40 |
| 911 | 90/007,610 | 7/10/2007 | Still Pending | 6/8/2007 | Notice of Intent to Issue | 6/30/2005 | Receipt of Original Ex Parte Reexam Request | 24.33 |
| 914 | 90/007,613 | 7/10/2007 | Still Pending | 5/18/2007 | Notice of Intent to Issue | 7/5/2005 | Receipt of Original Ex Parte Reexam Request | 24.17 |
| 917 | 90/007,616 | 7/10/2007 | Still Pending | 3/5/2007 | Notice of Intent to Issue | 7/6/2005 | Receipt of Original Ex Parte Reexam Request | 24.13 |
| 931 | 90/007,630 | 7/10/2007 | Still Pending | 12/26/2006 | Notice of Intent to Issue | 7/14/2005 | Receipt of Original Ex Parte Reexam Request | 23.87 |
| 932 | 90/007,631 | 7/10/2007 | Still Pending | 4/16/2007 | Notice of Intent to Issue | 7/15/2005 | Receipt of Original Ex Parte Reexam Request | 23.83 |
| 938 | 90/007,637 | 7/10/2007 | Still Pending | 12/28/2006 | Notice of Intent to Issue | 7/20/2005 | Receipt of Original Ex Parte Reexam Request | 23.67 |
| 945 | 90/007,644 | 7/10/2007 | Still Pending | 3/2/2007 | Notice of Intent to Issue | 7/25/2005 | Receipt of Original Ex Parte Reexam Request | 23.50 |
| 954 | 90/007,653 | 5/17/2007 | Still Pending | 10/31/2006 | Notice of Intent to Issue | 7/29/2005 | Receipt of Original Ex Parte Reexam Request | 21.60 |

39

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 957 | 90/007,656 | 7/10/2007 | Still Pending | 1/16/2007 | Notice of Intent to Issue | 8/5/2005 | Receipt of Original Ex Parte Reexam Request | 23.17 |
| 960 | 90/007,659 | 7/10/2007 | Still Pending | 1/16/2007 | Notice of Intent to Issue | 8/5/2005 | Receipt of Original Ex Parte Reexam Request | 23.17 |
| 964 | 90/007,663 | 7/10/2007 | Still Pending | 6/7/2007 | Notice of Intent to Issue | 8/9/2005 | Receipt of Original Ex Parte Reexam Request | 23.03 |
| 968 | 90/007,667 | 7/10/2007 | Still Pending | 4/18/2007 | Notice of Intent to Issue | 8/12/2005 | Receipt of Original Ex Parte Reexam Request | 22.93 |
| 972 | 90/007,671 | 7/10/2007 | Still Pending | 3/29/2007 | Notice of Intent to Issue | 8/17/2005 | Receipt of Original Ex Parte Reexam Request | 22.77 |
| 974 | 90/007,673 | 7/10/2007 | Still Pending | 5/23/2007 | Notice of Intent to Issue | 8/17/2005 | Receipt of Original Ex Parte Reexam Request | 22.77 |
| 976 | 90/007,675 | 7/10/2007 | Still Pending | 2/12/2007 | Notice of Intent to Issue | 8/15/2005 | Receipt of Original Ex Parte Reexam Request | 22.83 |
| 978 | 90/007,677 | 7/10/2007 | Still Pending | 3/5/2007 | Notice of Intent to Issue | 8/19/2005 | Receipt of Original Ex Parte Reexam Request | 22.70 |
| 980 | 90/007,679 | 7/10/2007 | Still Pending | 3/15/2007 | Notice of Intent to Issue | 8/19/2005 | Receipt of Original Ex Parte Reexam Request | 22.70 |
| 983 | 90/007,682 | 7/10/2007 | Still Pending | 3/12/2007 | Notice of Intent to Issue | 8/19/2005 | Receipt of Original Ex Parte Reexam Request | 22.70 |
| 986 | 90/007,685 | 7/10/2007 | Still Pending | 1/8/2007 | Notice of Intent to Issue | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 987 | 90/007,686 | 7/10/2007 | Still Pending | 3/12/2007 | Notice of Intent to Issue | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 996 | 90/007,695 | 7/10/2007 | Still Pending | 5/17/2007 | Notice of Intent to Issue | 9/1/2005 | Receipt of Original Ex Parte Reexam Request | 22.30 |
| 4 | 90/006,703 | 7/10/2007 | Still Pending | | | 7/7/2003 | Receipt of Original Ex Parte Reexam Request | 48.10 |
| 7 | 90/006,706 | 7/10/2007 | Still Pending | | | 7/11/2003 | Receipt of Original Ex Parte Reexam Request | 47.97 |
| 8 | 90/006,707 | 7/10/2007 | Still Pending | | | 7/11/2003 | Receipt of Original Ex Parte Reexam Request | 47.97 |

40

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 14 | 90/006,713 | 7/10/2007 | Still Pending | | | 7/11/2003 | Receipt of Original Ex Parte Reexam Request | 47.97 |
|---|---|---|---|---|---|---|---|---|
| 25 | 90/006,724 | 7/10/2007 | Still Pending | | | 7/24/2003 | Receipt of Original Ex Parte Reexam Request | 47.53 |
| 26 | 90/006,725 | 7/10/2007 | Still Pending | | | 7/24/2003 | Receipt of Original Ex Parte Reexam Request | 47.53 |
| 28 | 90/006,727 | 7/10/2007 | Still Pending | | | 7/28/2003 | Receipt of Original Ex Parte Reexam Request | 47.40 |
| 52 | 90/006,751 | 7/10/2007 | Still Pending | | | 8/19/2003 | Receipt of Original Ex Parte Reexam Request | 46.70 |
| 56 | 90/006,755 | 7/10/2007 | Still Pending | | | 8/20/2003 | Receipt of Original Ex Parte Reexam Request | 46.67 |
| 57 | 90/006,756 | 7/10/2007 | Still Pending | | | 8/20/2003 | Receipt of Original Ex Parte Reexam Request | 46.67 |
| 58 | 90/006,757 | 7/10/2007 | Still Pending | | | 9/24/2003 | Commissioner Initiated Order | 45.53 |
| 74 | 90/006,773 | 7/10/2007 | Still Pending | | | 9/10/2003 | Receipt of Original Ex Parte Reexam Request | 46.00 |
| 76 | 90/006,775 | 7/10/2007 | Still Pending | | | 9/12/2003 | Receipt of Original Ex Parte Reexam Request | 45.93 |
| 83 | 90/006,782 | 7/10/2007 | Still Pending | | | 9/24/2003 | Receipt of Original Ex Parte Reexam Request | 45.53 |
| 85 | 90/006,784 | 7/10/2007 | Still Pending | | | 9/24/2003 | Receipt of Original Ex Parte Reexam Request | 45.53 |
| 86 | 90/006,785 | 7/10/2007 | Still Pending | | | 9/26/2003 | Receipt of Original Ex Parte Reexam Request | 45.47 |
| 87 | 90/006,786 | 7/10/2007 | Still Pending | | | 9/29/2003 | Receipt of Original Ex Parte Reexam Request | 45.37 |
| 88 | 90/006,787 | 7/10/2007 | Still Pending | | | 10/14/2003 | Receipt of Original Ex Parte Reexam Request | 44.87 |
| 90 | 90/006,789 | 7/10/2007 | Still Pending | | | 10/14/2003 | Receipt of Original Ex Parte Reexam Request | 44.87 |

41

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 95 | 90/006,794 | 7/10/2007 | Still Pending | | | 10/15/2003 | Receipt of Original Ex Parte Reexam Request | 44.83 |
|---|---|---|---|---|---|---|---|---|
| 101 | 90/006,800 | 7/10/2007 | Still Pending | | | 10/3/2003 | Receipt of Original Ex Parte Reexam Request | 45.23 |
| 103 | 90/006,802 | 7/10/2007 | Still Pending | | | 10/8/2003 | Receipt of Original Ex Parte Reexam Request | 45.07 |
| 104 | 90/006,803 | 7/10/2007 | Still Pending | | | 10/8/2003 | Receipt of Original Ex Parte Reexam Request | 45.07 |
| 111 | 90/006,810 | 7/10/2007 | Still Pending | | | 10/16/2003 | Receipt of Original Ex Parte Reexam Request | 44.80 |
| 119 | 90/006,818 | 7/10/2007 | Still Pending | | | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 44.67 |
| 123 | 90/006,822 | 7/10/2007 | Still Pending | | | 10/16/2003 | Receipt of Original Ex Parte Reexam Request | 44.80 |
| 125 | 90/006,824 | 7/10/2007 | Still Pending | | | 10/20/2003 | Receipt of Original Ex Parte Reexam Request | 44.67 |
| 133 | 90/006,832 | 7/10/2007 | Still Pending | | | 10/27/2003 | Receipt of Original Ex Parte Reexam Request | 44.43 |
| 139 | 90/006,838 | 7/10/2007 | Still Pending | | | 10/31/2003 | Receipt of Original Ex Parte Reexam Request | 44.33 |
| 140 | 90/006,839 | 7/10/2007 | Still Pending | | | 10/31/2003 | Receipt of Original Ex Parte Reexam Request | 44.33 |
| 142 | 90/006,841 | 7/10/2007 | Still Pending | | | 10/31/2003 | Receipt of Original Ex Parte Reexam Request | 44.33 |
| 145 | 90/006,844 | 7/10/2007 | Still Pending | | | 11/3/2003 | Receipt of Original Ex Parte Reexam Request | 44.23 |
| 161 | 90/006,860 | 7/10/2007 | Still Pending | | | 11/13/2003 | Receipt of Original Ex Parte Reexam Request | 43.90 |
| 162 | 90/006,861 | 7/10/2007 | Still Pending | | | 11/14/2003 | Receipt of Original Ex Parte Reexam Request | 43.87 |
| 166 | 90/006,865 | 7/10/2007 | Still Pending | | | 11/14/2003 | Receipt of Original Ex Parte Reexam Request | 43.87 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 169 | 90/006,868 | 7/10/2007 | Still Pending | | | 11/17/2003 | Receipt of Original Ex Parte Reexam Request | 43.77 |
|-----|-----------|-----------|---------------|---|---|------------|------------------------------------------|-------|
| 182 | 90/006,881 | 7/10/2007 | Still Pending | | | 12/5/2003 | Receipt of Original Ex Parte Reexam Request | 43.17 |
| 183 | 90/006,882 | 7/10/2007 | Still Pending | | | 12/8/2003 | Receipt of Original Ex Parte Reexam Request | 43.07 |
| 187 | 90/006,886 | 7/10/2007 | Still Pending | | | 12/15/2003 | Receipt of Original Ex Parte Reexam Request | 42.83 |
| 189 | 90/006,888 | 7/10/2007 | Still Pending | | | 12/15/2003 | Receipt of Original Ex Parte Reexam Request | 42.83 |
| 190 | 90/006,889 | 7/10/2007 | Still Pending | | | 12/17/2003 | Receipt of Original Ex Parte Reexam Request | 42.77 |
| 194 | 90/006,893 | 7/10/2007 | Still Pending | | | 12/22/2003 | Receipt of Original Ex Parte Reexam Request | 42.60 |
| 195 | 90/006,894 | 7/10/2007 | Still Pending | | | 12/23/2003 | Receipt of Original Ex Parte Reexam Request | 42.57 |
| 197 | 90/006,896 | 7/10/2007 | Still Pending | | | 12/24/2003 | Receipt of Original Ex Parte Reexam Request | 42.53 |
| 199 | 90/006,898 | 7/10/2007 | Still Pending | | | 12/30/2003 | Receipt of Original Ex Parte Reexam Request | 42.33 |
| 200 | 90/006,899 | 7/10/2007 | Still Pending | | | 12/31/2003 | Receipt of Original Ex Parte Reexam Request | 42.33 |
| 206 | 90/006,905 | 7/10/2007 | Still Pending | | | 1/14/2004 | Receipt of Original Ex Parte Reexam Request | 41.87 |
| 212 | 90/006,911 | 7/10/2007 | Still Pending | | | 1/15/2004 | Receipt of Original Ex Parte Reexam Request | 41.83 |
| 223 | 90/006,922 | 7/10/2007 | Still Pending | | | 1/27/2004 | Receipt of Original Ex Parte Reexam Request | 41.43 |
| 233 | 90/006,932 | 7/10/2007 | Still Pending | | | 2/10/2004 | Receipt of Original Ex Parte Reexam Request | 41.00 |
| 238 | 90/006,937 | 7/10/2007 | Still Pending | | | 2/17/2004 | Receipt of Original Ex Parte Reexam Request | 40.77 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 241 | 90/006,940 | 7/10/2007 | Still Pending | | | 2/17/2004 | Receipt of Original Ex Parte Reexam Request | 40.77 |
|---|---|---|---|---|---|---|---|---|
| 247 | 90/006,946 | 7/10/2007 | Still Pending | | | 2/23/2004 | Receipt of Original Ex Parte Reexam Request | 40.57 |
| 252 | 90/006,951 | 7/10/2007 | Still Pending | | | 2/24/2004 | Receipt of Original Ex Parte Reexam Request | 40.53 |
| 254 | 90/006,953 | 7/10/2007 | Still Pending | | | 2/27/2004 | Receipt of Original Ex Parte Reexam Request | 40.43 |
| 256 | 90/006,955 | 7/10/2007 | Still Pending | | | 3/1/2004 | Receipt of Original Ex Parte Reexam Request | 40.30 |
| 257 | 90/006,956 | 7/10/2007 | Still Pending | | | 3/8/2004 | Receipt of Original Ex Parte Reexam Request | 40.07 |
| 258 | 90/006,957 | 7/10/2007 | Still Pending | | | 3/8/2004 | Receipt of Original Ex Parte Reexam Request | 40.07 |
| 263 | 90/006,962 | 7/10/2007 | Still Pending | | | 3/12/2004 | Receipt of Original Ex Parte Reexam Request | 39.93 |
| 265 | 90/006,964 | 7/10/2007 | Still Pending | | | 3/12/2004 | Receipt of Original Ex Parte Reexam Request | 39.93 |
| 270 | 90/006,969 | 7/10/2007 | Still Pending | | | 3/15/2004 | Receipt of Original Ex Parte Reexam Request | 39.83 |
| 277 | 90/006,976 | 7/10/2007 | Still Pending | | | 3/26/2004 | Commissioner Initiated Order | 39.47 |
| 278 | 90/006,977 | 7/10/2007 | Still Pending | | | 3/26/2004 | Commissioner Initiated Order | 39.47 |
| 279 | 90/006,978 | 7/10/2007 | Still Pending | | | 3/26/2004 | Commissioner Initiated Order | 39.47 |
| 280 | 90/006,979 | 7/10/2007 | Still Pending | | | 3/26/2004 | Commissioner Initiated Order | 39.47 |
| 285 | 90/006,984 | 7/10/2007 | Still Pending | | | 3/29/2004 | Receipt of Original Ex Parte Reexam Request | 39.37 |
| 293 | 90/006,992 | 7/10/2007 | Still Pending | | | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 39.27 |

44

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 295 | 90/006,994 | 7/10/2007 | Still Pending | | | 4/2/2004 | Receipt of Original Ex Parte Reexam Request | 39.27 |
|---|---|---|---|---|---|---|---|---|
| 298 | 90/006,997 | 7/10/2007 | Still Pending | | | 4/5/2004 | Receipt of Original Ex Parte Reexam Request | 39.17 |
| 301 | 90/007,000 | 7/10/2007 | Still Pending | | | 4/7/2004 | Receipt of Original Ex Parte Reexam Request | 39.10 |
| 302 | 90/007,001 | 7/10/2007 | Still Pending | | | 4/8/2004 | Receipt of Original Ex Parte Reexam Request | 39.07 |
| 310 | 90/007,009 | 7/10/2007 | Still Pending | | | 4/19/2004 | Receipt of Original Ex Parte Reexam Request | 38.70 |
| 316 | 90/007,015 | 7/10/2007 | Still Pending | | | 4/23/2004 | Receipt of Original Ex Parte Reexam Request | 38.57 |
| 321 | 90/007,020 | 7/10/2007 | Still Pending | | | 4/27/2004 | Receipt of Original Ex Parte Reexam Request | 38.43 |
| 323 | 90/007,022 | 7/10/2007 | Still Pending | | | 4/30/2004 | Receipt of Original Ex Parte Reexam Request | 38.33 |
| 325 | 90/007,024 | 7/10/2007 | Still Pending | | | 4/30/2004 | Receipt of Original Ex Parte Reexam Request | 38.33 |
| 326 | 90/007,025 | 7/10/2007 | Still Pending | | | 5/3/2004 | Receipt of Original Ex Parte Reexam Request | 38.23 |
| 328 | 90/007,027 | 7/10/2007 | Still Pending | | | 5/4/2004 | Receipt of Original Ex Parte Reexam Request | 38.20 |
| 331 | 90/007,030 | 7/10/2007 | Still Pending | | | 5/4/2004 | Receipt of Original Ex Parte Reexam Request | 38.20 |
| 340 | 90/007,039 | 7/10/2007 | Still Pending | | | 5/14/2004 | Receipt of Original Ex Parte Reexam Request | 37.87 |
| 342 | 90/007,041 | 7/10/2007 | Still Pending | | | 5/14/2004 | Receipt of Original Ex Parte Reexam Request | 37.87 |
| 353 | 90/007,052 | 7/10/2007 | Still Pending | | | 5/26/2004 | Receipt of Original Ex Parte Reexam Request | 37.47 |
| 359 | 90/007,058 | 7/10/2007 | Still Pending | | | 6/2/2004 | Receipt of Original Ex Parte Reexam Request | 37.27 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 369 | 90/007,068 | 7/10/2007 | Still Pending | | | 6/8/2004 | Receipt of Original Ex Parte Reexam Request | 37.07 |
| 373 | 90/007,072 | 7/10/2007 | Still Pending | | | 6/9/2004 | Receipt of Original Ex Parte Reexam Request | 37.03 |
| 374 | 90/007,073 | 7/10/2007 | Still Pending | | | 6/9/2004 | Receipt of Original Ex Parte Reexam Request | 37.03 |
| 375 | 90/007,074 | 7/10/2007 | Still Pending | | | 6/10/2004 | Receipt of Original Ex Parte Reexam Request | 37.00 |
| 378 | 90/007,077 | 7/10/2007 | Still Pending | | | 6/15/2004 | Receipt of Original Ex Parte Reexam Request | 36.83 |
| 381 | 90/007,080 | 7/10/2007 | Still Pending | | | 6/15/2004 | Receipt of Original Ex Parte Reexam Request | 36.83 |
| 388 | 90/007,087 | 7/10/2007 | Still Pending | | | 6/9/2004 | Receipt of Original Ex Parte Reexam Request | 37.03 |
| 391 | 90/007,090 | 7/10/2007 | Still Pending | | | 6/17/2004 | Receipt of Original Ex Parte Reexam Request | 36.77 |
| 393 | 90/007,092 | 7/10/2007 | Still Pending | | | 6/18/2004 | Receipt of Original Ex Parte Reexam Request | 36.73 |
| 397 | 90/007,096 | 7/10/2007 | Still Pending | | | 6/22/2004 | Receipt of Original Ex Parte Reexam Request | 36.60 |
| 398 | 90/007,097 | 7/10/2007 | Still Pending | | | 6/23/2004 | Receipt of Original Ex Parte Reexam Request | 36.57 |
| 399 | 90/007,098 | 7/10/2007 | Still Pending | | | 6/23/2004 | Receipt of Original Ex Parte Reexam Request | 36.57 |
| 401 | 90/007,100 | 7/10/2007 | Still Pending | | | 6/25/2004 | Receipt of Original Ex Parte Reexam Request | 36.50 |
| 407 | 90/007,106 | 7/10/2007 | Still Pending | | | 7/2/2004 | Receipt of Original Ex Parte Reexam Request | 36.27 |
| 408 | 90/007,107 | 7/10/2007 | Still Pending | | | 7/6/2004 | Receipt of Original Ex Parte Reexam Request | 36.13 |
| 409 | 90/007,108 | 7/10/2007 | Still Pending | | | 7/6/2004 | Receipt of Original Ex Parte Reexam Request | 36.13 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 411 | 90/007,110 | 7/10/2007 | Still Pending | | | 7/7/2004 | Receipt of Original Ex Parte Reexam Request | 36.10 |
|---|---|---|---|---|---|---|---|---|
| 415 | 90/007,114 | 7/10/2007 | Still Pending | | | 7/8/2004 | Receipt of Original Ex Parte Reexam Request | 36.07 |
| 419 | 90/007,118 | 7/10/2007 | Still Pending | | | 7/12/2004 | Receipt of Original Ex Parte Reexam Request | 35.93 |
| 429 | 90/007,128 | 7/10/2007 | Still Pending | | | 7/26/2004 | Receipt of Original Ex Parte Reexam Request | 35.47 |
| 431 | 90/007,130 | 7/10/2007 | Still Pending | | | 7/21/2004 | Receipt of Original Ex Parte Reexam Request | 35.63 |
| 446 | 90/007,145 | 7/10/2007 | Still Pending | | | 7/27/2004 | Receipt of Original Ex Parte Reexam Request | 35.43 |
| 450 | 90/007,149 | 7/10/2007 | Still Pending | | | 7/30/2004 | Receipt of Original Ex Parte Reexam Request | 35.33 |
| 453 | 90/007,152 | 7/10/2007 | Still Pending | | | 7/30/2004 | Receipt of Original Ex Parte Reexam Request | 35.33 |
| 455 | 90/007,154 | 7/10/2007 | Still Pending | | | 8/4/2004 | Receipt of Original Ex Parte Reexam Request | 35.20 |
| 461 | 90/007,160 | 7/10/2007 | Still Pending | | | 8/10/2004 | Receipt of Original Ex Parte Reexam Request | 35.00 |
| 464 | 90/007,163 | 7/10/2007 | Still Pending | | | 8/6/2004 | Receipt of Original Ex Parte Reexam Request | 35.13 |
| 465 | 90/007,164 | 7/10/2007 | Still Pending | | | 8/10/2004 | Receipt of Original Ex Parte Reexam Request | 35.00 |
| 470 | 90/007,169 | 7/10/2007 | Still Pending | | | 8/12/2004 | Receipt of Original Ex Parte Reexam Request | 34.93 |
| 471 | 90/007,170 | 7/10/2007 | Still Pending | | | 8/12/2004 | Receipt of Original Ex Parte Reexam Request | 34.93 |
| 472 | 90/007,171 | 7/10/2007 | Still Pending | | | 8/12/2004 | Receipt of Original Ex Parte Reexam Request | 34.93 |
| 473 | 90/007,172 | 7/10/2007 | Still Pending | | | 8/13/2004 | Receipt of Original Ex Parte Reexam Request | 34.90 |

47

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 479 | 90/007,178 | 7/10/2007 | Still Pending | | | 8/20/2004 | Receipt of Original Ex Parte Reexam Request | 34.67 |
|---|---|---|---|---|---|---|---|---|
| 488 | 90/007,187 | 7/10/2007 | Still Pending | | | 8/31/2004 | Receipt of Original Ex Parte Reexam Request | 34.33 |
| 490 | 90/007,189 | 7/10/2007 | Still Pending | | | 9/1/2004 | Receipt of Original Ex Parte Reexam Request | 34.30 |
| 493 | 90/007,192 | 7/10/2007 | Still Pending | | | 9/2/2004 | Receipt of Original Ex Parte Reexam Request | 34.27 |
| 494 | 90/007,193 | 7/10/2007 | Still Pending | | | 9/7/2004 | Receipt of Original Ex Parte Reexam Request | 34.10 |
| 496 | 90/007,195 | 7/10/2007 | Still Pending | | | 9/3/2004 | Receipt of Original Ex Parte Reexam Request | 34.23 |
| 500 | 90/007,199 | 7/10/2007 | Still Pending | | | 9/10/2004 | Receipt of Original Ex Parte Reexam Request | 34.00 |
| 506 | 90/007,205 | 7/10/2007 | Still Pending | | | 9/16/2004 | Receipt of Original Ex Parte Reexam Request | 33.80 |
| 508 | 90/007,207 | 7/10/2007 | Still Pending | | | 9/16/2004 | Receipt of Original Ex Parte Reexam Request | 33.80 |
| 514 | 90/007,213 | 7/10/2007 | Still Pending | | | 9/16/2004 | Receipt of Original Ex Parte Reexam Request | 33.80 |
| 516 | 90/007,215 | 7/10/2007 | Still Pending | | | 9/22/2004 | Receipt of Original Ex Parte Reexam Request | 33.60 |
| 518 | 90/007,217 | 7/10/2007 | Still Pending | | | 9/22/2004 | Receipt of Original Ex Parte Reexam Request | 33.60 |
| 534 | 90/007,233 | 7/10/2007 | Still Pending | | | 10/4/2004 | Reexamination requested by third party | 33.20 |
| 535 | 90/007,234 | 7/10/2007 | Still Pending | | | 10/6/2004 | Receipt of Original Ex Parte Reexam Request | 33.13 |
| 537 | 90/007,236 | 7/10/2007 | Still Pending | | | 10/6/2004 | Receipt of Original Ex Parte Reexam Request | 33.13 |
| 544 | 90/007,243 | 7/10/2007 | Still Pending | | | 10/8/2004 | Receipt of Original Ex Parte Reexam Request | 33.07 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 546 | 90/007,245 | 7/10/2007 | Still Pending | | | 10/4/2004 | Receipt of Original Ex Parte Reexam Request | 33.20 |
| 548 | 90/007,247 | 7/10/2007 | Still Pending | | | 10/4/2004 | Receipt of Original Ex Parte Reexam Request | 33.20 |
| 556 | 90/007,255 | 7/10/2007 | Still Pending | | | 10/12/2004 | Receipt of Original Ex Parte Reexam Request | 32.93 |
| 559 | 90/007,258 | 7/10/2007 | Still Pending | | | 10/20/2004 | Receipt of Original Ex Parte Reexam Request | 32.67 |
| 560 | 90/007,259 | 7/10/2007 | Still Pending | | | 10/20/2004 | Reexamination requested by third party | 32.67 |
| 561 | 90/007,260 | 7/10/2007 | Still Pending | | | 10/21/2004 | Reexamination requested by third party | 32.63 |
| 565 | 90/007,264 | 7/10/2007 | Still Pending | | | 10/22/2004 | Receipt of Original Ex Parte Reexam Request | 32.60 |
| 566 | 90/007,265 | 7/10/2007 | Still Pending | | | 10/25/2004 | Receipt of Original Ex Parte Reexam Request | 32.50 |
| 572 | 90/007,271 | 7/10/2007 | Still Pending | | | 10/27/2004 | Receipt of Original Ex Parte Reexam Request | 32.43 |
| 577 | 90/007,276 | 7/10/2007 | Still Pending | | | 10/29/2004 | Receipt of Original Ex Parte Reexam Request | 32.37 |
| 585 | 90/007,284 | 7/10/2007 | Still Pending | | | 11/3/2004 | Receipt of Original Ex Parte Reexam Request | 32.23 |
| 589 | 90/007,288 | 7/10/2007 | Still Pending | | | 11/8/2004 | Reexamination requested by third party | 32.07 |
| 590 | 90/007,289 | 7/10/2007 | Still Pending | | | 11/8/2004 | Receipt of Original Ex Parte Reexam Request | 32.07 |
| 595 | 90/007,294 | 7/10/2007 | Still Pending | | | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.83 |
| 599 | 90/007,298 | 7/10/2007 | Still Pending | | | 11/15/2004 | Receipt of Original Ex Parte Reexam Request | 31.83 |
| 605 | 90/007,304 | 7/10/2007 | Still Pending | | | 11/17/2004 | Receipt of Original Ex Parte Reexam Request | 31.77 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 607 | 90/007,306 | 7/10/2007 | Still Pending | | | 11/19/2004 | Receipt of Original Ex Parte Reexam Request | 31.70 |
| 610 | 90/007,309 | 7/10/2007 | Still Pending | | | 11/18/2004 | Receipt of Original Ex Parte Reexam Request | 31.73 |
| 613 | 90/007,312 | 7/10/2007 | Still Pending | | | 11/22/2004 | Reexamination requested by third party | 31.60 |
| 616 | 90/007,315 | 7/10/2007 | Still Pending | | | 11/24/2004 | Receipt of Original Ex Parte Reexam Request | 31.53 |
| 619 | 90/007,318 | 7/10/2007 | Still Pending | | | 11/24/2004 | Receipt of Original Ex Parte Reexam Request | 31.53 |
| 625 | 90/007,324 | 7/10/2007 | Still Pending | | | 12/2/2004 | Reexamination requested by third party | 31.27 |
| 628 | 90/007,327 | 7/10/2007 | Still Pending | | | 12/1/2004 | Receipt of Original Ex Parte Reexam Request | 31.30 |
| 632 | 90/007,331 | 7/10/2007 | Still Pending | | | 11/30/2004 | Reexamination requested by third party | 31.33 |
| 645 | 90/007,344 | 7/10/2007 | Still Pending | | | 12/15/2004 | Receipt of Original Ex Parte Reexam Request | 30.83 |
| 647 | 90/007,346 | 7/10/2007 | Still Pending | | | 2/1/2005 | Notice of Reexam Published | 29.30 |
| 648 | 90/007,347 | 7/10/2007 | Still Pending | | | 12/20/2004 | Receipt of Original Ex Parte Reexam Request | 30.67 |
| 654 | 90/007,353 | 7/10/2007 | Still Pending | | | 2/8/2005 | Notice of Reexam Published | 29.07 |
| 655 | 90/007,354 | 7/10/2007 | Still Pending | | | 12/22/2004 | Receipt of Original Ex Parte Reexam Request | 30.60 |
| 656 | 90/007,355 | 7/10/2007 | Still Pending | | | 12/22/2004 | Receipt of Original Ex Parte Reexam Request | 30.60 |
| 658 | 90/007,357 | 7/10/2007 | Still Pending | | | 12/28/2004 | Receipt of Original Ex Parte Reexam Request | 30.40 |
| 660 | 90/007,359 | 7/10/2007 | Still Pending | | | 1/3/2005 | Receipt of Original Ex Parte Reexam Request | 30.23 |

1000 EX PARTE REEXAMINATIONS – 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 664 | 90/007,363 | 7/10/2007 | Still Pending | | | 1/3/2005 | Receipt of Original Ex Parte Reexam Request | 30.23 |
| 666 | 90/007,365 | 7/10/2007 | Still Pending | | | 1/4/2005 | Receipt of Original Ex Parte Reexam Request | 30.20 |
| 668 | 90/007,367 | 7/10/2007 | Still Pending | | | 1/7/2005 | Receipt of Original Ex Parte Reexam Request | 30.10 |
| 670 | 90/007,369 | 7/10/2007 | Still Pending | | | 1/7/2005 | Receipt of Original Ex Parte Reexam Request | 30.10 |
| 679 | 90/007,378 | 7/10/2007 | Still Pending | | | 1/21/2005 | Reexamination requested by third party | 29.63 |
| 689 | 90/007,388 | 7/10/2007 | Still Pending | | | 1/20/2005 | Reexamination requested by third party | 29.67 |
| 693 | 90/007,392 | 7/10/2007 | Still Pending | | | 1/25/2005 | Receipt of Original Ex Parte Reexam Request | 29.50 |
| 694 | 90/007,393 | 7/10/2007 | Still Pending | | | 1/26/2005 | Receipt of Original Ex Parte Reexam Request | 29.47 |
| 696 | 90/007,395 | 7/10/2007 | Still Pending | | | 1/27/2005 | Receipt of Original Ex Parte Reexam Request | 29.43 |
| 697 | 90/007,396 | 7/10/2007 | Still Pending | | | 1/27/2005 | Receipt of Original Ex Parte Reexam Request | 29.43 |
| 698 | 90/007,397 | 7/10/2007 | Still Pending | | | 1/27/2005 | Receipt of Original Ex Parte Reexam Request | 29.43 |
| 701 | 90/007,400 | 7/10/2007 | Still Pending | | | 1/28/2005 | Reexamination requested by third party | 29.40 |
| 703 | 90/007,402 | 7/10/2007 | Still Pending | | | 1/31/2005 | Reexamination requested by third party | 29.33 |
| 704 | 90/007,403 | 7/10/2007 | Still Pending | | | 1/31/2005 | Reexamination requested by third party | 29.33 |
| 708 | 90/007,407 | 7/10/2007 | Still Pending | | | 1/31/2005 | Receipt of Original Ex Parte Reexam Request | 29.33 |
| 709 | 90/007,408 | 7/10/2007 | Still Pending | | | 2/1/2005 | Receipt of Original Ex Parte Reexam Request | 29.30 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 711 | 90/007,410 | 7/10/2007 | Still Pending | | | 2/4/2005 | Receipt of Original Ex Parte Reexam Request | 29.20 |
| 712 | 90/007,411 | 7/10/2007 | Still Pending | | | 2/4/2005 | Receipt of Original Ex Parte Reexam Request | 29.20 |
| 713 | 90/007,412 | 7/10/2007 | Still Pending | | | 2/4/2005 | Receipt of Original Ex Parte Reexam Request | 29.20 |
| 714 | 90/007,413 | 7/10/2007 | Still Pending | | | 2/7/2005 | Receipt of Original Ex Parte Reexam Request | 29.10 |
| 718 | 90/007,417 | 7/10/2007 | Still Pending | | | 2/11/2005 | Receipt of Original Ex Parte Reexam Request | 28.97 |
| 720 | 90/007,419 | 7/10/2007 | Still Pending | | | 2/11/2005 | Reexamination requested by third party | 28.97 |
| 721 | 90/007,420 | 7/10/2007 | Still Pending | | | 4/5/2005 | Notice of Reexam Published | 27.17 |
| 722 | 90/007,421 | 7/10/2007 | Still Pending | | | 4/12/2005 | Notice of Reexam Published | 26.93 |
| 723 | 90/007,422 | 7/10/2007 | Still Pending | | | 2/15/2005 | Receipt of Original Ex Parte Reexam Request | 28.83 |
| 724 | 90/007,423 | 7/10/2007 | Still Pending | | | 2/15/2005 | Reexamination requested by third party | 28.83 |
| 726 | 90/007,425 | 7/10/2007 | Still Pending | | | 2/17/2005 | Receipt of Original Ex Parte Reexam Request | 28.77 |
| 727 | 90/007,426 | 7/10/2007 | Still Pending | | | 2/17/2005 | Receipt of Original Ex Parte Reexam Request | 28.77 |
| 730 | 90/007,429 | 7/10/2007 | Still Pending | | | 2/18/2005 | Receipt of Original Ex Parte Reexam Request | 28.73 |
| 733 | 90/007,432 | 7/10/2007 | Still Pending | | | 2/24/2005 | Reexamination requested by third party | 28.53 |
| 735 | 90/007,434 | 7/10/2007 | Still Pending | | | 2/25/2005 | Receipt of Original Ex Parte Reexam Request | 28.50 |
| 737 | 90/007,436 | 7/10/2007 | Still Pending | | | 3/1/2005 | Receipt of Original Ex Parte Reexam Request | 28.30 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 738 | 90/007,437 | 7/10/2007 | Still Pending | | | 2/24/2005 | Reexamination requested by third party | 28.53 |
|---|---|---|---|---|---|---|---|---|
| 739 | 90/007,438 | 7/10/2007 | Still Pending | | | 2/25/2005 | Reexamination requested by third party | 28.50 |
| 740 | 90/007,439 | 7/10/2007 | Still Pending | | | 3/1/2005 | Receipt of Original Ex Parte Reexam Request | 28.30 |
| 741 | 90/007,440 | 7/10/2007 | Still Pending | | | 3/1/2005 | Receipt of Original Ex Parte Reexam Request | 28.30 |
| 742 | 90/007,441 | 7/10/2007 | Still Pending | | | 3/1/2005 | Receipt of Original Ex Parte Reexam Request | 28.30 |
| 751 | 90/007,450 | 7/10/2007 | Still Pending | | | 3/9/2005 | Reexamination requested by third party | 28.03 |
| 752 | 90/007,451 | 7/10/2007 | Still Pending | | | 4/26/2005 | Notice of Reexam Published | 26.47 |
| 753 | 90/007,452 | 7/10/2007 | Still Pending | | | 3/7/2005 | Receipt of Original Ex Parte Reexam Request | 28.10 |
| 754 | 90/007,453 | 7/10/2007 | Still Pending | | | 3/7/2005 | Reexamination requested by third party | 28.10 |
| 755 | 90/007,454 | 7/10/2007 | Still Pending | | | 3/7/2005 | Reexamination requested by third party | 28.10 |
| 756 | 90/007,455 | 7/10/2007 | Still Pending | | | 5/3/2005 | Notice of Reexam Published | 26.23 |
| 762 | 90/007,461 | 7/10/2007 | Still Pending | | | 3/12/2005 | Receipt of Original Ex Parte Reexam Request | 27.93 |
| 763 | 90/007,462 | 7/10/2007 | Still Pending | | | 3/12/2005 | Receipt of Original Ex Parte Reexam Request | 27.93 |
| 765 | 90/007,464 | 7/10/2007 | Still Pending | | | 3/14/2005 | Receipt of Original Ex Parte Reexam Request | 27.87 |
| 769 | 90/007,468 | 7/10/2007 | Still Pending | | | 3/17/2005 | Reexamination requested by third party | 27.77 |
| 771 | 90/007,470 | 7/10/2007 | Still Pending | | | 3/18/2005 | Receipt of Original Ex Parte Reexam Request | 27.73 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 772 | 90/007,471 | 7/10/2007 | Still Pending | | | 3/18/2005 | Receipt of Original Ex Parte Reexam Request | 27.73 |
| 775 | 90/007,474 | 7/10/2007 | Still Pending | | | 3/24/2005 | Receipt of Original Ex Parte Reexam Request | 27.53 |
| 778 | 90/007,477 | 7/10/2007 | Still Pending | | | 3/22/2005 | Reexamination requested by third party | 27.60 |
| 779 | 90/007,478 | 7/10/2007 | Still Pending | | | 3/23/2005 | Reexamination requested by third party | 27.57 |
| 781 | 90/007,480 | 7/10/2007 | Still Pending | | | 3/25/2005 | Reexamination requested by third party | 27.50 |
| 782 | 90/007,481 | 7/10/2007 | Still Pending | | | 3/28/2005 | Receipt of Original Ex Parte Reexam Request | 27.40 |
| 783 | 90/007,482 | 7/10/2007 | Still Pending | | | 3/28/2005 | Receipt of Original Ex Parte Reexam Request | 27.40 |
| 784 | 90/007,483 | 7/10/2007 | Still Pending | | | 3/28/2005 | Receipt of Original Ex Parte Reexam Request | 27.40 |
| 789 | 90/007,488 | 7/10/2007 | Still Pending | | | 3/29/2005 | Reexamination requested by third party | 27.37 |
| 792 | 90/007,491 | 7/10/2007 | Still Pending | | | 3/31/2005 | Receipt of Original Ex Parte Reexam Request | 27.33 |
| 793 | 90/007,492 | 7/10/2007 | Still Pending | | | 4/1/2005 | Receipt of Original Ex Parte Reexam Request | 27.30 |
| 796 | 90/007,495 | 7/10/2007 | Still Pending | | | 4/4/2005 | Receipt of Original Ex Parte Reexam Request | 27.20 |
| 800 | 90/007,499 | 7/10/2007 | Still Pending | | | 4/1/2005 | Receipt of Original Ex Parte Reexam Request | 27.30 |
| 801 | 90/007,500 | 7/10/2007 | Still Pending | | | 4/7/2005 | Receipt of Original Ex Parte Reexam Request | 27.10 |
| 802 | 90/007,501 | 7/10/2007 | Still Pending | | | 4/8/2005 | Receipt of Original Ex Parte Reexam Request | 27.07 |
| 803 | 90/007,502 | 7/10/2007 | Still Pending | | | 4/8/2005 | Receipt of Original Ex Parte Reexam Request | 27.07 |

54

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 804 | 90/007,503 | 7/10/2007 | Still Pending | | | 4/4/2005 | Receipt of Original Ex Parte Reexam Request | 27.20 |
|---|---|---|---|---|---|---|---|---|
| 805 | 90/007,504 | 7/10/2007 | Still Pending | | | 4/13/2005 | Receipt of Original Ex Parte Reexam Request | 26.90 |
| 810 | 90/007,509 | 7/10/2007 | Still Pending | | | 4/15/2005 | Receipt of Original Ex Parte Reexam Request | 26.83 |
| 811 | 90/007,510 | 7/10/2007 | Still Pending | | | 4/15/2005 | Receipt of Original Ex Parte Reexam Request | 26.83 |
| 812 | 90/007,511 | 7/10/2007 | Still Pending | | | 4/18/2005 | Receipt of Original Ex Parte Reexam Request | 26.73 |
| 813 | 90/007,512 | 7/10/2007 | Still Pending | | | 4/19/2005 | Receipt of Original Ex Parte Reexam Request | 26.70 |
| 815 | 90/007,514 | 7/10/2007 | Still Pending | | | 4/22/2005 | Reexamination requested by third party | 26.60 |
| 817 | 90/007,516 | 7/10/2007 | Still Pending | | | 4/21/2005 | Receipt of Original Ex Parte Reexam Request | 26.63 |
| 819 | 90/007,518 | 7/10/2007 | Still Pending | | | 4/22/2005 | Receipt of Original Ex Parte Reexam Request | 26.60 |
| 820 | 90/007,519 | 7/10/2007 | Still Pending | | | 4/22/2005 | Receipt of Original Ex Parte Reexam Request | 26.60 |
| 821 | 90/007,520 | 7/10/2007 | Still Pending | | | 4/22/2005 | Receipt of Original Ex Parte Reexam Request | 26.60 |
| 825 | 90/007,524 | 7/10/2007 | Still Pending | | | 4/27/2005 | Receipt of Original Ex Parte Reexam Request | 26.43 |
| 832 | 90/007,531 | 7/10/2007 | Still Pending | | | 4/29/2005 | Receipt of Original Ex Parte Reexam Request | 26.37 |
| 833 | 90/007,532 | 7/10/2007 | Still Pending | | | 5/4/2005 | Receipt of Original Ex Parte Reexam Request | 26.20 |
| 837 | 90/007,536 | 7/10/2007 | Still Pending | | | 5/9/2005 | Receipt of Original Ex Parte Reexam Request | 26.03 |
| 838 | 90/007,537 | 7/10/2007 | Still Pending | | | 5/10/2005 | Receipt of Original Ex Parte Reexam Request | 26.00 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 840 | 90/007,539 | 7/10/2007 | Still Pending | | | 6/21/2005 | Notice of Reexam Published | 24.63 |
|-----|-----------|-----------|---------------|--|--|-----------|---------------------------|-------|
| 842 | 90/007,541 | 7/10/2007 | Still Pending | | | 5/12/2005 | Receipt of Original Ex Parte Reexam Request | 25.93 |
| 843 | 90/007,542 | 7/10/2007 | Still Pending | | | 5/13/2005 | Reexamination requested by third party | 25.90 |
| 845 | 90/007,544 | 7/10/2007 | Still Pending | | | 5/16/2005 | Receipt of Original Ex Parte Reexam Request | 25.80 |
| 847 | 90/007,546 | 7/10/2007 | Still Pending | | | 5/18/2005 | Receipt of Original Ex Parte Reexam Request | 25.73 |
| 850 | 90/007,549 | 7/10/2007 | Still Pending | | | 5/20/2005 | Receipt of Original Ex Parte Reexam Request | 25.67 |
| 852 | 90/007,551 | 7/10/2007 | Still Pending | | | 5/20/2005 | Reexamination requested by third party | 25.67 |
| 860 | 90/007,559 | 7/10/2007 | Still Pending | | | 5/27/2005 | Reexamination requested by third party | 25.43 |
| 862 | 90/007,561 | 7/10/2007 | Still Pending | | | 5/27/2005 | Reexamination requested by third party | 25.43 |
| 863 | 90/007,562 | 7/10/2007 | Still Pending | | | 5/27/2005 | Receipt of Original Ex Parte Reexam Request | 25.43 |
| 864 | 90/007,563 | 7/10/2007 | Still Pending | | | 5/26/2005 | Receipt of Original Ex Parte Reexam Request | 25.47 |
| 867 | 90/007,566 | 7/10/2007 | Still Pending | | | 6/3/2005 | Receipt of Original Ex Parte Reexam Request | 25.23 |
| 870 | 90/007,569 | 7/10/2007 | Still Pending | | | 6/3/2005 | Receipt of Original Ex Parte Reexam Request | 25.23 |
| 874 | 90/007,573 | 7/10/2007 | Still Pending | | | 6/3/2005 | Receipt of Original Ex Parte Reexam Request | 25.23 |
| 876 | 90/007,575 | 7/10/2007 | Still Pending | | | 6/6/2005 | Receipt of Original Ex Parte Reexam Request | 25.13 |
| 877 | 90/007,576 | 7/10/2007 | Still Pending | | | 6/6/2005 | Receipt of Original Ex Parte Reexam Request | 25.13 |

56

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 878 | 90/007,577 | 7/10/2007 | Still Pending | | | 6/3/2005 | Receipt of Original Ex Parte Reexam Request | 25.23 |
|---|---|---|---|---|---|---|---|---|
| 879 | 90/007,578 | 7/10/2007 | Still Pending | | | 6/9/2005 | Reexamination requested by third party | 25.03 |
| 882 | 90/007,581 | 7/10/2007 | Still Pending | | | 6/10/2005 | Receipt of Original Ex Parte Reexam Request | 25.00 |
| 883 | 90/007,582 | 7/10/2007 | Still Pending | | | 6/10/2005 | Receipt of Original Ex Parte Reexam Request | 25.00 |
| 884 | 90/007,583 | 7/10/2007 | Still Pending | | | 6/13/2005 | Receipt of Original Ex Parte Reexam Request | 24.90 |
| 888 | 90/007,587 | 7/10/2007 | Still Pending | | | 6/15/2005 | Reexamination requested by third party | 24.83 |
| 889 | 90/007,588 | 7/10/2007 | Still Pending | | | 6/15/2005 | Receipt of Original Ex Parte Reexam Request | 24.83 |
| 890 | 90/007,589 | 7/10/2007 | Still Pending | | | 6/16/2005 | Reexamination requested by third party | 24.80 |
| 891 | 90/007,590 | 7/10/2007 | Still Pending | | | 6/16/2005 | Receipt of Original Ex Parte Reexam Request | 24.80 |
| 892 | 90/007,591 | 7/10/2007 | Still Pending | | | 6/16/2005 | Receipt of Original Ex Parte Reexam Request | 24.80 |
| 893 | 90/007,592 | 7/10/2007 | Still Pending | | | 6/16/2005 | Receipt of Original Ex Parte Reexam Request | 24.80 |
| 894 | 90/007,593 | 7/10/2007 | Still Pending | | | 6/17/2005 | Receipt of Original Ex Parte Reexam Request | 24.77 |
| 895 | 90/007,594 | 7/10/2007 | Still Pending | | | 6/17/2005 | Receipt of Original Ex Parte Reexam Request | 24.77 |
| 898 | 90/007,597 | 7/10/2007 | Still Pending | | | 6/22/2005 | Receipt of Original Ex Parte Reexam Request | 24.60 |
| 899 | 90/007,598 | 7/10/2007 | Still Pending | | | 6/22/2005 | Receipt of Original Ex Parte Reexam Request | 24.60 |
| 904 | 90/007,603 | 7/10/2007 | Still Pending | | | 6/24/2005 | Reexamination requested by third party | 24.53 |

57

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 905 | 90/007,604 | 7/10/2007 | Still Pending | | | 6/24/2005 | Receipt of Original Ex Parte Reexam Request | 24.53 |
|-----|------------|-----------|---------------|---|---|-----------|---------------------------------------------|-------|
| 908 | 90/007,607 | 7/10/2007 | Still Pending | | | 6/23/2005 | Receipt of Original Ex Parte Reexam Request | 24.57 |
| 912 | 90/007,611 | 7/10/2007 | Still Pending | | | 6/30/2005 | Receipt of Original Ex Parte Reexam Request | 24.33 |
| 916 | 90/007,615 | 7/10/2007 | Still Pending | | | 7/6/2005 | Receipt of Original Ex Parte Reexam Request | 24.13 |
| 918 | 90/007,617 | 7/10/2007 | Still Pending | | | 7/6/2005 | Receipt of Original Ex Parte Reexam Request | 24.13 |
| 919 | 90/007,618 | 7/10/2007 | Still Pending | | | 7/7/2005 | Receipt of Original Ex Parte Reexam Request | 24.10 |
| 920 | 90/007,619 | 7/10/2007 | Still Pending | | | 7/7/2005 | Receipt of Original Ex Parte Reexam Request | 24.10 |
| 921 | 90/007,620 | 7/10/2007 | Still Pending | | | 7/1/2005 | Receipt of Original Ex Parte Reexam Request | 24.30 |
| 924 | 90/007,623 | 7/10/2007 | Still Pending | | | 7/12/2005 | Receipt of Original Ex Parte Reexam Request | 23.93 |
| 925 | 90/007,624 | 7/10/2007 | Still Pending | | | 7/11/2005 | Reexamination requested by third party | 23.97 |
| 926 | 90/007,625 | 7/10/2007 | Still Pending | | | 7/12/2005 | Receipt of Original Ex Parte Reexam Request | 23.93 |
| 927 | 90/007,626 | 7/10/2007 | Still Pending | | | 7/13/2005 | Receipt of Original Ex Parte Reexam Request | 23.90 |
| 928 | 90/007,627 | 7/10/2007 | Still Pending | | | 7/13/2005 | Receipt of Original Ex Parte Reexam Request | 23.90 |
| 930 | 90/007,629 | 7/10/2007 | Still Pending | | | 7/13/2005 | Receipt of Original Ex Parte Reexam Request | 23.90 |
| 934 | 90/007,633 | 7/10/2007 | Still Pending | | | 7/18/2005 | Receipt of Original Ex Parte Reexam Request | 23.73 |
| 936 | 90/007,635 | 7/10/2007 | Still Pending | | | 7/19/2005 | Reexamination requested by third party | 23.70 |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 937 | 90/007,636 | 7/10/2007 | Still Pending | | | 7/20/2005 | Reexamination requested by third party | 23.67 |
| 939 | 90/007,638 | 7/10/2007 | Still Pending | | | 7/22/2005 | Receipt of Original Ex Parte Reexam Request | 23.60 |
| 940 | 90/007,639 | 7/10/2007 | Still Pending | | | 7/22/2005 | Receipt of Original Ex Parte Reexam Request | 23.60 |
| 941 | 90/007,640 | 7/10/2007 | Still Pending | | | 7/7/2005 | Receipt of Original Ex Parte Reexam Request | 24.10 |
| 946 | 90/007,645 | 7/10/2007 | Still Pending | | | 7/27/2005 | Receipt of Original Ex Parte Reexam Request | 23.43 |
| 948 | 90/007,647 | 7/10/2007 | Still Pending | | | 7/29/2005 | Receipt of Original Ex Parte Reexam Request | 23.37 |
| 950 | 90/007,649 | 7/10/2007 | Still Pending | | | 7/29/2005 | Receipt of Original Ex Parte Reexam Request | 23.37 |
| 951 | 90/007,650 | 7/10/2007 | Still Pending | | | 7/29/2005 | Receipt of Original Ex Parte Reexam Request | 23.37 |
| 952 | 90/007,651 | 7/10/2007 | Still Pending | | | 7/27/2005 | Receipt of Original Ex Parte Reexam Request | 23.43 |
| 953 | 90/007,652 | 7/10/2007 | Still Pending | | | 7/28/2005 | Reexamination requested by third party | 23.40 |
| 955 | 90/007,654 | 7/10/2007 | Still Pending | | | 8/1/2005 | Receipt of Original Ex Parte Reexam Request | 23.30 |
| 956 | 90/007,655 | 7/10/2007 | Still Pending | | | 8/4/2005 | Receipt of Original Ex Parte Reexam Request | 23.20 |
| 958 | 90/007,657 | 7/10/2007 | Still Pending | | | 8/5/2005 | Receipt of Original Ex Parte Reexam Request | 23.17 |
| 959 | 90/007,658 | 7/10/2007 | Still Pending | | | 8/5/2005 | Receipt of Original Ex Parte Reexam Request | 23.17 |
| 961 | 90/007,660 | 7/10/2007 | Still Pending | | | 8/9/2005 | Receipt of Original Ex Parte Reexam Request | 23.03 |
| 962 | 90/007,661 | 7/10/2007 | Still Pending | | | 8/8/2005 | Receipt of Original Ex Parte Reexam Request | 23.07 |

59

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 963 | 90/007,662 | 7/10/2007 | Still Pending | | | 8/9/2005 | Receipt of Original Ex Parte Reexam Request | 23.03 |
|---|---|---|---|---|---|---|---|---|
| 965 | 90/007,664 | 7/10/2007 | Still Pending | | | 8/12/2005 | Receipt of Original Ex Parte Reexam Request | 22.93 |
| 967 | 90/007,666 | 7/10/2007 | Still Pending | | | 8/11/2005 | Receipt of Original Ex Parte Reexam Request | 22.97 |
| 969 | 90/007,668 | 7/10/2007 | Still Pending | | | 8/16/2005 | Receipt of Original Ex Parte Reexam Request | 22.80 |
| 970 | 90/007,669 | 7/10/2007 | Still Pending | | | 8/16/2005 | Receipt of Original Ex Parte Reexam Request | 22.80 |
| 971 | 90/007,670 | 7/10/2007 | Still Pending | | | 8/16/2005 | Receipt of Original Ex Parte Reexam Request | 22.80 |
| 977 | 90/007,676 | 7/10/2007 | Still Pending | | | 8/18/2005 | Receipt of Original Ex Parte Reexam Request | 22.73 |
| 982 | 90/007,681 | 7/10/2007 | Still Pending | | | 8/19/2005 | Receipt of Original Ex Parte Reexam Request | 22.70 |
| 984 | 90/007,683 | 7/10/2007 | Still Pending | | | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 985 | 90/007,684 | 7/10/2007 | Still Pending | | | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 988 | 90/007,687 | 7/10/2007 | Still Pending | | | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 989 | 90/007,688 | 7/10/2007 | Still Pending | | | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 992 | 90/007,691 | 7/10/2007 | Still Pending | | | 8/22/2005 | Receipt of Original Ex Parte Reexam Request | 22.60 |
| 993 | 90/007,692 | 7/10/2007 | Still Pending | | | 8/24/2005 | Receipt of Original Ex Parte Reexam Request | 22.53 |
| 998 | 90/007,697 | 7/10/2007 | Still Pending | | | 8/30/2005 | Receipt of Original Ex Parte Reexam Request | 22.33 |
| 1000 | 90/007,699 | 7/10/2007 | Still Pending | | | 8/31/2005 | Receipt of Original Ex Parte Reexam Request | 22.33 |

199  -- Average notice to issue

1000 EX PARTE REEXAMINATIONS -- 2003-2005

Issued or Notice: 637

|  |  |
|---|---|
| Average | 27.64 |
| 3rd Quartile | 33.00 |

Pending: 513

|  |  |
|---|---|
| Average | 32.24 |
| 3rd Quartile | 37.63 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 13 | 90/006,712 | 9/16/2003 | Reexam Denied | | | 7/15/2003 | Receipt of Original Ex Parte Reexam Request |
| 93 | 90/006,792 | 12/18/2003 | Reexam Denied | | | 10/15/2003 | Receipt of Original Ex Parte Reexam Request |
| 127 | 90/006,826 | 1/23/2004 | Reexam Denied | | | 10/24/2003 | Receipt of Original Ex Parte Reexam Request |
| 151 | 90/006,850 | 1/27/2004 | Reexam Denied | | | 11/7/2003 | Receipt of Original Ex Parte Reexam Request |
| 152 | 90/006,851 | 2/5/2004 | Reexam Denied | | | 11/10/2003 | Receipt of Original Ex Parte Reexam Request |
| 175 | 90/006,874 | 2/5/2004 | Reexam Denied | | | 11/25/2003 | Receipt of Original Ex Parte Reexam Request |
| 226 | 90/006,925 | 4/1/2004 | Reexam Denied | | | 1/27/2004 | Receipt of Original Ex Parte Reexam Request |
| 317 | 90/007,016 | 7/16/2004 | Reexam Denied | | | 4/28/2004 | Miscellaneous Letter |
| 341 | 90/007,040 | 6/21/2004 | Reexam Denied | | | 5/18/2004 | Receipt of Original Ex Parte Reexam Request |
| 368 | 90/007,067 | 7/22/2004 | Reexam Denied | | | 6/9/2004 | Receipt of Original Ex Parte Reexam Request |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 376 | 90/007,075 | 9/1/2004 | Reexam Denied | | | 6/14/2004 | Receipt of Original Ex Parte Reexam Request |
|-----|------------|----------|---------------|---|---|-----------|---------------------------------------------|
| 382 | 90/007,081 | 7/20/2004 | Reexam Denied | | | 6/15/2004 | Receipt of Original Ex Parte Reexam Request |
| 390 | 90/007,089 | 9/13/2004 | Reexam Denied | | | 6/17/2004 | Receipt of Original Ex Parte Reexam Request |
| 402 | 90/007,101 | 7/20/2004 | Reexam Denied | | | 6/25/2004 | Receipt of Original Ex Parte Reexam Request |
| 475 | 90/007,174 | 8/31/2004 | Reexam Denied | | | 8/16/2004 | Receipt of Original Ex Parte Reexam Request |
| 485 | 90/007,184 | 11/3/2004 | Reexam Denied | | | 8/26/2004 | Receipt of Original Ex Parte Reexam Request |
| 511 | 90/007,210 | 9/28/2004 | Reexam Denied | | | 9/17/2004 | Receipt of Original Ex Parte Reexam Request |
| 582 | 90/007,281 | 1/31/2005 | Reexam Denied | | | 11/2/2004 | Reexamination requested by third party |
| 584 | 90/007,283 | 1/26/2005 | Reexam Denied | | | 12/21/2004 | Notice of Reexam Published |
| 614 | 90/007,313 | 2/7/2005 | Reexam Denied | | | 11/22/2004 | Receipt of Original Ex Parte Reexam Request |
| 630 | 90/007,329 | 2/10/2005 | Reexam Denied | | | 12/2/2004 | Reexamination requested by third party |
| 635 | 90/007,334 | 3/7/2005 | Reexam Denied | | | 12/10/2004 | Receipt of Original Ex Parte Reexam Request |
| 636 | 90/007,335 | 3/15/2005 | Reexam Denied | | | 12/10/2004 | Receipt of Original Ex Parte Reexam Request |
| 661 | 90/007,360 | 2/28/2005 | Reexam Denied | | | 1/3/2005 | Receipt of Original Ex Parte Reexam Request |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| 691 | 90/007,390 | 4/11/2005 | Reexam Denied | | | 1/24/2005 | Receipt of Original Ex Parte Reexam Request |
|---|---|---|---|---|---|---|---|
| 719 | 90/007,418 | 3/17/2005 | Reexam Denied | | | 2/11/2005 | Receipt of Original Ex Parte Reexam Request |
| 732 | 90/007,431 | 5/16/2005 | Reexam Denied | | | 4/12/2005 | Notice of Reexam Published |
| 736 | 90/007,435 | 4/20/2005 | Reexam Denied | | | 2/28/2005 | Reexamination requested by third party |
| 794 | 90/007,493 | 5/24/2005 | Reexam Denied | | | 4/4/2005 | Receipt of Original Ex Parte Reexam Request |
| 865 | 90/007,564 | 6/27/2005 | Reexam Denied | | | 6/1/2005 | Receipt of Original Ex Parte Reexam Request |
| 873 | 90/007,572 | 8/18/2005 | Reexam Denied | | | 5/31/2005 | Receipt of Original Ex Parte Reexam Request |
| 881 | 90/007,580 | 7/13/2005 | Reexam Denied | | | 6/9/2005 | Receipt of Original Ex Parte Reexam Request |
| 915 | 90/007,614 | 8/18/2005 | Reexam Denied | | | 7/5/2005 | Receipt of Original Ex Parte Reexam Request |
| 933 | 90/007,632 | 10/5/2005 | Reexam Denied | | | 7/16/2005 | Receipt of Original Ex Parte Reexam Request |
| 935 | 90/007,634 | 07-29-200 | Reexam Denied | | | 7/19/2005 | Receipt of Original Ex Parte Reexam Request |
| 944 | 90/007,643 | 9/15/2005 | Reexam Denied | | | 7/22/2005 | Receipt of Original Ex Parte Reexam Request |
| 947 | 90/007,646 | 10/24/2005 | Reexam Denied | | | 7/28/2005 | Receipt of Original Ex Parte Reexam Request |
| 966 | 90/007,665 | 9/30/2005 | Reexam Denied | | | 8/10/2005 | Receipt of Original Ex Parte Reexam Request |

1000 EX PARTE REEXAMINATIONS -- 2003-2005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 979 | 90/007,678 | 10/19/2005 | Reexam Denied | | | 8/19/2005 | Receipt of Original Ex Parte Reexam Request |
| 995 | 90/007,694 | 10/18/2005 | Reexam Denied | | | 8/26/2005 | Receipt of Original Ex Parte Reexam Request |

64

# EXHIBIT 13

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| Reexamination Application | Request | Issued | Months |
|---|---|---|---|
| 90/006,237 | 3/6/02 | 7/18/06 | 51.68 |
| 90/007,292 | 11/23/04 | 7/18/06 | 19.56 |
| 90/006,748 | 8/14/03 | 7/18/06 | 34.65 |
| 90/007,252 | 10/12/04 | 7/18/06 | 20.91 |
| 90/007,017 | 4/26/04 | 7/25/06 | 26.60 |
| 90/006,983 | 3/26/04 | 7/25/06 | 27.58 |
| 90/006,933 | 2/11/04 | 7/25/06 | 29.06 |
| 90/006,958 | 3/10/04 | 7/25/06 | 28.11 |
| 90/007,457 | 3/9/05 | 7/25/06 | 16.31 |
| 90/007,191 | 9/3/04 | 8/1/06 | 22.62 |
| 90/006,916 | 1/20/04 | 8/1/06 | 29.95 |
| 90/006,650 | 5/27/03 | 8/1/06 | 37.61 |
| 90/007,385 | 1/21/05 | 8/1/06 | 18.08 |
| 90/006,769 | 8/29/03 | 8/1/06 | 34.59 |
| 90/007,282 | 11/2/04 | 8/1/06 | 20.68 |
| 90/007,384 | 1/21/05 | 8/1/06 | 18.08 |
| 90/007,124 | 7/19/04 | 8/1/06 | 24.07 |
| 90/006,068 | 8/20/01 | 8/8/06 | 58.78 |
| 90/007,368 | 12/3/04 | 8/8/06 | 19.89 |
| 90/007,185 | 8/23/04 | 8/8/06 | 23.18 |
| 90/007,125 | 7/19/04 | 8/8/06 | 24.30 |
| 90/007,317 | 11/23/04 | 8/8/06 | 20.22 |
| 90/007,497 | 4/6/05 | 8/8/06 | 15.85 |
| 90/007,433 | 2/23/05 | 8/8/06 | 17.26 |
| 90/007,200 | 9/13/04 | 8/15/06 | 22.75 |
| 90/007,224 | 9/29/04 | 8/15/06 | 22.22 |
| 90/007,609 | 6/30/05 | 8/15/06 | 13.32 |
| 90/007,323 | 4/19/05 | 8/22/06 | 15.88 |
| 90/007,248 | 10/5/04 | 8/29/06 | 22.49 |
| 90/006,970 | 3/16/04 | 8/29/06 | 29.03 |
| 90/007,274 | 10/29/04 | 8/29/06 | 21.70 |
| 90/006,578 | 3/25/03 | 8/29/06 | 40.57 |
| 90/006,660 | 6/9/03 | 8/29/06 | 38.14 |
| 90/007,485 | 3/28/05 | 8/29/06 | 16.80 |
| 90/006,836 | 10/29/03 | 8/29/06 | 33.53 |
| 90/006,628 | 5/6/03 | 8/29/06 | 39.22 |
| 90/007,071 | 6/9/04 | 8/29/06 | 26.30 |
| 90/007,059 | 6/2/04 | 8/29/06 | 26.53 |
| 90/007,060 | 6/2/04 | 8/29/06 | 26.53 |
| 90/007,198 | 9/10/04 | 8/29/06 | 23.31 |
| 90/005,822 | 9/19/00 | 9/5/06 | 70.55 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/005,811 | 9/5/00 | 9/5/06 | 71.01 |
| 90/005,970 | 4/2/01 | 9/5/06 | 64.21 |
| 90/006,819 | 10/22/03 | 9/5/06 | 33.96 |
| 90/006,169 | 12/31/01 | 9/5/06 | 55.40 |
| 90/007,570 | 6/3/05 | 9/5/06 | 14.86 |
| 90/007,302 | 11/15/04 | 9/5/06 | 21.37 |
| 90/004,834 | 11/12/97 | 9/12/06 | 104.55 |
| 90/006,594 | 4/8/03 | 9/12/06 | 40.57 |
| 90/007,153 | 8/3/04 | 9/12/06 | 24.95 |
| 90/006,821 | 10/20/03 | 9/12/06 | 34.26 |
| 90/006,186 | 1/10/02 | 9/12/06 | 55.30 |
| 90/007,131 | 7/22/04 | 9/12/06 | 25.32 |
| 90/007,144 | 7/29/04 | 9/12/06 | 25.08 |
| 90/007,340 | 12/8/04 | 9/12/06 | 20.84 |
| 90/007,116 | 7/13/04 | 9/12/06 | 25.61 |
| 90/006,611 | 4/21/03 | 9/12/06 | 40.14 |
| 90/006,296 | 5/21/02 | 9/12/06 | 50.99 |
| 90/007,398 | 1/28/05 | 9/12/06 | 19.20 |
| 90/006,223 | 2/20/02 | 9/12/06 | 53.98 |
| 90/006,266 | 4/15/02 | 9/12/06 | 52.18 |
| 90/007,173 | 8/13/04 | 9/12/06 | 24.62 |
| 90/006,891 | 12/18/03 | 9/12/06 | 32.35 |
| 90/007,056 | 5/28/04 | 9/12/06 | 27.09 |
| 90/007,446 | 3/4/05 | 9/12/06 | 18.02 |
| 90/007,182 | 8/25/04 | 9/12/06 | 24.23 |
| 90/007,336 | 12/8/04 | 9/19/06 | 21.07 |
| 90/006,981 | 3/25/04 | 9/19/06 | 29.39 |
| 90/006,478 | 12/5/02 | 9/19/06 | 44.84 |
| 90/007,554 | 5/20/05 | 9/19/06 | 15.75 |
| 90/007,596 | 6/20/05 | 9/19/06 | 14.76 |
| 90/006,199 | 1/22/02 | 9/19/06 | 55.13 |
| 90/005,643 | 2/24/00 | 9/19/06 | 77.75 |
| 90/006,644 | 5/20/03 | 9/19/06 | 39.42 |
| 90/007,031 | 5/4/04 | 9/19/06 | 28.11 |
| 90/006,440 | 11/5/02 | 9/19/06 | 45.83 |
| 90/007,270 | 10/27/04 | 9/19/06 | 22.42 |
| 90/007,517 | 4/22/05 | 9/19/06 | 16.67 |
| 90/007,223 | 9/28/04 | 9/19/06 | 23.38 |
| 90/007,444 | 3/3/05 | 9/19/06 | 18.28 |
| 90/007,235 | 10/6/04 | 9/26/06 | 23.34 |
| 90/007,230 | 10/4/04 | 9/26/06 | 23.41 |
| 90/006,897 | 12/29/03 | 9/26/06 | 32.45 |
| 90/006,862 | 11/14/03 | 9/26/06 | 33.93 |
| 90/007,489 | 3/31/05 | 9/26/06 | 17.62 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/007,209 | 9/17/04 | 9/26/06 | 23.97 |
| 90/007,232 | 10/4/04 | 9/26/06 | 23.41 |
| 90/007,490 | 3/31/05 | 9/26/06 | 17.62 |
| 90/006,880 | 12/3/03 | 9/26/06 | 33.30 |
| 90/007,237 | 10/7/04 | 9/26/06 | 23.31 |
| 90/007,448 | 3/4/05 | 9/26/06 | 18.48 |
| 90/007,377 | 1/19/05 | 9/26/06 | 19.96 |
| 90/007,628 | 7/13/05 | 10/3/06 | 14.47 |
| 90/006,877 | 11/26/03 | 10/3/06 | 33.76 |
| 90/006,589 | 4/4/03 | 10/3/06 | 41.39 |
| 90/007,032 | 5/6/04 | 10/3/06 | 28.50 |
| 90/007,351 | 12/21/04 | 10/3/06 | 21.11 |
| 90/006,298 | 5/21/02 | 10/3/06 | 51.68 |
| 90/006,820 | 10/22/03 | 10/3/06 | 34.88 |
| 90/007,048 | 5/24/04 | 10/3/06 | 27.91 |
| 90/007,720 | 9/15/05 | 10/3/06 | 12.43 |
| 90/007,792 | 11/2/05 | 10/3/06 | 10.88 |
| 90/005,539 | 10/25/99 | 10/10/06 | 82.36 |
| 90/007,148 | 7/30/04 | 10/10/06 | 25.97 |
| 90/006,668 | 6/16/03 | 10/10/06 | 39.25 |
| 90/007,372 | 1/8/05 | 10/10/06 | 20.78 |
| 90/007,622 | 7/12/05 | 10/10/06 | 14.73 |
| 90/007,069 | 6/14/04 | 10/10/06 | 27.48 |
| 90/007,364 | 1/3/05 | 10/10/06 | 20.94 |
| 90/007,226 | 9/27/04 | 10/10/06 | 24.10 |
| 90/007,021 | 4/29/04 | 10/10/06 | 28.96 |
| 90/005,905 | 1/5/01 | 10/10/06 | 68.22 |
| 90/006,600 | 4/10/03 | 10/10/06 | 41.42 |
| 90/007,018 | 4/26/04 | 10/10/06 | 29.06 |
| 90/006,869 | 11/17/03 | 10/10/06 | 34.29 |
| 90/006,823 | 10/21/03 | 10/10/06 | 35.15 |
| 90/007,242 | 10/8/04 | 10/17/06 | 23.97 |
| 90/003,911 | 8/9/95 | 10/17/06 | 132.43 |
| 90/007,469 | 3/18/05 | 10/17/06 | 18.71 |
| 90/007,254 | 10/13/04 | 10/17/06 | 23.80 |
| 90/006,845 | 11/6/03 | 10/17/06 | 34.88 |
| 90/007,330 | 12/3/04 | 10/17/06 | 22.16 |
| 90/006,934 | 2/13/04 | 10/17/06 | 31.69 |
| 90/007,028 | 5/7/04 | 10/17/06 | 28.93 |
| 90/007,029 | 5/4/04 | 10/17/06 | 29.03 |
| 90/007,427 | 2/17/05 | 10/17/06 | 19.73 |
| 90/006,590 | 4/4/03 | 10/17/06 | 41.85 |
| 90/007,061 | 6/2/04 | 10/17/06 | 28.11 |
| 90/007,380 | 1/14/05 | 10/17/06 | 20.81 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/006,866 | 11/17/03 | 10/17/06 | 34.52 |
| 90/007,415 | 2/10/05 | 10/17/06 | 19.96 |
| 90/007,465 | 3/14/05 | 10/17/06 | 18.84 |
| 90/006,952 | 2/25/04 | 10/24/06 | 31.53 |
| 90/006,394 | 9/30/02 | 10/24/06 | 48.13 |
| 90/007,104 | 7/2/04 | 10/24/06 | 27.35 |
| 90/007,057 | 6/1/04 | 10/24/06 | 28.37 |
| 90/007,466 | 3/16/05 | 10/24/06 | 19.00 |
| 90/007,366 | 1/4/05 | 10/24/06 | 21.37 |
| 90/007,525 | 4/27/05 | 10/24/06 | 17.65 |
| 90/006,774 | 9/11/03 | 10/24/06 | 36.92 |
| 90/006,561 | 3/10/03 | 10/24/06 | 42.87 |
| 90/006,615 | 4/30/03 | 10/24/06 | 41.23 |
| 90/006,588 | 4/4/03 | 10/31/06 | 42.31 |
| 90/006,885 | 12/5/03 | 10/31/06 | 34.39 |
| 90/006,324 | 7/9/02 | 10/31/06 | 51.02 |
| 90/005,948 | 3/6/01 | 10/31/06 | 66.90 |
| 90/006,251 | 3/19/02 | 10/31/06 | 54.64 |
| 90/006,661 | 6/9/03 | 10/31/06 | 40.18 |
| 90/006,998 | 4/6/04 | 10/31/06 | 30.41 |
| 90/006,281 | 5/6/02 | 10/31/06 | 53.10 |
| 90/006,701 | 7/10/03 | 11/7/06 | 39.35 |
| 90/007,176 | 8/18/04 | 11/7/06 | 26.27 |
| 90/006,833 | 10/28/03 | 11/7/06 | 35.80 |
| 90/006,357 | 8/16/02 | 11/7/06 | 50.01 |
| 90/007,308 | 11/18/04 | 11/7/06 | 23.31 |
| 90/007,241 | 10/7/04 | 11/7/06 | 24.66 |
| 90/006,305 | 6/3/02 | 11/7/06 | 52.41 |
| 90/007,406 | 1/31/05 | 11/7/06 | 20.94 |
| 90/007,038 | 5/11/04 | 11/7/06 | 29.46 |
| 90/006,723 | 7/23/03 | 11/7/06 | 38.93 |
| 90/007,138 | 7/27/04 | 11/14/06 | 27.19 |
| 90/007,599 | 6/21/05 | 11/14/06 | 16.54 |
| 90/007,600 | 6/21/05 | 11/14/06 | 16.54 |
| 90/007,084 | 6/16/04 | 11/14/06 | 28.54 |
| 90/007,362 | 12/22/04 | 11/21/06 | 22.65 |
| 90/006,067 | 8/28/01 | 11/21/06 | 61.91 |
| 90/006,829 | 10/24/03 | 11/21/06 | 36.39 |
| 90/007,540 | 5/11/05 | 11/21/06 | 18.08 |
| 90/007,642 | 7/21/05 | 11/21/06 | 15.78 |
| 90/006,645 | 5/22/03 | 11/28/06 | 41.62 |
| 90/006,733 | 7/31/03 | 11/28/06 | 39.39 |
| 90/007,181 | 8/23/04 | 11/28/06 | 26.79 |
| 90/007,007 | 4/19/04 | 11/28/06 | 30.87 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/007,371 | 1/8/05 | 11/28/06 | 22.36 |
| 90/007,648 | 7/29/05 | 11/28/06 | 15.75 |
| 90/007,161 | 8/5/04 | 11/28/06 | 27.39 |
| 90/007,156 | 8/6/04 | 11/28/06 | 27.35 |
| 90/007,348 | 12/21/04 | 11/28/06 | 22.92 |
| 90/006,580 | 3/28/03 | 11/28/06 | 43.40 |
| 90/006,438 | 10/28/02 | 11/28/06 | 48.33 |
| 90/007,748 | 9/29/05 | 11/28/06 | 13.78 |
| 90/007,045 | 5/21/04 | 12/5/06 | 30.05 |
| 90/006,985 | 3/30/04 | 12/5/06 | 31.73 |
| 90/007,538 | 5/11/05 | 12/5/06 | 18.54 |
| 90/007,641 | 7/21/05 | 12/5/06 | 16.24 |
| 90/005,985 | 4/17/01 | 12/5/06 | 66.67 |
| 90/007,409 | 2/3/05 | 12/5/06 | 21.76 |
| 90/007,526 | 4/27/05 | 12/5/06 | 19.00 |
| 90/007,211 | 9/20/04 | 12/12/06 | 26.37 |
| 90/006,029 | 6/7/01 | 12/12/06 | 65.26 |
| 90/006,731 | 7/31/03 | 12/12/06 | 39.85 |
| 90/006,902 | 1/8/04 | 12/12/06 | 34.65 |
| 90/007,424 | 2/16/05 | 12/19/06 | 21.80 |
| 90/007,095 | 6/21/04 | 12/19/06 | 29.52 |
| 90/006,436 | 10/28/02 | 12/19/06 | 49.02 |
| 90/007,840 | 12/8/05 | 12/19/06 | 12.20 |
| 90/007,680 | 8/19/05 | 12/26/06 | 16.01 |
| 90/006,814 | 10/20/03 | 12/26/06 | 37.68 |
| 90/007,162 | 8/5/04 | 1/2/07 | 28.50 |
| 90/006,999 | 4/7/04 | 1/2/07 | 32.38 |
| 90/007,810 | 11/22/05 | 1/2/07 | 13.15 |
| 90/007,151 | 7/30/04 | 1/2/07 | 28.67 |
| 90/006,336 | 7/26/02 | 1/2/07 | 52.47 |
| 90/007,208 | 9/17/04 | 1/2/07 | 27.12 |
| 90/006,607 | 4/18/03 | 1/9/07 | 44.09 |
| 90/006,856 | 11/10/03 | 1/9/07 | 37.45 |
| 90/007,267 | 10/25/04 | 1/9/07 | 26.10 |
| 90/007,206 | 9/16/04 | 1/9/07 | 27.39 |
| 90/007,399 | 1/27/05 | 1/9/07 | 23.08 |
| 90/007,401 | 1/28/05 | 1/9/07 | 23.05 |
| 90/006,871 | 11/21/03 | 1/16/07 | 37.32 |
| 90/006,228 | 3/1/02 | 1/16/07 | 57.70 |
| 90/007,718 | 9/14/05 | 1/16/07 | 15.85 |
| 90/007,709 | 9/6/05 | 1/16/07 | 16.11 |
| 90/007,278 | 11/2/04 | 1/16/07 | 26.10 |
| 90/007,386 | 1/21/05 | 1/16/07 | 23.51 |
| 90/006,912 | 1/15/04 | 1/16/07 | 35.54 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/007,082 | 6/16/04 | 1/23/07 | 30.81 |
| 90/006,852 | 11/10/03 | 1/23/07 | 37.91 |
| 90/006,972 | 3/22/04 | 1/23/07 | 33.57 |
| 90/007,266 | 10/25/04 | 1/23/07 | 26.56 |
| 90/006,854 | 11/10/03 | 1/23/07 | 37.91 |
| 90/006,961 | 3/11/04 | 1/23/07 | 33.93 |
| 90/007,321 | 11/23/04 | 1/23/07 | 25.64 |
| 90/007,345 | 12/21/04 | 1/23/07 | 24.72 |
| 90/005,924 | 2/6/01 | 1/23/07 | 70.59 |
| 90/006,518 | 1/17/03 | 1/23/07 | 47.54 |
| 90/007,273 | 10/29/04 | 1/23/07 | 26.43 |
| 90/006,460 | 11/25/02 | 1/23/07 | 49.25 |
| 90/007,085 | 6/16/04 | 1/23/07 | 30.81 |
| 90/007,605 | 6/27/05 | 1/23/07 | 18.61 |
| 90/007,111 | 7/7/04 | 1/23/07 | 30.12 |
| 90/007,201 | 9/13/04 | 1/30/07 | 28.18 |
| 90/007,132 | 7/26/04 | 1/30/07 | 29.72 |
| 90/006,835 | 10/29/03 | 2/6/07 | 38.70 |
| 90/007,066 | 6/8/04 | 2/6/07 | 31.50 |
| 90/006,632 | 5/13/03 | 2/13/07 | 44.38 |
| 90/007,053 | 5/26/04 | 2/13/07 | 32.12 |
| 90/007,279 | 11/2/04 | 2/13/07 | 26.99 |
| 90/007,310 | 11/18/04 | 2/13/07 | 26.47 |
| 90/007,674 | 8/19/05 | 2/20/07 | 17.79 |
| 90/007,725 | 9/14/05 | 2/20/07 | 16.96 |
| 90/007,557 | 5/20/05 | 2/20/07 | 20.71 |
| 90/007,473 | 3/21/05 | 2/20/07 | 22.65 |
| 90/006,418 | 10/22/02 | 2/20/07 | 51.22 |
| 90/006,550 | 2/19/03 | 2/20/07 | 47.38 |
| 90/006,816 | 10/20/03 | 2/27/07 | 39.68 |
| 90/007,806 | 11/16/05 | 2/27/07 | 15.16 |
| 90/007,238 | 10/6/04 | 2/27/07 | 28.31 |
| 90/006,232 | 10/25/01 | 2/27/07 | 63.19 |
| 90/007,280 | 11/2/04 | 2/27/07 | 27.45 |
| 90/007,387 | 1/21/05 | 2/27/07 | 24.85 |
| 90/006,437 | 10/28/02 | 2/27/07 | 51.25 |
| 90/007,102 | 6/25/04 | 3/6/07 | 31.92 |
| 90/007,672 | 8/17/05 | 3/6/07 | 18.38 |
| 90/007,062 | 6/3/04 | 3/6/07 | 32.65 |
| 90/007,222 | 9/24/04 | 3/6/07 | 29.00 |
| 90/007,784 | 10/27/05 | 3/6/07 | 16.08 |
| 90/006,396 | 10/11/02 | 3/6/07 | 52.11 |
| 90/006,610 | 4/18/03 | 3/6/07 | 45.96 |
| 90/006,884 | 12/10/03 | 3/6/07 | 38.33 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/007,567 | 6/2/05 | 3/6/07 | 20.84 |
| 90/007,937 | 2/10/06 | 3/6/07 | 12.69 |
| 90/007,117 | 7/13/04 | 3/6/07 | 31.33 |
| 90/007,689 | 8/22/05 | 3/6/07 | 18.21 |
| 90/007,508 | 4/13/05 | 3/6/07 | 22.45 |
| 90/007,251 | 10/12/04 | 3/6/07 | 28.41 |
| 90/007,696 | 8/29/05 | 3/6/07 | 17.98 |
| 90/008,035 | 5/23/06 | 3/6/07 | 9.30 |
| 90/007,847 | 12/15/05 | 3/13/07 | 14.73 |
| 90/006,338 | 7/25/02 | 3/13/07 | 54.84 |
| 90/007,203 | 9/15/04 | 3/13/07 | 29.52 |
| 90/006,419 | 10/22/02 | 3/13/07 | 51.98 |
| 90/007,119 | 7/15/04 | 3/13/07 | 31.50 |
| 90/007,595 | 6/17/05 | 3/13/07 | 20.58 |
| 90/007,521 | 4/25/05 | 3/13/07 | 22.29 |
| 90/006,931 | 2/12/04 | 3/13/07 | 36.53 |
| 90/007,727 | 9/21/05 | 3/20/07 | 17.72 |
| 90/006,830 | 10/28/03 | 3/20/07 | 40.18 |
| 90/006,906 | 1/14/04 | 3/20/07 | 37.68 |
| 90/006,929 | 2/5/04 | 3/20/07 | 36.99 |
| 90/007,046 | 5/22/04 | 3/20/07 | 33.47 |
| 90/007,078 | 6/14/04 | 3/20/07 | 32.75 |
| 90/007,010 | 4/15/04 | 3/20/07 | 34.68 |
| 90/006,270 | 4/24/02 | 3/20/07 | 58.06 |
| 90/006,690 | 7/1/03 | 3/20/07 | 44.02 |
| 90/007,275 | 10/29/04 | 3/20/07 | 28.31 |
| 90/007,534 | 5/6/05 | 3/20/07 | 22.16 |
| 90/006,973 | 3/22/04 | 3/20/07 | 35.44 |
| 90/007,159 | 8/9/04 | 3/20/07 | 30.94 |
| 90/006,732 | 7/31/03 | 3/27/07 | 43.30 |
| 90/007,218 | 9/24/04 | 3/27/07 | 29.69 |
| 90/006,926 | 1/28/04 | 3/27/07 | 37.45 |
| 90/007,142 | 7/28/04 | 3/27/07 | 31.53 |
| 90/006,393 | 9/27/02 | 3/27/07 | 53.26 |
| 90/007,621 | 7/5/05 | 3/27/07 | 20.45 |
| 90/006,534 | 2/3/03 | 3/27/07 | 49.12 |
| 90/007,693 | 8/26/05 | 3/27/07 | 18.77 |
| 90/006,855 | 11/12/03 | 3/27/07 | 39.95 |
| 90/007,177 | 8/18/04 | 3/27/07 | 30.87 |
| 90/007,112 | 7/7/04 | 3/27/07 | 32.22 |
| 90/007,105 | 6/30/04 | 3/27/07 | 32.45 |
| 90/007,121 | 7/19/04 | 4/3/07 | 32.02 |
| 90/005,867 | 11/27/00 | 4/3/07 | 75.16 |
| 90/008,027 | 5/2/06 | 4/3/07 | 10.88 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/007,332 | 12/6/04 | 4/3/07 | 27.52 |
| 90/007,295 | 11/15/04 | 4/3/07 | 28.21 |
| 90/007,602 | 6/23/05 | 4/10/07 | 21.27 |
| 90/007,250 | 10/6/04 | 4/10/07 | 29.72 |
| 90/007,204 | 9/15/04 | 4/10/07 | 30.41 |
| 90/007,555 | 5/20/05 | 4/17/07 | 22.59 |
| 90/007,011 | 4/22/04 | 4/17/07 | 35.34 |
| 90/006,813 | 10/20/03 | 4/17/07 | 41.33 |
| 90/007,523 | 4/26/05 | 4/17/07 | 23.38 |
| 90/007,214 | 9/23/04 | 4/17/07 | 30.38 |
| 90/007,948 | 2/27/06 | 4/24/07 | 13.71 |
| 90/006,558 | 3/6/03 | 4/24/07 | 48.92 |
| 90/007,337 | 12/9/04 | 4/24/07 | 28.11 |
| 90/005,877 | 12/7/00 | 4/24/07 | 75.52 |
| 90/006,592 | 4/4/03 | 4/24/07 | 48.00 |
| 90/007,565 | 6/2/05 | 4/24/07 | 22.42 |
| 90/006,809 | 10/14/03 | 4/24/07 | 41.75 |
| 90/006,842 | 11/4/03 | 4/24/07 | 41.10 |
| 90/005,782 | 8/4/00 | 5/1/07 | 79.79 |
| 90/006,293 | 5/6/02 | 5/1/07 | 59.01 |
| 90/007,150 | 8/2/04 | 5/1/07 | 32.52 |
| 90/005,657 | 3/2/00 | 5/1/07 | 84.79 |
| 90/007,608 | 6/29/05 | 5/1/07 | 21.76 |
| 90/006,333 | 7/23/02 | 5/1/07 | 56.48 |
| 90/006,555 | 2/24/03 | 5/1/07 | 49.55 |
| 90/007,476 | 3/25/05 | 5/1/07 | 24.85 |
| 90/007,133 | 7/27/04 | 5/1/07 | 32.68 |
| 90/007,612 | 7/5/05 | 5/1/07 | 21.57 |
| 90/007,221 | 9/24/04 | 5/1/07 | 30.81 |
| 90/006,597 | 4/9/03 | 5/1/07 | 48.07 |
| 90/006,918 | 1/26/04 | 5/8/07 | 38.86 |
| 90/006,435 | 10/28/02 | 5/15/07 | 53.82 |
| 90/005,749 | 6/15/00 | 5/15/07 | 81.86 |
| 90/007,361 | 1/3/05 | 5/15/07 | 28.01 |
| 90/006,863 | 11/14/03 | 5/22/07 | 41.69 |
| 90/006,928 | 2/2/04 | 5/22/07 | 39.12 |
| 90/007,044 | 5/20/04 | 5/22/07 | 35.57 |
| 90/007,338 | 12/8/04 | 5/22/07 | 29.06 |
| 90/005,942 | 3/1/01 | 5/29/07 | 73.91 |
| 90/006,295 | 5/20/02 | 5/29/07 | 59.47 |
| 90/006,683 | 6/25/03 | 5/29/07 | 46.49 |
| 90/007,601 | 6/22/05 | 6/5/07 | 23.11 |
| 90/007,190 | 9/2/04 | 6/5/07 | 32.65 |
| 90/007,941 | 2/17/06 | 6/5/07 | 15.39 |

EX PARTE REEXAMINATIONS ISSUED IN THE LAST 12 MONTHS

| | | | |
|---|---|---|---|
| 90/007,863 | 1/3/06 | 6/5/07 | 16.83 |
| 90/007,404 | 1/31/05 | 6/12/07 | 28.01 |
| 90/007,505 | 4/8/05 | 6/12/07 | 25.78 |
| 90/007,135 | 10/18/04 | 6/12/07 | 31.36 |
| 90/007,467 | 3/16/05 | 6/12/07 | 26.50 |
| 90/007,568 | 6/2/05 | 6/12/07 | 24.00 |
| 90/006,915 | 8/25/03 | 6/12/07 | 44.94 |
| 90/007,414 | 2/9/05 | 6/12/07 | 27.72 |
| 90/007,014 | 4/23/04 | 6/12/07 | 37.12 |
| 90/007,690 | 8/22/05 | 6/12/07 | 21.37 |
| 90/007,197 | 9/10/04 | 6/12/07 | 32.61 |
| 90/008,059 | 6/26/06 | 6/12/07 | 11.38 |
| 90/006,402 | 10/4/02 | 6/19/07 | 55.73 |
| 90/006,778 | 9/22/03 | 6/19/07 | 44.28 |
| 90/006,840 | 11/3/03 | 6/19/07 | 42.94 |
| 90/007,049 | 5/24/04 | 6/26/07 | 36.56 |
| 90/007,239 | 10/6/04 | 6/26/07 | 32.22 |
| 90/007,249 | 10/6/04 | 6/26/07 | 32.22 |
| 90/006,231 | 10/25/01 | 6/26/07 | 67.10 |
| 90/006,045 | 6/28/01 | 6/26/07 | 70.95 |
| 90/007,698 | 8/30/05 | 6/26/07 | 21.57 |
| 90/006,544 | 2/11/03 | 6/26/07 | 51.78 |
| 90/007,064 | 6/4/04 | 6/26/07 | 36.23 |
| 90/006,395 | 10/11/02 | 7/3/07 | 55.96 |
| 90/006,609 | 4/18/03 | 7/3/07 | 49.81 |
| 90/006,184 | 1/10/02 | 7/3/07 | 64.87 |
| 90/006,805 | 10/9/03 | 7/3/07 | 44.19 |
| 90/007,343 | 12/8/04 | 7/3/07 | 30.41 |
| 90/007,120 | 7/19/04 | 7/3/07 | 34.98 |
| 90/007,063 | 6/3/04 | 7/3/07 | 36.49 |
| 90/006,827 | 10/24/03 | 7/3/07 | 43.69 |
| 90/007,339 | 12/9/04 | 7/3/07 | 30.38 |
| 90/007,341 | 12/9/04 | 7/3/07 | 30.38 |
| 90/007,342 | 12/9/04 | 7/3/07 | 30.38 |

39.89589 3rd Quartile
33.38 Average

# EXHIBIT 14



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

_Inter Partes_ Reexamination Filing Data  - June 30, 2007

1.  Total requests filed since start of _inter partes_ reexam on 11/29/99 ............................... 272[1]

2.  Number of filings by discipline

    a.  Chemical Operation                                     69      25%
    b.  Electrical Operation                                   98      36%
    c.  Mechanical Operation                                  105      39%

3.  Annual Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 2000 | 0 | 2002 | 4 | 2004 | 27 | 2006 | 70 |
| 2001 | 1 | 2003 | 21 | 2005 | 59 | 2007 | 90 |

4.  Number known to be in litigation.............................................137..................50%

5.  Decisions on requests ........................................................................... 232

    a.  No. granted ................................................................. 223 .................. 96%

        (1)  By examiner                                      2238
        (2)  By Director (on petition)                            0

    b.  No. not granted ............................................................ 9 .................... 4%

        (1)  By examiner                                         7
        (2)  Reexam vacated                                      2

6.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                                            29.1 (mos.)
    b.  Median pendency                                             30.4 (mos.)

7.  Total inter partes reexamination certificates issued (1999 - present) ................... 8

    a.  Certificates with all claims confirmed            1            12%
    b.  Certificates with all claims canceled             7            88%
    c.  Certificates with claims changes                  0             0%

---

[1]Of the requests received through June 30, 2007, 1 proceeding was vacated per 37 CFR 1.913; and 7 requests have not yet been accorded a filing date and preprocessing of 1 request was terminated,, for failure to comply with the requirements of 37 CFR 1.915.  See Clarification of Filing Date Requirements for _Ex Parte_ and _Inter Partes_ Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

# EXHIBIT 15

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 95/000,001 | 3/2/2004 | Issue Date | 11/6/2003 | Notice of Intent | 7/27/2001 | Request | 116 | 31.17 |
| 2 | 95/000,002 | 7/5/2005 | Issue Date | 2/8/2005 | Notice of Intent | 12/17/2001 | Request | 147 | 42.60 |
| 13 | 95/000,013 | 6/27/2007 | Issue Date | 5/9/2007 | Notice of Intent | 5/15/2003 | Request | 48 | 49.40 |
| 26 | 95/000,026 | 9/26/2006 | Issue Date | 4/26/2006 | Notice of Intent | 9/3/2003 | Request | 150 | 36.77 |
| 47 | 95/000,047 | 8/22/2006 | Issue Date | 3/3/2006 | Notice of Intent | 6/24/2004 | Request | 169 | 25.93 |
| 4 | 95/000,004 | 9/2/2003 | Issue Date (Default) | 12/20/2002 | Notice of Intent | 6/13/2002 | Request | 252 | 14.63 |
| 41 | 95/000,041 | 6/19/2007 | Issue Date (Default) | 1/10/2006 | Notice of Intent | 5/3/2004 | Request | 519 | 37.53 |
| 95 | 95/000,095 | 8/1/2006 | Issue Date (Default) | 10/25/2005 | Notice of Intent | 5/23/2005 | Request | 276 | 14.27 |
| 37 | 95/000,037 | 8/15/2006 | Issue Date (patent disclaimed) | 3/22/2006 | Notice of Intent | 2/25/2004 | Request | 143 | 29.67 |
| 3 | 95/000,003 | 7/10/2007 | | | | 1/8/2002 | Request | | 66.07 |
| 5 | 95/000,005 | 7/10/2007 | | | | 7/15/2002 | Request | | 59.83 |
| 6 | 95/000,006 | 7/10/2007 | | | | 12/4/2002 | Request | | 55.20 |
| 7 | 95/000,007 | 7/10/2007 | | | | 12/16/2002 | Request | | 54.80 |
| 8 | 95/000,008 | 7/10/2007 | | | | 12/20/2002 | Request | | 54.67 |
| 9 | 95/000,009 | 7/10/2007 | | | | 1/8/2003 | Request | | 54.07 |
| 10 | 95/000,010 | 7/10/2007 | | | | 3/12/2003 | Request | | 51.93 |
| 12 | 95/000,012 | 7/10/2007 | | | | 5/8/2003 | Request | | 50.07 |
| 14 | 95/000,014 | 7/10/2007 | | | | 5/16/2003 | Request | | 49.80 |
| 15 | 95/000,015 | 7/10/2007 | | | | 5/20/2003 | Request | | 49.67 |
| 17 | 95/000,017 | 7/10/2007 | | | | 5/20/2003 | Request | | 49.67 |
| 16 | 95/000,016 | 7/10/2007 | | | | 5/21/2003 | Request | | 49.63 |
| 20 | 95/000,020 | 7/10/2007 | | | | 5/29/2003 | Request | | 49.37 |
| 18 | 95/000,018 | 7/10/2007 | | | | 5/30/2003 | Request | | 49.33 |
| 21 | 95/000,021 | 7/10/2007 | | | | 6/6/2003 | Request | | 49.13 |
| 22 | 95/000,022 | 7/10/2007 | | | | 6/6/2003 | Request | | 49.13 |
| 23 | 95/000,023 | 7/10/2007 | | | | 7/17/2003 | Request | | 47.77 |
| 24 | 95/000,024 | 7/10/2007 | | | | 7/21/2003 | Request | | 47.63 |

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25 | 95/000,025 | 7/10/2007 | | | | 8/4/2003 | Request | 47.20 |
| 27 | 95/000,027 | 7/10/2007 | | | | 10/10/2003 | Request | 45.00 |
| 28 | 95/000,028 | 7/10/2007 | | | | 11/13/2003 | Request | 43.90 |
| 29 | 95/000,029 | 7/10/2007 | | 6/27/2007 | Notice of Intent (1 claim issued) | 11/14/2003 | Request | 43.87 |
| 30 | 95/000,030 | 7/10/2007 | | | | 12/3/2003 | Request | 43.23 |
| 31 | 95/000,031 | 7/10/2007 | | | | 12/10/2003 | Request | 43.00 |
| 32 | 95/000,032 | 7/10/2007 | | | | 12/31/2003 | Request | 42.33 |
| 33 | 95/000,033 | 7/10/2007 | | | | 1/6/2004 | Request | 42.13 |
| 34 | 95/000,034 | 7/10/2007 | | | | 2/9/2004 | Request | 41.03 |
| 35 | 95/000,035 | 7/10/2007 | | | | 2/9/2004 | Request | 41.03 |
| 36 | 95/000,036 | 7/10/2007 | | | | 2/20/2004 | Request | 40.67 |
| 38 | 95/000,038 | 7/10/2007 | | | | 2/27/2004 | Request | 40.43 |
| 39 | 95/000,039 | 7/10/2007 | | | | 4/16/2004 | Request | 38.80 |
| 40 | 95/000,040 | 7/10/2007 | | | | 4/21/2004 | Request | 38.63 |
| 42 | 95/000,042 | 7/10/2007 | | | | 5/14/2004 | Request | 37.87 |
| 43 | 95/000,043 | 7/10/2007 | | | | 5/26/2004 | Request | 37.47 |
| 44 | 95/000,044 | 7/10/2007 | | | | 6/3/2004 | Request | 37.23 |
| 45 | 95/000,045 | 7/10/2007 | | | | 6/4/2004 | Request | 37.20 |
| 46 | 95/000,046 | 7/10/2007 | | | | 6/5/2004 | Request | 37.17 |
| 48 | 95/000,048 | 7/10/2007 | | | | 8/23/2004 | Request | 34.57 |
| 49 | 95/000,049 | 7/10/2007 | | | | 8/27/2004 | Request | 34.43 |
| 50 | 95/000,050 | 7/10/2007 | | | | 9/17/2004 | Request | 33.77 |
| 51 | 95/000,051 | 7/10/2007 | | | | 9/23/2004 | Request | 33.57 |
| 52 | 95/000,052 | 7/10/2007 | | | | 9/23/2004 | Request | 33.57 |
| 53 | 95/000,053 | 7/10/2007 | | | | 9/30/2004 | Request | 33.33 |
| 54 | 95/000,054 | 7/10/2007 | | | | 10/13/2004 | Request | 32.90 |
| 56 | 95/000,056 | 7/10/2007 | | | | 10/13/2004 | Request | 32.90 |
| 55 | 95/000,055 | 7/10/2007 | | | | 10/14/2004 | Request | 32.87 |
| 57 | 95/000,057 | 7/10/2007 | | | | 10/18/2004 | Request | 32.73 |
| 58 | 95/000,058 | 7/10/2007 | | | | 10/28/2004 | Request | 32.40 |

2

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 59 | 95/000,059 | 7/10/2007 | | | | 11/2/2004 | Request | 32.27 |
| 60 | 95/000,060 | 7/10/2007 | | | | 11/15/2004 | Request | 31.83 |
| 61 | 95/000,061 | 7/10/2007 | | | | 12/1/2004 | Request | 31.30 |
| 62 | 95/000,062 | 7/10/2007 | | | | 12/3/2004 | Request | 31.23 |
| 63 | 95/000,063 | 7/10/2007 | | | | 12/3/2004 | Request | 31.23 |
| 68 | 95/000,068 | 7/10/2007 | | | | 12/27/2004 | Request | 30.43 |
| 69 | 95/000,069 | 7/10/2007 | | | | 12/3/2004 | Request | 31.23 |
| 64 | 95/000,064 | 7/10/2007 | | | | 12/6/2004 | Request | 31.13 |
| 65 | 95/000,065 | 7/10/2007 | | | | 12/8/2004 | Request | 31.07 |
| 66 | 95/000,066 | 7/10/2007 | | | | 12/17/2004 | Request | 30.77 |
| 67 | 95/000,067 | 7/10/2007 | | | | 1/4/2005 | Request | 30.20 |
| 70 | 95/000,070 | 7/10/2007 | | | | 1/7/2005 | Request | 30.10 |
| 71 | 95/000,071 | 7/10/2007 | | | | 1/26/2005 | Request | 29.47 |
| 72 | 95/000,072 | 7/10/2007 | | | | 1/26/2005 | Request | 29.47 |
| 73 | 95/000,073 | 7/10/2007 | | | | 1/31/2005 | Request | 29.33 |
| 74 | 95/000,074 | 7/10/2007 | | | | 1/31/2005 | Request | 29.33 |
| 75 | 95/000,075 | 7/10/2007 | | | | 2/1/2005 | Request | 29.30 |
| 76 | 95/000,076 | 7/10/2007 | | | | 2/17/2005 | Request | 28.77 |
| 77 | 95/000,077 | 7/10/2007 | | | | 2/18/2005 | Request | 28.73 |
| 78 | 95/000,078 | 7/10/2007 | | | | 2/23/2005 | Request | 28.57 |
| 79 | 95/000,079 | 7/10/2007 | | | | 2/28/2005 | Request | 28.33 |
| 80 | 95/000,080 | 7/10/2007 | | | | 3/1/2005 | Request | 28.30 |
| 81 | 95/000,081 | 7/10/2007 | | | | 3/3/2005 | Request | 28.23 |
| 84 | 95/000,084 | 7/10/2007 | | | | 3/21/2005 | Request | 27.63 |
| 85 | 95/000,085 | 7/10/2007 | | | | 3/29/2005 | Request | 27.37 |
| 86 | 95/000,086 | 7/10/2007 | | | | 4/1/2005 | Request | 27.30 |
| 87 | 95/000,087 | 7/10/2007 | | | | 4/5/2005 | Request | 27.17 |
| 88 | 95/000,088 | 7/10/2007 | | | | 4/13/2005 | Request | 26.90 |
| 89 | 95/000,089 | 7/10/2007 | | | | 4/15/2005 | Request | 26.83 |
| 90 | 95/000,090 | 7/10/2007 | | | | 5/2/2005 | Request | 26.27 |
| 91 | 95/000,091 | 7/10/2007 | | | | 5/2/2005 | Request | 26.27 |
| 92 | 95/000,092 | 7/10/2007 | | | | 5/5/2005 | Request | 26.17 |

ALL INTER PARTES REEXAMINATIONS

| 93 | 95/000,093 | 7/10/2007 | | 6/5/2007 | [to be terminated by final judgment] | 5/17/2005 | Request | 25.77 |
|---|---|---|---|---|---|---|---|---|
| 94 | 95/000,094 | 7/10/2007 | | 6/5/2007 | [to be terminated by final judgment] | 5/19/2005 | Request | 25.70 |
| 97 | 95/000,097 | 7/10/2007 | | | | 6/6/2005 | Request | 25.13 |
| 96 | 95/000,096 | 7/10/2007 | | | | 6/10/2005 | Request | 25.00 |
| 98 | 95/000,098 | 7/10/2007 | | | | 6/10/2005 | Request | 25.00 |
| 99 | 95/000,099 | 7/10/2007 | | | | 6/13/2005 | Request | 24.90 |
| 100 | 95/000,100 | 7/10/2007 | | | | 6/28/2005 | Request | 24.40 |
| 102 | 95/000,102 | 7/10/2007 | | | | 7/28/2005 | Request | 23.40 |
| 103 | 95/000,103 | 7/10/2007 | | | | 8/1/2005 | Request | 23.30 |
| 104 | 95/000,104 | 7/10/2007 | | | | 8/12/2005 | Request | 22.93 |
| 105 | 95/000,105 | 7/10/2007 | | | | 8/17/2005 | Request | 22.77 |
| 109 | 95/000,109 | 7/10/2007 | | 5/17/2007 | Notice of Intent (all claims confirmed) | 9/6/2005 | Request | 22.13 |
| 110 | 95/000,110 | 7/10/2007 | | | | 9/8/2005 | Request | 22.07 |
| 111 | 95/000,111 | 7/10/2007 | | | | 9/16/2005 | Request | 21.80 |
| 112 | 95/000,112 | 7/10/2007 | | | | 9/20/2005 | Request | 21.67 |
| 113 | 95/000,113 | 7/10/2007 | | | | 10/19/2005 | Request | 20.70 |
| 114 | 95/000,114 | 7/10/2007 | | | | 11/4/2005 | Request | 20.20 |
| 116 | 95/000,116 | 7/10/2007 | | | | 11/23/2005 | Request | 19.57 |
| 115 | 95/000,115 | 7/10/2007 | | | | 11/28/2005 | Request | 19.40 |
| 117 | 95/000,117 | 7/10/2007 | | 7/2/2007 | Notice of Intent (default) | 12/23/2005 | Request | 18.57 |
| 118 | 95/000,118 | 7/10/2007 | | | | 1/10/2006 | Request | 18.00 |
| 119 | 95/000,119 | 7/10/2007 | | | | 1/13/2006 | Request | 17.90 |
| 120 | 95/000,120 | 7/10/2007 | | | | 1/17/2006 | Request | 17.77 |
| 121 | 95/000,121 | 7/10/2007 | | | | 1/17/2006 | Request | 17.77 |
| 122 | 95/000,122 | 7/10/2007 | | | | 1/17/2006 | Request | 17.77 |

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 123 | 95/000,123 | 7/10/2007 | | | | 1/17/2006 | Request | 17.77 |
| 124 | 95/000,124 | 7/10/2007 | | | | 1/23/2006 | Request | 17.57 |
| 125 | 95/000,125 | 7/10/2007 | | | | 1/25/2006 | Request | 17.50 |
| 126 | 95/000,126 | 7/10/2007 | | | | 1/25/2006 | Request | 17.50 |
| 127 | 95/000,127 | 7/10/2007 | | | | 1/30/2006 | Request | 17.33 |
| 128 | 95/000,128 | 7/10/2007 | | | | 2/1/2006 | Request | 17.30 |
| 130 | 95/000,130 | 7/10/2007 | | | | 2/7/2006 | Request | 17.10 |
| 129 | 95/000,129 | 7/10/2007 | | | | 2/10/2006 | Request | 17.00 |
| 131 | 95/000,131 | 7/10/2007 | | 3/6/2007 | Notice of Intent (default) | 2/14/2006 | Request | 16.87 |
| 132 | 95/000,132 | 7/10/2007 | | | | 3/3/2006 | Request | 16.23 |
| 133 | 95/000,133 | 7/10/2007 | | | | 3/9/2006 | Request | 16.03 |
| 135 | 95/000,135 | 7/10/2007 | | | | 3/13/2006 | Request | 15.90 |
| 134 | 95/000,134 | 7/10/2007 | | | | 3/14/2006 | Request | 15.87 |
| 136 | 95/000,136 | 7/10/2007 | | | | 3/14/2006 | Request | 15.87 |
| 137 | 95/000,137 | 7/10/2007 | | | | 3/20/2006 | Request | 15.67 |
| 138 | 95/000,138 | 7/10/2007 | | | | 3/23/2006 | Request | 15.57 |
| 139 | 95/000,139 | 7/10/2007 | | | | 3/29/2006 | Request | 15.37 |
| 140 | 95/000,140 | 7/10/2007 | | | | 3/30/2006 | Request | 15.33 |
| 142 | 95/000,142 | 7/10/2007 | | | | 4/10/2006 | Request | 15.00 |
| 143 | 95/000,143 | 7/10/2007 | | | | 4/13/2006 | Request | 14.90 |
| 144 | 95/000,144 | 7/10/2007 | | | | 4/14/2006 | Request | 14.87 |
| 145 | 95/000,145 | 7/10/2007 | | | | 4/24/2006 | Request | 14.53 |
| 152 | 95/000,152 | 7/10/2007 | | | | 5/10/2006 | Request | 14.00 |
| 171 | 95/000,171 | 7/10/2007 | | | | 5/19/2006 | Request | 13.70 |
| 173 | 95/000,173 | 7/10/2007 | | | | 5/26/2006 | Request | 13.47 |
| 175 | 95/000,175 | 7/10/2007 | | | | 5/26/2006 | Request | 13.47 |
| 147 | 95/000,147 | 7/10/2007 | | | | 6/7/2006 | Request | 13.10 |
| 170 | 95/000,170 | 7/10/2007 | | | | 6/9/2006 | Request | 13.03 |
| 146 | 95/000,146 | 7/10/2007 | | | | 6/19/2006 | Request | 12.70 |
| 151 | 95/000,151 | 7/10/2007 | | | | 6/20/2006 | Request | 12.67 |
| 174 | 95/000,174 | 7/10/2007 | | | | 6/21/2006 | Request | 12.63 |

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 150 | 95/000,150 | 7/10/2007 | | | | 6/26/2006 | Request | 12.47 |
| 148 | 95/000,148 | 7/10/2007 | | | | 7/10/2006 | Request | 12.00 |
| 149 | 95/000,149 | 7/10/2007 | | | | 7/11/2006 | Request | 11.97 |
| 153 | 95/000,153 | 7/10/2007 | | | | 7/17/2006 | Request | 11.77 |
| 154 | 95/000,154 | 7/10/2007 | | | | 7/17/2006 | Request | 11.77 |
| 155 | 95/000,155 | 7/10/2007 | | | | 7/17/2006 | Request | 11.77 |
| 172 | 95/000,172 | 7/10/2007 | | | | 7/18/2006 | Request | 11.73 |
| 156 | 95/000,156 | 7/10/2007 | | | | 7/19/2006 | Request | 11.70 |
| 157 | 95/000,157 | 7/10/2007 | | | | 7/19/2006 | Request | 11.70 |
| 158 | 95/000,158 | 7/10/2007 | | | | 7/21/2006 | Request | 11.63 |
| 160 | 95/000,160 | 7/10/2007 | | | | 7/28/2006 | Request | 11.40 |
| 161 | 95/000,161 | 7/10/2007 | | | | 7/28/2006 | Request | 11.40 |
| 168 | 95/000,168 | 7/10/2007 | | | | 7/31/2006 | Request | 11.33 |
| 169 | 95/000,169 | 7/10/2007 | | | | 7/31/2006 | Request | 11.33 |
| 167 | 95/000,167 | 7/10/2007 | | | | 8/7/2006 | Request | 11.10 |
| 166 | 95/000,166 | 7/10/2007 | | | | 8/8/2006 | Request | 11.07 |
| 177 | 95/000,177 | 7/10/2007 | | | | 9/5/2006 | Request | 10.17 |
| 176 | 95/000,176 | 7/10/2007 | | 5/22/2007 | Notice of Intent (default) | 9/6/2006 | Request | 10.13 |
| 178 | 95/000,178 | 7/10/2007 | | | | 9/15/2006 | Request | 9.83 |
| 163 | 95/000,163 | 7/10/2007 | | | | 9/18/2006 | Request | 9.73 |
| 164 | 95/000,164 | 7/10/2007 | | | | 9/18/2006 | Request | 9.73 |
| 179 | 95/000,179 | 7/10/2007 | | | | 9/18/2006 | Request | 9.73 |
| 182 | 95/000,182 | 7/10/2007 | | | | 9/20/2006 | Request | 9.67 |
| 162 | 95/000,162 | 7/10/2007 | | | | 9/21/2006 | Request | 9.63 |
| 165 | 95/000,165 | 7/10/2007 | | | | 9/21/2006 | Request | 9.63 |
| 180 | 95/000,180 | 7/10/2007 | | | | 9/28/2006 | Request | 9.40 |
| 181 | 95/000,181 | 7/10/2007 | | | | 9/29/2006 | Request | 9.37 |
| 183 | 95/000,183 | 7/10/2007 | | | | 10/4/2006 | Request | 9.20 |
| 184 | 95/000,184 | 7/10/2007 | | | | 10/4/2006 | Request | 9.20 |
| 186 | 95/000,186 | 7/10/2007 | | | | 10/11/2006 | Request | 8.97 |
| 185 | 95/000,185 | 7/10/2007 | | | | 10/12/2006 | Request | 8.93 |

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 190 | 95/000,190 | 7/10/2007 | | | 10/12/2006 | Request | 8.93 |
| 192 | 95/000,192 | 7/10/2007 | | | 10/12/2006 | Request | 8.93 |
| 187 | 95/000,187 | 7/10/2007 | | | 10/13/2006 | Request | 8.90 |
| 188 | 95/000,188 | 7/10/2007 | | | 10/13/2006 | Request | 8.90 |
| 189 | 95/000,189 | 7/10/2007 | | | 10/13/2006 | Request | 8.90 |
| 191 | 95/000,191 | 7/10/2007 | | | 10/13/2006 | Request | 8.90 |
| 193 | 95/000,193 | 7/10/2007 | | | 10/17/2006 | Request | 8.77 |
| 194 | 95/000,194 | 7/10/2007 | | | 10/24/2006 | Request | 8.53 |
| 195 | 95/000,195 | 7/10/2007 | | | 10/30/2006 | Request | 8.33 |
| 196 | 95/000,196 | 7/10/2007 | | | 11/15/2006 | Request | 7.83 |
| 197 | 95/000,197 | 7/10/2007 | | | 11/22/2006 | Request | 7.60 |
| 198 | 95/000,198 | 7/10/2007 | | | 11/22/2006 | Request | 7.60 |
| 200 | 95/000,200 | 7/10/2007 | | | 11/29/2006 | Request | 7.37 |
| 199 | 95/000,199 | 7/10/2007 | | | 12/1/2006 | Request | 7.30 |
| 201 | 95/000,201 | 7/10/2007 | | | 12/8/2006 | Request | 7.07 |
| 202 | 95/000,202 | 7/10/2007 | | | 12/13/2006 | Request | 6.90 |
| 203 | 95/000,203 | 7/10/2007 | | | 12/13/2006 | Request | 6.90 |
| 204 | 95/000,204 | 7/10/2007 | | | 12/13/2006 | Request | 6.90 |
| 205 | 95/000,205 | 7/10/2007 | | | 12/13/2006 | Request | 6.90 |
| 206 | 95/000,206 | 7/10/2007 | | | 12/13/2006 | Request | 6.90 |
| 216 | 95/000,216 | 7/10/2007 | | | 12/13/2006 | Request | 6.90 |
| 207 | 95/000,207 | 7/10/2007 | | | 12/15/2006 | Request | 6.83 |
| 208 | 95/000,208 | 7/10/2007 | | | 12/20/2006 | Request | 6.67 |
| 209 | 95/000,209 | 7/10/2007 | | | 12/21/2006 | Request | 6.63 |
| 211 | 95/000,211 | 7/10/2007 | | | 1/8/2007 | Request | 6.07 |
| 212 | 95/000,212 | 7/10/2007 | | | 1/9/2007 | Request | 6.03 |
| 213 | 95/000,213 | 7/10/2007 | | | 1/9/2007 | Request | 6.03 |
| 214 | 95/000,214 | 7/10/2007 | | | 1/12/2007 | Request | 5.93 |
| 215 | 95/000,215 | 7/10/2007 | | | 1/12/2007 | Request | 5.93 |
| 218 | 95/000,218 | 7/10/2007 | | | 1/23/2007 | Request | 5.57 |
| 217 | 95/000,217 | 7/10/2007 | | | 1/31/2007 | Request | 5.33 |
| 219 | 95/000,219 | 7/10/2007 | | | 1/31/2007 | Request | 5.33 |

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 224 | 95/000,224 | 7/10/2007 | | | | 1/31/2007 Request | 5.33 |
| 225 | 95/000,225 | 7/10/2007 | | | | 1/31/2007 Request | 5.33 |
| 223 | 95/000,223 | 7/10/2007 | | | | 2/1/2007 Request | 5.30 |
| 220 | 95/000,220 | 7/10/2007 | | | | 2/2/2007 Request | 5.27 |
| 221 | 95/000,221 | 7/10/2007 | | | | 2/2/2007 Request | 5.27 |
| 222 | 95/000,222 | 7/10/2007 | | | | 2/2/2007 Request | 5.27 |
| 226 | 95/000,226 | 7/10/2007 | | | | 2/2/2007 Request | 5.27 |
| 230 | 95/000,230 | 7/10/2007 | | | | 2/2/2007 Request | 5.27 |
| 227 | 95/000,227 | 7/10/2007 | | | | 2/9/2007 Request | 5.03 |
| 231 | 95/000,231 | 7/10/2007 | | | | 2/9/2007 Request | 5.03 |
| 228 | 95/000,228 | 7/10/2007 | | | | 2/12/2007 Request | 4.93 |
| 229 | 95/000,229 | 7/10/2007 | | | | 2/15/2007 Request | 4.83 |
| 232 | 95/000,232 | 7/10/2007 | | | | 2/20/2007 Request | 4.67 |
| 233 | 95/000,233 | 7/10/2007 | | | | 2/20/2007 Request | 4.67 |
| 234 | 95/000,234 | 7/10/2007 | | | | 2/26/2007 Request | 4.47 |
| 235 | 95/000,235 | 7/10/2007 | | | | 2/27/2007 Request | 4.43 |
| 236 | 95/000,236 | 7/10/2007 | | | | 2/27/2007 Request | 4.43 |
| 237 | 95/000,237 | 7/10/2007 | | | | 3/6/2007 Request | 4.13 |
| 238 | 95/000,238 | 7/10/2007 | | | | 3/8/2007 Request | 4.07 |
| 239 | 95/000,239 | 7/10/2007 | | | | 3/14/2007 Request | 3.87 |
| 240 | 95/000,240 | 7/10/2007 | | | | 3/14/2007 Request | 3.87 |
| 243 | 95/000,243 | 7/10/2007 | | | | 3/19/2007 Request | 3.70 |
| 241 | 95/000,241 | 7/10/2007 | | | | 3/20/2007 Request | 3.67 |
| 242 | 95/000,242 | 7/10/2007 | | | | 3/21/2007 Request | 3.63 |
| 246 | 95/000,246 | 7/10/2007 | | | | 3/22/2007 Request | 3.60 |
| 244 | 95/000,244 | 7/10/2007 | | | | 3/23/2007 Request | 3.57 |
| 245 | 95/000,245 | 7/10/2007 | | | | 3/23/2007 Request | 3.57 |
| 248 | 95/000,248 | 7/10/2007 | | | | 3/23/2007 Request | 3.57 |
| 249 | 95/000,249 | 7/10/2007 | | | | 3/28/2007 Request | 3.40 |
| 247 | 95/000,247 | 7/10/2007 | | | | 3/30/2007 Request | 3.33 |
| 250 | 95/000,250 | 7/10/2007 | | | | 4/4/2007 Request | 3.20 |
| 251 | 95/000,251 | 7/10/2007 | | | | 4/9/2007 Request | 3.03 |

8

ALL INTER PARTES REEXAMINATIONS

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 253 | 95/000,253 | 7/10/2007 | | | | 4/11/2007 | Request | 2.97 |
| 252 | 95/000,252 | 7/10/2007 | | | | 4/13/2007 | Request | 2.90 |
| 254 | 95/000,254 | 7/10/2007 | | | | 4/18/2007 | Request | 2.73 |
| 255 | 95/000,255 | 7/10/2007 | | | | 4/23/2007 | Request | 2.57 |
| 256 | 95/000,256 | 7/10/2007 | | | | 4/25/2007 | Request | 2.50 |
| 260 | 95/000,260 | 7/10/2007 | | | | 5/7/2007 | Request | 2.10 |
| 261 | 95/000,261 | 7/10/2007 | | | | 5/7/2007 | Request | 2.10 |
| 258 | 95/000,258 | 7/10/2007 | | | | 5/8/2007 | Request | 2.07 |
| 259 | 95/000,259 | 7/10/2007 | | | | 5/10/2007 | Request | 2.00 |
| 262 | 95/000,262 | 7/10/2007 | | | | 5/10/2007 | Request | 2.00 |
| 263 | 95/000,263 | 7/10/2007 | | | | 5/17/2007 | Request | 1.77 |
| 264 | 95/000,264 | 7/10/2007 | | | | 5/17/2007 | Request | 1.77 |
| 265 | 95/000,265 | 7/10/2007 | | | | 5/29/2007 | Request | 1.37 |
| 267 | 95/000,267 | 7/10/2007 | | | | 6/5/2007 | Request | 1.17 |
| 257 | 95/000,257 | 7/10/2007 | | | | 6/8/2007 | Request | 1.07 |
| 268 | 95/000,268 | 7/10/2007 | | | | 6/19/2007 | Request | 0.70 |
| 269 | 95/000,269 | 7/10/2007 | | | | 6/21/2007 | Request | 0.63 |
| 271 | 95/000,271 | 7/10/2007 | | | | 6/25/2007 | Request | 0.50 |
| 270 | 95/000,270 | 7/10/2007 | | | | 6/26/2007 | Request | 0.47 |
| 272 | 95/000,272 | 7/10/2007 | | | | 6/27/2007 | Request | 0.43 |
| 273 | 95/000,273 | 7/10/2007 | | | | 7/10/2007 | Request | 0.00 |
| 266 | 95/000,266 | 7/10/2007 | | | | 7/11/2007 | Request | -0.03 |
| 274 | 95/000,274 | 7/10/2007 | | | | 7/11/2007 | Request | -0.03 |

202

All over 24 months
| | |
|---|---|
| Average | 36.68 |
| 3rd Quartile | 43.55 |

Issued
| | |
|---|---|
| Average | 31.33 |
| 3rd Quartile | 37.53 |
| Max | 49.40 |

9

ALL INTER PARTES REEXAMINATIONS

Issued (Non-Default)
| | |
|---|---|
| Average | 37.17 |
| 3rd Quartile | 42.60 |
| Max | 49.40 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11 | 95/000,011 | 5/22/2003 | Vacated | | | 4/17/2003 | Request |
| 19 | 95/000,019 | 8/20/2003 | Vacated (due to litigation) | | | 6/3/2003 | Request |
| 82 | 95/000,082 | 5/11/2005 | Denied | | | 3/7/2005 | Request |
| 83 | 95/000,083 | 10/5/2005 | Denied | | | 3/7/2005 | Request |
| 101 | 95/000,101 | 2/22/2006 | Denied | | | 6/30/2005 | Request |
| 106 | 95/000,106 | 6/27/2007 | Denied | | | 8/22/2005 | Request |
| 107 | 95/000,107 | 2/22/2006 | Denied | | | 8/22/2005 | Request |
| 108 | 95/000,108 | 2/22/2006 | Denied | | | 8/30/2005 | Request |
| 141 | 95/000,141 | 6/15/2007 | Denied | | | 4/3/2006 | Request |
| 159 | 95/000,159 | 7/10/2007 | Denied | | | 6/2/2006 | Request |
| 210 | 95/000,210 | 3/5/2007 | Vacated (patent too early) | | | 1/3/2007 | Request |

% granted          96.35%

10

# EXHIBIT 16



## THIRTY-FOUR (PLUS) PATENT TOPICS OF CURRENT INTEREST

Harold C. Wegner

©2004 Foley & Lardner LLP
All Rights Reserved

# THIRTY-FOUR [PLUS] PATENT TOPICS OF CURRENT INTEREST*

*Harold C. Wegner\*\**

This paper collects thirty-four different topics on "patents" which include some related intellectual property areas such as a current Supreme Court trademark case and a European Court of Justice referral from the Dutch Supreme Court on transborder enforcement. But, principally, the matters referred to here are in the mainline patent arena, and largely issues relating to practice at the U.S. Patent and Trademark Office (PTO) and issues before the Federal Circuit. There is no attempt to organize the subjects in terms of necessary importance:

(1) Supreme Court Cert. Decision on Patent Antitrust January 26, 2004

(2) Supreme Court Decision on Patent Antitrust based upon Foreign Activities

(3) Supreme Court Trademark "Fair Use" Decision Expected By June 2004

(4) European Court of Justice to Consider Trans-Border Patent Enforcement

(5) PTO Scanners Scandal – The Lost, Incomplete and Hidden Official Files

(6) PTO Proposed Rules to Split, Recertify Patent Bar

(7) Ban on Patenting Certain "Living" Inventions Passes Congress

(8) The Eolas Kunin-Ordered Reexamination

(9) New Chief Judge and Three Senior-Eligible Members

(10) The FTC Patent System Report – Toward APR

(11) Violation of PTO Rules as Basis for Invalidity *(Dethmers)*

(12) Does Inherent anticipation require *appreciation* of the inherent result? *(Toro)*

(13) Extrinsic Evidence Trumps Plain Meaning – "Acid" is a "Salt"

(14) Formal opinion of counsel in determination of willfulness - *Knorr-Bremse*

(15) "Doctrine" of "prosecution disclaimer" *Omega*

(16) "Disclosure-dedication" rule to bar doctrine of equivalents

(17) *Enzo* (continued) *Noelle v. Lederman*

(18) Experimental Use Right Repudiated by One Judge

(19) Product-by-process claim scope for infringement (con'd)

(20) *Hilmer* Violation of the Paris Convention

(21) Foreign-Published PCT Patent-Defeating Date via § 102(g)

(22) Enablement of *Different* Invention as an Anticipation

(23) High Allowance Rate in Reexaminations

(24) Routine 5+ Year Pendency for Contested Reexminations

(25) Ten Year Pendency for "Important" Reexaminations

(26) "Means" Claims Penalties for the Patentee

(27) Is Transborder Import or Export of "Information" Patent Infringement?

(28) Claim Interpretation – Contemporaneous dictionaries

(29) Dictionary definitions in overall context

(30) "On Sale" Bar – Process versus Product

* An earlier version of this paper was captioned, **FEDERAL CIRCUIT SPLITS, CONTROVERSIES AND POLICIES ... ADDING FUEL TO THE FIRE OF PATENT UNPREDICTABILITY.** One version of this paper was presented at a Patent Roundtable moderated by Sharon Barner, Foley & Lardner, at the Foley & Lardner Chicago offices, October 8, 2003.

The current version is an update to reflect more recent developments; the last updating of this version took place on **January 23, 2004.**

\*\*Former Director of the Intellectual Property Law Program and Professor of Law, George Washington University Law School. Foley & Lardner. **hwegner @ foley.com   www.foley.com**

(31) PTO "Alice in Wonderland" Petitions Policy

(32) Federal Circuit "holdings" that are really dicta

(33) Inequitable conduct "materiality" expanded in 2003 *(Ulead)*

(34) *Festo!* (2003) – What it means

# I.  IP AND IP-RELATED SUPREME COURT CURRENT ISSUES

The current term of the Supreme Court will end in June 2004 with *no* intellectual property decisions, a welcome relief for many in the intellectual property community after a seeming flurry of activity over the past several years.

Two cases of interest to the international intellectual property community *will* in all likelihood be decided by the end of June 2004 that relate to domestic discovery for use in a foreign tribunal, *Intel Corp. v. Advanced Micro Devices, Inc. v. Intel Corp.*, App. No. 02-572, and domestic antitrust liability based upon foreign activities, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, No. 03-724.  See § A, *Cases with a Decision Likely by the End of June 2004*.

While the bulk of certiorari petitions that will impact the court's docket for the October 2004 term that runs through June 2005 are yet to be decided (or even filed), there are two cases on the radar screen for the coming term.  The court has already agreed to hear a trademark fair use case, *KP Permanent Make-Up, Inc. v. Lasting Impression Inc.*, App. No. 03-409.  The court has deferred a decision on grant of certiorari in the "reverse payment" patent antitrust case, *Andrx Pharmaceuticals, Inc. v. Kroger Co.*, App. No. 03-779, pending consideration of a yet to be filed invited brief of the Solicitor General expressing the views of the United States.  See § B, *Cases that may be decided by June 2005.*

## A.  Cases with a Decision Likely by the End of June 2004

There are no intellectual property cases that will be argued in the October 2003 term that concludes at the end of June 2004.  However, there are two interesting cases involving foreign activities that should be closely followed, *Intel Corp. v. Advanced Micro Devices, Inc. v. Intel Corp.*, App. No. 02-572 (scope of domestic discovery for use in foreign proceedings), and  *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, No. 03-724 (testing the reach of American antitrust law to foreign activities).  Both cases are set for oral argument in the second half of April 2004; a decision in each case is expected before the court adjourns near the end of June 2004.

### 1.  Domestic Discovery for Foreign Tribunal (*Intel*)

In a case set for argument April 20, 2004, *Intel Corp. v. Advanced Micro Devices, Inc. v. Intel Corp.*, Supreme Court App. No. 02-572, the court considers opening the door to United States discovery proceedings to obtain evidence to be used in a *foreign* tribunal, here, the Commission of the European Communities.

The brief of the Solicitor General as amicus curiae for the United States is found at http://www.usdoj.gov/osg/briefs/2003/3mer/1ami/2003-0572.mer.ami.html.  There, under "Questions Presented", he states that:

"Section 1782 of Title 28 of the United States Code provides that a district court may order the production of documents or testimony 'for use in a proceeding in a foreign or international tribunal' upon request 'by a foreign or international tribunal or upon the application of any interested person.' The questions presented are:

"1. Whether Section 1782 authorizes a district court to order production of materials, for use in a foreign tribunal, when the foreign tribunal itself would not compel production of the materials.

"2. Whether Section 1782 authorizes production of materials for presentation in an anti-competitive practices investigation by the Commission of the European Communities, on the theory that the investigation will lead to 'a proceeding in a foreign or international tribunal.'

"3. Whether, for purposes of Section 1782, a party that files a complaint with the Commission of the European Communities is an 'interested person.'"

The opinion below is reported as *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 665 (9th Cir. 2002)("In a question of first impression with respect to the European Community, we must determine the scope and reach of 28 U.S.C. § 1782, which permits domestic discovery for use in foreign proceedings. We face two questions: (1) whether the proceeding for which discovery is sought qualifies as 'foreign or

international tribunal'; and (2) if so, whether Section 1782 requires a showing that the information sought would be discoverable or admissible in that proceeding. Because we conclude that the proceeding for which the discovery at issue is sought meets the statutory definition, we reverse the district court. *** [W]e determine that Section 1782 does not impose a threshold requirement that the material also be discoverable in the foreign court.")

## 2. Antitrust (*Hoffmann-La Roche v. Empagran*)

Oral argument is set for April 26, 2004, in *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, No. 03-724, that tests the reach of American antitrust law to foreign activities; a decision is expected by the end of June 2004.

A summary of the case from The New York Times says that the Second Circuit "ruled that a trial could go forward in a suit brought by foreign purchasers of vitamins against a group of pharmaceutical companies accused of operating as an international cartel to fix the prices of bulk vitamins.

"The defendants [comprise] manufacturers and distributors of vitamins for use by humans and animals. Some of the companies earlier pleaded guilty to criminal antitrust charges in the United States, paying federal fines of $900 million; paid civil penalties imposed by the European Union and individual foreign countries; and settled other lawsuits, all related to the vitamin price fixing.

"The five plaintiffs, representing a class of all foreign purchasers of the defendants' vitamins, are in Australia, Ecuador, Panama and Ukraine.

"They are seeking triple damages based on their purchases outside the United States.

"The Federal District Court [in New York] dismissed the suit on the grounds that 'persons injured abroad in transactions otherwise unconnected with the United States' could not invoke the Sherman Antitrust Act. The United States Court of Appeals for the District of Columbia Circuit, in a ruling last January, reinstated the suit. It held that as long as 'someone, even if not the foreign plaintiff who is before the court' can claim injury from a defendant's antitrust violation in the United States, foreign plaintiffs can also sue that defendant for the purely foreign effects of its conduct as well. The case has not yet gone to trial.

"There is no dispute that the Sherman Act applies to foreign conduct that has substantial effects on United States commerce. The question in this case *** concerns the degree to which a 1982 amendment to the Sherman Act, the Foreign Trade Antitrust Improvements Act, broadened the law's coverage.

The administration's position is that the appeals court went too far, overlooking the law's focus on the 'domestic effects of anticompetitive conduct' and bringing about a 'sweeping change' that Congress did not intend. The administration argued to the appeals court that the 1982 amendment extended the Sherman Act's jurisdiction only to those plaintiffs, no matter where they are, who themselves can claim injury from the domestic effects of an antitrust conspiracy.

* * *

"The German government has taken an interest in the case and filed a brief supporting the appeal. The brief said that expanding 'the extraterritorial reach' of United States antitrust law would interfere with other nations' efforts to carry out their own antitrust policies." THE NEW YORK TIMES, December 16, 2003, http://www.nytimes.com/2003/12/16/business/16bizcourt.html.

## B. Cases that may be decided by June 2005

Undoubtedly, there will be a great deal of petitions filed and considered that may place additional cases on the Court's calendar for the coming term. But, already, there are two intellectual property cases on the horizon for the October 2004 term, one in which cert. *has* been granted and another where the decision on grant of certiorari has been deferred pending receipt by the court of a brief from the Solicitor General it has invited for the views of the United States. Cert. has *already* been granted in a case dealing with trademark fair use, *KP Permanent Make-Up, Inc. v. Lasting Impression Inc.*, App. No. 03-409; a decision on certiorari is yet to be made in the "reverse payment" patent antitrust case, *Andrx Pharmaceuticals, Inc. v. Kroger Co.*, App. No. 03-779.

## 1. "Fair Use" Trademark Defense (*KP Permanent Make-Up*)

The Supreme Court has granted certiorari in *KP Permanent Make-Up, Inc. v. Lasting Impression Inc.*, App. No. 03-409, where the issue raised is: "Does the classic fair use defense to trademark infringement require

the party asserting the defense to demonstrate an absence of likelihood of confusion, as is the rule in the 9th Circuit, or is fair use an absolute defense, irrespective of whether or not confusion may result, as is the rule in other Circuits?"

## 2. Patent Settlements as an Antitrust Violation (Andrx)

Now pending before the Supreme Court is a petition for grant of certiorari in the "reverse payment" drug litigation settlement case, *Andrx Pharmaceuticals, Inc. v. Kroger Co.*, Supreme Court no. 03-779, *proceedings below sub nom In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003). On January 26, 2004, the Supreme Court deferred consideration of the petition to gain more information by asking the Solicitor General to favor the court with its opinion on whether to grant certiorari vel non. Even if the court eventually does grant certiorari, a hearing in the case would not take place before the October 2004 term (with a decision by June 2005).

*Andrx* is the tip of the settlement iceberg and relates also to a pro-vacatur policy of the Federal Circuit:

### a. Act One – Vacatur at the Appellate Level as "Moot"

The Supreme Court condemned vacatur of invalidity rulings where the Federal Circuit affirmed a noninfringement ruling in *Cardinal Chemical Co. v. Morton Intern., Inc.*, 508 U.S. 83 (1993). This policy had long pre-dated *Cardinal Chemical*, a fact noted by the Supreme Court itself as one that was at best highly controversial: "The Federal Circuit's practice has been the subject of a good deal of scholarly comment, all of which has consistently criticized the practice. See R. Harmon, *Patents and The Federal Circuit* 551-554 (2d ed. 1991); Wegner, *Morton, The Dual Loser Patentee: Frustrating Blonder-Tongue*, 74 J.Pat. & Tm.Off.Soc. 344 (1992) ('A dual loser patentee at a trial court who fails both on infringement and validity and then loses at the Federal Circuit on infringement is given the judicial blessing of that appellate tribunal to sue and sue again against third parties, to the extent the invalidity ruling is vacated under. *Vieau*'); Re & Rooklidge, *Vacating Patent Invalidity Judgments Upon an Appellate Determination of Noninfringement*, 72 J.Pat. & Tm.Off.Soc. 780 (1990). See also Donofrio, *The Disposition of Unreviewable Judgments by the Federal Circuit*, 73 J.Pat. & Tm.Off.Soc. 462, 464 (1991) ('[T]he Federal Circuit's present practice of vacating such judgments [even if it correctly considers them unreviewable] should not continue because it permits litigants to destroy the conclusiveness of invalidity holdings')." *Cardinal Chemical Co.,* 508 U.S. at 102 n. 25.

Vacatur is antithetical to the policy of weeding out invalid patents that the Supreme Court had endorsed in *Lear v. Adkins*, 395 U.S. 653 (1969). There, it judicially encouraged licensee challenges to validity attacks, discounting the patentee's equities which "do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. *** If [licensees] are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest ***." Lear, 395 U.S. at 670-71. So, too, in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 345 (1971)(quoting Lear, 395 U.S. at 668), the Court underscored "[t]he principle that 'federal law requires, that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent[.]'". Again in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 159-60 (1989)(quoting Lear, 395 U.S. at 668), the court emphasized once again "that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." In that same opinion, the court reemphasized the "strong federal policy favoring free competition in ideas which do not merit patent protection." *Bonito Boats*, 489 U.S. at 142 (quoting Lear, 395 U.S. at 656).

### b. Act Two – Settlement Vacatur on Demand

Despite *Cardinal Chemical*, the Federal Circuit continued to value settlements of patent litigation even at the cost of removal of a trial court's final ruling of invalidity of a patent. The idea that a patentee could revalidate an already invalid patent through a settlement that demanded vacatur – and that the Federal Circuit would accept a petition for vacatur merely to facilitate a settlement – was anathema to the philosophy expressed in Cardinal Chemical, and was almost thrown out in one case where certiorari was granted, but where the case was ultimately dismissed as procedurally inappropriate for review, *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27 (1993). Nevertheless, quite promptly, the Supreme Court overruled the Federal Circuit's "vacatur on demand" policy in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).

4

### c. Act Three – "Reverse Payment" Vacatur

The ultimate conflict with the philosophy of *Cardinal Chemical* and *U.S. Bancorp.* is for a losing (or soon to lose) patentee to pay literally tens of millions of dollars for a settlement to the infringer where the infringer agrees to stay out of the monopoly market of the patentee for a term of years as part of such a "reverse payment". While the question of vacatur of an opinion of a trial court was under active consideration in the courts but before the *Bancorp.* Supreme Court opinion that overruled the policy of vacatur of the Federal Circuit, the Federal Circuit granted vacatur in one of the "reverse payment" cases. See *Imperial Chemical Industries, PLC v. Heumann Pharma GmbH & Co.*, 991 F.2d 811 (Table), 1993 WL 118931 (Fed.Cir. 1993)(Michel, J.)(non-precedential).

In the *Schering* case (*In re Schering-Plough Corp.*, Docket No. 9297 (FTC 2003)), the Federal Trade Commission found that the "reverse payment" settlement of the particular patent litigation whereby the pioneer patentee paid the generic $ 60 million to remain off the market for a period of time constituted a violation of Section 1 of the Sherman Act (as well as an "unfair" practice under its own FTC Section 5). The FTC noted a split amongst the several courts, citing first "the Cardizem CD Antitrust Litigation, 332 F.3d 896, 908 (6th Cir. 2003), [where] the court found that it was per se illegal for a pioneer drug company to pay money to a generic manufacturer in return for a commitment to delay entry." It noted a contrary trend, citing "*Valley Drug Co. v. Geneva Pharmaceuticals Inc.*, 344 F.3d 1294 (11th Cir. 2003) (reversing the district court), and [ ] *Ciprofloxacin Hydrochloride Antitrust Litigation*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003), [which] expressly considered contrary authority and declined to apply the per se label. See also *In re Tamoxifen Citrate Antitrust Litig.*, 262 F. Supp.2d 17 (E.D.N.Y. 2003)."

## II.  TRANS-BORDER PATENT ENFORCEMENT (Roche Nederland)

Transborder patent enforcement has been a major issue for more than a decade, starting with some once controversial decisions from the courts in Holland. Again in the same country in *Roche Nederland B.V. v. Primus*, Netherlands Supreme Court (December 19, 2003), critical issues for transborder patent enforcement have not been *referred* to the European Court of Justice.

The following is an extract from *Roche Nederland B.V. v. Primus* that refers two questions to the European Court of Justice:

"The questions concerning interpretation of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (the Brussels Convention), for which the [Dutch] Supreme Court *** deems answers by the European Court of Justice necessary for its decision regarding the cassation appeal, are the following:

"A.  Does a connection, as required for the applicability of Article 6, preamble and under 1, of the Brussels Convention, exist between legal claims regarding patent infringement which a holder of a European patent has filed against a respondent located in the State of the requested court, on the one hand, and against different respondents located in other Contracting States than that of the requested court, on the other hand, as to which the patentee asserts that they are infringing that patent in one or more other Contracting States?

"B.  If Question A is not or not automatically answered in the affirmative, under which circumstances is such a connection present and is it, for example, relevant

"- whether the respondents are part one and the same group of companies?

"- whether the respondents are acting jointly, based on a common policy plan, and, if so, whether the place from where that policy plan emanates is relevant?

"- whether the alleged infringing acts of the various respondents are the same or nearly the same?"

## III.  PTO PRACTICE

### A.  New Law Bans *Granting* Certain Living Invention Patents

### 1.  Overview

Congress has passed the so-called "Weldon Law", a "right to life"-based ban on patenting certain "living" inventions. (By the time of release of this paper, President George W. Bush was expected to sign the legislation into law.)

The legislation bars funding to grant patents to a human organism, *per se*, raising overtones of interference with patenting in the area of stem cell research and other areas.

The new law should have no effect on the examination process because it only bars the use of government money to grant *patents* to proscribed inventions, but does not change the standards of patentability under 35 USC §§ 101, 102, 103, 112. Presumably, any patent application to proscribed subject matter that has *already been filed* (or will be filed) that has not yet been granted as a patent will not be published as a patent – because the PTO is not authorized to use any funds for such purpose under the Weldon Law. But, if the application remains pending past September 30, 2004 (or whenever the current funding law is replaced by a new law for the next fiscal year), then – presumably – funding *will* be available to permit patenting inventions falling under the scope of the Weldon Law.

It will be interesting to see whether BIO, the AIPLA and the IPO will provide a better approach to dealing with this issue in the coming months to render moot any continuation of the Weldon Law.

### 2. Background

As first introduced in the House of Representatives in 2003, the new law states that "[n]one of the funds appropriated [by Congress] may be used to issue patents on claims directed to or encompassing a human organism." Amendment offered by Rep. Weldon (R-Fla.), 149 Cong.Rec. H7248-02, H7274 (July 22, 2003).

The Weldon understanding of patent law is nascent, at best, and fundamentally miscomprehends the patent right as an exclusive right to *do* something with a patented invention. He states that "[a] patent on [ ] human organisms would last for 20 years. We should not allow [rogue] researchers to gain financially by granting them *an exclusive right to practice such ghoulish research.*" *Id.*; emphasis added.

But, obviously, a patent is only a *negative* right to *exclude others* from practicing an invention. It gives the rogue researcher no license, no right to *practice* his Transylvanian-like trade or in any way to anything contrary to the laws set forth by other bodies such as Health and Human Services. Thus, "[i]t is an elemental principle of patent law that a patent grants no more than the legal right to exclude others from making, using or selling the thing patented. It is no guarantee of anything and gives no one a right to make, use or sell anything. The public, therefore, is in no way protected either by the granting or withholding of a patent." *In re Hartop*, 311 F.2d 249, 263 (CCPA 1962).

### 3. A Dangerous Global Precedent

The major harm from the Weldon Law may be found internationally, as foreign governments that are traditionally hostile to patents may see the American usage of an *appropriations* bill – not a "patent" law – as a convenient tool to emasculate the patent laws that have been forced upon the developing world in the aftermath of the Trade Related Aspects of Intellectual Property (TRIPS) of the World Trade Organization (WTO).

The United States *needs* to set a leadership example for the world in promoting the *broad,* non-exclusionary scope of patent-eligible subject matter. It is extremely important that in the appropriations bill for the *next* fiscal year (to commence October 1, 2004), that the Weldon provision not remain.

As the world's technology leader, American high technology leadership is at stake: If we cannot sell our products in foreign markets, we force all the costs of development onto domestic consumers and industry. If the United States as the leading proponent of strong patent rights - up until now - is able to enact legislation that restricts biotechnology research, then the *anti*-patent countries of the developing world are sure to jump on the Weldon Law bandwagon. But, instead of merely banning patents dealing with "humans" they may as well ban patents on *any* animals. Furthermore, they will be within the literal scope of the W.T.O. and TRIPS in doing so, as there is an express caveat permitting any country of the W.T.O. to TRIPS, to "exclude from patentability * * * animals other than micro-organisms * * *." TRIPS Art. 27(3)(b). But, instead of merely excluding human organisms, developing countries could just as easily go much further.

### 4. No Mechanism to *Reject* a Patent Claim

Interestingly, there is no mechanism in the Weldon Law to *reject* a patent application or claim. Thus, is a new patent application to be screened for a claim that is "directed" to or "encompasses" the proscribed subject matter? What precisely is the *scope* of the proscribed subject matter? Is a GS-3 clerk to make this determination in the mail room and deny examination? Or, does the patent application go to a regular examiner for examination? The Examiner has no *statutory* authority to deny a claim under the Weldon Law. Is the patent to be allowed and then not published and patented? Under what statutory basis? Where the PTO refuses to examine or process a patent is there any route of appeal to the Board of Patent Appeals and Interferences as the equivalent of a final rejection? *In re Haas*, 486 F.2d 1053 (CCPA 1973). Or, is the route

a mandamus action to the Alexandria division of the Eastern District of Virginia - followed ultimately by an appeal to the *Federal Circuit*? What precisely is a claim which is "directed to or encompassing a human organism"? "Directed to" and "encompassing" are not terms of art in the patent law?

## B. The *Eolas* Kunin-Ordered Reexamination

*Update* [March 6, 2004]:  Several press reports today have indicated that (a) the PTO has "invalidated" the Eolas patent, and also that as a result of the PTO-Ordered Reexamination, that (b) the trial judge has lifted his injunction against Microsoft because of the pending reexamination.

The PTO has *not* invalidated the Eolas patent, but issued a first office action as part of a process that could well take ten (10) years, if past **reexaminations in controversial and important cases is a guide (discussed *infra*).**  The report that follows was released several months ago and has *not* been revised to take into account this update.

The Blackberry Patent Litigation *Déjà Vu*: Deputy Commissioner Kunin has ordered the *Sua Sponte* Reexamination of the *Eolas* Patent Based upon an industry "outcry":

### 1. The *Blackberry* Backdrop

Following in the wake of the *Blackberry Patent Litigation*, the PTO has intervened in the $ 521 million damages Eolas case that has yet to reach the Federal Circuit.  In both cases, *after* trial but before completion of the judicial process, the PTO has *sua sponte* granted a reexamination order in parallel with the normal judicial process that had yet to run its course.  In the *Eolas* case one finds the substitution of an *ad hoc* PTO policy group bringing forth a prior art rejection responsive to a political lobbying or other pressure, presuming to trump the many thousands of attorney hours and millions of dollars that Microsoft undoubtedly has spent in crafting what their expert lead counsel considers the best possible attack against the Eolas patent.  *See NTP, Inc. v. Research in Motion, Ltd.,* Federal Circuit App. No. 03-1615 (Blackberry Patent Litigation); *Eolas Technologies, Inc. v. Microsoft Corp.,* 274 F.Supp.2d 972 (N.D. Ill. 2003).

### 2. Arbitrary Standard for Sua Sponte Reexamination

The PTO has established a basis for arbitrary grant of sua sponte reexamination orders based substantially only on "substantial media publicity alleging conspicuous unpatentability":  As a result of the PTO being offended by the initial report criticizing the *Eolas* sua sponte reexamination, a member of its public relations staff commenced communications with the writer demanding a retraction of the charges, and eventually providing guidelines that she said were used for the grant of the reexamination order – guidelines which were never published in the *Federal Register*.  If these guidelines were in fact used, they demonstrate the widespread opportunity for capricious grant of reexamination orders as all that is necessary for a grant of a reexamination order are a combination of (a) a "compelling reason" (which could mean nothing more than a media blitz of publicity, i.e., the PTO guidelines are met if there is "substantial media publicity alleging conspicuous unpatentability") and (b) demonstration that "at least one claim in a patent is prima facie unpatentable over prior patents and/or printed publications" (even though the claim could well have survived *closer* prior art and even though the prima facie case of obviousness may have been already established as overcome through mountains of trial testimony).  Beyond this, the ultimate arbiter of whether to declare a *sua sponte* reexamination order is *not* left to either the Solicitor or the General Counsel or other legal officer of the PTO, but to a *policy* officer who has no line supervision for examination or any responsibility for appeals or other legal matters of the PTO, i.e., the matter is ultimately referred for decision "to the Deputy Commissioner for Patent Examination Policy for a determination as to whether or not circumstances are present which warrant ordering reexamination at the initiative of the Director of the USPTO."

### 3. Brigid Quinn, the Voice of Kunin

Deputy Commissioner Stephen G. Kunin – speaking *sub nom* Brigid Quinn – has launched a counteroffensive defending his *sua sponte* reexamination order in the *Eolas* case, issuing two letters justifying his actions.  Presumably, defendant Microsoft with its expenditure of millions of dollars in its so far unsuccessful attack against Eolas' patent is in the best position to take care of itself; if Microsoft is correct, it has the task of explaining its position in a manner to educate the Federal Circuit and gain a reversal of the $ 521 million damages award.  Or, if Eolas is right and has the pioneer patent it says it has, the truth should come out from the judicial process.  Instead, the PTO has intervened; Kunin has intervened based upon "a substantial outcry from a widespread segment of the *** industry ***."  This "outcry", Kunin states, "creates an extraordinary situation for which a Director ordered reexamination is an appropriate remedy."

The PTO's action in *Eolas* is four square against the reexamination statute and the admonition of the father of patent reexamination, Rene Tegtmeyer, has stated that "[t]he general policy of the Office is that it will act in harmony with the courts and not 'relitigate' in a reexamination proceeding an issue of patentability which has been resolved on the merits by a federal court."

Should the PTO now play hardball with *Eolas* and the case needs to reach the Federal Circuit, past statistics show that it may take on the order of ten (10) years to reach a final decision.

Commissioner Kunin is the highest ranking lawyer in the PTO involved in this case; whether the Commissioner for Patents, Mr. Godici – who is nearing the end of his five year appointment in that position – was involved has not been established. Certainly, there has been no suggestion that either the Under Secretary nor the Deputy Under Secretary had any involvement in the *Eolas* case.

## 4. The Original Purpose for Reexamination

Reexamination as envisioned by the original patent reexamination legislation in 1980 was designed to *avoid* litigation and never to *second guess* the decision of a trial court, particularly not after a multi-million dollar patent litigation has been concluded, and – particularly – not while the case remains pending and before exhaustion of an appeal to the Federal Circuit. As pointed out by the father of reexamination within the PTO, Rene Tegtmeyer, "[t]he general policy of the Office is that it will act in harmony with the courts and not 'relitigate' in a reexamination proceeding an issue of patentability which has been resolved on the merits by a federal court." *In re Wichterle*, 1982 WL 52016, 213 U.S.P.Q. 868, 869 (Ass't Com'r Pat. & Trademarks 1982)(Tegtmeyer, Ass't Com'r) (citing *In re Pearne*, 1981 WL 40460, 212 U.S.P.Q. 466, 469 (Mossinghoff, Com'r 1981). Quite clearly, while reexamination was to be discouraged *after* the successful enforcement of a patent, what the framers of the legislation never even remotely contemplated the *sua sponte* intervention of the Director after the expenditure of thousands of attorney hours in a trial where a patent has been sustained *and before completion of an appeal to the Federal Circuit*. Yet, this is *precisely* what has now happened in the *Eolas* case and the *Blackberry* litigation. What was never envisioned was the political intervention of the Director interfering with the such a litigation process. Yet, Deputy Commissioner Stephen G. Kunin *admits* that *precisely* this has taken place as a result of lobbying by industry against the Eolas patent. Kunin has expressly stated that he ordered reexamination *sua sponte* due to "a substantial outcry from a widespread segment of the \*\*\* industry \*\*\*." This "has essentially raised a question of patentability \*\*\*\*, an equation of industry outcry to the *statutory* requirement for establishment of a substantial new question of patentability. Kunin justifies his action because this "outcry" thus "creates an extraordinary situation for which a Director ordered reexamination is an appropriate remedy."

Clearly, there is nothing in the statute nor the legislative history to in any way equate political pressure or "outcry" as the equivalent of a statutory "substantial new question" nor can there be any doubt whatsoever that the grant of such a reexamination order is completely contrary to the legislative history of the statute.

There is absolutely no procedure published in the *Federal Register* or after public comment of any kind in accordance with the Administrative Procedure Act that permits the Director of his designee to use lobbying force or "outcry" as a basis to disturb quiet patent title through a *sua sponte* reexamination *under any circumstance*, much less the completely egregious situation of meddling with the patent grant *even before the Federal Circuit has had a chance to review the trial court's holding that claims are infringed and not invalid.*

The *Eolas* reexamination has raised widespread press comment and false hopes for the internet community. Without consideration of the prior art found by the PTO and relied upon in the reexamination order (which has *not* been at all studied or considered in this paper), one must be amazed that the PTO has sat quietly on the sidelines for all the years of existence of the *Eolas* patent and, after what must have been millions of dollars in legal fees on behalf of defendant Microsoft, now believes that it has come up with a silver bullet to destroy the validity of the patent upon which the trial court has keyed a $ 521 million infringement verdict. (The writer has not at all considered the strength or weakness of any defense in this case, although he has on a pro bono basis opined to the press about the issue of infringement under 35 USC § 271(f)(2).)

The point, here, is *not* whether the trial court correctly or incorrectly decided the issues of infringement and validity. Rather, the issue, here, is whether it is appropriate for the PTO to now *sua sponte* enter the fray and attempt to quiet the "outcry" by granting a reexamination order.

8

### 5. Ten Years of Reexamination Hell for *Eolas*

The idea that there is a "quick fix" that the PTO will suddenly nullify the patent is clearly out of touch with any semblance of reality. The press statements attributed to the PTO that the matter will be cleared up in 12 to 18 months defies credulity: In a recent study of *important* patents that were reexamined that reached the Federal Circuit, the *average* pendency was *nearly ten (10) years*. The internet community clearly cannot look to a ten year process for a final decision. (It is one thing for the PTO to reexamine a patent to a method for cueing up for a toilet or to a method of "Tarzan" swinging, both with frivolous claims that were abandoned shortly after the reexamination was sought; here, there is a real world of commerce $ 521 million verdict hanging over Microsoft's head where *Eolas* surely will exhaust whatever remedies it has.)

A survey reported in July 2003 determined that "[f]or the upper third of the curve of *confirmed* patents where the PTO (or the courts) *confirmed* that 'claim 1' *** should be allowed *without amendment*, the average pendency was fifty-four (54) months or 4.5 years." This statistic took into account *all* patents, including trivial ones allowed on a first action, those that are commercially unimportant to the patentee and so forth. A sample of cases important enough to reach the Federal Circuit was considered a better indicator of pendency for patents deemed important by the patentee.

For this sample the average pendency was just short of ten years [115 months - or nine years and 5 months]. This statistic assumed that pending reexaminations in the survey were concluded "today", which assumption was also used where a patentee had forfeited his patent before issuance of a certificate where the date of forfeiture was used. Cases identified and used were *In re Bass*, 314 F.3d 575 (Fed. Cir. 2002); *In re Inland Steel Co.*, 265 F.3d 1354 (Fed. Cir. 2001); *In re Modine Manufacturing Co.*,18 Fed.Appx. 857, 2001 WL 898541 (Fed.Cir. 2001); *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000); *In re Baker Hughes*, 215 F.3d 1297 (Fed. Cir. 2000); *In re McNeil-PPC, Inc.*, 232 F.3d 914 (Table, Text in WESTLAW), 2000 WL 426148 (Fed. Cir. 2000); *In re Fortunet, Inc.*, 232 F.3d 912 (Table), 2000 WL 420657 (Fed. Cir. 2000); *In re Lee*, 12 Fed.Appx. 915, 2000 WL 1930705 (Fed.Cir. 2000); *In re Laitram Corp.*, 230 F.3d 1372 (Table), 1999 WL 1136829 (Fed.Cir. 1999); *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998).]

### 6. A Bad Example for "China"

The PTO policy represents a clear challenge to American compliance with Article 2(1) of the Paris Convention that provides that "[n]ationals of any country of the Union shall, as regards the protection of industrial property, enjoy in all the other countries of the Union the advantages that their respective laws now grant, or may hereafter grant, to nationals; all without prejudice to the rights specially provided for by this Convention. Consequently, they shall have the same protection as the latter, and the same legal remedy against any infringement of their rights, provided that the conditions and formalities imposed upon nationals are complied with.

The questions raised by the PTO's order are also very troubling and deserve very serious consideration by all parties. In particular, the United States is setting a horrible example for the rest of the world. Consider, for example, what outcry we would have domestically if a major American company's Chinese patent were successfully enforced in the Shanghai trial court, and then suddenly it was ordered to be reexamined or stricken on the whim of a Shanghai lobbyist who went to Beijing to explain his case to the Commissioner that the American company's Chinese patent would hurt manufacturing industries along the Yangtze River. Surely, this would be totally wrong and inappropriate. But, how more inappropriate would this be than what has been done in the case of the *Eolas* patent?

### 7. Blackberry Déjà Vu

When an earlier report of the *Eolas* case was released on November 18, 2003, the most important response from readers was that this case was relatively unimportant insofar as violation of procedures is concerned than the *Blackberry Patent Litigation*. Thus, the comment has been raised on several fronts that the *sua sponte* reexamination of a patent by the Director *after* litigation at the trial court *but before a decision by the Federal Circuit* is not new. Indeed, this is true, as represented by the *Blackberry Patent Litigation*.

### 8. PTO's Previously Secret Criteria for *Sua Sponte* Reexamination

The following criteria and guidelines will be utilized by the United States Patent and Trademark Office

"(USPTO) for consideration and implementation of reexamination of a patent at the initiative of the Director of the USPTO pursuant to 37 CFR 1.520.

"A.  Criteria for initiating a Director Ordered Reexamination.

"Under USPTO policy, Director-ordered reexaminations are discretionary and should be rare.  However, this process can provide an effective means for dealing with patents which raise issues of quality and broader industrial or technological concerns.  They will normally occur only when it is apparent from a review of the prosecution history of the patent that:

"(a) there is a 'compelling reason' to order reexamination, and

"(b) at least one claim in a patent is prima facie unpatentable over prior patents and/or printed publications.

"Circumstances that can meet the 'compelling reason' requirement include:

"1.  An examining practice, policy or procedure was not followed before the grant of a patent which resulted in a failure to consider patents and/or printed publications which prima facie make any claim(s) unpatentable, and/or

"2.  A significant concern about the patentability of the claimed subject matter has been expressed by a substantial segment of the industry, and/or there is substantial media publicity (e.g., the Internet or the news services) adverse to the patent alleging conspicuous unpatentability of the claims.

"B.  Examples: Why a Director Ordered Reexamination (DOR) may be Granted.

 "The USPTO may receive information from the public or internally indicating that:

"a.  Material information (e.g., affidavit, Information Disclosure Statement, or notification of litigation) was timely filed, but was not considered;

"b.  USPTO examination practices were not followed.  For example, a failure to follow an examining practice, policy or procedure may be discovered during a TC Group Director's review of a proper prior art citation filed under 37 CFR 1.501 in the patent file;

"c.  A significant segment of the industry has expressed concern, and/or there is substantial media publicity alleging conspicuous unpatentability of the claims of a patent.

"C.  Procedures.

"The TC Group Director will conduct an investigation as warranted by the information.  The TC Group Director will prepare a report addressed to the Deputy Commissioner for Patent Examination Policy describing: (1) the relevant prior art and how it would be applied to establish a prima facie case of unpatentability against representative claim(s) of the patent; and (2) the compelling reason to order reexamination at the initiative of the Director of the USPTO.  The report should be kept separate from the examination file.  In no case will it become part of the examination file.

"The report will be forwarded to the Office of Patent Legal Administration (OPLA).  OPLA may request the TC Group Director to supplement the report with additional information and/or to conduct a further review. OPLA will report the matter to the Deputy Commissioner for Patent Examination Policy for a determination as to whether or not circumstances are present which warrant ordering reexamination at the initiative of the Director of the USPTO.

"When circumstances warrant ordering reexamination at the initiative of the Director of the USPTO, OPLA will prepare an Order initiating reexamination.  The Order will be signed by the Deputy Commissioner for Patent Examination Policy, as delegated by the Director of the USPTO, and will be mailed by OPLA.  The reexamination file wrapper will be prepared, assembled and processed under the oversight of OPLA."

## C.  The Scanners Scandal: Lost and Strewn Patent Files

Quickly becoming the number one topic of embarrassment for the PTO is the horrendous state of the *important* patent files – those that are routinely loaded down with requests for copies from the public in re-examination.

Rumors have long circulated that the more important the case the more difficult it is to locate.  Now, as papers are electronically "scanned", the scanning process has required that files be unclipped from their manila or other jackets, papers are stacked and then presumably resorted and put back together, good as

11

new. In fact, it is understood that the more important the file and the more the number and volume of papers, the more that there are random errors introduced as files are lost, mis-sorted or otherwise lose their integrity through this clerical process. As discussed below in connection with "important" re-examination files – defined as those where there is an appeal that has proceeded to the Federal Circuit – one survey shows that the average pendency for a re-examination proceeding is 9.5 years. The scanners scandal may well be a major contributing factor to this untenable situation.

### D. PTO Recertification of Patent Attorneys

PTO emasculation of the patent profession is in the works under rules changes that threaten to marginalize the *licensed* patent profession to a group of procurement-only agents and other thusly-limited patent attorneys. These changes *will* take place unless there is a significant opposition from the organized profession as expressed through testimony that is possible by February 10, 2004. See *Changes to Representation of Others Before the United States Patent and Trademark Office*, 68 Fed. Reg. 69442 (December 12, 2003).

PTO regulations to completely change the face of the patent profession could be implemented in 2004 unless there is a significant outcry from the patent profession through testimony that is still possible through February 11, 2004. If implemented in their proposed form and applied in their strictest fashion, *every* patent attorney – including those who would choose an "inactive" status – would need to satisfy an *annual* recertification of their skills in the calculation of filing fees, time periods for response and other mundane matters of PTO patent practice, either on an internet-based self-administered test or a PTO pre-approved CLE course of instruction that would test this same subject matter and which could *not* be sponsored by a corporation or law firm.

A significant percentage of the 22,000 currently registered patent attorneys who are either in upper end corporate or law firm practice would simply maintain their state bar registrations as attorneys at law and forego continued patent registration, while the ranks of patent "agents" from amongst current Patent Examiners with no legal training would take their place.

Patent attorneys who would normally satisfy state CLE requirements by taking mind-expanding topics that relate to patent enforcement or other ancillary upper end practice areas would be forced to abandon such CLE in favor of PTO-dictated prosecution "filing fee"-type CLE and/or do *both* types of CLE.

### E. High Allowance Rate in Reexaminations

**The Myth that the Patentee Cannot Sustain "Claim 1" in a Third Party Reexamination – the 88 % Retention of an *Unamended* "Claim 1"**

The PTO has for years given out a statistic that only in about a third of all reexaminations is a patent sustained *in toto* without amendment. But, while this is a technically accurate statistic, it does not take into account the many patents where the generic claim – "claim 1" – is maintained *in toto*, while other claims are amended, for example, an additional species claim may be added. Thus, it has been a false premise that PTO is doing a good job of knocking out "claim 1", forcing the patentee to retreat to a narrower position, thereby letting third parties carve out territory where they are free to operate while also generating equitable intervening rights.

In a study of roughly 200 reexamination certificates in a recent time period with Stephen B. Maebius, we weeded out the *third party* initiated reexamination requests and studied a variety of parameter. The reality is that in over half the cases of a third party-initiated *ex parte* examination, the patentee is able to *maintain in unamended form* his original generic claim. The disparity vis a vis the PTO view comes about because there is a significant number of cases which are amended as to species or other claims, *while claim 1 is left unamended.* (In our study, 88 % of all reexamined patents initiated by a third party have either an unamended claim 1 while the remainder of this overwhelming majority is made up of the amended patents.)

### F. Routine 5+ Year Pendency for Contested Reexaminations

From the same Maebius study, it has been determined that there are now numerous *ex parte* reexaminations brought by third parties that take many years until completion. One would imagine that the quickest prosecution would be for the cases where the claims are *unamended.* Yet, even for the patents which were *unamended* as to the generic claim in our survey, less than 10 % met the "special dispatch" goal of twelve months; and only 23 % were concluded in less than twenty months.

For the upper third of the curve of *confirmed* patents where the PTO (or the courts) *confirmed* that "claim 1" of equivalent should be allowed *without amendment*, the average pendency was fifty-four (54) months or 4.5 *years*.

The survey included a study of most of the reexamination certificates for a period of more than one year and included a study of the *Official Gazette* notifications and the "PAIR" summaries by the PTO that track the routing of each reexamination and provide an effective "table of contents" of each reexamination. The statistics reflected here are limited to third party reexaminations. No Director-ordered or inter partes reexamination is considered in the results.

### G. Ten Year Pendency for "Important" Reexaminations

The sense has been that if a reexamination has a smell of importance within the PTO the default has been to "go slow" and not issue a reexamination certificate. For example, in one reexamination where the patent in question had been granted after a landmark Federal Circuit ruling that required a change in practice as reflected in the *Manual of Patent Examining Procedure*, the patent has *never* had a final rejection from the Primary Examiner, while the reexamination is now in its sixth full year of pendency. See the attached *Ochiai* petition to *Testimony Concerning the Proposed Modification to 37 CFR Part 1, Changes To Implement the 2002 Inter Partes Reexamination and Other Technical Amendments to the Patent Statute*, Rulemaking Notice of April 28, 2003, 68 FR 22343-01, **http://www.uspto.gov/web/offices/pac/dapp/opla/comments/ ipreexam/wegner.pdf**

Thus, a separate study of *important* reexaminations – including patentee-initiated cases – shows average pendency to issuance of the certificate just shy of ten years. For this sample the average pendency was just short of ten years [115 months - or nine years and 5 months]. This statistic assumed that pending reexaminations in the survey were concluded "today", which assumption was also used where a patentee had forfeited his patent before issuance of a certificate where the date of forfeiture was used.

A search was made on Westlaw "CTAF" for any reexamination that could be identified, including patentee-initiated reexaminations, where an appeal had been taken first to the Board of Patent Appeals and Interferences and thence to the Federal Circuit. The cases identified and used were *In re Bass*, 314 F.3d 575 (Fed. Cir. 2002); *In re Inland Steel Co.*, 265 F.3d 1354 (Fed. Cir. 2001); *In re Modine Manufacturing Co.*,18 Fed.Appx. 857, 2001 WL 898541 (Fed.Cir. 2001); *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000); *In re Baker Hughes*, 215 F.3d 1297 (Fed. Cir. 2000); *In re McNeil-PPC, Inc.*, 232 F.3d 914 (Table, Text in WESTLAW), 2000 WL 426148 (Fed. Cir. 2000); *In re Fortunet, Inc.*, 232 F.3d 912 (Table), 2000 WL 420657 (Fed. Cir. 2000); *In re Lee*, 12 Fed.Appx. 915, 2000 WL 1930705 (Fed.Cir. 2000); *In re Laitram Corp.*, 230 F.3d 1372 (Table), 1999 WL 1136829 (Fed.Cir. 1999); *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998).

## III. THE FEDERAL CIRCUIT – CASES AND CONTROVERSIES

### A. Major Changes within Madison Place

Both in terms of personnel and in terms of its public appearance, the Federal Circuit is undergoing major changes in 2004.

At the end of the year, the twelve member Federal Circuit will have made several major changes in personnel: Sitting as Chief Judge will be the Hon. Paul Michel who will serve up to seven years in that position starting not later than by late December. The incumbent, Chief Judge H. Robert Mayer, will assume the position of Circuit Judge; he is not eligible for retirement or senior status until 2006. If there is no retirement or assumption of senior status, by the end of the year three of the twelve members of the court will have voluntarily decided to remain on the court as regular judges, despite having passed their time for retirement or senior status – Circuit Judges Pauline Newman, Alan D. Lourie and Raymond C. Clevenger III.

The public face of the Federal Circuit will have dramatically changed. Of the eight floors of the Howard T. Markey Federal Courts Building, most of the building is occupied by areas that are not open to the public or which house the Court of Federal Claims. The most prominent public area is "Courtroom 201" – which will be the venue for the *en banc* hearing in *Knorr-Bremse* on February 5, 2004, and then will close after hearings on the following day. Later this year, it will reopen as perhaps the largest amphitheatre in central Washington, resplendent with a balcony accessible from the third floor – and a total seating area for visitors of four-hundred (400). This will indeed be a showplace in central Washington, and make the Federal Circuit far more visible than it has ever been.

13

### B. Isolation from the General Bar

Federal Circuit and patent bar isolation from the antitrust, regional circuit and academic communities accelerated in 2003; this was led by the synergy of the Federal Trade Commission, the Department of Justice and the academic communities working together in early 2003 hearings, capped by actions at the FTC that included a report on the patent system, *To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy* (discussed *infra*), as well as settlement and vacatur issues (discussed *infra*).

## IV.  THE FTC PATENT REPORT

The FTC Patent System Report – *To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy* – demonstrates the lack of common understanding about the true problems of the patent system amongst the various communities – the intellectual property bar and industry, the antitrust bar and the academic community.

The Federal Trade Commission's white paper on patents and competition deals with a variety of troubles within the patent system that were highlighted earlier in the year through extensive hearings of the FTC together with the Department of Justice.  Many of the FTC's proposals represent valid criticisms and with which leaders in both the patent and competition communities can and should agree. Indeed, much of the FTC's discussions are consistent with a paper, Harold C. Wegner & Stephen B. Maebius, Patent Flooding: America's New Patent Challenge, presented to the joint hearings of the Federal Trade Commission and the Department of Justice by Mr. Maebius as a supplement to his testimony on April 11, 2002; the original version appears on the website reporting the hearing, http://www.ftc.gov/opp/intellect/020411maebius.pdf .

The FTC makes ten recommendations in its report:

### A. Administrative Patent Revocation

**Recommendation 1:  ... Create a new Administrative Procedure to Allow Post-Grant Review and Opposition to Patents**

#### 1. Court Reform

The unstated premise for reform is that there is nothing that can or should be done about the horrible situation for patent challenges in the great bulk of trial courts.  Too many scholars and practitioners have come forward and openly stated that it is the fault of the trial court system that judges who hear a patent case typically do not get more than one patent case every few years or so.  How can they *possibly* be equipped to deal with a patent case?  How can they *possibly* be ready for an early *Markman* hearing for claim construction when this may be their first experience with patent law?

It is not the technology that is at fault.  It is not the individual judges who are at fault.  Rather, it is the system in most of the trial courts that is at fault.  Patent cases are shunned and given to a judge without experience ... it's *your* turn to foul up your docket with a patent case.

This clearly need not be the case.  This is proven by the handful of courts with an excellence in handling patent cases that is fueled first and foremost by well deserved reputations of the courts for the efficient handling of patent cases.  Some of the courts employ law clerks who are trained in patent law.  But, above all, what distinguishes these courts of excellence is that they have a sufficiently heavy diet of patent cases *amongst all of their cases* so that no patent case is the court's "first case" in the area.  It works very well in Wilmington, Delaware.  It worked too well in Alexandria that the court created a lottery to shift most of its patent cases to the Norfolk and Richmond divisions of the Eastern District.  It works well in some California courts.  In Madison, Wisconsin.

The German and Japanese models suggest precisely how courts of general jurisdiction can provide an excellence in *every* patent case:  The two legal systems limit the shared jurisdiction of the patent causes to a limited number of courts.

Until the simple expedient of dealing with the trial level problems is dealt with, we are poking at the edges of the system without going to the heart of the problem.

#### 2. An Opposition System

The "opposition" system that has been seen in the United States to flourish in Japan and Europe is held up as a model.  These models should be rejected out of hand as creating either unwieldy procedures – as in

the case of Europe where a completely sound and valid patent can be run through a gauntlet of procedures and hearings and amendments that takes many years – or which have been ineffective – as in Japan where the entire opposition system has been *abolished* effective January 1, 2004.

The proposal of the FTC is far too "European" in seeking to have extensive inquiries far beyond the core elements of novelty and nonobviousness – including "[a]t a minimum * * * written description, enablement[ ] and utility" as issues open to challenge, and by providing procedural measures that would hamstring proceedings – including "cross-examination and carefully circumscribed discovery * * *".

An administrative revocation proceeding *should* be provided that is focused upon novelty and nonobviousness and proceeds swiftly by *starting* at the appeal board level with argumentation supplemented by affidavits, followed by a *right* of appeal to the court.

We should not reinvent the wheel. After a multi-year study of all the patent systems of the world, the Japanese government replaced its opposition system with a state of the art administrative revocation system largely along the above lines – which is being rolled out January 1, 2004, and then will be in full force and effect. It should entirely avoid the delays of the European system and provide the needed "teeth" to make the system more attractive to patent opponents.

## B. The Other Nine Recommendations

### Recommendation 2: Validity ... Determined Based on a "Preponderance of the Evidence":

This proposal ignores the possibility of *reexamination* that can be conducted under a preponderance standard. *Ethicon, Inc.* v. Quigg, 849 F.2d 1422, 1227 (Fed. Cir. 1988) ("In a reexamination proceeding * * * there is no presumption of validity and the 'focus' of the reexamination 'returns essentially to that present in an initial examination,' *In re Etter*, 756 F.2d [852,] 857 [(Fed.Cir. 1985) (en banc )], at which a preponderance of the evidence must show nonpatentability before the PTO may reject the claims of a patent application. *In re Caveney*, 761 F.2d 671, 674 (Fed. Cir. 1985). '[T]he intent underlying reexamination is to 'start over' in the PTO with respect to the limited examination areas involved, and to *re* examine the claims, and to *examine* new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding.' *In re Etter*, 756 F.2d at 857.").

### Recommendation 3: Tighten ... Standards [for when an invention] "is 'Obvious'":

The problem is not the standard but rather the uneven application of justice at the trial level, discussed supra.

### Recommendation 4: Provide Adequate Funding for the PTO:

This is a valid point.

### Recommendation 5: Modify Certain PTO Rules....

The proposals to require relevance statements (5(a)) and encourage Rule 105 inquiries (5(b)) would add paperwork and costs to applicants that we can ill afford and do not go to the heart of the examination process. The "second pair of eyes" review (5(c)) is like giving a blind person with broken glasses simply a new set of glasses without removing the cataracts of imperfect training and supervision and enough resources to gain prior art: Adding a "second pair of eyes" only shortens the time for the first review. One can only agree with point 5(d) that the PTO should see a balance with the side of industry also taken into consideration and not that of the patentee, alone.

### Recommendation 6: [to Consider Harm "Before Extending the Scope of Patentable Subject Matter"]:

Surely, the PTO must carefully judge the novelty and nonobviousness *particularly* of new technologies to avoid any windfalls of a dominant coverage for something that is "obvious" – something that it miserably failed to do in the case of business patents.

But, to *proscribe* patents as the default for what is new is to put sands in the wheels of technology progress; to tinker with 35 USC § 101 and the definition of what is or is not patent-eligible goes against basic innovation and two centuries of history of American technological leadership. This is an idea who's time should *never* come. As a new technology develops, there is no lobby to support patenting for innovators who are without funding and barely able to produce a patent application and survive the guffaws of the entrenched industries who mock their upstart competition. The entrenched industries would never encourage the upstart: Vested interests come first. If we had to go to Congress for every new technology

this would really put the cart before the horse. Rather, the genius of the American patent system has been its "open" definition of patent-eligible subject matter that can be traced back to the 1623-24 Statute of Monopolies that kept the door open to "new *** manufactures", i.e., virtually anything new that is made by man.

The classic modern example is the biotechnology industry where Wall Street investments were grounded upon the green door to patent-eligibility that the Court signaled in *Diamond v. Chakrabarty*, 447 U.S. 303 (1980).

As the lower court said in the case leading up to *Chakrabarty*, "[f]or the nearly 200 years since [the last revision to the predecessor to 35 USC § 101 in the Patent Act of 1793], th[e] words have been liberally construed to include the most diverse range imaginable of unforeseen developments in technology. The list is endless and beyond recitation. *** [T]he Founding Fathers and the Congresses of the past century could not have foreseen the technologies that have allowed man to walk on the moon, switch travel from the railroads to heavier-than-air craft, fill our houses with color TV, cure normally fatal diseases with antibiotics produced by cultures of molds (microorganisms), and give to schoolchildren at small cost pocket calculators with which they can produce square roots in microseconds through complex electronic circuitry on an 'IC' (integrated circuit) so small the circuits are not visible to the naked eye." *In re Bergy*, 596 F.2d 952, 973-74 (CCPA 1979), *vacated and related case aff'd sub nom Diamond v. Chakrabarty*, 447 U.S. 303 (1980) (footnote omitted).

**Recommendation 7:  Mandatory 18 Month Publication:**

This is indeed a very important reform that should be implemented immediately.

**Recommendation 8:  Intervening or Prior User Rights for Late Claiming:**

The possibility *does* exist under the current system for an applicant to add claims to his application after filing that can dominate technology disclosed in *but not claimed in* the original application. There must be some flexibility as to when the applicant can prepare claims to cover such technology.

To create an intervening or prior user right is an interesting idea but one that only opens up a new area of uncertainty. We never have had a prior user right in the American patent law until the past decade, and the judicial interpretation of this body of law is yet to be developed. Intervening rights have had some history but, if anything, one case see uncertainties from this body of law.

What may make more sense is to have a strict time limit for making an amendment to add claims to dominate an unclaimed technology keyed to the *priority* date. A reasonable time limit could be, say, 30 months or so, after which no amendment could be made that enlarges the scope of the invention.

There would be no new statutory interpretation needed in the sense that there is already a century of case law on the bar against broadening reissues.

**Recommendation 9:  [to limit enhanced damages for willfulness]:**

The proposal to tighten up the standard for enhanced damages under 35 USC § 284 for wilful infringement should be greatly tightened up in the coming several months as part of a *en banc* review of this subject by the Federal Circuit in the *Knorr-Bremse* case.  One solution that is being proposed is set forth in a paper by Eccleston *et al.* that "propose[s] a three-part test:

**"First,** since willfulness is a finding of fact, the trial court must be free to consider all of the facts regarding the infringer's activities and reach a reasoned finding on the issue of willfulness without being saddled with a *per se* adverse inference where no formal opinion of counsel is in evidence. An 'adverse inference' unduly places too high an emphasis on an opinion of counsel and has the possibility of overshadowing otherwise exculpatory facts.

**"Second,** if it turns out that the accused infringer's seemingly substantial defense turns out to be much less than that, here, the accused infringer should be able to timely introduce a reasoned opinion of counsel that demonstrates that he had an objective good faith basis to believe that he did have a substantial defense; the trial court should be permitted to weigh this factor in an overall determination of willfulness.

**"Third,** even if willfulness is shown, enhanced damages should be awarded *only* if the conduct of the infringer rises to the level of a *mens rea* at the level of recklessness sufficient for the *punitive* sanction of enhanced damages.

"In determining willfulness, the [Federal Circuit] in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), gave guidance on the issue of willfulness by setting out nine factors relevant to a willfulness analysis. These factors – and perhaps others as they may arise on a case by case basis – should be considered in the willfulness analysis.  The weight each of these factors plays should be dictated by the facts of each case.  Requiring the district judge to *per se* draw an 'adverse inference' where an opinion of counsel has not been produced will unevenly weight the scale and diminish value of the additional *Read* factors. As stated in *Rolls-Royce*, '[t]he drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses.'  800 F.2d at 1110.

"The test of recklessness is implicit in many of the decisions of the courts and explicit in *CFMT, Inc. v. Steag Microtech, Inc.*, 14 F. Supp.2d 572, 594 (D. Del. 1998)(McKelvie, J.), *aff'd in part and vacated in part on other grounds*, 194 F.3d 1336 (Fed.Cir. 1999) (TABLE, TEXT IN WESTLAW, NO. 98-1487) ('[The] opinion was inadequate, and does not shield Steag from a finding of willful infringement. But when considering whether to enhance damages, the real issue is whether Steag made a decision to continue [infringing activity] that was *so reckless that it should be punished*.'(emphasis added).  While neither other trial courts nor the Federal Circuit has characterized cases with an enhanced damages award in terms of recklessness, a study of the cases where enhanced damages *are* found all involve situations with a *mens rea* level of culpability of recklessness:  The floor for finding enhanced damages should therefore *require* that the trial judge find the requisite *mens rea* in terms of recklessness."

Eccleston, Albrecht & Wegner, *A Knorr-Bremse White Paper* prepared for the program, *Punitive Enhanced Damages for Willful Patent Infringement: The Knorr Bremse Questions and Whether the Underwater Devices Rule has Outlived its Usefulness*, Bar Association of the District Of Columbia Patent Trademark and Copyright Section, Washington, D.C., November 12, 2003.

**Recommendation 10:**  Expand Consideration of Economic Learning and Competition Policy Concerns in Patent Law Decisionmaking [sic]:

This is also a very worthwhile proposal.

## V.  PATENT LAW DOCTRINES – CASES AND CONTROVERSIES

### A.  PTO Rules Violations as Invalidity Basis (Dethmers)

May a patent valid as to all statutory grounds and under a statutory presumption of validity under 35 USC § 282 be held invalid for noncompliance with a PTO regulation not required by statute where the PTO has allowed the patent in the face of that regulation? See *Dethmers Mfg. v. Automatic Equip. Mfg.*, 272 F.3d 1365 (Fed. Cir. 2001) (Schall, J.)

### 1.  The Split Panel Opinion

The court says "yes" in *Dethmers Mfg. v. Automatic Equip. Mfg.*, 272 F.3d 1365 (Fed.Cir.2001)(Schall, J.), (Dyk, J., concurring-in-part and dissenting-in-part, 272 F.3d at 1378-80), while fully half the court voted to rehear the case en banc, *reh'g en banc denied by an equally divided court*, 293 F.3d 1364 (2002)(dissenting opinions by Linn (joined by Newan, Lourie, Dyk and Prost) and Dyk (joined by Newman, Lourie, Gajarsa, Linn and Prost).  Only the author of the panel opinion and the senior member of the majority (Clevenger) appear to be committed to the panel majority, with the votes of the other four bearing close scrutiny – Chief Judge Mayer and Circuit Judges Michel, Rader and Bryson.  Of this latter four, one of them has already chosen to cite the views of Circuit Judge Dyk with approval; see *Bayer AG v. Carlsbad Technology, Inc.*, 298 F.3d 1377, 1381 (Fed. Cir. 2003)(Rader, J.), first noting that the trial court had "properly accorded deference to the PTO's implementing regulations and to the PTO's interpretative 'Decision', which it found complied with 35 U.S.C. §§ 154(a)(2) and (c)(1), in accordance with *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)" and other cases, then citing with approval  "*Dethmers Mfg. v. Automatic Equip. Mfg.*, 272 F.3d 1365, 1379 (Fed.Cir.2001) (Dyk, J., concurring-in-part and dissenting-in-part) ('[W]e are obligated by clear Supreme Court precedent to give deference to the PTO's own interpretation of its regulations.').")

The Supreme Court denied certiorari in a simple order, without opinion.

### 2.  Two 2-6-4 Split at the Court

There are only *two* members of the court who are on record in support of the holding in the panel opinion

(Judge Clevenger joined the majority opinion with its writer, Judge Schall.). Against this are the six members of the court openly against the panel opinion (Newman, Lourie, Gajarsa, Dyk, Linn, Prost): Circuit Judges Linn and Dyk are most outspoken in challenging the *Dethmers* panel opinion (both filing their own dissenting opinions from *en banc* hearing and the latter being a dissenting member to the panel opinion, with Circuit Judges Newman, Lourie, Gajarsa and Prost joining one or both of the dissents).

Judges Mayer, Michel, Rader and Bryson have not weighed in on the issue: None of these members of the court issued an opinion or joined in an opinion on the denial of en banc rehearing and none was on the panel. It is therefore unknown whether any or all of these four members of the court agreed or disagreed with the panel majority or felt strongly enough to weigh in for an en banc rehearing. But, one of these members of the court chose to cite to Judge Dyk's dissent in *Dethmers*: In *Bayer AG v. Carlsbad Technology, Inc.*, 298 F.3d 1377, 1381 (Fed. Cir. 2003)(Rader, J.), the court first noted that the trial court had "properly accorded deference to the to the PTO's implementing regulations and to the PTO's interpretative 'Decision', which it found complied with 35 U.S.C. §§ 154(a)(2) and (c)(1), in accordance with *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)" and other cases, then citing with approval "*Dethmers Mfg. v. Automatic Equip. Mfg.*, 272 F.3d 1365, 1379 (Fed.Cir.2001) (Dyk, J., concurring-in-part and dissenting-in-part) ('[W]e are obligated by clear Supreme Court precedent to give deference to the PTO's own interpretation of its regulations.').")

**c. Judge Linn's Critique of Dethmers**

Circuit Judge Linn makes the case against the panel majority's opinion:

"The panel decision invalidates certain reissue claims, not based on any of the statutory grounds of patentability recited in 35 U.S.C. §§ 101, 102, 103 or 112, nor on any requirement of 35 U.S.C. § 251, but on the application by the United States Patent and Trademark Office ("PTO") of its own procedural rule specifying the content of a reissue oath or declaration. The decision applies a de novo standard of review in reliance on *Nupla Corp. v. IXL Mfg. Co.*, 114 F.3d 191, 42 USPQ2d 1711 (Fed.Cir.1997).

"The panel decision raises a serious question regarding the effect of the statutory presumption of validity to which the patent is entitled under 35 U.S.C. § 282, in circumstances where the PTO's actions in administering its own procedural regulations are challenged. The presumption of validity reflects the deference due the PTO's determination of patentability and the administrative regularity underlying the patent grant. This deference was described in *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.* as: ... the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.' 725 F.2d 1359, 2359 (Fed. Cir. 1984).

"In *Hyatt v. Boone*, this Court remarked:

"'Regularity of routine administrative procedures [administered by the PTO] is presumed, and departure there from ... is not grounds of collateral attack. Courts should not readily intervene in the day-to-day operations of an administrative agency, especially when the agency practice is in straightforward implementation of the statute.'

"146 F.3d 1348, 1355-56, 47 USPQ2d 1128, 1133 (Fed.Cir.1998). *Cf. Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) ('The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions [of an administrative regulation]. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.;); *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def, Council, Inc.*, 435 U.S. 519, 524 (1978) ('[T]his Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments.').

"From these decisions it can be argued that once a patent issues, non-compliance with a procedural rule administered by the PTO within the scope of the agency's statutory authority and found, by virtue of the grant of the patent, to have been satisfied during prosecution is, in and of itself, of no consequence. The holding of the majority in the present case, based on *Nupla*, that a patent may be invalidated due to an examiner's misapplication of a PTO procedural rule, is contrary to that proposition and rests on a ground of invalidity not included in the exclusive list of grounds for invalidating a patent set forth in 35 U.S.C. § 282.

The holding is thus based on a questionable foundation and fails to recognize the statutory presumption of validity to which every issued United States patent is entitled. To the extent *Nupla* concludes otherwise, it is incorrect and should be overruled.

"Moreover, application of the de novo standard of review in the context of this case, following *Nupla*, is contrary to the deference owed to PTO interpretations of its own procedural rules. *See Dickinson v. Zurko*, 527 U.S. 150, 161, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); *Bowles*, 325 U.S. at 413-14, 65 S.Ct. 1215.

"The panel decision thus raises important questions both as to the effect of the statutory presumption of validity on the consideration of alleged violations of PTO procedural rules in post-grant *inter partes* proceedings and as to the deference owed to the PTO under the Administrative Procedure Act following *Zurko*. For these reasons, I respectfully dissent from the court's declining to consider this case en banc."

## B.  Standards for Inherent Anticipation (Toro v. Deere)

What is the standard for denying a patent based upon a prior "inherent" disclosure of an invention – particularly as to appreciation of the inherent anticipation by workers skilled in the art?  In particular, must inherent properties be recognized by the prior art?

### 1.  The First Elan Panel Opinion

Controversy immediately arose with *Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education & Research*, 304 F.3d 1221 (Fed.Cir.2002)(Newman, J.)., which was vacated *en banc* without more, 314 F.2d 1299 (Fed. Cir. 2002). and repudiated in *Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373 (Fed. Cir. 2003)(Rader, J.)

The *Elan* panel majority opinion states that "[i]nherency cannot be based on the knowledge of the inventor; facts asserted to be inherent in the prior art must be shown by evidence from the prior art. *Cf. In re Dembiczak*, 175 F.3d 994, 999 (Fed.Cir.1999) (criticizing the "hindsight syndrome wherein that which only the inventor taught is used against his teacher". The purpose of the rule of inherency is to accommodate common knowledge, knowledge that judges might not know but that would be known to practitioners in the field. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365, 51 USPQ2d 1001, 1009 (Fed.Cir. 1999)." *Elan Pharmaceuticals, Inc*, 304 F.3d at 1229.

The panel majority's reversal is topped off with a quotation of Learned Hand: "No doctrine of the patent law is better established than that a prior patent or other publication to be an anticipation must bear within its four corners adequate directions for the practice of the patent invalidated. If the earlier disclosure offers no more than a starting point for further experiments, if its teaching will sometimes succeed and sometimes fail, if it does not inform the art without more how to practice the new invention, it has not correspondingly enriched the store of common knowledge, and it is not an anticipation." *Elan Pharmaceuticals, Inc*, 304 F.3d at 1229 (quoting *Dewey & Almy Chemical Co. v. Mimex Co.*, 124 F.2d 986, 989 (2d Cir.1942)).

Circuit Judge Dyk, dissenting in *Elan Pharmaceuticals*, states that "[t]he majority decision in this case rests upon the ground that an inventor's own disclosure may not be used under 35 U.S.C. § 102 as proof of anticipation by inherent disclosure in a prior art reference. This decision contradicts our own case law, which holds that knowledge of an inherent characteristic in the prior art is irrelevant. As we recently recognized in *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1350 (Fed.Cir.2002), on the issue of inherency '[i]t matters not that those of ordinary skill heretofore may not have recognized these inherent characteristics.' Here, as in *Cruciferous*, while Elan "may have recognized something quite interesting about those [mice], it simply has not invented anything new." *Id. at 1351.* This decision, if followed, will have serious and unfortunate consequences in the future by permitting the securing of patent rights to existing inventions so long as the patent applicant identifies an inherent characteristic of that product that was not identified in the prior art."

*In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1349-50 (Fed. Cir. 2002)(Prost, J.), in turn states that "a prior art reference may anticipate when the claim limitations not expressly found in that reference are nonetheless inherent in it. *See, e.g, Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342 (Fed.Cir.1999); *Titanium Metals Corp. v. Banner*, 778 F.2d 775 (Fed.Cir.1985). 'Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates.' *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir.1999) (finding anticipation of a method of hair depilation by an article teaching a method of skin treatment but recognizing the disruption of hair follicles, citing *In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986)). 'Inherency is not necessarily coterminous with the

19

knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art.' *MEHL/Biophile*, 192 F.3d at 1365; *Atlas Powder*, 190 F.3d at 1347."

### 2. *Schering* Repudiation of *Elan*

Relying on *Cruciferous Sprout*, the Court in *Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373 (Fed. Cir. 2003)(Rader, J.), he disagrees with *Elan Pharmaceuticals*. He "rejects the contention that inherent anticipation requires recognition in the prior art. *Schering* relies on *Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education & Research*, 304 F.3d 1221 (Fed.Cir.2002) for that proposition. This court has since vacated *Elan*. *See* 304 F.3d 1221 (Fed.Cir.2002). Other precedents of this court have held that inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure. E.g., *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1351 (Fed.Cir.2002); *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed.Cir. 1999) ('Where ... the result is a necessary consequence of what was deliberately intended, it is of no import that the article's authors did not appreciate the results.'); *Atlas Powder*, 190 F.3d at 1348-49 ('Because 'sufficient aeration' was inherent in the prior art, it is irrelevant that the prior art did not recognize the key aspect of [the] invention.... An inherent structure, composition, or function is not necessarily known.'). Thus, recognition by a person of ordinary skill in the art before the critical date of the '716 patent is not required to show anticipation by inherency. The district court therefore did not err in allowing for later recognition of the inherent characteristics of the prior art '233 patent." *Schering v. Geneva*, 339 F.3d at 1377.

The court also distinguishes the *Continental Can* case: "Contrary to Schering's contention, *Continental Can* does not stand for the proposition that an inherent feature of a prior art reference must be perceived as such by a person of ordinary skill in the art before the critical date. In *Continental Can*, this court vacated summary judgment of anticipation of claims reciting a plastic bottle with hollow ribs over a prior art reference disclosing a plastic bottle. The record contained conflicting expert testimony about whether the ribs of the prior art plastic bottle were solid. The accused infringer's expert testified that the prior art plastic bottle was made by blow molding, a process that would inherently produce hollow ribs. The patentee's experts testified that the prior art plastic bottle had solid ribs. The patentee disputed whether the blow molding inherently produced hollow ribs. Given the disputed material fact, this court vacated the summary judgment as improper. *Continental Can*, 948 F.2d at 1269. *Continental Can* makes no reference to whether the inherent feature, hollow ribs, was recognized before or after the critical date of the patent at issue. Read in context, *Continental Can* stands for the proposition that inherency, like anticipation itself, requires a determination of the meaning of the prior art. Thus, a court may consult artisans of ordinary skill to ascertain their understanding about subject matter disclosed by the prior art, including features inherent in the prior art. A court may resolve factual questions about the subject matter in the prior art by examining the reference through the eyes of a person of ordinary skill in the art, among other sources of evidence about the meaning of the prior art. Thus, in *Continental Can*, this court did not require past recognition of the inherent feature, but only allowed recourse to opinions of skilled artisans to determine the scope of the prior art reference." *Schering v. Geneva*, 339 F.3d at 1377-78.

The court distinguished the 'accidental' anticipation cases: "Cases dealing with 'accidental, unwitting, and unappreciated' anticipation also do not show that inherency requires recognition. *See Eibel Process Co. v. Minn. & Ontario Paper Co.*, 261 U.S. 45 (1923); *Tilghman v. Proctor*, 102 U.S. 707 (1880). In contrast to the present case, the record in *Eibel* and *Tilghman* did not show that the prior art produced the claimed subject matter. The patent at issue in *Tilghman* claimed a method of forming free fatty acids and glycerin by heating fats with water at high pressure. In *Tilghman*, the record did not show conclusively that the claimed process occurred in the prior art. In reviewing the prior art, the Court referred hypothetically to possible disclosure of the claimed process. For example, the Court stated '[w]e do not regard the accidental formation of fat acid in Perkins's steam cylinder ... (if the scum which rose on the water issuing from the ejection pipe was fat acid) as of any consequence in this inquiry.' *Tilghman*, 102 U.S. at 711. In *Eibel*, the Court found no evidence of the claimed subject matter in the prior art. *Eibel*. 261 U.S. at 66 ('[W]e find no evidence that any pitch of the wire ... had brought about such a result ... and ... if it had done so under unusual conditions, accidental results, not intended and not appreciated, do not constitute anticipation.'')." *Schering v. Geneva*, 339 F.3d at 1378.

### 3. The Second *Elan* Panel Opinion

In *Elan Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051 (Fed. Cir. 2003)(Newman, J.), the panel simply *ignored* what it had previously said and found a *new* issue in the case, *sua sponte*, whereupon it remanded the case to the trial court for consideration of the *new issue* – all without repudiating or otherwise clarifying its original position that had led to the *en banc* vacation of the first opinion.

Without more, the *en banc* court on October 2, 2003, returned the case to the original panel which then proceeded to issue a brand new opinion on *different* issues, sweeping the entire controversy under the rug, and remanding the case for the entirely different issue that it had only belatedly discovered.

The court sticks a bandage over its troubled split over standards for anticipation by inherency by creating a *new ground* that had not been raised by the trial court or in the briefs before the initial panel opinion.

The panel *remanded* the case to the trial court for consideration of an entirely new issue: "In response to the questions raised *in the petitions for reconsideration*, we clarify that invalidity based on anticipation requires that the assertedly anticipating disclosure *enabled* the subject matter of the reference and thus of the patented invention without undue experimentation. *** The summary judgment is reversed, and the case is remanded for further proceedings."

### 4. *Toro* Repudiation of *Elan*

*Toro Co. v. Deere & Co.*, __ F.3d __ (Fed. Cir. January 20, 2004)(Michel, J.), states the law of inherent anticipation in more traditional terms in terms of appreciation of the inherent result – sharply disagreeing with the reasoning in the vacated panel opinion in *Elan Pharmaceuticals, Inc. v. Mayo Foundation for Medical Education & Research*, 304 F.3d 1221 (Fed.Cir.2002)(Newman, J.) (where the court had *en banc* vacated the opinion but then after one year had permitted release of a panel opinion that *sua sponte* found reasons to *remand* that case to the district court). Seemingly tying up the carnage from both the vacated panel opinion in *Elan* and the problems of *Schering* - but without discussing these problems with reference to either named case - the court in *Toro* said that "[f]or inherent anticipation, the [ ] patent must have sufficiently described and enabled at least one embodiment that necessarily featured or resulted in the subject matter embraced by [the critical] limitation [ ], but neither description nor contemporaneous recognition of these necessary features or results was required.' Going into more detail, Judge Michel correctly notes that '[i]f the district court meant that Rogers or other artisans at the time of invention of the [ ] patent must have recognized that practicing the invention would not only fertilize but lift and fracture the soil so as to reduce soil density, then the district court was incorrect. The district court cited certain of our cases, including *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264 (Fed.Cir.1991), that may have been read to suggest otherwise, but our recent decision in *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d [1373,] 1377-78 [(Fed. Cir. 2003)], has clarified any confusion on this score. Simply put, the fact that a characteristic is a necessary feature or result of a prior-art embodiment (that is itself sufficiently described and enabled) is enough for inherent anticipation, even if that fact was unknown at the time of the prior invention. *See, e.g., id. at 1378; Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1347 (Fed.Cir.1999) ('[T]he discovery of a previously unappreciated property of a prior art composition, or of a scientific explanation for the prior art's functioning, does not render the old composition patentably new to the discoverer.')."

### C. *Johnson & Johnston* Disclaimers of Equivalents

A serious area of judicial activism has been the creation of an *en banc* rule that the doctrine of equivalents is barred insofar as providing coverage for an equivalent which is *disclosed* but not specifically claimed in a patent. This rule was adopted by the *en banc* court in *Johnson & Johnston Associates v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc), and is still being sorted out.

### 1. "Disclosure-dedication" rule

In *PSC Computer Prods., Inc. v. Foxconn Int'l*, __ F.3d __ (Fed. Cir. 2003)(Gajarsa, J.), a panel makes a further expansion of *Johnson & Johnston* and gives the doctrine a name – a "disclosure-dedication" rule. The *en banc* rule barred a finding of equivalents where the actual embodiment was *disclosed* but not *claimed*. Here, in the *PSC Computer* case, there is a teaching of the use of a particular material in the prior art – not the claimed invention. Based upon this discussion of the prior art, the court held that the doctrine of equivalents could not be used to capture an equivalent of the claimed invention utilizing the material of this *prior art* embodiment.

The panel addresses the issue in a different manner, however. It poses the question: "How *specific* must a disclosure [of the accused infringing embodiment] in a written description be to dedicate matter to the public?" (emphasis added).

The patentee distinguishes *Johnson & Johnston* by noting that because the "patent's disclosure of prior art made of plastic [which is the unclaimed equivalent to the element of the patent] is oblique and incidental, plastic clip parts [which constitute the accused infringing equivalent] were never dedicated to the public."

The panel in PSC weaves a brand new rule of "disclosure-dedication": The panel "hold[s] that if one of ordinary skill in the art can *understand* the unclaimed disclosed teaching upon reading the written description, the alternative matter disclosed has been dedicated to the public. This 'disclosure-dedication' rule does not mean that any generic reference in a written specification necessarily dedicates all members of that particular genus to the public. The disclosure must be of such specificity that one of ordinary skill in the art could *identify* the subject matter that had been disclosed and not claimed."

## 2. A "Salt" is an "Acid"

The classic case where there *is* a disclosure of an embodiment that is not claimed is where a chemical invention is directed to a compound, *per se*, and the specification discloses a host of simple derivatives such as salts and esters. *Everyone* who understands chemistry understands that if a compound, *per se*, is an acid, that there are numerous salts and esters and other derivatives that are *different* but clearly *equivalent* to the acid. But, it is clear to the first year high school chemist that an acid and a salt are entirely different entities. The skilled patent draftsman will avoid a problem by having *literal* coverage, claiming "an acid of the formula [R] and salts thereof".

In *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 347 F.3d 1367 (Fed. Cir. 2003)(Newman, J.), the court faced precisely this problem: The patent disclosed a compound and its salts but *claimed* only the acid, *per se*. Under *Johnson & Johnston*, it is clear that there is no coverage for the equivalent salt.

But wait.

The sole claim is to "[a] method of treatment of urolithiasis and inhibiting bone reabsorption which consists of administering to a patient in need thereof an effective amount of *4-amino-1-hydroxybutane-1, 1-biphosphonic acid.*" The accused infringing product – and also the pioneer patentee's product, Fosamax®, is *not* 4-amino-1-hydroxybutane-1,1-biphosphonic *acid*, but rather a specific salt form, a monosodium salt trihydrate of the claimed acid. Or, in other words, Fosamax® is 4-amino-1-hydroxybutane-1,1-biphosphonic acid *monosodium salt trihydrate*. Accused infringer Teva sells the monosodium *salt*, and not the literally claimed acid – and on this basis claims noninfringement.

The record is clear that the *claim* only refers to administration of the acid, *per se*; while one skilled in the art would understand that a salt could be used in lieu of the acid. Deviating from the majority rule, the panel majority in *Merck* notes that "Teva argues that it is improper to go outside of the prosecution record to explain the meaning of terms used in a patent claim. It is well established that evidence extrinsic to the patent documents cannot change the meaning of a term as used in the claim from the meaning with which it is used in the specification. *However, it is not prohibited to provide the opinions and advice of experts to explain the meaning of terms as they are used in patents and as they would be perceived and understood in the field of an invention.* See *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309, (Fed. Cir. 1999). We conclude that there was not reversible error in the court's crediting of the pharmacologists' testimony, buttressed by publications, the usages in the specification, and the view of the PTO, as against the testimony of a chemist without experience in the specific field of the invention." *Merck v. Teva*, 347 F.3d at 1372.

## 3. The Ad Hoc *Merck v. Teva* Bandage

*Merck v. Teva* is completely at odds with the precedent such as *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003)(Gajarsa, J.): "Generally, terms in a patent claim are given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art. [*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed.Cir.2001).] After identifying the plain meaning of a disputed claim term, the court examines the written description and the drawings to determine whether use of that term is consistent with the ordinary meaning of the term. *Day Int'l, Inc. v. Reeves Bros., Inc.*, 260 F.3d 1343, 1348 (Fed.Cir.2001). This heavy presumption in favor of the ordinary meaning of claim language as understood

by one of ordinary skill in the art is overcome:  (1) where the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term; or (2) where the term chosen by the patentee so deprives the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used.  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed.Cir.1999).  Similarly, the examination of the written description and drawings is necessary to determine whether the patentee has disclaimed subject matter or has otherwise limited the scope of the claims. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed.Cir.2001)."

**D.  Panel Splits over *Enzo* "Written Description"**

Other than from the identity of a particular *panel* that may hear a case, there is no rhyme or reason to ascertaining the law of what constitutes a "written description" under 35 USC § 112, ¶ 1, insofar as a biotechnology invention is concerned where the issue is whether an *original* claim finds support from the enabling disclosure.  Notoriously perpetuated in the highly controversial *Enzo Biochem Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002), the problem stem from an aberrant panel opinion in *Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997), that created a brand new law of biotechnology-specific rules for a "written description".  While seemingly the court had retreated from the extreme view of *Enzo*, then along comes a case that squarely follows this now seven year old precedent – *Noelle v. Lederman*, __ F.3d __ (Fed. Cir. January 20, 2004)(Gajarsa, J.).

In *Noelle*, the context was the denial of priority based upon an earlier application under 35 USC § 120 because it was held that at the time of the parent filing date sought in this interference that the disclosure of the parent case did not have a sufficient "written description" in terms of expectation of enablement to satisfy the *Regents* standard.

*Noelle* piggybacks off the controversial panel decision on reconsideration in *Enzo Biochem v. Gen-Probe, Inc.*, 323 F.3d 956 (Fed. Cir. 2002), which it now styles as "*Enzo Biochem II*".

A disagreement with the *Enzo* opinion is found in *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1326, 1320 (Fed. Cir. 2003)(per curiam), following a similarly sharp analysis in *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1322 (Fed. Cir. 2003)(Michel, J.).  Already, much has been written about *Enzo*; for the writer's views, see Wegner, *When a Written Description is Not a "Written Description": When Enzo Says it's Not*, 12 Fed. Cir. Bar J. 271-283 (2002); see also Wegner, *An Enzo White Paper: A New Judicial Standard for a Biotechnology "Written Description"* Under 35 U.S.C. § 112, ¶ 1, 1 J. MARSHALL REV. INTELL. PROP. L. 254 (2002); Wegner, *Enzo Trips the TRIPs: A Paradigm of Conflict with the Treaty Foundations for Global Patent Rights*, paper prepared for presentation to the Annual Meeting of the American Intellectual Property Law Association, October 17-19, 2002, Committee on Patent Law, Grand Hyatt Hotel, Washington, D.C., AIPLA Annual Meeting  (conference paper published on CD Rom)[reproduced, http://www.foleylardner.com/FILES/tbl_s31Publications/FileUpload137/819/enzo_wp_final.pdf]

**E.  Enablement Confused with Anticipation (*Schering*)**

In *Scherng Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373 (Fed. Cir. 2003)(Rader, J.), the disclosure of a *different* compound than the one claimed was held to *anticipate* that compound because the disclosure of that compound *enabled* the production of that compound.  This is a complete departure from settled case law.

**1.  The Schering Panel Opinion**

The *Schering* case involves the prior art disclosure of a precursor compound "A" which, if taken *in vivo*, will inherently convert to a metabolite "B".  The prior art disclosure of "A" did not identify the new metabolite that was later discovered to exist upon analysis of the metabolite.  There never was any production of the metabolite "B" (or any actual *in vivo* administration of the precursor compound) before the critical date to create a statutory bar under 35 USC § 102(b).  The panel held that the precursor compound "A" *anticipated* the metabolite "B".

The legal issue is framed in the brief paragraph from the panel opinion that says, in essence, that a product is anticipated if a *different* product is produced in the prior art *and* that there is an enabling disclosure of how one could get to the claimed product:  "Anticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure. *In re Donohue*, 766 F.2d 531, 533 (Fed.Cir.1985).  Thus, actual administration of [the prior art] loratadine to patients [to convert

it *in situ* to the claimed metabolite] before the critical date * * * is irrelevant. The [prior art] patent suffices as an anticipatory prior art reference if it discloses in an enabling manner the administration of loratadine to patients [to produce the claimed metabolite]." *Schering*, 339 F.3d at 1380.

## 2. Dissents from Denial of En Banc

Three members of the court voted to hear the case *en banc*. Detailed opinions came from the pens of Circuit Judges Newman and Lourie (who garnered only one further vote – from Circuit Judge Gajarsa) in their quest to gain the requisite seven votes to have the case reheard *en banc*.

Independent of a parallel dissent by Circuit Judge Newman (with Judge Gajarsa voting with both Judges Newman and Lourie without joining their opinions), Circuit Judge Lourie "respectfully dissent[ed] from the court's decision not to hear this case *en banc*. [He did] so because it is an extraordinary decision, effectively precluding virtually all patents on human metabolites of drugs. It thus qualifies as an issue of exceptional importance, justifying *en banc* consideration."

Judge Lourie explains that "[t]he holding of the panel, which the full court left standing, is that an issued patent on a pharmaceutical product provides an enabling disclosure of all of that product's metabolites (*i.e.*, compounds that are formed in a patient's body upon ingestion of the pharmaceutical product), simply by disclosing that the product can be used by administration to a human. Because product patents covering pharmaceutical products generally issue before clinical trials on the product have revealed the identity or nature of any metabolites, this decision will preclude protection of those metabolites, as the issued patent will be effective prior art against such application."

He "do[es] not question that when a pharmaceutical product has been in actual public use prior to the filing of a patent application on its metabolite, the metabolite will also have been in public use and hence will be unpatentable. The holding of this case, however, goes much further, mandating that the mere issuance of the patent on the product – or any other publication of that product – inherently anticipates claims to the metabolite merely by disclosing that the product can be administered to a patient, on the theory that such administration would inevitably cause the human body to "make" the metabolite. The decision holds that an enabling disclosure of "how to make" metabolites is provided by the mere recitation that one can administer a prior art compound to humans."

Judge Lourie points out that the prior art "patent does not identify or even mention any of the claimed products' metabolites [which are the subject of the claims]. Yet the court here sweepingly holds that the patent anticipates those metabolites."

Stripping aside the drug issues, he notes that "we deal here with issues of patent law, not policy or equity, and to hold that a patent on a product, with a minimal disclosure of administering it to a human or other subject, anticipates a later application on a metabolite, of which no mention appears whatsoever in the patent, cannot be correct."

## 3. The Law of Inherency

It is axiomatic that for there to be anticipation by a disclosure in a reference, that disclosure must, itself, constitute "prior art" under one of the relevant subsections of 35 USC § 102. In the first instance, reference that *identifies* a product that anticipates must be a prior art reference. *A fortiori*, for there to be anticipation based upon inherency, the anticipated product must have been produced before the critical date to be prior art. Thus, it is axiomatic that "[a]n anticipating reference must * * * establish that the subject matter existed in the prior art." *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002)(Gajarsa, J.)(emphasis added)(citing *In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990); *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 678 (Fed. Cir. 1988)( "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of the invention.")

*Schering* suggests that if a reference has an enabling disclosure of how to make a claimed invention, this is sufficient to deny a patent even if the only production of the claimed invention before the critical date is not a prior art disclosure.

In *Schering*, a panel of the court indicated that if the prior art shows that a precursor product *could be* converted into a reaction product of unknown structure and that reaction product could be deemed as

anticipated even if that reaction product had never been produced until *after* the critical prior art date – where the is an enabling disclosure of how one could convert the precursor product into the reaction product of unknown structure. But, the reaction product was never in the prior art because it was never made until after the critical date. Nevertheless, the panel held that if the precursor product provided an *enabling disclosure* to make the reaction product of unknown structure, anticipation nevertheless is established.

In *Schering*, the patentee Schering had conducted secret – and therefore not "prior art" – tests of the precursor product (the drug loratadine) under conditions which necessarily and inherently produced the reaction product of unknown structure – the metabolite DCL. The testing that produced the later claimed reaction product clearly was not prior art. ("Before the critical date, Schering only tested loratadine in secret. Thus, according to Schering, 'DCL was not publicly used, or described in any printed publication, until after *** the critical date *** under 35 U.S.C. § 102(b).' Schering thus argues that DCL did not 'exist' in the public domain such that DCL could be prior art[.]"

While there was thus no prior art production of the reaction product DCL – whether of known or unknown structure – the court stated that nevertheless there is anticipation under 35 USC § 102(b): "Anticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure. *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985). Thus, actual administration of loratadine to patients before the critical date *** is irrelevant. The '233 patent suffices as an anticipatory prior art reference if it discloses in an enabling manner the administration of loratadine to patients." Whether the prior art '233 patent contains an enabling disclosure was all that was necessary for the court to find anticipation: "A reference may enable one of skill in the art to make and use a compound even if the author or inventor did not actually make or reduce to practice that subject matter. *Bristol-Myers*, 246 F.3d at 1379; *see also In re Donohue*, 766 F.2d at 533 (sustaining an anticipation rejection over a reference disclosing a compound and other references disclosing sufficient information to make that compound). Indeed, information arising after the critical date may show that the claimed subject matter, as disclosed in a prior art reference, "was in the public's possession." *Bristol-Myers*, 246 F.3d at 1379 (citing *In re Donohue*, 766 F.2d at 534)."

The court ruling goes so far as to conclude that if there is an enabling disclosure of how to make any claimed embodiment, then there is anticipation even if there is no disclosure of such claimed embodiment: "An anticipatory reference need only enable subject matter that falls within the scope of the claims at issue, nothing more. To qualify as an enabled reference, the '233 patent need not describe how to make DCL in its isolated form. The '233 patent need only describe how to make DCL in any form encompassed by a compound claim covering DCL, e.g., DCL as a metabolite in a patient's body. The '233 patent discloses administering loratadine to a patient. A person of ordinary skill in the art could practice the '233 patent without undue experimentation. The inherent result of administering loratadine to a patient is the formation of DCL. The '233 patent thus provides an enabling disclosure for making DCL."

It should be noted that if there were an *example* of the actual administration of loratadine to a patient via oral administration, then this example which necessarily and inherently breaks down the loratadine to the later-claimed DCL would be an anticipation under 35 USC § 102(e). But, the prior art '233 patent has a disclosure of a large genus of compounds including loratadine but there is no disclosure of administering loratadine to a patient or dissolving the loratadine in a solution equivalent to gastric fluid. There *is* a generic statement of use ("a method of effecting an anti-allergic response in an animal comprising administering to the animal an effective amount of a compound of the formula I as defined above") and a corresponding claim (claim 13)(" A method of effecting an anti-allergic response in an animal comprising administering to the animal an effective amount of a compound as claimed in any one of claims 1 to 11.").

There is only a generic statement of pharmaceutical compositions and methods. ("The compounds of the present invention are administered in pharmaceutical formulations comprising the compound in admixture with a pharmaceutical carrier suitable for enteral or parenteral administration. The formulations may be in solid form, as for example tablets and capsules, or in liquid form as for example syrups, elixirs, emulsions, and injectables. In the formulation of pharmaceutical dosage forms there generally is utilized excipients as for example, water, gelatin, lactose, starches, magnesium stearate, talc, vegetable oils, benzyl alcohols, gums, polyalkylene glycols, and petroleum jelly.") Example 6 explains how to make a syrup and Example 7 discloses how to make a tablet, but neither example shows the use of either product with a patient (or any other use).

Even if there is no anticipation, there is also a question of obviousness under 35 USC § 103(a) that is not addressed in *Schering*. But, the two issues are clearly distinct, particularly in the context of inherency. Thus, "obviousness is not inherent anticipation. *Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed.Cir.1984) ('[T]hough anticipation is the epitome of obviousness, [they] are separate and distinct concepts').") *Trintec Industries, Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1296 (Fed. Cir. 2002)(Rader, J.)

# EXHIBIT 17

Presented:
**2006 ADVANCED PATENT LAW INSTITUTE**
UNITED STATES PATENT AND TRADEMARK OFFICE
November 16-17, 2006
Alexandria, VA

# THE NEW ROLE OF REEXAMINATION IN PATENT LITIGATION

David L. McCombs
David M. O'Dell

David L. McCombs
David M. O'Dell
**HAYNES AND BOONE, L.L.P.**
901 Main Street, Suite 3100
Dallas, Texas 75202-3789
Telephone: (214) 651-5000
Telecopy: (214) 651-5940
David.McCombs@haynesboone.com
David.ODell@haynesboone.com

Copyright 2006 Haynes and Boone, L.L.P.[1]

---

[1]      This paper represents the individual views of its authors, and does not purport to represent the views of Haynes and Boone, L.L.P. or any of its clients.

# The New Role of Reexamination in Patent Litigation

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    THE REEXAMINATION PROCESS ....................................................................2

    A.    *Ex parte* Reexamination..............................................................................3

    B.    *Inter partes* Reexamination........................................................................6

    C.    Substantial New Question of Patentability ...............................................11

    D.    Examination on the Merits.........................................................................13

    E.    Appeals ......................................................................................................15

    F.    Potential Changes That May Affect the Reexamination Process ..............16

III.   REEXAMINATION STATISTICAL ANALYSIS ..............................................17

    A.    Timing and Results For *Ex parte* and *Inter partes* Procedures.............17

    B.    Litigation Versus Reexamination Outcomes .............................................18

IV.    REEXAMINATION COINCIDENT WITH PATENT LITIGATION .................19

    A.    Reexamination Can Stay Litigation ..........................................................19

    B.    Reasons to Request Reexamination ...........................................................22

    C.    Reasons Not to Request Reexamination ....................................................24

V.     REEXAMINATION STRATEGIES ....................................................................27

    A.    Choosing Between *Ex parte* and *Inter partes* Reexamination.............27

    B.    When to File................................................................................................30

    C.    How To Make Reexamination Filings Examiner-Friendly .................31

VI.    INTERPLAY WITH LITIGATION ....................................................................35

VII.   TRIAL LAWYER'S PERSPECTIVE – A SYNOPSIS ..................................39

VIII.  CONCLUSION....................................................................................................42

APPENDIX A - USPTO *Ex Parte* Reexamination Filing Data  - June 30, 2006

APPENDIX B - USPTO *Inter Partes* Reexamination Filing Data  - June 30, 2006

# THE NEW ROLE OF REEXAMINATION IN PATENT LITIGATION[2]

## I.     INTRODUCTION

In 2005, the U.S. Patent and Trademark Office formed a Central Reexamination Unit for improving the quality and efficiency of the patent reexamination process. Litigants are increasingly using *inter partes* and *ex parte* reexamination as an avenue to challenge patent validity, especially in highly technical cases that may be difficult for juries. Presented here is a look at the new role of reexamination in patent litigation including practitioner perspectives on improving the reexamination process, litigation strategies, and the interplay between reexamination and litigation at all stages of the proceedings.

Reexamination may be an attractive option for a patent defendant under the right circumstances. As an administrative proceeding, it opens up a new front in the case that can create additional levels of uncertainty for the plaintiff-patentee in terms of time to trial, estoppels, claim construction, and intervening rights. It also creates a separate opportunity for preservation of rights on appeal by the defendant.[3]     However, reexamination is not without risk. As for *ex parte* reexamination, it is often regarded as insufficient because after a reexamination is ordered, the third party's participation is limited to one statutory reply prior to examination, which may only be filed if the patent owner files a pre-examination optional statement. The *inter partes* reexamination procedure was intended to address this apparent defect. It provides an inexpensive way, as compared with litigation, for a third party who discovers new prior art to challenge the patent and to participate both in the examination and appeal stages of the proceeding. But *inter partes* reexamination has not been pursued routinely for fear it will backfire with an affirmation of the patent claims by the Patent Office, and create estoppel in the litigation as to any ground or issues the requester raised or "could have raised."[4]     As a

---

[2]     October 23, 2006. Authored by David L. McCombs and David M. O'Dell.

[3]     In 2002, in order to make the optional *inter partes* reexamination procedures a more attractive alternative to litigation, the *inter partes* reexamination practice was expanded to provide third parties the right to appeal to the U.S. Court of Appeals for the Federal Circuit and to participate in the patent owner's appeal to the Court. *See*, 21st Century Department of Justice Appropriations Authorization Act, Pub. L. 107-273, 116 Stat. 1758, 1899-1906 § 13202 (2002).

[4]     An estoppel adverse to a third-party requester (which does not exist in *ex parte* reexamination) will attach in the case of an *inter partes* reexamination, if the requester is unsuccessful in the *inter partes* reexamination proceeding. The requester is estopped from later asserting in any civil action, or in a subsequent *inter partes* reexamination, the invalidity of any claim finally determined to be valid and patentable on any ground the third-party requester raised or could have raised in the *inter partes* reexamination. 35 U.S.C. § 315(c) (2006). Also, the requester might be estopped from later challenging in a civil action any "fact" determined in the *inter partes* reexamination. *See*, House Report 106-464 - Intellectual Property and Communications Omnibus Reform Act of 1999, Subtitle F - Optional *Inter partes* Reexamination Procedure, § 4607 (uncodified).

result, neither *ex parte* nor *inter partes* reexamination has been utilized to the degree envisioned when enacted by Congress.

Recently though, more litigants are using the reexamination procedure.[5] A new look at reexamination is further being fueled by shifts at the Patent Office to improve patent quality,[6] the formation of the Central Reexamination Unit for the purpose of improving the reexamination process,[7] and a general recognition of the high percentage of reexamination requests being granted.[8] Although the *inter partes* reexamination procedure is too new to provide meaningful statistics on ultimate outcomes, circumstances suggest that the Patent Office is taking clear steps to make both forms of reexamination an attractive option for challenging patents in today's environment.

As part of the defense strategy, a threshold inquiry is whether or not a reexamination should be filed. If so, the analysis proceeds with what type or types of reexamination to file, how to prepare a request with the highest chances of success, how to craft the request to best drive important claim construction issues in the case, and when to file the request. Also for consideration is the impact the reexamination might have on the development of other defenses including inequitable conduct, on-sale bar, prior public use, and how to best maximize such parallel defenses. Additionally, other scenarios need to be addressed, including how to reduce the effect of a reexamination not being granted for a particular claim, and claim amendments.

## II.    THE REEXAMINATION PROCESS

Reexamination is one of four ways by which a patent can be "corrected" or amended.[9] Reexamination is unique in that it can be requested by anyone, and not just

---

[5]     While only 53 *inter partes* reexamination requests were filed in the first five years that the procedure was available, more than 75 new *inter partes* requests have been filed between Jan.-Sep. 2006. *See*, United States Patent And Trademark Office Report To Congress On *Inter partes* Reexamination available at http://www.uspto.gov/web/ offices/dcom/olia/reports/reexam_report.htm.

[6]     Patent Quality Improvement Hearing Before the Subcommittee on Courts, the Internet, and Intellectual Property of the Committee of the Judiciary, House of Representatives, 188th Congress, First Session, July 24, 2003 (available at: http://www.house.gov/judiciary).

[7]     *USPTO Improves Process For Reviewing Patents*, Press Release #05-38 dated July 29, 2005, United States Patent and Trademark Office. ("The 20-examiner [central reexamination] unit began operating earlier this week and all new requests for reexamination will be assigned to them." . . . "In addition, all future reexamination proceedings will be completed within a specific timeframe, which is expected to be less than two years.").

[8]     *See*, http://www.uspto.gov/web/offices/pac/ dapp/patentlegaladminmain.html. Ninety-one percent and ninety-five percent of requests for *ex parte* and *inter partes* reexaminations, respectively, are granted according to recent government statistics. *See also*, *infra*, Appendix A.

[9]     The four ways are:  1) reexamination; 2) reissue; 3) certificate of correction; and 4) disclaimer. *See generally*, Patent & Trademark Office, Manual of Patent Examining Procedure, Ch. 1400 (8th Ed., Rev. 3, August 2005) ("MPEP").

the patent owner.[10]  There are two types of reexamination:  *Ex parte* reexamination and *inter partes* reexamination.  *Ex parte* reexamination is available for all pending patents, while *inter partes* reexamination is only available for patents "issued from an original application filed in the United States on or after November 29, 1999."[11]

## A.    *EX PARTE* REEXAMINATION

Congress enacted *ex parte* reexamination in 1980 by the creation of 35 U.S.C. §§ 301-307.  The Rules of Practice governing *ex parte* reexamination are provided in 37 C.F.R. 1.510 - 1.570.  The Manual of Patent Examining Procedure (MPEP) provides additional detail in Chapter 2200, titled "Citation of Prior Art and *Ex parte* Reexamination of Patents."

An *ex parte* reexamination is initiated by filing a "Request for Reexamination." The request must identify a "substantial new question of patentability" affecting any claim of the patent concerned, based on patents and publications.[12]  The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.[13] Anyone, including the patentee, may initiate *ex parte* reexamination and provisions are available for keeping the requester's identity confidential.[14]  Multiple requests for *ex parte* reexamination can be filed, as long as each request raises a substantial new question of patentability[15] and as long as the second or subsequent request was not filed for purposes of harassment of the patent owner.[16]  It is not unusual for multiple requests to be merged into a single proceeding.[17]  Issues not based on patents or printed publications,

---

[10]    An interference proceedings can also be initiated by a third party, but this proceeding has a different set of requirements that is beyond the scope of the present paper. 35 U.S.C. § 135. *See also*, MPEP Ch. 2300.

[11]    37 C.F.R. § 1.913 (2004).

[12]    35 U.S.C. § 303 (2006).

[13]    35 U.S.C. § 303 (2006).

[14]    37 C.F.R. § 1.501 (2004).

[15]    *See*, 37 C.F.R. § 1.565(c) (2004). Note, however, that the same prior art reference may be used to start a second reexamination during the pendency of the first reexamination "only if the prior art cited raises a substantial new question of patentability which is different than that raised in the pending reexamination proceeding." MPEP § 2240.

[16]    *See*, MPEP § 2240.

[17]    37 C.F.R. § 1.989 (2004).

such as inventorship, inequitable conduct, enablement, written description, and best mode are not considered when making the determination on the request for reexamination.[18]

Upon filing a request for *ex parte* reexamination, the Director of the Office will make a determination whether or not a substantial new question of patentability affecting any claim is raised by the request, and then enter an order granting or denying the request, within 90 days.[19]  If granted, the order will identify which claims are subject to reexamination, and at least one reference supporting the grant of the reexamination. Upon a grant order for reexamination, within two months of service the patent owner optionally may file a "statement" on such question, including any narrowing claim amendments or new claims for consideration, a cancellation of claims, or a correction of inventorship.[20]  If (and only if) the patent owner files such a statement, within two months thereafter the requester may file and have considered a reply to the patent owner's statement.[21]  Otherwise, the requester is no longer able to participate in the reexamination, nor any appeals therefrom.  Following the grant and any responses or replies, the examiner will issue an Office action.  Subsequent prosecution of an *ex parte* reexamination by the patent owner is similar to that of a utility patent application, with some differences in amendment formats and timing.

Reexamination proceedings, including any appeals, are to be conducted with special dispatch within the Office.[22]  In addition to the use of accelerated time limits, to bring the prosecution to a speedy conclusion "it is intended that the second Office action in the reexamination proceeding following the decision ordering reexamination will be made final[.]"[23]  Current statistics for *ex parte* reexamination (discussed below) show an average pendency time of 23 months from the initial order to the issuance of a reexamination certificate.

A flow chart describing the steps in an *ex parte* reexamination procedure is provided below, with timings listed to the right of the chart.  The timings are provided

---

[18]     *See*, MPEP § 2217.  The requirements of 35 U.S.C. § 112 can be addressed for the purpose of determining a priority date of a claim, if the application is a continuation, divisional, or continuation-in-part of another application.  *Id.*  Also, the patent owner can make corrections to inventorship during the reexamination.  37 C.F.R. § 1.530(l) (2004).

[19]     *See*, 35 U.S.C. § 303(a) (2006) and 37 C.F.R. § 1.515(a) (2004).

[20]     *See*, 35 U.S.C. §§ 304, 305 (2006) and 37 C.F.R. § 1.530 (2004).

[21]     *See*, 35 U.S.C. § 304 (2006) and 35 C.F.R. § 1.535 (2004).

[22]     *See*, 35 U.S.C. § 305 (2006).  See also, 37 C.F.R. §§ 1.111, 1.550, 1.956 (2004); and MPEP §§ 2266, 2647.01.  Office Actions should be produced with "special dispatch."  Special dispatch also means that the patent owner may obtain time extensions only for good cause shown, and the requester cannot get time extensions.

[23]     *See*, MPEP § 2271.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

directly from the applicable rules and/or statutes, except for the estimated and average times so indicated.[24]

***Ex Parte* Reexamination**



Arguably, the biggest drawback of *ex parte* reexamination is the inability of a third party requester to remain involved in the process. This drawback is squarely addressed by the creation of the *inter partes* reexamination process, discussed below.

---

[24]    See the following section titled "Reexamination Statistical Analysis," which provides further support for the estimated and PTO average times given.

5

### B.    *INTER PARTES* REEXAMINATION

Congress enacted the *inter partes* reexamination procedure in 1999 as set forth in 35 U.S.C. §§ 311-318.  The Rules of Practice governing *inter partes* reexamination are provided in 37 C.F.R. 1.902-1.997.  The Manual of Patent Examining Procedure (MPEP) provides additional detail in Chapter 2600, entitled "Optional *Inter partes* Reexamination."

*Inter partes* reexamination includes many similarities to *ex parte* reexamination but, as its name implies, allows for participation by the requester throughout the process. Another significant difference is that the patent owner cannot provide a patent owner statement between an order granting reexamination and the first Office action.  Typically, an order granting *inter partes* reexamination is issued by the Office along with the first Office action.

As with *ex parte* reexamination, an *inter partes* reexamination is initiated by filing a "Request for Reexamination" that will be granted if the request raises a "substantial new question of patentability" based on published prior art references.[25] Issues of inventorship, inequitable conduct, enablement, written description, and best mode as a basis for invalidity cannot be raised.[26]

A third-party requester can only file one request for *inter partes* reexamination, unless it can be shown that the requester could not have raised the issue at the time of filing the prior request.[27]

A flow chart describing the steps in an *inter partes* reexamination procedure is provided below, with timings listed to the right of the chart.  The timings are provided directly from the applicable rules and/or statutes, except for the estimate and average times so indicated.[28]

---

[25]    35 U.S.C. § 312 (2006).

[26]    *See*, MPEP §§ 2616, 2617.  However, the requirements of 35 U.S.C. § 112 can be addressed for the purpose of determining a priority date of a claim, if the application is a continuation, divisional, or continuation-in-part of another application.  *See*, MPEP § 2617.  Also, it is noted that the patent owner can make corrections to inventorship during the reexamination.  37 C.F.R. § 1.530(l) (2004).

[27]    37 C.F.R. § 1.907 (2004).   See the following section titled "Estoppel to Bring Inter Partes Reexamination" for further analysis.

[28]    See the following section titled "Reexamination Statistical Analysis," which provides further support for the estimated and PTO average times given.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

*Inter Partes* Reexamination



**Speedy First Action**.  In *inter partes* reexamination, the first Office action is usually provided at the same time as the order for grant, within 90 days following the filing of the request.[29]  As compared with *ex parte* reexamination, the result can be a much faster initial rejection of the claims.[30]

**Third Party Participation**.  Throughout the *inter partes* reexamination process, the requester remains involved with substantive communications between the patent owner and the Patent Office.  Specifically, 35 U.S.C. § 314 states:

---

[29]    See 35 U.S.C. § 312; 37 C.F.R. § 1.935 (2004).  The first Office action can be delayed up to 2 months after the order. MPEP § 2660.

[30]    In an *ex parte* reexamination, it is not unusual for an Office action to be provided 6-11 months after filing.  *See, e.g.*, the transaction histories of Reexam Ser. Nos. 90/007,300 and 90/007,310, which are publicly available on the Public Patent Application Information Retrieval ("Public PAIR") website at http://portal.uspto.gov/external/portal/pair.

Each time that the patent owner files a response to an action on the merits from the Patent and Trademark Office, the third-party requester shall have one opportunity to file written comments addressing issues raised by the action of the Office or the patent owner's response thereto, if those written comments are received by the Office within 30 days after the date of service of the patent owner's response.

The third-party requester can comment on the Office action, the patent owner's response, or both. This involvement continues through the appeal process, and even includes the ability of the third party requester to participate in appeals initiated by the patent owner and to file appeals to the board of patent appeals and interferences (BPAI) and to the Court of Appeals for the Federal Circuit.[31] Note, however, that for some filings and Patent Office actions, such as requests for extensions of time by the patent owner or their grant, the third party requester is not entitled to comment.[32]

**Third Party Estoppel and Litigation.** Estoppels that attach in *inter partes* reexamination are the most controversial aspect of the procedure and are "the most frequently identified inequity that deters third parties from filing requests for *inter partes* reexamination of patents."[33]

### Res Judicata Effect of Reexamination

35 U.S.C. § 315(c) states:

A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting *at a later time*, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or *could have raised* during the inter partes reexamination proceedings. This subsection does not prevent the assertion of invalidity based on newly discovered prior art *unavailable* to the third-party requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings. (Emphasis added.)

To preclude unnecessary litigation, section 315(c) provides that a third-party requester who is granted an *inter partes* reexamination may not assert at a later time in any civil action the invalidity of any claim finally determined to be patentable on any ground that the third-party requester raised or could have raised during the *inter partes*

---

[31]    35 U.S.C. § 315 (2006).

[32]    *See, e.g.*, MPEP § 2665.

[33]    United States Patent and Trademark Office Report To Congress on Inter Partes Reexamination at: http://www.uspto.gov/web/offices/dcom/olia/reports/reexam_report.htm.

reexamination. However, invalidity may be asserted based upon newly discovered prior art unavailable to the requester and the Office at the time of the reexamination.

The provisions of section 315(c) are unclear in several respects and their scope has yet to be tested. A breakdown of the important considerations are as follows:

- *"at a later time."* The third-party requester is estopped from asserting "at a later time" in a civil action the invalidity of a claim finally determined to be valid in an *inter partes* reexamination. This language does not appear to preclude the pursuit of identical assertions of invalidity in a co-pending litigation matter. The only litigation assertions estopped are those made after a final determination in reexamination, following appeals (if any) to the BPAI and the Court of Appeals for the Federal Circuit.[34]

- *"could have been raised" estoppel.* The third-party requester is estopped from asserting at a later time in litigation the invalidity of a patent claim finally determined to be patentable as to all issues which were raised or "could have been raised" during the reexamination proceeding. The "could have been raised" language may be construed to mean that if all possible anticipatory features of a reference, and all possible permutations of obviousness combinations and their motivations to combine, are not explicitly argued in reexamination then they are not later assertable in litigation.

  More problematic however is a concern that this "could have been raised" language might be broadly construed to include newly uncovered prior art that "could have been found earlier" through prior art searching; and therefore should have been submitted in reexamination. The outcome of this inquiry also implicates the statutory meaning of the estoppel exception for newly discovered art "unavailable" to the requester and the USPTO, addressed below. The current USPTO position on the meaning of "could have been raised" was posted in the Official Gazette and states: "The question of whether an issued could have been raised must be decided on a case by case basis, evaluating all the facts of each individual situation."[35]

- *"unavailable" prior art exception to estoppel.* An exception to the estoppel provisions are that they do not prevent assertions of invalidity in

---

[34] To the extent there is any ambiguity on this point, it is addressed in a proposed amendment that would make clear estoppel is effective only after there has been a "final decision in an inter partes reexamination proceeding that is favorable to the patentability of any original or proposed amended or new claim of the patent." See, H.R. 2231 § (c)(1).

[35] United States Patent and Trademark Office Report To Congress on Inter Partes Reexamination at: http://www.uspto.gov/web/offices/dcom/olia/reports/reexam_report.htm, *citing Official Gazette* 1234:97 (May 23, 2000).

litigation based on newly discovered prior art "unavailable" to the third-party requester and the Office at the time of the reexamination. Under a broad interpretation though, it might be argued that a reference which is simply "available" in a database, even though not discovered by the requester, by definition is not "unavailable" to the requester. Therefore it invokes a "could have been raised" estoppel (as recited above).

In a PTO sponsored round table discussion on this issue held February 17, 2004, the round table participants raised the yet unanswered question: "How extensive would a prior art search have to be in order to avoid a 'could have been raised' estoppel, or to satisfy the 'unavailable' prior art exception?"[36]  The discussion presumes an affirmative duty to search, which may or may not exist.  According to the applicable Congressional Record, "unavailable" prior art is defined as prior art that was ". . . not known to the individuals who were involved in the . . . inter partes reexamination proceeding on behalf of the third-party requester and the USPTO."[37]

The Patent and Trademark Office acknowledges "the estoppel provisions should be better defined" and "recommends that Congress further define the extent and nature of estoppel risks imposed upon third parties requesting inter partes reexamination of a patent."[38]

### Estoppel to Bring *Inter Partes* Reexamination

35 U.S.C. § 317(b) states:

(b) FINAL DECISION.—Once a final decision has been entered against a party in a civil action arising in whole or in part under section 1338 of title 28, that the party has not sustained its burden of proving the invalidity of any patent claim in suit or if a final decision in an inter partes reexamination proceeding instituted by a third-party requester is favorable to the patentability of any original or proposed amended or new claim of the patent, then neither that party nor its privies may thereafter request an inter partes reexamination of any such patent claim on the basis of issues which that party or its privies raised or could have raised in such civil action or inter partes reexamination proceeding, and an inter partes reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office, notwithstanding any other

---

[36]     United States Patent and Trademark Office Report To Congress on Inter Partes Reexamination at: http://www.uspto.gov/web/offices/dcom/olia/reports/reexam_report.htm.

[37]     United States Patent and Trademark Office Report To Congress on Inter Partes Reexamination at: http://www.uspto.gov/web/offices/dcom/olia/reports/reexam_report.htm, citing S. 1948 (Cong. Rec. 17 Nov. 1999: S14720).

[38]     United States Patent and Trademark Office Report To Congress on Inter Partes Reexamination at: http://www.uspto.gov/web/offices/dcom/olia/reports/reexam_report.htm.

provision of this chapter [35 U.S.C. § §311 et seq.]. This subsection does not prevent the assertion of invalidity based on newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings.

Section 317(b) sets forth conditions by which *inter partes* reexamination is prohibited to guard against harassment of a patent holder. If a third-party requester asserts patent invalidity in a civil action and a final decision is entered that the party failed to prove the assertion of invalidity, or if a final decision in *inter partes* reexamination instituted by the requester is favorable to patentability, after any appeals, that third party requester cannot thereafter request or maintain *inter partes* reexamination on the basis of issues which were or could have been raised. However, the third-party requester may assert invalidity based on newly discovered prior art unavailable at the time of the civil action or prior *inter partes* reexamination.

## C.    SUBSTANTIAL NEW QUESTION OF PATENTABILITY

The presence or absence of "a substantial new question of patentability" determines whether or not a reexamination is ordered.[39] A refusal to declare a reexamination by the reviewing examiner may be petitioned to the Director.[40] The determination of the Director on this issue is not appealable.[41]

### Criteria For Deciding Request

The meaning and scope of the term "a substantial new question of patentability" is not statutorily defined and is determined by the Office on a case-by-case basis. The criteria for deciding the existence of a "substantial new question of patentability" is the same for both *ex parte* and *inter partes* proceedings.

A prior art patent or printed publication raises a substantial new question of patentability where:

(a) "a reasonable examiner would consider the teaching to be **important** in deciding whether or not the claim is patentable;" and

(b) "the same question of patentability as the claim has not been decided by the office in a previous examination or pending reexamination of the patent or in

---

[39]    35 U.S.C. § 304 (2006).

[40]    37 C.F.R. § 1.927 (2004).

[41]    35 U.S.C. § 312 (c) (2004).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

final holding of invalidity by the Federal Courts in a decision on the merits involving the claim."[42]

The meaning of "a substantial new question of patentability" is further clarified by certain guidelines, as outlined below.

**Prima Facie Unpatentability Not Required**.  It is not necessary that a "prima facie" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, a "substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as fully anticipated by, or obvious in view of, the prior art patents or printed publications.[43]

Note, however, that in the case of *inter partes* reexamination, a first Office action on the merits "will ordinarily be mailed together with the order granting reexamination."[44]

**One Claim Sufficient**.  A patent or printed publication that applies to at least one claim of the patent will be sufficient to warrant the reexamination of all claims in the patent.[45]

**"Old Art" as a Basis for Reexamination**.  "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."[46]  A substantial new question (SNQ) of patentability is often based on art previously considered/cited in an earlier concluded Office examination (hereinafter referred to as "old art").[47]  "For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of material new argument or interpretation presented in the request."[48]

---

[42]    MPEP §§ 2242; 2642 (emphasis in original).

[43]    MPEP §§ 2242; 2642.

[44]    MPEP § 2660.

[45]    MPEP §§ 2216, 2258.

[46]    35 U.S.C. § 303(a) (2002).

[47]    The term "old art" is used in the MPEP and was coined by the Federal Circuit in *In re Hiniker*, 150 F.3d 1362 (Fed. Cir. 1998).  Public Law 1107-273, 116 Stat. 1758, 1899-1906 (2002) expanded the scope of what may raise a SNQ to include old art.

[48]    MPEP §§ 2242; 2642.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

**Evidence Supporting Request**

Mere citation of a prior art reference, without explanation, is not sufficient to warrant reexamination.[49] Furthermore, prior art that serves only to provide evidence of prior public use is not sufficient to warrant reexamination. The MPEP warns the examiner to carefully analyze the reference to make sure that it is not "merely used as evidence of alleged prior public use or on sale."[50]

**Affidavits**. Affidavits or declarations of an expert, in conjunction with a prior art patent or printed publication, may be used to determine if a substantial new question of patentability exists. Affidavits or declarations are routinely used to:

- Explain the contents of the prior art, including inherent features;

- Support the publication date of a reference;

- Address the motivation to combine references;

- Address the adequacy of the patent disclosure when seeking to break the chain of priority based on 35 U.S.C. § 112; and

- Counter any assertions of secondary considerations, such as commercial success.[51]

**Admissions**. Admissions of the patent owner, if in conjunction with a prior art patent or printed publication, may establish the basis for a substantial new question of patentability.[52] Any admission submitted by the third-party requester may not be outside the record of the file or the court record.[53]

## D.    EXAMINATION ON THE MERITS

Once reexamination is ordered, the examination on the merits is dictated by 35 U.S.C. § 305, and conducted according to the procedures established for initial examination. As explained above in II.A., the proceeding is conducted with special dispatch and, if it is an *inter partes* reexamination, no interviews are permitted.

---

[49]    MPEP §§ 2217, 2617.

[50]    MPEP §§ 2217, 2617.

[51]    *See, e.g.,* MPEP §§ 2205, 2258, 2616, 2617, 2660.

[52]    MPEP §§ 2217, 2617.

[53]    MPEP §§ 2217, 2617.

An explicit intent of the reexamination procedures is "to maximize respect for the reexamined patent."[54]    Although not explained, this statement does not infer any "presumption of validity" to the patent being reexamined.  In reexamination, "there is no presumption of validity and the 'focus' of the reexamination 'returns essentially to that present in an initial examination.'"[55]  Reexamination by definition is just that, and requires the examiner to apply the same analysis as for an original examination.

17 C.F.R. § 1.104 (2004) states:

On taking up an application for examination or a patent in a reexamination proceeding, the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the claimed invention.  The examination shall be complete with respect both to compliance of the application or patent under reexamination with applicable statutes and rules and to the patentability of the invention as claimed, as well as to matters of form, unless otherwise indicated.

The reexamination procedures also include the following features:

- **Examiner Assignment Policy**.  "It is the policy of the Office that the SPE will assign the reexamination request to an examiner different from the examiner(s) who examined the patent application."[56]

- **Patentability Review Conferences**.  A "patentability review conference" will be convened at two stages of the examination in an *ex parte* reexamination proceeding.  First, just prior to issuing a final rejection; and second, just prior to issuing a Notice of Intent to Issue.[57]  The conference will consist of the examiner and two other conferees chosen by the supervisory primary examiner (SPE).  The purpose of the conference is explained in the MPEP:  "Review of the patentability of the claims by more than one primary examiner should diminish the perception that the patent owner can disproportionately influence the examiner in charge of the proceeding.  The conferences will also provide greater assurance that all matters will be addressed appropriately."[58]

---

[54]    *See*, MPEP § 2209.

[55]    *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed Cir. 1988), *citing In re Etter,* 756 F.2d 852, 857 (Fed. Cir. 1995).

[56]    *See*, MPEP § 2236.  See also, exceptions to this general policy.

[57]    *See*, MPEP § 2271.01.

[58]    *Id.*

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

During reexamination, claims are "given their broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims."[59]

As indicated above with respect to determining the existence of a SNQ, admissions of the patent owner in the USPTO or court record as to matters affecting patentability may be utilized in a reexamination proceeding.[60]

## E.    APPEAL

In *ex parte* reexamination, only the patent owner, not the third party requester, may appeal to the Board of Appeals and Patent Interferences, and ultimately to the Court of Appeals for the Federal Circuit, for review of the examiner's decision.[61]

In *inter partes* reexamination, the third party requester also has the right to appeal to the Board and to the Federal Circuit.[62] The third party requester may also participate in and oppose an appeal by the patent owner.[63]

A recent article raises the interesting question of whether the Federal Circuit might reach different results on two appeals involving the same patent, one from a reexamination and the other from a district court.[64] In the proposed hypothetical, one appeal is from a reexamination in which the Office held the patent invalid, after the Office applied the evidentiary standard in which no deference need be given to the Office's own prior work in issuing the original patent. The other appeal is from a federal court upholding the validity of the patent (presumably on the same prior art) after applying a clear and convincing evidence standard, and the presumption of validity. In the two appeal scenarios, would the Federal Circuit apply different standards of review, and reach different outcomes? Probably so. The authors suggest that in scenario one, the Federal Circuit should give deference to the an agency (PTO) decision and would likely uphold the invalidity, while in scenario two, the Federal Circuit should apply the clear and convincing standard and would likely uphold the decision of validity. They further note that no inter partes reexaminations have yet been ruled on by the Federal Circuit, and so this issue has yet to be addressed.[65] As a practical matter, it is likely the Federal

---

[59]    MPEP § 2258, *citing In re Yamamoto*, 740 F.2d. 1569 (Fed. Cir. 1984).

[60]    37 C.F.R. § 1.104(c)(3) (2004).

[61]    35 U.S.C. §§ 306, 141.

[62]    *Id.*

[63]    35 U.S.C. § 315(b).

[64]    *See, Inter Partes Reexamination in the United States,* Sherry M. Knowles, Thomas E. Vanderbloemen, and Charles E. Peeler, 86 J. Pat. & Trademark Off. Soc'y 611 (2004).

[65]    *Id.*

circuit would consider the full record of both proceedings in applying the standard of review for the appeal at issue.

## F.    POTENTIAL CHANGES THAT MAY AFFECT THE REEXAMINATION PROCESS

Both the Patent Office and Congress are proposing future statutory and rule changes that, if enacted, will affect the reexamination process.

When Congress enacted the American Inventors Protection Act of 1999, Congress required the Patent Office to submit, within five years of the enactment, a report evaluating whether *inter partes* reexamination proceedings were "inequitable to any of the parties," and if so, "recommendations for changes."[66] The Patent Office's Report to Congress recommends an enhanced post-grant review process that is more comprehensive than, and different from, reexamination. It would include "closely controlled discovery and cross-examination."[67]

Along these lines, the Committee Print of The Patent Act of 2005 (HR 2795) proposes a new post grant review law in the form of an "opposition" procedure that provides a post-grant right to oppose an issued patent within 9 months after the grant.[68] The issues that may be considered in the opposition include invalidity based on double patenting and any of the requirements for patentability under sections 101, 102, 103, 112, and the fourth paragraph of section 251.[69]    Requests for reexamination filed by a third party during the nine month period shall be treated as a request for opposition, and no reexamination may be ordered based on such request.[70] No such legislation has yet been enacted.

Also, the PTO recently proposed new rules directed to revisions and technical corrections affecting reexamination proceedings.[71] The rules include a proposal to provide a patent owner the opportunity to reply to a request for an *ex parte* or *inter partes* reexamination prior to the examiner's decision on the request.[72] The Office believes the opportunity for a patent owner reply could improve the information available to the

---

[66]    *See*, United States Patent and Trademark Office Report to Congress On *Inter partes* Reexamination available at http://www.uspto.gov/web/ offices/dcom/olia/reports/reexam_report.htm at 1.

[67]    *Id.* at 8.

[68]    *See*, H.R. 2795, 109th Cong. (2005), Section 9 and Appendix C.

[69]    *Id.*

[70]    *Id.*

[71]    71 Fed. Reg. 16072 (March 30, 2006).

[72]    *Id.*

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

Office in determining whether to grant reexamination, reducing the number of unnecessary reexaminations.[73]   The American Intellectual Property Law Association (AIPLA) submitted comments in disagreement with this proposal.   According to the AIPLA, "the PTO should not bias the *ex parte* proceeding in further favor of the patent owner, and should not take steps that will create additional and unnecessary burdens on the reexamination unit that are likely to further weaken the incentives for third parties to provide useful information relevant to patentability to the PTO."[74]

## III.   REEXAMINATION STATISTICAL ANALYSIS

### A.   TIMING AND RESULTS FOR *EX PARTE* AND *INTER PARTES* PROCEDURES

The Patent Office provides statistical information for both *ex parte* and *inter partes* reexaminations, reproduced in the Appendices A and B for the period through June 30, 2006.   Selected information is summarized as follows:

### *Ex Parte* Reexamination (Third Party Requester)

| 91% | Percentage of requests for reexamination granted |
|---|---|
| 29% | Percentage of reexaminations with all claims confirmed as valid |
| 12% | Percentage of reexaminations completed with all claims canceled |
| 59% | Percentage of reexaminations completed with claims amended |
| 23 mos. | Average pendency from filing to certificate being issued |
| 6-11 mos. | Recent average time delay between filing and first Office action[75] |

---

[73]      *Id.* at 16073.

[74]      Letter to The Honorable Jon W. Dudas from Michael K. Kirk, Executive Director, American Intellectual Property Law Association, May 30, 2006.

[75]      This data point is not directly reported by the Patent Office, but represents an estimate based upon the length of time to first action for the *ex parte* reexaminations filed in the April-May 2005 time frame. The range of time to first action is between 6 months and 18 months, excluding from consideration any reexaminations that have "unusual" filings, such as a patent owner statement or petitions.  Over 70% of the first actions occurred in the 6-11 month time frame.

### *Ex Parte* Reexamination (USPTO Commissioner Requested)

| 13% | Percentage of reexaminations with all claims confirmed as valid |
|-----|------------------------------------------------------------------|
| 19% | Percentage of reexaminations completed with all claims canceled |
| 68% | Percentage of reexaminations completed with claims amended |

### *Inter Partes* Reexamination[76]

| 93% | Percentage of requests for reexamination granted |
|-----|---------------------------------------------------|
| 0%* | Percentage of reexaminations with all claims confirmed as valid |
| 100%* | Percentage of reexaminations completed with all claims canceled |
| 0%* | Percentage of reexaminations completed with claims amended |
| 30 mos. | Average pendency from filing to certificate being issued |

\* This data may not be statistically meaningful since as of June 30, 2006, only 3 *inter partes* reexaminations have resulted in issuance of a certificate.

**B.    LITIGATION VERSUS REEXAMINATION OUTCOMES**

### Litigation Statistics[77]

| 34% | Percentage of patents where all asserted claims were ruled invalid over prior art patents and publications |
|-----|-------------------------------------------------------------------------------------------------------------|

One caveat when comparing the litigation statistics to the reexamination statistics is that the patent owner is allowed to amend the claims in reexamination, but not in

---

[76]    Per the statistical information provided by the Patent Office, as of June 30, 2006, a total of 152 *inter partes* reexaminations requests had been filed, with just 3 resulting in issuance of a certificate. As of October 10, 2006, there are 7 issued *inter partes* reexamination certificates, plus two with intent to issue.

[77]    *See,* http://www.patstats.org. The data is for the years 2004, 2005, and the first quarter of 2006.

litigation.[78]  With this caveat in mind, the above-listed statistics can be summarized as follows:

**Chart Comparing *Ex Parte* Reexamination (Third Party Requested) To Litigation**

| | |
|---|---|
| 71% | Percentage of patents in <u>reexamination</u> that resulted in a change of claim scope (claims were either amended or canceled) |
| 59% | Percentage of patents in <u>reexamination</u> that resulted in claim amendments being made |
| 12% | Percentage of patents in <u>reexamination</u> that resulted in all claims being cancelled |
| 34% | Percentage of patents in <u>litigation</u> that resulted in all asserted claims ruled invalid over prior art patents and publications |

It is noted that the reexamination statistics are directed to all claims, while the litigation statistics are directed only to asserted claims.  Patents are likely to include some narrow claims that would not be asserted in litigation, but could survive reexamination.  Also, for the patents with claims amended during reexamination, it is not known if the amended claims would still be of concern to the third party requester.

## IV.    REEXAMINATION COINCIDENT WITH PATENT LITIGATION

### A.    REEXAMINATION CAN STAY LITIGATION

Courts have discretion to stay litigation pending reexamination."[79]  In deciding whether to grant a stay pending reexamination, courts typically consider:

(1)  whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party,

(2)  whether a stay will simplify the issues in question and trial of the case, and

---

[78]    Of course whether or not the amended claims have the same potential for infringement as before the reexamination is determined on a case-by-case basis.  However, if the claims are amended, intervening rights may be created and additional arguments of prosecution history estoppel may have been created by the amendment.

[79]    "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). *See also*, 35 U.S.C. § 318 (2006); once an order for *inter partes* reexamination has been issued, "the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent[.]"

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

(3) whether discovery is complete and whether a trial date has been set.[80]

Courts weigh these factors differently and go both ways, often dictated by unique circumstances of the particular case.

### Stay Not Granted

For example, recently the Eastern District of Texas Court noted that while reexamination would simplify the case if the PTO finds that all the allegedly infringing claims are cancelled, "this historically happens in only 12% of reexaminations requested by a third party. The unlikelihood of this result, which favors not staying the case, is offset by the possibility that some of the claims may change during reexamination, which favors staying the case."[81] However, the Court also noted that the possibility of claims changing in reexamination should not routinely warrant a stay, and to grant a stay on this basis "would invite parties to unilaterally derail timely patent case resolution by seeking reexamination."[82] In the given circumstances, the Court did not find the possibility of issue simplification sufficiently persuasive to weigh in favor of a stay.[83]

Another case in the Eastern District of Texas denied a stay because, among other things, a stay pending reexamination would unduly prejudice the plaintiff. "Due to the inherent delay in reexamination proceedings, the opportunities for numerous appeals, and the apparent conflict between the parties, it appears likely that if a stay were granted, it could take more than four to five years before this case would be back before this Court."[84]

### Stay Granted

In a different situation, the Court granted a stay even though "cognizant that a stay may cause considerable delay in a case set for trial in 2007 and sensitive to Plaintiff's right to have its day in court."[85] An apparently important distinction for the Court was that the defendants requested an *inter partes* (versus *ex parte*) reexamination.

---

[80]    *See, e.g., Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *Motson v. Franklin Covey Co.*, 2005 U.S. Dist. LEXIS 34067 (D.N.J. 2005); *Target Therapeutics, Inc. v. Scimed Life Systems, Inc.*, 1995 WL 20470 (N.D. Cal. 1995); *GPAC, Inc. v. DWW Enterprises, Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D.Del. 1991).

[81]    *Soverain Software LLC v. Amazon.com*, 356 F. Supp.2d 660, 662 (E.D. Tex. 2005).

[82]    *Id.*

[83]    *Id.*

[84]    *MicroUnity Systems Engineering, Inc. v. Dell, Inc. and Intel Corp.*, No. Civ. 2:04-CV-00120-TWJ (E.D. Tex. Aug. 15, 2005).

[85]    *EchoStar Technologies Corp. v. TiVo, Inc. et al.*, No. Civ. 5:05-CV-81-DF-CMC (E.D. Tex. Jul. 14, 2006).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

"[T]his will have a dramatic effect on future litigation."[86] Furthermore, prejudice to the Plaintiff would be offset because "if, after reexamination, Plaintiff's patents are again upheld, Plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain."[87] Significant weight was also placed on the "benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims."[88]

In connection with an *ex parte* reexamination, a unique order was recently issued by Judge Folsom in the Eastern District of Texas. There, a stay of litigation was granted in conjunction with a stipulation. To ameliorate prejudice to the plaintiff, the order required the defendants to stipulate they would not challenge the validity of the patent in the litigation, so that the plaintiff would thereby be "afforded both the advantage of an *ex parte* reexamination proceeding and an estoppel effect."[89]

Other cases granting a stay pending reexamination are numerous, and involve a variety of fact scenarios.[90] In some cases, the stay is requested by joint stipulation. In other cases, the courts fashion parameters on the stay that, for example, require periodic status reports to be filed with the court; or that invite either party to move to re-open for good cause.

Below, an informal sampling is provided of recent success rates for motions to stay pending reexamination for the Northern and Central Districts of California, and the Eastern District of Texas, as example jurisdictions.[91]

---

[86]     *Id.*

[87]     *Id., citing Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed. Cir. 1986).

[88]     *Id.*

[89]     *Antor Media Corp. v. Nokia, Inc. et al.,* No. Civ. 2:05-CV-186-DF-CMC (E.D. Tex. Sep. 27 2006).

[90]     *See, e.g., Motson v. Franklin Covey Co.,* No. Civ. 03-1067 (RBK), 2005 WL 3465664, at *2 (D. N.J. Dec. 16, 2005) (slip. Op. (granting stay "where discovery is complete and summary judgment has been decided"); *3M Innovative Props. Co. v. DuPont Dow Elastomers LLC,* No. 03-3364-MJD/AJB, 2005 WL 2216317, at *3 (D. Minn. Sept. 8, 2005) (slip. Op.) (granting stay where "case is trial ready"); *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del. 1991) ("waiting for the outcome of the PTO reexamination would be the most useful option in that it would simplify the issues and aid in preparation for trial."); *Middleton, Inc. v. 3M,* 2004 WL 1968669 (S.D. Iowa 2004) (stay granted "after eight years of litigation and with just over two months remaining before trial.").

[91]     The data is for stays pending reexamination requested from January 2004 through September 2006. It excludes cases for which no order is available, and duplicative rulings in cases brought by a plaintiff against multiple defendants.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION





## B.    REASONS TO REQUEST REEXAMINATION

There are many reasons why it may be advantageous to file an *ex parte* or *inter partes* request for reexamination by an accused infringer (either in a patent litigation, or as an alternative to a declaratory judgment action). Some of these reasons are discussed below.

*To invalidate one or more claims of the patent.* Reexamination provides the opportunity to invalidate the claims of a patent through a proceeding in which invalidity need only be established by a preponderance of the evidence, and applying the broadest reasonable interpretation of the claims. Successful reexamination may cause complete cancellation of the patent in view of the prior art or result in the claims being amended in such a way that they can no longer be infringed.[92]

Some view reexamination as placing the patent owner at a procedural disadvantage, thereby increasing the likelihood of claims being cancelled. Reexamination is conducted pursuant to a compact prosecution model, a sort of "sudden death overtime" proceeding in which "the patent owner has very limited time to prepare responses to any rejections, and normally cannot introduce any new supporting evidence after the 2d Office action."[93]

---

[92]    Broadly sweeping infringement contentions are often filed in litigation by the patentee, which can be used as admissions in reexamination to establish invalidity of the claims.

[93]    *Reexamination vs. Litigation—Making Intelligent Decisions in Challenging Patent Validity*, Paul Morgan and Bruce Stoner, 86 J. Pat. & Trademark Off. Soc'y 441 (2004).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

*To obtain additional prosecution history estoppel.* Remarks by the patentee during reexamination may provide valuable prosecution history estoppels that significantly narrow the claim scope assertable under the doctrine of equivalence.

*To obtain additional evidence for use during claim construction.* Remarks constituting prosecution history estoppel during reexamination, as well as statements made by the examiner during reexamination, may be submitted as evidence for consideration by the judge in a *Markman* proceeding.[94]

*To obtain intervening rights.* Intervening rights occur when claims have been amended during reissue or reexamination. In summary, intervening rights permit a certain level of infringement to occur without the liability of damages.[95] Intervening rights allow a party who, prior to the grant of the reexamination, made or sold anything covered by the patent claims to continue the use or sale unless doing so infringes a valid claim of the reexamined patent that was also in the original patent.[96] Also, equitable intervening rights may exist that could allow a party who, prior to the reexamination, made substantial preparations for manufacture, use, or sale of a thing covered by the patent to continue to do so, as long as it does not infringe a valid claim of the reexamined patent which was in the original patent.

Statistics compiled last year estimate that in *inter partes* reexamination, all requested claims are rejected in 74% of the cases.[97] To the extent these rejections stand and result in claim amendments or cancellations, requesters are likely to have gained intervening rights at least 74% of the time.[98]

*To put a "cloud" on the validity of a patent.* In litigation, a patent has the presumption of validity.[99] While a pending reexamination does not remove the presumption of validity, it may be influential on the trier of fact to know that the Patent Office considers that a "substantial new question of patentability" indeed exists. The patent owner may ultimately seek to keep this fact from a jury by a motion in limine.

---

[94]    *But see, Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,* 345 F.3d 1318 (Fed. Cir. 2003) in which comments made during deposition and reexamination were not influential on the *Markman* ruling.

[95]    35 U.S.C. §§ 307(b), 316(b) (2006). *See also,* MPEP §§ 2293, 2693.

[96]    *Id.*

[97]    *What's Really Happening in Inter Partes Reexamination,* Joseph D. Cohen, 87 J. Pat. & Trademark Off. Soc'y 207 (2005).

[98]    *Id.*

[99]    35 U.S.C. § 282 (2006).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

*To stay the litigation*. As discussed above, reexamination can stay litigation. For an accused infringer, it may be advantageous to stay the litigation for various reasons, including promoting settlement or providing time to implement design alternatives.

*The patent examiner may better appreciate the prior art*. For some patents, the technology involved may be difficult to understand by a judge and jury. If an invalidity argument is strong, but the technology is relatively difficult to understand or appreciate, it may be more desirable to have the validity issues resolved by an examiner who is already considered to be technically competent.[100]

*To overturn litigation results*. Reexamination, in effect, provides the defendant requester two chances to invalidate a patent (not including appeals).[101] If a court sustains the validity of a patent over the prior art, it is still possible that in reexamination the PTO may find the patent invalid over the same or different art.[102] Note, however, as discussed above, section 317(b) states that if a final decision is entered in litigation that the party did not sustain its burden of proving invalidity, an *inter partes* reexamination may not thereafter be brought by *that same party*. If the *inter partes* reexamination is already in process, it may not thereafter be maintained by the Office.

Of course, the PTO cannot change a final court determination of invalidity. A final court holding of invalidity (after all appeals) is controlling on the Office.[103]

## C.    REASONS NOT TO REQUEST REEXAMINATION

There are many reasons militating against the filing of an *ex parte* or *inter partes* request for reexamination by an accused infringer (either in a patent litigation, or as an alternative to a declaratory action). Some of these reasons are discussed below.

*Enhanced presumption of validity*. Patents are presumed valid, but a strong hypothetical argument can often be made that, had the examiner seen this "new" prior art reference, the patent would not have been allowed. Reexamination effectively removes this hypothetical argument, if the reexamination examiner still allows the claims over the

---

[100]    *See*, http://www.uspto.gov/web/offices/ac/ahrpa/ohr/jobs/qualifications.htm. Examiners are required to have either a technical degree or a combination of technical education and work experience in the art.

[101]    *See*, *Grayzel v. St. Jude Med., Inc.*, 2005 U.S. App. LEXIS 28690 (Fed Cir. Dec. 23, 2005).

[102]    "[T]he existence of a final court decision of claim validity in view of the same or different prior art does not necessarily mean that no new question [of patentability] is present. This is true because of the different standards of proof and claim interpretation employed by the District Courts and the Office." MPEP § 2286 (II) (citing *In re Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989)).

[103]    "A final holding of claim invalidity or unenforceability (after all appeals), however, is controlling on the Office." MPEP § 2286(II) (citing *Ethicon v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988)).

prior art. In this case the imprimatur of the Patent Office will be extremely difficult to overcome.[104]

A way to counter this potential result is with a multi-pronged approach in which certain references are asserted in reexamination and others are reserved for the litigation. If only *ex parte* reexaminations are being requested, then it may be desirable to limit the requests for reexamination to specific pieces of prior art, and hold other prior art for trial. This approach is not permissible where *inter partes* reexamination is involved.[105]

***Estoppel.*** For *inter partes* reexamination, as discussed above, the requester is "estopped from asserting at a later time, in any civil action . . . the invalidity of any claim finally determined to be valid and patentable on any ground which the third party requester raised or could have raised during the *inter partes* reexamination proceedings."[106]

Invalidity defenses asserted in litigation *before a final determination* of validity in reexamination should not be estopped and are maintained concurrently with, and prior to, the final closure of the *inter partes* reexamination process.[107]

It should also be apparent that printed publications asserted in the reexamination do not estop reliance on public knowledge, public use, or on-sale bar evidence concerning the same technology in litigation. This type of evidence to support an allegation of invalidity is still available in a later-filed civil action.

***One inter partes request only.*** The requester can only file one request for *inter partes* reexamination. Unless the requester can show that a prior art reference was unavailable prior to the filing of the prior request, a third party requester can only file one request for *inter partes* reexamination.[108] This may mean that all prior art searching and analysis must be completed before filing the request. Also, although a later filed reexamination (either *inter partes* or *ex parte*) can be combined with an earlier filed request for *ex parte* reexamination, the same is not true for an earlier filed request for *inter partes* reexamination by the same third party requester.[109]

---

[104]    See, *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.* 807 F.2d 955, 961 (Fed. Cir. 1986) (holding that upon reissue, the burden of proving invalidity "is made heavier.")

[105]    37 C.F.R. § 1.907 (2004).

[106]    35 U.S.C. § 315 (2006).

[107]    Caution is warranted in that a final determination of the reexamination process can sometimes occur relatively quickly. For example, the decision to deny a request for reexamination is "final" (subject, of course, to petition). See MPEP § 2640.

[108]    37 C.F.R. § 1.907 (2004).

[109]    *Id.* Note that unlike an *ex parte* reexamination, in an *inter partes* reexamination the requester must identify the real party in interest. 35 U.S.C. § 311(b)(1) (2006).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

One way to counter this result is to diligently perform searches and analysis before the filing of the request. Since multiple *ex parte* reexaminations can be filed by the same third party, it may be desirable to request an *ex parte* reexamination at first, and when the searching and analysis are completed, to then file an *inter partes* reexamination presenting different arguments. The initially filed *ex parte* reexamination(s) can be used to support various trial aspects, such as a motion to stay the litigation. The later-filed *inter partes* reexamination can then be used to allow the requester to become more involved in the reexamination process.[110]

*Claim amendments*. The patent owner may potentially add limitations to the claims by amendment that enhance the claim validity yet still read on the accused infringer. In reexamination, the patent owner can amend the claims to make them more narrow, thereby potentially making the claims patentable over the prior art.[111] In this case it may be possible for the patent owner to add limitations that still result in the claims covering the accused device. This provides an opportunity for the patent owner that it would not normally have in litigation.[112]

It is a general rule that by narrowing its scope by amendment, a claim cannot be interpreted to cover something that it did not previously cover.[113] In other words, if a party did not infringe before the amendment, it will not infringe after the amendment. Therefore the requester's arguments for noninfringement in the litigation cannot get worse, but they may improve.

If the amended claims are later found to be valid and infringed, the accused infringer may have intervening rights to use existing products without payment of any type of monetary damage.[114]

*Perception that examiners are inclined to allow claims*. Although this perception cannot be quantified, it is prevalent and therefore should be addressed. The statistics provided above show that while it is rare that reexamination results in full cancellation of all claims, in the majority of cases the claims are initially rejected and then amended. (64% of *ex parte* reexaminations result in claim amendments; 10% result

---

[110]    MPEP § 2686.01. Note that when multiple reexaminations are merged by the Patent Office, the examiner can combine the separately submitted references for a single rejection. *See*, *In re Bass*, 314 F.3d 575 (Fed. Cir. 2002).

[111]    "[T]he patent owner shall be permitted to propose any amendment to the patent and a new claim or claims, except that no proposed amended or new claim enlarging the scope of the claims of the patent shall be permitted." 35 U.S.C. §§ 305, 314(a) (2006).

[112]    Although the patent owner can request reissue or reexamination of their own patent, it is likely that any litigation will be stayed or dismissed in response to such an action. That may not be the case if the third party is the one to request reexamination.

[113]    35 U.S.C. §§ 305, 314(a) (2006).

[114]    *See*, *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1140 (Fed. Cir. 2004).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

in all claims being canceled.    See Appendix A.)    It is noted that the increased involvement of the third party requester in *inter partes* reexamination is likely to improve these statistics once meaningful data for *inter partes* reexaminations becomes available.

***No time constraints on actions after order for inter partes reexamination.*** *Inter partes* reexamination moves quickly at first.    A decision on the reexamination order and a first Office action usually occur within three months.    Thereafter, there are no time constraints on the examiner.    As of June 30, 2006, a total of 152 *inter partes* reexaminations had been filed with just 3 having proceeded to certification.    A goal of the Central Reexamination Unit is to handle the backlog and ensure timely management of proceedings in the future.

## V.    REEXAMINATION STRATEGIES

Reexamination in the context of patent litigation involves several key, primary considerations.    First of all, a choice must be made between *ex parte* and *inter partes* reexamination.    Next, a decision must be made as to when to file the request(s).    Also, the request must be properly written to achieve the maximum probability of obtaining the desired results.

### A.    CHOOSING BETWEEN *EX PARTE* AND *INTER PARTES* REEXAMINATION

As discussed above, there are many procedural differences between *ex parte* and *inter partes* reexamination that may effectively dictate which type of reexamination should or must be used.    If the patent at issue was filed after November 29, 1999, *inter partes* reexamination an available choice.    The chart below provides a summary of some of the major differences between the formalities of *ex parte* and *inter partes* reexamination, with further discussion below.

## Comparison of Reexamination Procedures



| Ex Parte | Formalities | Inter Partes |
|---|---|---|
| • $2520<br>• Little additional cost after filing | Cost | • $8800<br>• Additional cost for providing comments during prosecution |
| • ~ 6-11 months (average) | Time For First Action | • 3 months (typical, 5 months worst-case) |
| • ~ 23 months (average) | Total Time | • ~ 30 months (average) |

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

*Ex parte* reexamination is often a preferred mechanism due to the price. The filing fee for *inter partes* reexamination is $8800, as compared $2520 for *ex parte* reexamination.[115]    Furthermore, *inter partes* reexamination requires continued involvement, which further increases the overall cost.

Filing an *inter partes* reexamination request is often desirable because the Office action is produced at the 90 day mark—the same time period when the grant or denial is due. In *ex parte* reexamination, the grant or denial is typically a 1-3 page document that states whether a substantially new question of patentability exists, but it does not go into a detailed examination of each and every claim.    To the contrary, if the *inter partes* reexamination Office action results in one or more claims being allowed, the patent owner may decide to drop claims in the lawsuit, but for those allowed claims.    Of course the requester has the opportunity to provide further remarks (but not additional prior art) to rebut the allowance of the claims, but the damage may already be done.

In addition to the formalities of costs and timing, there are additional reasons to choose between *ex parte*  and *inter partes* reexamination. The chart below provides a summary of some of the major differences between the requester involvement during *ex parte*  and *inter partes* reexamination, with further discussion below.



*Inter partes* reexamination is often a preferred mechanism due to the involvement of the third party requester throughout the reexamination and throughout appeal.    This comes with a price, however, with the filing fee for *inter partes* reexamination being $8800, as compared $2520 for *ex parte* reexamination.[116]    It should be noted that all prior art searching and analysis needs to be effectively completed at the time of filing the request. *Inter partes* reexamination is essentially a one-shot opportunity.

---

115    37 C.F.R. §§ 1.20(c)(1)-(2) (2004).
116    37 C.F.R. §§ 1.20(c)(1)-(2) (2004).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

The availability of subsequent actions, including appeals of the reexamination, is another important distinction between *ex parte* and *inter partes* reexamination. The chart below provides a summary of some of the major differences between subsequent actions available after *ex parte* and *inter partes* reexamination, with further discussion below.



If searching and/or prior art analysis has not been completed, then filing one or more requests for *ex parte* reexamination may be a good first step. An early request for reexamination may, in some instances, be sufficient to support the stay of the litigation if this is desired.

Also, the filing of an *ex parte* reexamination can be targeted to a particular issue. For example, if inequitable conduct is being asserted, filing an *ex parte* reexamination request directed to the particular prior art reference(s) that were known by the patentee, but that were not before the Patent Office, can be used to bolster the inequitable conduct allegation. Specifically, if the prior art creates a "substantially new question of patentability" such that the reexamination is granted, then it can more easily be concluded in the litigation that the prior art was indeed material.

As mentioned above, multiple *ex parte* reexaminations can be filed, with the only thing stopping the requester being that no more substantial new questions of patentability exist, or if the requester files an *inter partes* reexamination request.[117] Therefore, it is often desirable to start filing *ex parte* reexamination requests early and often, and then finish with the filing of an *inter partes* reexamination request.

---

[117]     In 2004, the Patent Office put into operation a new policy whereby the same prior art may be used to start a second *ex parte* reexamination during the pendency of the first reexamination "only if the prior art cited raises a substantial new question of patentability which is different than that raised in the pending reexamination proceeding." MPEP § 2240.

29

It may also be beneficial to file an *inter partes* request for reexamination on a related but unasserted patent. Consider the situation where there are two related patents – one filed before November 29, 1999, one filed after – and only the earlier filed patent is being asserted by the patent owner. The accused infringer can only file a request for *ex parte* reexamination on the asserted patent due to its filing date.[118] However, filing a request for *inter partes* reexamination on the latter patent as well may benefit the *ex parte* reexamination. For one, there is a strong possibility that the same examiner will reexamine both patents, so that the third party can make comments that potentially apply to both reexaminations. Even if separate examiners are being used, the third party comments may still be helpful for the examiner in the other reexaminations.[119]

## B.   WHEN TO FILE

In the litigation context, requests for reexamination may be filed before the filing date of the lawsuit, at the beginning of the lawsuit, near the end of the lawsuit, after the lawsuit, or at multiple, staggered times throughout the litigation.

*Before the lawsuit.* This choice is often not available because the accused infringer may not know litigation is imminent. If a threat of infringement is enough to create a case or controversy, the filing of a request for reexamination may be considered in conjunction with the potential filing of a declaratory judgment action. In some cases, filing the reexamination may be sufficient without initiating litigation. Also, filing the request before any litigation provides a strong argument for the court to grant a stay if litigation is subsequently filed.

*At the beginning of the lawsuit.* This choice is often valuable in an attempt to maximize the possibility that a court will grant a stay of litigation. Also, filing early may bring about an early resolution of the dispute, or minimize the chance of injunction. However, filing a request for reexamination early means that a first Office action, or even a final resolution of the reexamination, could occur before trial. If the patent owner obtains a reexamination certificate (with claims in either original or amended form), the requester's arguments for invalidity at trial may be substantially weakened or unavailable.

*Near the end of the lawsuit.* Filing a request for reexamination near the end of litigation has certain advantages. For example, the request(s) can be supported by admissions of the patent owner developed during the litigation, such as may be contained in infringement contentions, proposed claim constructions, and so forth. Patent owner admissions can, by themselves, create a substantial new question of patentability.[120]

---

[118]     37 C.F.R. § 1.913 (2004).

[119]     The Central Reexamination Unit should facilitate communications between examiners, especially those examining related patents.

[120]     37 C.F.R. § 1.104(c)(3) (2004).

Also, the mere grant of a reexamination may be influential to the trier of fact. Furthermore, a pending reexamination may be influential in any post-trial actions, including arguing against a potential injunction. Finally, all prior art searching and analysis has probably been completed, so that an *inter partes* reexamination (if permitted) can be relatively straightforward to prepare.

*After the lawsuit.* Although this may not be a common time frame to file a request for reexamination, it may be beneficial depending on the prior art identified and any agreements resulting from trial. If an ongoing royalty payment is required for as long as the patent is active, a reexamination may serve to reduce these payments.

*Multiple, staggered ex parte reexaminations.* If time permits, it may be beneficial to file multiple reexamination requests over an extended period of time, provided such is not found to be harassment of the patent owner. In this way, each new reexamination request can address shortcomings or inadequacies that the Patent Office has ruled upon in a prior request. This allows the requester to be more involved in the entire reexamination process, because each newly filed reexamination serves as a vehicle by which the requester can attempt to address problems in a prior reexamination. Multiple reexaminations on the same patent are often merged at the discretion of the Office.[121]

## C.    HOW TO MAKE REEXAMINATION FILINGS EXAMINER-FRIENDLY

A variety of ways are suggested below to facilitate a smooth procession of the request through the various stages of examination. The request should be designed to require minimal effort on behalf of the Patent Office to verify that the request is sufficient and to grasp all of the arguments being made. The presentation should enable the examiner to readily adopt the points being advanced in the request, which also should reduce the risk of the examiner misinterpreting statements and creating a record potentially detrimental to any on-going litigation. In sum, the following drafting points seek to make the reexamination request more examiner-friendly.

*Explicitly step through each statutory and rule requirement at the beginning of the request.* 37 C.F.R. § 1.915 lists all of the content requirements needed for an *inter partes* reexamination request. Similarly, 37 C.F.R. § 1.510 lists all of the content requirements needed for an *ex parte* reexamination request. When a request is filed, the PTO checks the request against the appropriate rule to verify that the content requirements have been met. If so, the request will be given a filing date and provided to the appropriate examiner to determine if the request should be granted. If the content requirements are not met, a NOTICE OF FAILURE TO COMPLY WITH [*EX PARTE / INTER PARTES*] REEXAMINATION REQUEST FILING REQUIREMENTS will be sent, stating that the filing date has not been granted and that replacement documents or statements are required.

---

[121]    *See,* MPEP § 2686.01.

A recommendation for making a more examiner-friendly request is to clearly label all the sections of the appropriate CFR rule and state how the request satisfies the content requirements listed in the section. All of this should be done near the beginning of the request. The request can further state that a more detailed analysis of certain items is provided later in the request. By listing all of the content requirements clearly and at the beginning of the request, the request is more likely to obtain a filing date and more likely to proceed quickly towards examination.

***Reduce the number of references to a reasonable number.*** For *ex parte* reexamination requests, one strategy is to provide multiple requests with a focused group of related references. For example, the references can be related to a common claim interpretation or embodiment from the patent being reexamined. The focused group of related references can make the request easier for the examiner to read and understand. Also, by having multiple requests, the examiner(s) can apply more time resources for examining the same patent (at the cost of multiple filing fees by the requester, however). There is, however, a strong likelihood that the reexaminations will be merged. Note that a requester cannot file multiple *inter partes* reexaminations, as discussed above. However, reducing and/or consolidating references are still recommended to make the request less confusing and easier to fully comprehend.

***Identify pending applications and reexaminations for related patents.*** 37 C.F.R. § 1.565 instructs the Patent Office to merge co-pending proceedings for the *same patent* if certain time requirements are met. However, there are often instances when co-pending reexamination proceedings for *related patents* exist. In these situations, it is desirable to inform the examiner of the related reexamination so that consistent rulings can be obtained. Also, under the coordination of the Central Reexamination Unit, a supervisor at the Patent Office will distribute the reexamination requests to the appropriate examiner in an art unit, and the supervisor can consider who is working on any related examinations when distributing the request. This can result in more consistent as well as more quickly issued actions from the Office.

***Identify Court filings and rulings that the examiner can consider.*** The Patent Office does a litigation search upon receipt of a reexamination request. However, a litigation search may not provide the exact information (or may provide too much information) for the examiner to effectively consider during the reexamination. By identifying and referencing specific filings and rulings, you increase the chance that the examiner will review and consider these items. Often, filings by the patent owner can be used by the third party requester (as admissions) to bolster a broad claim construction and increase the likelihood of a finding of invalidity.

***Provide a technology summary.*** In hyper-technical cases a technology summary or overview may be helpful to the examiner in understanding the patent under reexamination. It is often helpful to provided annotated figures from various references, and descriptions of the state of the art around the filing date of the patent to be reexamined. Furthermore, a technology summary can be persuasively written to focus the examiner's attention on an alleged point of novelty, and then show how the prior art does indeed anticipate and/or make obvious this point of novelty.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

*Make the request in the form of an Office action*. 37 C.F.R. § 1.510 and 1.915 require a "statement pointing out each substantial new question of patentability based on the cited patents & printed publications, and a detailed explanation of the pertinency and manner of applying the patent & printed publications to every claim for which reexamination is requested." This requirement can be met by providing arguments in the form of an Office action. For example, the request can argue:

> *Claims 1-3 are obvious over reference A in view of reference B. Reference A teaches x, y, and z, as shown at pg. 12. Reference B further shows w at pg. 2. Motivation to combine references A and B exist because ...*

Furthermore, by having the request in the form of an Office action, you are assisting the examiner, if he or she so chooses, to adopt your arguments as closely as possible. This can be beneficial in reducing the possibility of statements misinterpreting your positions.

*Copy and annotate figures from the prior art publication into the request. Rely on quotations from the prior art reference as much as possible*. As much as possible, the requester should utilize pictures and quotations from the prior art publication(s) so that there will be no question as to any potential misinterpretation or mischaracterization of terms. This can be important if the patent is in litigation, because the patent owner may try to use the requester's comparisons with the claim language against the requester. Often complex pictures, such as circuit diagrams, can benefit from annotations such as arrows and added text. The requester should be clear as to when and how annotations are being provided.

*Provide detailed claim charts for each reference*. 35 U.S.C. § 301 requires that the requester explain "the pertinency and manner of applying such prior art to at least one claim of the patent[.]" The requester should not assume that only a limited analysis needs to be furnished to the examiner for appreciation of the pertinency of the reference(s). The claim charts should be provided in addition to the "statement point out each substantial new question of patentability based on prior patents and printed publications." 37 C.F.R. § 1.510(b)(1) and § 1.915(d). Although the examiner may ultimately furnish significant independent analysis, which may include applying the reference(s) to additional claims or limitations, or crafting un-initiated rejections, the requester should not rely on such action by the examiner.

*Provide alternative arguments*. It is not unusual to provide alternative arguments of invalidity. For example, a requester can assert that a prior art reference meets all of the claim limitations under 35 U.S.C. § 102, and in the alternative, meets all of the claim limitations under 35 U.S.C. § 103 when combined with a second prior art reference. This is especially important when relying on inherency to satisfy a § 102 rejection. While it can be proper to provide multiple references in an anticipation argument (see MPEP 2131.01), it is advisable to provide an alternative argument that the multiple references render the claim obvious.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

***Provide strong motivations to combine.*** It is not unusual for an examiner, upon reading an argument of obviousness under 35 U.S.C. § 103, to reply that the requester has not provided a sufficient motivation to combine or modify the references being asserted. The requester should be attuned to the impropriety of hindsight in the combination of references and the importance of establishing a clear record as to the basis for a motivation to combine references, to aid the examiner. The following well-known four factual inquiries should be addressed in a determination of obviousness:

- the scope and contents of the prior art;
- the differences between the prior art and the claims in issue;
- the level of ordinary skill in the art; and
- evidence of secondary considerations.[122]

Some of these elements may not yet be factually developed at the time of the request. For example, the requester may not have knowledge of any secondary considerations. For *inter partes* reexamination, the requester can rely on his ability to comment in response to any of the patent owner's remarks or evidence. However, in *ex parte* reexamination, the requester should consider what evidence the patent owner may introduce, and attempt to diffuse the evidence in the request. For example, the requester can point to facts showing that any evidence of commercial success of a product that implements the alleged invention is attributable to some other factors.

***Consider including expert declarations.*** Expert declarations can provide helpful support for many issues arising in reexamination. Common uses include explaining the contents of the prior art, addressing inherency; supporting a publication date of a reference; addressing motivation(s) to combine reference; addressing adequacy of a patent disclosure when breaking the chain of priority based on 35 U.S.C. § 112; and countering any potential assertions of secondary considerations, such as commercial success. *See, e.g.,* MPEP §§ 2205, 2258, 2616, 2617, 2660.

---

[122]     MPEP § 2141, *citing Graham v. John Deere*, 383 U.S. 1 (1966).

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

## VI.    INTERPLAY WITH LITIGATION

The interplay of reexamination with litigation leads to many scenarios in which events in one venue influence the other.  As the chart on the below illustrates, findings in one proceeding in some circumstances produce mandatory estoppels in, or a conclusion of, the other proceeding.

### CO-PENDING LITIGATION AND *INTER PARTES* REEXAMINATION



### Actions During Proceedings

**A. Admissions.** The examiner may rely on admissions of the patent owner that are part of the court record. "In rejecting claims the examiner may rely upon admissions by the applicant, or the patent owner in a reexamination proceeding, as to any matter affecting patentability[.]"[123]

**B. Fact Estoppel.** The Intellectual Property and Communications Omnibus Reform Act of 1999 suggests the possibility of fact estoppel arising in *inter partes* reexamination. "Section 4607 estops any party who requests inter partes reexamination from challenging at a later time, in any civil action, any fact determined during the process of the inter partes reexamination[.]"[124] Because this is not codified, it may not have any effect.

**C. Non-Final Court Holdings.** A court's non-final holding sustaining validity or a non-final holding of invalidity or unenforceability is not binding on the Office. "A non-final holding of claim invalidity … will not be controlling on the question of whether a substantial new question of patentability is present."[125]

### Final Holdings

**D. Final Decision Sustaining Validity.** Under 37 CFR § 1.907(b), an *inter partes* reexamination will not be thereafter maintained upon a "final decision" of a federal court that the party did not sustain its burden of proving invalidity.[126] However, where the person who filed the request is *not a party* to the litigation, the court decision upholding validity will have no estoppel effect on the requester in reexamination.[127]

---

123    *See,* 37 CFR § 1.104 (2004); MPEP § 2258(I)(F).

124    *See,* House Report 106-464, § 4607 (uncodified).

125    *See,* MPEP § 2686.04(II).

126    *See, Decision Vacating Reexamination, In Re Deutsch*, Control Number 95/000,019 (Aug. 20, 2003) ("Pursuant to the final order of the U.S. District Court for the Southern District of Florida holding that the requester (defendant) has not sustained its burden of proving the invalidity of any patent claim in the '939 patent, the '019 inter partes reexamination is vacated under the provisions of 35 U.S.C. 317(b)."). *See also, In Re Mark R. Tremblay et al.,* Control Numbers 95/000,093 and 95/000,094 (November 17, 2005) denying the patent owner's request for dismissal following final judgment upholding validity but prior to exhaustion of Federal Circuit appeal; and the corresponding opinion in *Sony Computer Entertainment America, Inc. v. Jon W. Dudas*, 2006 WL 1472462 (E.D.Va. 2006) (Statutory estoppel provisions of 35 U.S.C. § 317(b) that require dismissal of reexamination would operate after completion of the Federal Circuit appeal).

127    *See,* 35 U.S.C. § 317(b) (2006); 37 CFR § 1.907(b) (2004); MPEP § 2686.04.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

**E. Estoppel From Asserting Invalidity**. The requester may not assert at a later time in litigation the invalidity of any claim finally determined to be patentable on any ground the third party requester raised or could have raised in inter partes reexamination. Invalidity may be asserted only based upon newly discovered prior art unavailable to the requester and the Office at the time of the reexamination.[128]

**F. Final Court Holding of Invalidity**. A final court holding of claim invalidity (after all appeals) is controlling on the Office. Where all claims are affected, the reexamination will be vacated.[129]

**G. Final Reexamination Determination of Invalidity**. A determination in reexamination that any claim is invalid will not be controlling in a pending civil court action until all appeals to the Board of Patent Appeals and Interferences and to the Court of Appeals for the Federal Circuit are exhausted.[130] Once the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and *Inter Partes* Reexamination Certificate cancelling any claim finally determined to be unpatentable, confirming any claim determined to be patentable, and incorporating any new claim determined to be patentable.[131]

### Stay or Suspension or Judicial Review

**H. Stay or Suspension**. As the proceedings unfold, two general principles also apply. First, the district court has the inherent power to control its own docket, including the power to stay proceedings.[132] Second, the PTO Director may at any time suspend an *inter partes* reexamination proceeding "for good cause."[133] Accordingly, discretion exists in both venues to curtail duplicative efforts through suspension or stay of activities, to await an outcome in the other proceeding.

---

[128]    *See,* 35 U.S.C. § 315(c) (2006*). See also,* discussion at II.B., "Res Judicata Effect of Reexamination," *supra.*

[129]    *See,* MPEP § 2684.04(II), *citing Ethicon v. Quigg,* 849 F.2d 1422 (Fed. Cir. 1988).

[130]    35 U.S.C. §§ 134, 141. Exhaustion of appeals to the Federal Circuit ensures that the patentee had a "full and fair chance" to litigate the validity of the patent and thereafter the patentee would be collaterally estopped from relitigating the validity of the patent. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445 (1971)

[131]    35 U.S.C. § 316.

[132]    *Soverain Software LLC v. Amazon.com,* 356 F.Supp.2d 660, 662 (E.D. Tex. 2005*); Landis v. North American Co.,* 299 U.S. 248, 254 (1936).

[133]    35 U.S.C. § 314(c) (2006).

**I. Judicial Review.**  Additionally, a party may seek judicial review by suing the Office in a separate district court action pursuant to the Administrative Procedure Act (APA),[134] for an "unlawful agency decision."

## Case Study

*Immersion Corporation v. Sony Computer Entertainment, Inc.*[135]  This case involves litigation and reexamination of patents owned by Immersion Corporation that relate to computer-controlled vibrating motors which Sony uses in its dual shock PlayStation and PlayStation 2 controllers.  A Northern District of California jury awarded Immersion $82 million in damages against Sony, after which Sony requested *inter partes* reexamination of the two litigated patents. The procedural history illustrates the relationship of proceedings among the California court (infringement), the Federal Circuit (appeal on issue of infringement), the PTO (reexamination), and the Virginia court (APA suit by Sony against the PTO for staying the reexaminations):

- The California district court issues judgment of infringement and permanent injunction for patent owner Immersion against defendant Sony, which is stayed pending appeal to the Federal Circuit. (March 2005).
- Sony files requests for inter partes reexamination of the patents. (May 2005).
- Sony appeals the California district court decision to the Federal Circuit. (June 2005).
- The Office issues orders granting the requests for *inter partes* reexamination. (August 2005).
- Immersion files petitions to suspend the reexamination proceedings, pending the outcome of the Federal Circuit appeal. (September 2005).
- The Director of the Office issues a decision granting Immersion's petitions, finding "good cause" to suspend the reexaminations until the Federal Circuit reaches a decision on appeal.
- Sony brings an action in the District Court for the Eastern District of Virginia, pursuant to the Administrative Procedure Act, to obtain judicial review of the Office's decision suspending the reexaminations.  Sony argues the Office abused its discretion in suspending the proceedings, contending the Office has a legal obligation to reexamine the patents. (December 2005).

---

[134]    5 U.S.C. §§ 701-706.

[135]    *Immersion Corporation v. Sony Computer Entertainment, Inc.*, No. C02-0710 CW, 2005 U.S. Dist. LEXIS 4781 (N.D. Cal. Mar. 24, 2005).

- The Virginia court issues a decision[136] in favor of the Office, upholding the Office's finding of "good cause" to suspend the reexaminations. (May 2006).

## VII.    TRIAL LAWYER'S PERSPECTIVE—A SYNOPSIS

Trial lawyers face tough calls when it comes to reexamination coincident with litigation, on both sides of the case. Key issues to consider are identified below, in summary of all of the foregoing:

1. **Reexamination: Yes or No?** Given the facts, is reexamination likely to produce a better result than seeking invalidity in the litigation?

   - Strength of prior art (old art and new art).

   - Complexity of technology.

   - Factors favoring reexamination: provides a basis for stay of litigation; may create additional prosecution history estoppels; may create additional evidence for claim construction; may create intervening rights if claims are amended or invalidated; provides access to examiner expertise; creates an early cloud on the patent by raising a substantial new question (SNQ); provides a second bite at invalidity, if validity sustained in court (*ex parte*); third party requester participation (*inter partes*) increases fairness of the proceeding; "sudden death overtime" prosecution disadvantages the patent owner; creates a separate right of appeal to the Federal Circuit (*inter partes*). (*See*, IV.B., *supra*).

   - Risks weighing against reexamination: confirmed claims create an enhanced presumption of validity; may create estoppels in later litigation on facts or issues raised or that could be raised in *inter partes* reexamination; creates an opportunity for the patentee to amend claims; the potential exists for delays in the PTO; the evaluation of validity is isolated from issues of "bad" conduct. (*See,* IV.C., *supra*; and II.B. Third Party Estoppel, *supra*).

2. **Reexamination By Plaintiff.** As the plaintiff, consideration should be given to whether or not the defendant might initiate reexamination and whether it might be helpful to file a preemptive reexamination.

3. **Type of Reexamination to Choose.** Assuming both forms are available, the procedural differences between *ex parte* and *inter partes*

---

[136]    *Sony Computer Entertainment America, Inc. v. Jon W. Dudas*, 2006 WL 1472462 (E.D.Va. May 22, 2006).

reexamination impact which may be preferable to choose. For litigation involving multiple patents, often both are used.

- Comparison of *ex parte* vs. *inter partes* and which to choose focuses on the issues of formalities, requester involvement, and subsequent actions/estoppels/appeals. (*See*, V.A., *supra*).

- Use of multiple, staggered *ex parte* reexaminations.

- Petitioning to merge proceedings (including *ex parte* and *inter partes*).

4. **When to File Request(s).** Reexaminations are requested before, at all stages during, and after litigation, for a variety of reasons. The following factors are relevant to the decision of the timing of the request(s):

- The time at which the relevant prior art becomes known.

- The time at which evidence in litigation becomes available that creates or enhances a SNQ (e.g., new prior art, admissions, claim constructions).

- Goal of preempting litigation by filing the request beforehand.

- Goal of cleansing the patent before bringing litigation.

- Goal of invalidating claims after validity has been sustained at some stage in litigation.

- Goal of establishing a basis for stay of litigation.

5. **Stay of Litigation.** Reexamination concurrent with litigation creates opportunities for either party to seek a stay of litigation, the grant of which depends primarily on the court's weighing of (i) prejudice to the non-movant, (ii) whether the stay will simplify the issues, and (iii) whether discovery is complete. (*See*, IV.A, *supra*). Issues to consider are:

- Whether to move for stay.
  - Is it likely to be granted?
  - Is it in the best interest of the movant (plaintiff or defendant)? Factors to be weighed include, e.g., economics; delay; impact on opposing party; and timing of development of facts in one proceeding useful for the other.

- Whether to oppose a motion for stay.

THE NEW ROLE OF REEXAMINATION
IN PATENT LITIGATION

- Creative ways to fashion the stay order.
  - Defendant: To persuade the judge to grant it.
  - Plaintiff: To mitigate its impact when you cannot stop it.

6. **Coordinating Evidence and Arguments.** As both the litigation and reexamination proceedings progress, opportunities will exist to inject information arising in one proceeding into the other. For both parties, this also underscores the importance of being consistent in the way arguments and evidence in one proceeding are used in the other. And the opportunities to be seized when they are not.

- Tactical use of reexamination events in litigation. At various stages of the litigation, parties can make beneficial use of arguments presented and findings made in the reexamination, such as:
  - The existence of a SNQ.
  - Examiner's claim rejections or failure to adopt claim rejections.
  - Examiner's determination of priority date.
  - Examiner's interpretation of claims, references, and attorney arguments.
  - Inconsistencies in arguments made compared to those made in litigation.
  - Requester's explicit or implicit adoption of broad claim constructions used to support invalidity.
  - Patent owner's explicit or implicit adoption of narrow claim constructions used to refute invalidity.

- Tactical use of litigation events in reexamination. Similarly, in reexamination, parties can make beneficial use of arguments presented (admissions) and findings made in the litigation, such as:
  - Plaintiff's explicit or implicit adoption of broad claim constructions used to support infringement (e.g., such as contained in infringement contentions, *Markman* briefings, summary judgment briefings).
  - Defendant's explicit or implicit adoption of narrow claim interpretations made to support non-infringement arguments.
  - Inconsistencies in arguments made compared to those made in reexamination.
  - Court claim constructions or other rulings.
  - Issues of conduct that place the validity issues in full context for the examiner.

7. **Finality, Suspension, Vacation, and Appeal.**  A myriad of options exist to jockey the focus from one forum to another, in some situations most beneficial to the plaintiff and, in others, the defendant.  (*See,* II.E., VI, *supra*).

- Non-final rulings in litigation, though potentially persuasive, are not binding on the Office.  They may be brought to the attention of the examiner, as discussed above, or support a "good cause" petition to suspend the reexamination.
- A final decision that the defendant-requester has not sustained the burden of proving invalidity triggers § 317(b) and will require the Office to vacate an inter partes reexamination.
- A final decision of invalidity will require the Office to vacate a reexamination.
- While a litigation appeal is pending, it may support a petition for a "good cause" suspension of reexamination.
- Appeal of reexamination issues to the Federal Circuit foreclose finality of a dispute that might otherwise have exhausted litigation appeals to the Federal Circuit much sooner, especially where the litigation appeals are limited solely to issues of infringement.
- Separate district court litigation may be brought against the Director for any "unlawful agency decision," under the Administrative Procedure Act.

## VIII.  CONCLUSION

While reexamination is not appropriate in every case, under the right circumstances it provides substantial benefits in the assertion or defense of a patent lawsuit as part of the overall litigation strategy.

Attachments:  Appendix A, Appendix B

R-148752_1.DOC

42



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

_Ex Parte_ Reexamination Filing Data - June 30, 2006

1.  Total requests filed since start of ex parte reexam on 07/01/81 ....................................... 8084

    a.  By patent owner    3313   41%
    b.  By other member of public    4606   57%
    c.  By order of Commissioner    165   2%

2.  Number of filings by discipline

    a.  Chemical Operation    2496   31%
    b.  Electrical Operation    2608   32%
    c.  Mechanical Operation    2980   37%

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 340 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation.................................................1895   23%

5.  Determinations on requests ............................................................... 7852

    a.  No. granted ....................................................................7160....................91%

        (1)  By examiner    7054
        (2)  By Director (on petition)    106

    b.  No. denied ....................................................................692.....................9%

        (1)  By examiner    657
        (2)  Order vacated    35

**APPENDIX A**

6.  Total examiner denials (includes denials reversed by Director) ....................................... 763

    a.  Patent owner requester                430         56%
    b.  Third party requester                  333         44%

7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                22.8  (mos.)
    b.  Median pendency                17.6  (mos.)

8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |

9.  Total ex parte reexamination certificates issued (1981 - present)................................... 5433

    a. Certificates with all claims confirmed         1410    26%
    b. Certificates with all claims canceled          554    10%
    c. Certificates with claims changes           3469    64%

10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER ...................................................... 2360

        (1)  All claims confirmed          543    23%
        (2)  All claims canceled          174    7%
        (3)  Claim changes           1643    70%

    b.  Certificates _ 3rd PARTY REQUESTER .............................................................. 2934

        (1)  All claims confirmed          849    29%
         (2)  All claims canceled          353    12%
         (3)  Claim changes           1732    59%

    c.  Certificates _ COMM'R INITIATED REEXAM ...................................................... 139

        (1)  All claims confirmed           18    13%
         (2)  All claims canceled           27    19%
         (3)  Claim changes            94    68%

**APPENDIX A**



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Inter Partes* Reexamination Filing Data  - June 30, 2006

1. Total requests filed since start of *inter partes* reexam on 11/29/99 .................................. 152

2. Number of filings by discipline

|  |  |  |  |
|---|---|---|---|
| a. | Chemical Operation | 39 | 26% |
| b. | Electrical Operation | 48 | 31% |
| c. | Mechanical Operation | 65 | 43% |

3. Annual Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 2000 | 0 | 2002 | 4 | 2004 | 27 | 2006 | 40 |
| 2001 | 1 | 2003 | 21 | 2005 | 59 |  |  |

4. Number known to be in litigation............................................40..................26%

5. Decisions on requests ........................................................................ 145

   a. No. granted ..................................................................136.....................93%

   | (1) | By examiner | 136 |
   |---|---|---|
   | (2) | By Director (on petition) | 0 |

   b. No. not granted ..................................................................9.......................7%

   | (1) | By examiner | 7 |
   |---|---|---|
   | (2) | Reexam vacated | 2 |

6. Overall reexamination pendency  (Filing date to certificate issue date)

   | a. | Average pendency | 29.5 |
   |---|---|---|
   (mos.)
   | b. | Median pendency | 31.2 |
   (mos.)

7. Total inter partes reexamination certificates issued (1999 - present).................................... 3

|  |  |  |  |
|---|---|---|---|
| a. | Certificates with all claims confirmed | 0 | 0% |
| b. | Certificates with all claims canceled | 3 | 100% |
| c. | Certificates with claims changes | 0 | 0% |

APPENDIX B

# EXHIBIT 18

# *Inter Partes* Reexamination of Patents: An Empirical Evaluation

By Roger Shang and Yar Chaikovsky [*]

### *Table of Contents*

I. Introduction ................................................................................................ 2

II. The Historical Development Of Reexamination ................................... 3

III. The Procedures For *Inter Partes* Reexamination ............................. 6

IV. Empirical Evaluation Of *Inter Partes* Reexamination Proceedings ............ 9

    *A. Identifying the Data Set* ...................................................................... 9

    *B. Cancellation and Confirmation Rates* .............................................. 11

    *C. The Examiner's Basis for Rejection* ................................................ 12

    *D. The Time Delay of Inter Partes Reexamination* ............................. 15

    *E. The Quality of the Office Actions in Inter Partes Proceedings* .......... 17

    *F. Summary of Empirical Results* .......................................................... 17

V. The Strategic Use Of *Inter Partes* Reexamination ......................... 18

    *A. Strength of the Prior Art* ................................................................. 18

    *B. The Special Situation of a Prior Art Product* .................................. 20

    *C. The Judge and the Jurisdiction* ....................................................... 20

    *D. Timing and Stay* ................................................................................ 22

    *E. The Estoppel Effect* .......................................................................... 24

    *F. Other Factors* .................................................................................... 25

VI. Post-Grant Review Proposals ............................................................. 26

---

[*] Roger Shang is an Associate in the Global Patent Litigation Practice Group of Weil Gotshal & Manges LLP. Yar Chaikovsky is a Partner in the Patent Litigation Practice Group of Sonnenschein Nath & Rosenthal LLP. The opinions expressed in this article are those of the authors and do not necessarily represent the firms or their clients.

## I. Introduction

The *inter partes* reexamination procedure was created by Congress in 1999 as a litigation alternative to challenge a patent's validity.[1]  While it is certainly less expensive than litigation,[2] it has been criticized as unfair and unfavorable to challengers of patent validity.[3]  What is missing, however, is an empirical study of the results of *inter partes* reexamination proceedings—how the examiners at the United States Patent & Trademark Office (PTO) made final decisions in these proceedings.[4]

To determine whether *inter partes* reexamination is a realistic alternative to litigation for third party challengers, we studied all *inter partes* reexamination requests filed through the end of 2005 and focused on those where the PTO examiner issued a final decision.  The results are quite interesting and not entirely expected.  Notably, we found that examiners readily rejected claims—often in the absence of a single anticipating prior art reference.

We present this article in the following structure.  Part II summarizes the historical development of reexamination.  Part III introduces the procedures for *inter partes* reexamination.  Part IV describes our empirical study of *inter partes* proceedings.  Part V draws upon the empirical study results and discusses the factors that affect the decision to request *inter partes* reexamination.  Part VI applies the empirical study to comment on recent post-grant review proposals.  Part VII con-

---

[1]  *See, e.g.*, Dale L. Carlson & Jason Crain, *Reexamination: A Viable Alternative to Patent Litigation?*, 3 YALE SYMP. L. & TECH. 2, 8 (2000) ("The new inter partes reexamination opportunity was passed into law on November 29, 1999, as part of the Inventors Protection Act of 1999. . . . This procedure is meant to increase the attractiveness of reexamination over the costly alternative of district court litigation."); Gerald J. Mossinghoff & Vivan S. Kuo, *Post-Grant Review of Patents: Enhancing the Quality of the Fuel of Interest*, 43 IDEA 83, 91 (2002).

[2]  According to a survey conducted by the American Intellectual Property Law Association (AIPLA), the median typical total cost for a major patent infringement suit with more than $25 million at risk is $4.5 million.  The median typical total cost for an *inter partes* reexamination is $95,000.  *See AIPLA Report of the Economy Survey 2005*, 22–23, 26 (2005) (on file with authors).

[3]  *See* Carlson & Crain, *supra* note 1, at 12 (questioning the fairness to third parties of the new *inter partes* reexamination process); Joseph Farrell & Robert P. Merges, *Incentives to Challenge and Defend Patents: Why Litigation Won't Reliably Fix Patent Office Errors and Why Administrative Patent Review Might Help*, 19 BERKELEY TECH. L.J. 943, 967 (2004); Stephen G. Kunin & Anton W. Fetting, *The Metamorphosis of* Inter Partes *Reexamination*, 19 BERKELEY TECH. L.J. 971, 974–75 (2004); Sherry M. Knowles, Thomas E. Vanderbloeman & Charles E. Peeler, Inter Partes *Patent Reexamination in the United States*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 611, 627 (2004).

[4]  Joseph D. Cohen studied *inter partes* proceedings in a March 2005 article, but was handicapped by the lack of early data and apparently had to focus on non-final Office Actions, which may differ from the examiners' final decisions.  *See* Joseph D. Cohen, *What's Really Happening in* Inter Partes *Reexamination*, 87 J. PAT. & TRADEMARK OFF. SOC'Y 207 (2005).

cludes that, in certain circumstances, *inter partes* reexamination can be an effective alternative to litigation.

## II. The Historical Development Of Reexamination

*Inter partes* reexamination owes its lineage to *ex parte* reexamination, which was introduced by Congress in 1980 in the Reexamination Act.[5] By enacting the *ex parte* reexamination statute, Congress sought to "strengthen investor confidence in the certainty of patent rights by establishing a system of administrative reexamination of doubtful patents, and without recourse to expensive and lengthy infringement litigation."[6]

A request for *ex parte* reexamination (known simply as "reexamination" until the introduction of *inter partes* reexamination) may be filed by any person, including the patent owner, a third party, or the Director of the PTO.[7] The request must be based on a prior art patent or printed publication and compare the prior art to one or more claims of the patent.[8] Other grounds for invalidity, such as public use or the sale of a prior product, are not considered in reexamination.[9] The PTO currently charges a filing fee of $2,520.[10]

Within three months from the filing of the request, the PTO decides whether the request raises a substantial new question of patentability for any claim of the patent.[11] If the PTO decides that a substantial new question of patentability is raised, the PTO grants the request and *ex parte* reexamination is initiated.[12] This substantial new question of patentability is raised where there is a "substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable."[13] This

---

[5]  *See, e.g.,* Mossinghoff & Kuo, *supra* note 1, at 87 n.16 (citing Act of Dec. 12, 1980, Pub. L. No. 96-517, 94 Stat. 3015); Knowles et al., *supra* note 3, at 611.

[6]  Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 976 (Fed. Cir. 1986) (citing H.R. REP. No. 96-1307, at 3–4, *as reprinted in* 1980 U.S.C.C.A.N. 6460, 6462–6463 (internal quotations omitted)).

[7]  *See* 35 U.S.C. § 302 (2006) ("Any person at any time may file a request for reexamination . . . .").

[8]  *See id.;* 35 U.S.C. § 301 (2006).

[9]  *See* 35 U.S.C. § 301 (limiting citation of prior art in reexamination to "patents or printed publications"); MANUAL OF PATENT EXAMINING PROCEDURE (MPEP) § 2216 (8th ed., rev. 5 2006).

[10]  37 C.F.R. § 1.20(c)(1) (2005).

[11]  35 U.S.C. § 303 (2006).  For reexaminations ordered on or after November 2, 2002, the substantial new question of patentability may be based solely on a prior art reference previously cited or considered by the PTO.  *Id;* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 13105, 116 Stat. 1758 (2002); MPEP § 2258.01 (2006).

[12]  35 U.S.C. § 303.

[13]  MPEP § 2242 (2006).

4          TEXAS INTELLECTUAL PROPERTY LAW JOURNAL          [VOL. 15: 1

standard is fairly easy to meet, and 93% of *ex parte* reexamination requests filed from 2001 through 2005 were granted.[14]

Once the request for *ex parte* reexamination is granted, the patent owner may file a statement in support of patentability, and the third party requester may then file a response.[15] After that, the third party requester can no longer participate in the reexamination process, and the proceeding is conducted using some of the same procedures as used for initial examination of original patent applications.[16] For example, the patent owner may conduct personal or telephone interviews with the examiner[17] and may amend or add new claims.[18] However, the amended or new claims cannot broaden the original claim scope.[19] Claims are construed by the examiner using the broadest reasonable interpretation consistent with the specification and without a presumption of validity.[20] The patent owner may appeal an adverse decision of the examiner to the Board of Patent Appeals and Interferences (BPAI), and from the BPAI to the Federal Circuit, but the third party requester cannot appeal.[21]

After the time for appeal has expired or the appeal proceeding has terminated, the PTO issues a reexamination certificate to close the matter.[22] The certificate cancels claims that are rejected as unpatentable, confirms claims that are allowed as patentable, and lists amended or new claims that are allowed.[23] The reexamination

---

[14] *See* United States Patent & Trademark Office, *Performance and Accountability Report for Fiscal Year 2005*, 131 (2005), *available at* http://www.uspto.gov/web/offices/com/annual/index.html.

[15] *See* 35 U.S.C. § 304 (2006) ("Within a period of two months from the date of service, that person may file and have considered in the reexamination a reply to any statement filed by the patent owner."); 37 C.F.R. § 1.530 (2005).

[16] *See* 35 U.S.C. § 305 (2006) (stating that "reexamination will be conducted according to the procedures established for initial examination under the provisions of Sections 132 and 133").

[17] MPEP § 2281 (2006).

[18] *See* 35 U.S.C. § 305.

[19] *See id.*

[20] *See id.* (stating that "reexamination will be conducted according to the procedures established for initial examination"); MPEP § 2258 (2006). Claims of an expired patent, however, are construed narrowly. *See* MPEP § 2258 (stating that claims of an expired patent are to be examined according to the principles set out by the court in *Phillips v. AWH Corp.*, since the expired claim(s) are not subject to amendment).

[21] *See* 35 U.S.C. § 306 (2006) ("The patent owner involved in a reexamination proceeding . . . may appeal under the provisions of section 134 of this title, and may seek court review . . . .").

[22] 35 U.S.C. § 307 (2006).

[23] *Id.*; 37 C.F.R. § 1.570 (2005); MPEP § 2288 (2006). For both *ex parte* and *inter partes* reexaminations, original claims are "confirmed" or "cancelled," while amended or new claims are "allowed" or "rejected." We use the confirmation-allowance and cancellation-rejection terms interchangeably in this article.

proceedings, including appeals to BPAI, must be conducted "in special dispatch," i.e., in an expedited matter having priority over the normal proceedings.[24]

As the preceding description shows, *ex parte* reexamination provides very limited participation opportunities for a third party requester and only at the beginning stage.[25] Once it files the initial request, the third party requester is typically cut off from the reexamination process. The only other opportunity for the third party requester to be heard is to respond to the patent owner's statement, also filed at the beginning of the reexamination process.[26] A smart patent owner, however, would normally forego the filing of the statement to prevent the third party response.[27] Not surprisingly, *ex parte* reexamination is considered unfavorable to third party challengers.[28]

Empirical data supports this conclusion. According to PTO statistics on the several thousand *ex parte* reexamination proceedings conducted between 1981 and 2003, 26% of proceedings resulted in all claims confirmed, 10% resulted in all claims cancelled, and 64% resulted in claims amended and allowed.[29] This means that claims are more than twice as likely to be confirmed rather than cancelled. While the 64% rate of claims amended and allowed represents a "black box" of ambiguity, we believe such amended and allowed claims likely favor the patentee. It would be unwise for a patent owner to narrow claims into a scope that does not cover market products; such claims, even if distinguishable over prior art, would be useless to the patent owner. A rational patent owner would alter claims into a scope that still covers market products, even if this means risking rejection over prior art. Such risk-taking is even more rational considering that the patent owner can negotiate with the PTO examiner and appeal the examiner's adverse decision to the BPAI and the Federal Circuit, all without the third party challenger's participa-

---

[24] 35 U.S.C. § 305 (2006); MPEP § 2261 (2006).

[25] The requester can try to improve its participation by filing another *ex parte* reexamination request for the same patent in the midst of the first reexamination proceeding. As the same examiner may be assigned to both reexaminations, the requester can craft the second request to include arguments or references that it wishes the examiner to consider for the first proceeding. *See* MPEP § 2636 (2006) ("[I]f the earlier reexamination is still ongoing, the same examiner will be assigned the new reexamination."). However, the PTO will grant the second request only if it raises a substantial new question of patentability that is *different* from the substantial new question of patentability raised by the first request. MPEP § 2240 (2006).

[26] MPEP § 2254 (2006).

[27] *See, e.g.*, Michael L. Goldman & Alice Y. Choi, *The New Optional Inter Partes Reexamination Procedure and Its Strategic Use*, 28 AIPLA Q.J. 307, 313–14 (2000) ("[A] patent challenger had no further role in an ex parte reexamination proceeding after filing a request unless the patentee submitted a patent owner's statement.").

[28] *E.g., id.* at 313–14; Carlson & Crain, *supra* note 1, at 7; Mossinghoff & Kuo, *supra* note 1, at 90; Knowles et al., *supra* note 3, at 612.

[29] *See, e.g.*, Paul Morgan & Bruce Stoner, *Reexamination vs. Litigation—Making Intelligent Decisions in Challenging Patent Validity*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 441, 461 (2004).

tion.[30]  Therefore, a large portion of this 64% of proceedings likely resulted in allowed claims that cover market products, i.e., claims that favor the patent owner.

In 1999, facing criticism that the existing reexamination procedure unfairly favors patent owners, Congress passed the Optional *Inter Partes* Reexamination Procedure Act of 1999 as part of the American Inventor's Protection Act of 1999.[31] This act created an *inter partes* reexamination procedure for patents filed on or after November 29, 1999. *Inter partes* reexamination is "optional" because a third party can request either *ex parte* or *inter partes* reexamination for patents filed on or after November 29, 1999.[32]  For patents filed before this date, only *ex parte* reexamination is available.[33]

### III. The Procedures For *Inter Partes* Reexamination

An *inter partes* proceeding starts with a request for *inter partes* examination, which may be filed by any third party requester.[34]  The PTO charges a filing fee of $8,800.[35]  Like a request for *ex parte* reexamination, an *inter partes* request must be based on prior art patents or printed publication and must compare the prior art references to one or more claims of the patent.[36]  Other grounds of invalidity, such as public use or the sale of a prior product, are not considered in reexamination.[37]  Unlike an *ex parte* request, an *inter partes* request must identify the real party in interest, not just the attorney representing the challenger.[38]

The PTO's determination process for the *inter partes* request is similar to that for an *ex parte* request.  Within three months after the filing of an *inter partes* request, the PTO must decide whether the request has raised a substantial new question of patentability for any claim of the patent.[39]  The request—and the rest of the

---

[30]  *See* 35 U.S.C. § 306 (2006) ("The patent owner involved in a reexamination proceeding . . . may appeal under the provisions of section 134 of this title, and may seek court review . . . .").

[31]  *E.g.*, Knowles et al., *supra* note 3, at 612; Consolidated Appropriations Act of 2000, Pub. L. No. 106-113, 113 Stat. 1501A-522 (1999).

[32]  *See* 37 C.F.R. § 1.913 (2005) ("[A]ny person . . . during the period of enforceability of a patent which issued from an original application filed in the United States on or after November 29, 1999, [may] file a request for inter partes reexamination . . . ."); MPEP § 2611 (2006).

[33]  MPEP § 2611.

[34]  35 U.S.C. § 311 (2006).

[35]  37 C.F.R. § 1.20(c)(2) (2005).

[36]  35 U.S.C. §§ 301, 311 (2006).

[37]  *See* 35 U.S.C. § 301 (third party may cite patents and printed publications in its reexamination request); 35 U.S.C. § 311; MPEP § 2617 (2006).

[38]  35 U.S.C. § 311.

[39]  35 U.S.C. § 312 (2006).  For reexaminations ordered on or after November 2, 2002, the substantial new question of patentability may be solely based on a prior art reference previously cited or

reexamination proceeding—is typically assigned to an experienced primary examiner at the PTO who is familiar with the subject matter of the patent but did not originally examine the patent.[40]  The requirement to assign an examiner other than the examiner who allowed the original patent is intended to prevent potential bias.[41]  Recently, the PTO established a Central Reexamination Unit to house twenty experienced primary examiners concentrating solely on reexaminations, including *inter partes* reexaminations.[42]

If a substantial new question of patentability is raised, the PTO grants the request and *inter partes* reexamination proceeds.[43]  Like *ex parte* reexamination, a substantial new question of patentability is raised where "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable."[44]  This standard is easy to meet, and 96% of all *inter partes* reexamination requests filed through 2005 were granted.[45]

Once an *inter partes* reexamination request is granted, a PTO examiner will issue an initial Office Action to either allow or cancel the claims of the patent.[46]  The initial Office Action is usually issued at the same time as the order granting the reexamination and in any event within two months from the mailing of the order.[47]  Just like in *ex parte* reexamination, the patent claims are construed by the examiner using the broadest reasonable interpretation and without a presumption of validity.[48]

---

considered by the PTO. *Id.*; 21st Century Department of Justice Appropriations Authorization Act of 2002, Pub. L. 107-273, § 13105, 116 Stat. 1901 (2002); MPEP § 2642 (2006).

[40]  *See* MPEP § 2636 (2006) (stating that the office "assigns the reexamination request to a primary examiner, other than the examiner who originally examined the patent . . . , who is most familiar with the claimed subject matter of the patent").

[41]  *See generally,* Carlson & Crain, *supra* note 1, at 13 (noting that assignment to the same examiner might prevent an unbiased examination).

[42]  United States Patent & Trademark Office, *supra* note 14, at 5, 19.

[43]  35 U.S.C. § 312 (2006).

[44]  MPEP § 2642 (2006).

[45]  *See* United States Patent & Trademark Office, *supra* note 14, at 131 (noting that 96% of all *inter partes* reexamination requests through 2005 were granted).

[46]  *See* 35 U.S.C. § 313 (2006) ("The order [for *inter partes* reexamination] may be accompanied by the initial action of the Patent and Trademark Office on the merits of the inter partes reexamination . . . ."); 37 C.F.R. § 1.935 (2005).

[47]  *See* 37 C.F.R. § 1.935 (2005) ("The order for inter partes reexamination will usually be accompanied by the initial Office action on the merits of the reexamination."); MPEP § 2660 (2006).

[48]  *See* 35 U.S.C. § 314 (2006) (stating that "reexamination shall be conducted according to the procedures established for initial examination"); MPEP §§ 2258, 2658 (2006).

After receiving an Office Action, the patent owner may respond with arguments and may amend claims or add new claims without broadening the original claim scope.[49]  Significantly, the third party requester may file written comments to the examiner to reply to every patent owner response.[50]  This stands in sharp contrast with *ex parte* reexaminations which severely limit the third party requester's participation.  Unlike *ex parte* reexaminations, interviews on the merits with the examiner are prohibited in *inter partes* proceedings.[51]

After the examiner has received the parties' arguments and considered the issues more than once, the examiner issues an Action Closing Prosecution.[52]  This term is a misnomer because it is not a final action completing the prosecution.[53]  Instead, it is an Office Action that addresses all issues of patentability and gives the parties one final chance to persuade the examiner.[54]

After reviewing each party's response to the Action Closing Prosecution, the examiner's final decision comes in the form of a Right of Appeal Notice.[55]  This is essentially a Final Office Action that rejects or allows the claims and addresses the parties' arguments.  This notice, as the name suggests, completes reexamination at the examiner level and allows the patent owner and/or the challenger to appeal to the BPAI, and potentially to the Federal Circuit.[56]

As a quality assurance mechanism and to counter the perception that a patent owner can unfairly influence the examiner assigned to the reexamination, the PTO conducts Patentability Review Conferences before issuing an Action Closing Prosecution and before issuing a Right of Appeal Notice that includes a final rejection.[57]  A Patentability Review Conference is attended by three examiners: the examiner assigned to the reexamination, and two other examiners.[58]  At the confer-

---

[49]  35 U.S.C. § 314.

[50]  *See id.*

[51]  37 C.F.R. § 1.955 (2005); MPEP § 2685 (2006).

[52]  37 C.F.R. § 1.949 (2005); MPEP § 2671.02 (2006).

[53]  MPEP § 2671.02.

[54]  37 C.F.R. § 1.951 (2005); MPEP § 2671.02.

[55]  37 C.F.R. § 1.953 (2005); MPEP § 2673.02 (2006).

[56]  *See* 35 U.S.C. § 141 (2006) (allowing for appeal from a decision of the BPAI to the Federal Circuit); MPEP § 2673.02.  Section 141, as amended by the American Inventor's Protection Act of 1999, did not allow the third party challenger to appeal to the Federal Circuit.  Section 141 was again amended in 2002 to allow the challenger to appeal to the Federal Circuit for proceedings commenced on or after November 2, 2002.  21st Century Department of Justice Appropriations Authorization Act of 2002, Pub. L. No. 107-273, 116 Stat. 1758 (2002).

[57]  MPEP § 2671.03 (2006).

[58]  *Id.*

ence, the examiners discuss the patentability issues and confirm or reject the pre-
liminary decision of the examiner assigned to the reexamination.[59]

After the time for appeal has expired or the appeal proceeding has terminated,
the PTO issues a Notice of Intent to Issue Reexamination Certificate, which indi-
cates the decision to issue a reexamination certificate.[60] The publication division at
the PTO then formally issues a reexamination certificate to complete the proceed-
ing.[61] The certificate cancels claims that are rejected as unpatentable, confirms
claims that are allowed as patentable, and lists amended or new claims that are al-
lowed.[62] The *inter partes* reexamination proceedings, including appeals to BPAI,
must be conducted "in special dispatch," i.e., in an expedited manner having prior-
ity over the normal proceedings.[63] Reexaminations of patents involved in litigation
are processed with even higher priority.[64]

A controversial provision of *inter partes* reexamination involves its estoppel
effect. If the third party requester initiated an *inter partes* reexamination that re-
sulted in the confirmation of a claim's patentability, then the requester is estopped
from subsequently asserting in litigation that this claim is invalid on any ground
that the requester raised or could have raised during the reexamination.[65] However,
the requester may challenge the claim based on newly discovered prior art not
available to the requester and the PTO at the time of the reexamination.[66]

## IV. Empirical Evaluation Of *Inter Partes* Reexamination Proceedings

### A. Identifying the Data Set

The first *inter partes* reexamination request was filed in July 2001.[67] In order
to evaluate the success rate of *inter partes* reexamination, we reviewed the status of
all 117 *inter partes* reexamination requests filed from 2001 through December
2005.[68] These requests and associated prosecution papers are maintained by the

---

[59] *Id.*

[60] MPEP § 2687 (2006).

[61] 35 U.S.C. § 316 (2006); MPEP § 2687.

[62] 35 U.S.C. § 316; MPEP § 2688 (2006).

[63] 35 U.S.C. § 314 (2006); MPEP § 2661 (2006).

[64] MPEP § 2661.

[65] 35 U.S.C. § 315 (2006).

[66] *Id.*

[67] PTO Control No. 95/000,001, http://portal.uspto.gov/external/portal/pair (under "Select Search
Method:" click "Control Number"; then enter "95/000,001" in the box beneath "Enter Number:"
and click "Submit") (last visited May 24, 2006).

[68] They correspond to PTO Control Numbers 95/000,001 through 95/000,117. The status of these
proceedings was last reviewed on May 24, 2006.

PTO at its Patent Application Information Retrieval website.[69]  A few of these requests were denied or vacated, but most of these requests were granted and pending in the prosecution stage.[70]  Of the granted requests, only three have been completed with the issuance of a reexamination certificate, and all three resulted in the cancellation of all claims.[71]

While the three completed proceedings do not form a reliable data set, we noticed that PTO examiners have issued final decisions in many more proceedings.  In five more proceedings, an examiner issued a Notice of Intent to Issue Reexamination Certificate.[72]  As explained in Part III, this means that the examination stage is closed, and the case is sent to the publication division for formal publication of the reexamination certificate.[73]  Although this clerical processing stage may take several months, the issuance of the reexamination certificate is expected to be a mere formality, and the proceedings will then be formally closed.

In another twenty-two proceedings, the examiner issued a Right of Appeal Notice.[74]  As explained earlier in Part III, a Right of Appeal Notice is essentially a Final Office Action closing reexamination at the examiner level and allowing the parties to appeal to the Board of Patent Appeals and Interference and potentially to the Federal Circuit.[75]  Although the final results may change depending on the appeal process, these cases at least allow us to study the final decisions of the examiners at the examination stage.

Combining the three completed proceedings with the five proceedings with an issued Notice of Intent to Issue Reexamination Certificate and the twenty-two proceedings with an issued Right of Appeal Notice, we reach a total of thirty *inter partes* reexamination proceedings where the examiner has issued a final decision.[76]  We term these "post-Final Office Action proceedings."  While this group of thirty proceedings still does not provide a large data set, it at least allows us to investigate the early trends in the PTO examiners' decision making.

---

[69]  Patent Application Information Retrieval, http://portal.uspto.gov/external/portal/pair (last visited July 7, 2006).

[70]  As stated earlier in Part III, 96% of *inter partes* reexamination requests were granted.  United States Patent & Trademark Office, *supra* note 14, at 131.

[71]  PTO Control No. 95/000,001; PTO Control No. 95/000,002; PTO Control No. 95/000,004.

[72]  PTO Control No. 95/000,026; PTO Control No. 95/000,037; PTO Control No. 95/000,041; PTO Control No. 95/000,047; PTO Control No. 95/000,095.

[73]  *See supra* note 60.

[74]  *See infra* Appendix (listing *inter partes* reexamination proceedings where a Right of Appeal Notice issued).  In two other proceedings, having PTO Control Numbers 95/000,026 and 95/000,047, the examiner issued a Right of Appeal Notice and then a Notice of Intent to Issue Reexamination Certificate.  We placed these two proceedings in the Notice of Intent category only.

[75]  *See supra* note 56.

[76]  *See infra* Appendix (listing detailed information regarding these thirty proceedings).

### B. Cancellation and Confirmation Rates

Based on a review of the prosecution papers at the PTO website, these thirty post-Final Office Action proceedings have the following results:[77]

Table 1

| Result of Proceeding | Number of Proceedings & Percentage |
|---|---|
| All claims confirmed/allowed | 6 (20%) |
| All claims cancelled/rejected | 17 (57%) |
| Some claims confirmed/allowed and other claims cancelled/rejected | 7 (23%) |

The 57% all-cancellation rate is staggering when compared with the 10% all-cancellation rate of *ex parte* reexamination.[78]  It is also higher than the litigation success rate of invalidity.[79]  Even if we remove from the data set the three cases where the patent owner "defaulted" by not responding to any Office Action,[80] the cancellation rate is still 52%, which is higher than the litigation success rate.

Since *inter partes* and *ex parte* reexaminations are both conducted by PTO examiners under the same standard of claim construction and patentability, why does *inter partes* reexamination provide such a dramatic increase in the invalidity rates?

To answer this question, we first explore why the invalidity rate is so low for *ex parte* reexaminations.  As discussed in Part II, the third party requester is cut off from an *ex parte* proceeding after the beginning stage.  From that point on, the examiner only receives one-sided arguments form the patent owner.[81]

---

[77]  Certain claims in some of the proceedings were amended or introduced as new claims, and then allowed or rejected.  We considered these changed claims together with the original claims in calculating the confirmation/allowance and cancellation/rejection rates.

[78]  *See* Morgan & Stoner, *supra* note 29.

[79]  *See* John R. Allison & Mark A. Lemley, *Empirical Evidence on the Validity of Litigated Patents*, 26 AIPLA Q.J. 185, 205 (1998) (reporting a 46% invalidity rate for litigated patents); Kimberly A. Moore, *Judges, Juries and Patent Cases—An Empirical Peek Inside the Black Box*, 99 MICH. L. REV. 365, 390 (2000) (reporting a 33% invalidity rate for trials).

[80]  PTO Control No. 95/000,004, http://portal.uspto.gov/external/portal/pair (under "Select Search Method:" click "Control Number"; then enter "95/000,004" in the box beneath "Enter Number:" and click "Submit") (last visited May 24, 2006); PTO Control No. 95/000,041; PTO Control No. 95/000,095.

[81]  *See supra* note 16 and accompanying text.

Moreover, in *ex parte* proceedings, the patent owner's counsel may use telephone and personal interviews to try to influence the examiner.[82]  Assuming the patent owner's counsel is an experienced patent prosecution attorney specializing in a particular technology field, he or she may have worked with the examiner or the examiner's supervisor in prior cases, and thus maintained a friendly relationship with the examiner.[83]  This attorney may bring a company executive or the inventor of the patent to the interview to further impress the examiner.  The interview opportunity gives the attorney considerable freedom to negotiate with the examiner, to "test" various approaches, and to see how the examiner might respond to hypothetical amendments without leaving a paper trail.[84]  It is in an examiner's human nature to warm up to smart, experienced, and friendly attorneys who make a living fine-tuning their persuasive skills.  As Professors Farrell and Merges succinctly commented on *ex parte* reexamination:

> [E]ven where a patent challenger has introduced evidence that a patent is invalid, the patentee has many opportunities to reframe the issue, rebut the evidence, and otherwise put its own spin on the information.  This agenda control is a powerful weapon for patent applicants.  It is not enough to permit a patent challenger to send a copy of a technical article or prior patent to the USPTO, though that is all that is currently allowed.  Lawyers being lawyers, applicants' counsel will take advantage of wiggle room in the conceptual space between a prior art reference and the claims of a patent.[85]

Contrast this with an *inter partes* reexamination.  In an *inter partes* reexamination proceeding, there is no interview on the merits allowed, and the third party requester has the same opportunities as the patent owner to argue to the examiner.[86]  For every Response to Office Action or Amendment filed by the patent owner, the third party requester may counter with arguments.[87]  With the patent owner and the challenger on equal footing, it is no surprise that the success rate is much higher than *ex parte* reexamination, and similar to the litigation success rate.

### C. The Examiner's Basis for Rejection

As Table 1 shows, of the thirty post-Final Office Action *inter partes* proceedings, only six proceedings (20%) had all claims confirmed, and the other twenty-

---

[82]  MPEP § 2281 (2006).

[83]  With the recent establishment of a Central Reexamination Unit to house twenty examiners concentrating solely on reexaminations, future prosecution attorneys may have fewer opportunities to know reexamination examiners through the normal prosecution of patents. *See supra* note 42 and accompanying text.

[84]  Only a very brief written summary of the interview is required. *See* MPEP § 2281 (requiring the examiner to complete Interview Summary form PTOL-474 for each interview).

[85]  *See* Farrell & Merges, *supra* note 3, at 965–66.

[86]  *See* 35 U.S.C. § 314 (2006) (each time the patent owner files a response to an action on the merits the third party requester may file comments); 37 C.F.R. § 1.955 (2005); MPEP § 2685 (2006).

[87]  35 U.S.C. § 314.

four (80%) consisted of total or partial cancellation of claims. We break down these twenty-four proceedings in the table below according to whether claims are rejected on the basis of 35 U.S.C. § 102 anticipation of a single prior art reference, 35 U.S.C. § 103 obvious combination of multiple prior art references, or a mixture of §§ 102 and 103.[88]

Table 2

| *Basis of Prior Art Rejection* | *Number of Proceedings & Percentage* |
|---|---|
| Claims rejected on the sole basis of § 102 anticipation | 1 (4%) |
| Claims rejected on the sole basis of § 103 obviousness | 9 (38%) |
| Some claims rejected on the basis of § 102 anticipation, and other claims rejected on the basis of § 103 obviousness | 14 (58%) |

As this Table 2 shows, only one proceeding's rejection is entirely based on § 102 anticipation.[89] Of the twenty-four post-Final Office Action proceedings that rejected at least some of the claims, 38% of them used solely § 103 obviousness as the basis for all prior art rejections. Of the 58% of proceedings that rejected claims using a mix of § 102 anticipation and § 103 obviousness, more claims (174 claims) were rejected on a § 103 basis than on a § 102 basis (152 claims). A study of all claims in the thirty post-Final Office Action proceedings yielded the following results:[90]

---

[88] In a number of proceedings, the examiner rejected the patent owner's amended or new claims on the basis that the newly introduced claim elements did not satisfy the written description requirement of 35 U.S.C. § 112. As § 112 can only be used in reexamination to reject amended or new claims and not the original claims, we did not track rejections on this basis. *See* MPEP § 2658 (2006) ("Where new or amended claims are presented or where any part of the disclosure is amended, the claims of the reexamination proceeding are to be examined for compliance with 35 U.S.C. 112.").

[89] *See* PTO Control No. 95/000,045, http://portal.uspto.gov/external/portal/pair (under "Select Search Method:" click "Control Number"; then enter "95/000,045" in the box beneath "Enter Number:" and click "Submit") (last visited May 24, 2006). In another proceeding, PTO Control Number 95/000,095, the examiner rejected all claims "on § 102 or § 103" but then discussed the rejections of all independent claims as combinations of prior art references. Therefore, we placed the 95/000,095 proceeding in the § 103 rejection category.

[90] We studied all claims confirmed or rejected in the final Office Action of these 30 proceedings. In Table 3, claims rejected on both §§ 102 and 103 basis are counted for both § 102 and § 103 categories; claims cancelled by the patent owner following an Office Action rejection are counted on the basis on which they were rejected; claims objected to as depending on a rejected claim that would be allowed if rewritten in independent form are counted as confirmed.

Table 3

| Disposition of Reexamined Claim | Number of Claims & Percentage |
|---|---|
| Claim confirmed | 159 (24%) |
| Claim rejected on the basis of § 102 anticipation | 166 (26%) |
| Claim rejected on the basis of § 103 obviousness | 323 (50%) |

As Tables 2 and 3 indicate, § 103 obviousness forms the basis of rejection for a significant percentage of proceedings and claims. It is evident that the examiners in early *inter partes* reexaminations readily combined prior art references to reject claims, even in the absence of a single anticipating prior art reference. Compared to the litigation success rate of 36.3% for obviousness challenges, the early success of obviousness rejections in *inter partes* proceedings is quite impressive.[91] We do not know the reasons for this early success; but we offer several potential explanations.

One possible reason is that the examiners followed the requirement of reexamining patents without a presumption of validity and critically analyzed the patent claims without deference to the PTO's original allowance of the patent.[92] This is in sharp contrast to a litigation setting, where patents are presumed valid, and the defendant bears the burden of proving invalidity by clear and convincing evidence.[93]

Another possible reason is that since experienced primary examiners are assigned to reexamine patents in their specialized field of technology,[94] they are relatively "skilled in the art" as compared to a judge or a jury and may easily find the motivation, whether expressly taught in a prior art reference or not, to combine the relevant prior art references.

A less significant, but still possible, reason involves the objective considerations often offered by the patent owner to support the non-obviousness of the patent. Such objective or secondary considerations typically include the long felt but unsolved need for the patented invention, the commercial success and critical acclaim of the patented invention, and the industry's licensing or copying of the pat-

---

[91] *See* Allison & Lemley, *supra* note 79, at 209.

[92] MPEP §§ 2258, 2658 (2006).

[93] 35 U.S.C. § 282 (2006); *See, e.g.*, Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1050 (Fed. Cir. 1988).

[94] MPEP § 2636 (2006).

3371940_1.DOC

ented invention.[95]  Reexamination examiners, who are technology professionals as opposed to lay persons like judges or jurors, may tend to focus on the technological merits of the patent and discount such objective considerations.  Moreover, the patent owner's ability to present these factors in reexamination is limited to the submission of declarations.[96]  Furthermore, as *inter partes* reexamination is only applicable to patents filed on or after November 29, 1999, these recent patents are unlikely to have developed evidence of many of these factors.[97]

### D. The Time Delay of Inter Partes Reexamination

Once the PTO receives an *inter partes* reexamination request, it issues the first Office Action in a surprisingly short time.  Based on our review of the post-Final Office Action proceedings, the first Office Action is often issued together with the order granting the reexamination request less than three months from receiving the request.[98]  This is consistent with PTO rules requiring that the first Office Action ordinarily be mailed together with the decision granting the request, i.e., at no more than three months from receiving the request, and in any event be mailed at no more than five months from receiving the request.[99]  This quick initial response time may be a function of the PTO's determination to carry out the congressional mandate of conducting *inter partes* reexamination "with special dispatch," the relatively low number of *inter partes* requests, or a combination of both factors.

After the initial flurry, the pace is likely to slow down.  Since the first *inter partes* reexamination request was filed in 2001, only proceedings have been completed with the issuance of a reexamination certificate, and the parties did not appeal to the BPAI or the Federal Circuit in these proceedings.[100]  For the proceedings that involved the appeal process—even the earlier ones whose requests were

---

[95] *See, e.g.*, Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 719 (Fed. Cir. 1991); Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1574–75 (Fed. Cir. 1992).

[96] *See* MPEP § 2658 (noting that affidavits may be submitted in reexamination proceedings).

[97] *See supra* note 32.

[98] *See, e.g.*, PTO Control No. 95/000,002, http://portal.uspto.gov/external/portal/pair (under "Select Search Method:" click "Control Number"; then enter "95/000,002" in the box beneath "Enter Number:" and click "Submit") (last visited May 24, 2006); PTO Control No. 95/000,004; PTO Control No. 95/000,006; PTO Control No. 95/000,008; PTO Control No. 95/000,010; PTO Control No. 95/000,013.

[99] 37 C.F.R. § 1.935 (2005); MPEP § 2660 (2006).

[100] PTO Control No. 95/000,001; PTO Control No. 95/000,002; PTO Control No. 95/000,004.  The examiners in these three proceedings rejected all claims of the reexamined patents, and the patent owners did not appeal.

filed in 2002 or 2003—none have yet been completed with the issuance of a reexamination certificate.[101]

From the thirty post-Final Office Action proceedings, we calculated the pendency from filing the reexamination request to reaching an examiner's final decision, i.e., the issuance of a Notice of Intent to Issue Reexamination Certificate or a Right of Appeal Notice.[102]  Based on these proceedings, the pendency from filing the request to receiving an examiner's final decision has an average time period of 21.6 months and a median time period of 23.5 months.[103]  As explained below, reaching formal completion with the issuance of a reexamination certificate will take at least several more months.

After an examiner's final decision is issued, the proceeding will either move to the appeal stage or be sent to the PTO's publication division for clerical processing to publish the reexamination certificate.[104]  The time period from issuing the Right of Appeal Notice to completing the appeal process is unpredictable, depending on the speed of the BPAI process and whether one or both parties will eventually appeal to the Federal Circuit.  The PTO states that the average pendency at BPAI is less than six months,[105] but it is unclear whether this number includes the time period for the parties and the examiner to file the appeal papers.[106]  Of all the *inter partes* proceedings in the appeal stage, only two proceedings—whose requests were filed in December 2002 and January 2003 respectively—are listed as awaiting BPAI decision, while the rest have not been heard by the BPAI.[107]  The typical pendency at the Federal Circuit is believed to be about one year, but can range from less than a year to two years.[108]

---

[101]  *See, e.g.,* PTO Control No. 95/000,005; PTO Control No. 95/000,006; PTO Control No. 95/000,007; PTO Control No. 95/000,008. They all concern requests filed in 2002.

[102]  In two proceedings—Control Numbers 95/000,026 and 95/000,047—the examiner issued a Right of Appeal Notice and then a Notice of Intent to Issue Reexamination Certificate. We used the Notice of Intent issue date for calculation.

[103]  *See infra* Appendix.

[104]  *See supra* notes 56, 60.

[105]  United States Patent & Trademark Office, *supra* note 14, at 25.

[106]  The appeal papers include a Notice of Appeal, an Appeal Brief, a Respondent Brief, an Examiner's Answer, and Rebuttal Briefs responding to the Examiner's Answer.  *See* MPEP §§ 2674–78 (2006) (setting out the procedures for the appeal process).

[107]  PTO Control No. 95/000,006, http://portal.uspto.gov/external/portal/pair (under "Select Search Method:" click "Control Number"; then enter "95/000,006" in the box beneath "Enter Number:" and click "Submit") (last visited May 24, 2006); PTO Control No. 95/000,009.

[108]  *See* U.S. Court of Appeals for the Federal Circuit, Federal Circuit 2005 Opinions, Orders & Decisions, http://www.fedcir.gov/2005log.html (last visited Sept. 21, 2006) (showing that most of the Federal Circuit opinions issued in 2005 have corresponding docket numbers beginning with "04" indicating that the appeal was filed in 2004, while some of the 2005 opinions have docket numbers beginning with "03" and many opinions published in November or December 2005 have docket numbers beginning with "05").

3371940_1.DOC

The time period from issuing a Notice of Intent to Issue Reexamination Certificate to the actual issuance of the reexamination certificate is also unpredictable. Compared to the appeal process, this time period should be relatively short, because it involves only clerical processing, but empirical data does not entirely support this expectation. In the three completed proceedings, the reexamination certificate issued four, five, and nine months, respectively, after the issuance of the Notice of Intent to Issue Reexamination Certificate.[109]

### E. The Quality of the Office Actions in Inter Partes Proceedings

For the above-described thirty post-Final Office Action proceedings, we reviewed at least one Office Action in each proceeding, normally the Final Office Action or Right of Appeal Notice. While we did not fully analyze the reasoning of these Office Actions, we did notice two characteristics.

First, the Office Actions in *inter partes* proceedings are often lengthier than those in normal prosecution. The Right of Appeal Notices (i.e., Final Office Actions) often reach twenty pages or more.[110] In some proceedings they even reach or exceed fifty pages.[111] These Office Actions compare each claim to prior art references and address arguments made by patent owners and third party requesters.

In addition, Office Actions in *inter partes* reexamination are typically authored by experienced primary examiners,[112] and Final Office Actions are signed by three examiners after they conduct a Patentability Review Conference.[113] This contrasts with the normal prosecution of patent applications, where Office Actions are often authored by less experienced assistant examiners without the benefit of a Patentability Review Conference. It appears that, for the $8,800 filing fee, the *inter partes* reexamination requester obtains an examination that receives greater attention than the normal prosecution of original patent applications.

### F. Summary of Empirical Results

Although only a limited set of empirical data is available, it is suggestive of the early trends in *inter partes* reexamination. The early data indicates that the ex-

---

[109] *See infra* Appendix; PTO Control No. 95/000,001; PTO Control No. 95/000,002; PTO Control No. 95/000,004.

[110] *See, e.g.*, PTO Control No. 95/000,008; PTO Control No. 95/000,009; PTO Control No. 95/000,013; PTO Control No. 95/000,018; PTO Control No. 95/000,024; PTO Control No. 95/000,028; PTO Control No. 95/000,030; PTO Control No. 95/000,038; PTO Control No. 95/000,087; PTO Control No. 95/000,098.

[111] *See* PTO Control No. 95/000,043; PTO Control No. 95/000,064; PTO Control No. 95/000,075.

[112] *See* MPEP § 2636 (2006) (stating that the office "assigns the reexamination request to a primary examiner, other than the examiner who originally examined the patent . . . , who is most familiar with the claimed subject matter of the patent").

[113] MPEP § 2671.03 (2006).

aminers cancelled all claims in slightly more than 50% of the *inter partes* proceedings and readily rejected claims based on an obvious combination of prior art references pursuant to § 103, even in the absence of a single anticipating prior art reference. It appears that *inter partes* reexamination provides a third party with a realistic chance to invalidate a patent on the basis of prior art. Comparing this with the lower success rate in litigation, the early data suggests that *inter partes* reexamination is a realistic alternative to expensive litigation. Thus, congressional intent on this level is fulfilled.

However, *inter partes* reexamination has not satisfied the other congressional intent to avoid the time delay of litigation. The pendency from receiving a request to issuing a Final Office Action is about two years, which means that the overall pendency of a hard-fought proceeding involving appeal is likely to be three or more years. This is comparable to the pendency from filing complaint to trial in many district courts and is longer than the pendency in the faster district courts.[114] If a challenger is mainly interested in the speed of the patent validity resolution, the statistics to date do not support favoring *inter partes* reexamination.

To reduce the pendency for *inter partes* reexamination, the PTO can start by reducing the clerical processing time from the Notice of Intent to Issue Reexamination Certificate to the actual issuance of the reexamination certificate. The PTO should be able to accomplish this with relative ease. The appeal time period should also be shortened, but that may be more difficult to achieve as it involves the BPAI and the Federal Circuit.

## V. The Strategic Use Of *Inter Partes* Reexamination

As we demonstrated through empirical data, *inter partes* reexamination provides a challenger with a realistic and low-cost opportunity to invalidate a patent based on printed prior art. The success rate of invalidity challenges calculated from the early data is comparable to, and even slightly better than, litigation. This does not mean that a challenger should automatically choose *inter partes* reexamination in lieu of litigation. Instead, the challenger should carefully consider the following factors.

### A. Strength of the Prior Art

First, before filing a reexamination request, the challenger must carefully evaluate the strength of the prior art references that it plans to rely on. The challenger should conduct a thorough prior art search and identify the prior art references that have a reasonable chance of invalidating the patent. If the challenger cannot find a strong prior art reference, then it may be better off not initiating a re-

---

[114] *See, e.g.*, Kevin M. Clermont & Theodore Eisenberg, *Litigation Realities*, 88 CORNELL L. REV. 119, 130 (2002); *Judicial Business of the United States Courts 2004*, Table C-5 Median Time Intervals From Filing to Disposition of Cases Terminated, by District and Method of Disposition, *available at* http://www.uscourts.gov/judbus2004/contents.html.

examination. The challenger does not want a reexamination that confirms the asserted claims, because the patent owner will use the reexamination result to tell the judge and jury at trial that its patent has been blessed, not once, but twice, by the PTO. To a judge or a jury, this "second blessing" may be a powerful indication of patent validity.

As we stated earlier, the standard for granting a reexamination request is fairly low, and over 90% of requests are granted.[115] In very limited circumstances, it may be proper to file a reexamination request even when the challenger has not found a strong prior art reference. Such a move may serve tactical purposes, such as buying time for a thorough prior art search, putting pressure on the patent owner for settlement purposes, or staying or otherwise effecting a delay in litigation. However, this move must be used with caution to prevent the "second blessing" of the patent.

In evaluating the prior art, the challenger must compare the prior art not only against the patent claims, but against the disclosure of the patent specification. In a reexamination proceeding, the patent owner is allowed to amend claims or add claims, as long as they are supported by the patent specification disclosure and do not broaden the original claim scope.[116] The ability to amend or add claims is a powerful weapon for the patent owner to distinguish over prior art and to more specifically cover the challenger's products. Therefore, before filing the reexamination request, the challenger must analyze the patent specification to identify all the ways that the patent owner may amend or add claims. If the prior art references are strong against the original claims but weak against potential new claims that still cover the challenger's products, then the challenger may be better off saving these prior art references for litigation, where the patent owner cannot amend the claims.

For amended or added claims that may survive reexamination, the challenger must consider whether the change of claims gives it intervening rights to its products.[117] If all original claims are cancelled, and the challenger has been making, selling or using exactly the same products without modification, then it has absolute intervening rights to the same products and need not worry about infringing an amended or added claim.[118] The patent law also has a broader and more ambiguous statutory provision regarding the challenger's equitable intervening rights.[119] For example, if the challenger made substantial investments in building an inventory of products, and then the reexamination completes with new claims that cover these

---

[115] *See* United States Patent & Trademark Office, *supra* note 14, at 131 (noting that 96% of all *inter partes* reexamination requests through 2005 were granted).

[116] 35 U.S.C. § 314 (2006).

[117] *See* 35 U.S.C. §§ 252, 307, 316 (2006).

[118] *See* 35 U.S.C. § 252 (2006); Shockley v. Arcan, Inc., 248 F.3d 1349, 1359–61 (Fed. Cir. 2001).

[119] *See Shockley*, 248 F.3d at 1360–61 (discussing the equitable intervening rights of § 252).

products, a judge may find it equitable to allow the challenger to sell off this inventory without incurring liability.[120]

### B. The Special Situation of a Prior Art Product

As we stated in Part III, the strongest argument against *inter partes* reexamination is its estoppel effect. If a claim is found valid in a completed *inter partes* reexamination, then the challenger cannot challenge the validity of that claim in litigation on grounds it raised or could have raised in reexamination.[121] If the challenger discovers a strong prior product, however, the challenger may get two bites of the apple and challenge the patent's validity in both proceedings. For the *inter partes* reexamination, the challenger may submit to the PTO printed materials such as manuals, news articles, and press releases describing this product. For litigation, the challenger may present the actual machines and witnesses to testify about their sale, purchase, or use of these machines, as evidence of public use or an on-sale bar invalidating the patent.[122] Since reexaminations are based solely on prior art patents or printed publications, the challenger could not have presented to the PTO the actual machines and witnesses for a public use or on-sale bar challenge.[123] Therefore, the challenger should not be estopped from challenging the patent on public use or on-sale bar grounds in litigation. While there is no case law interpreting the estoppel provision, this conclusion seems consistent with the statutory language.

The possibility of getting two bites at the apple does not mean that the challenger should always separate its prior art product challenge into two proceedings. It is quite common for the public use and on-sale bar evidence, based on the actual machines and witnesses, to be stronger than the printed materials describing the product. Therefore, if the printed materials do not explicitly disclose the claimed elements and thus do not form strong references on their own, the challenger may be better off preserving all of the evidence for litigation.

### C. The Judge and the Jurisdiction

Not all judges and jurisdictions behave the same.[124] A challenger must answer the critical question: who is more likely to invalidate the patent, the PTO (with potential appeal to the BPAI and to the Federal Circuit) or the judge and jury in the

---

[120] *See generally, Shockley,* 248 F.3d at 1359–61.

[121] 35 U.S.C. § 315 (2006).

[122] *See* 35 U.S.C. § 102(a)–(b) (2006). If the patented invention was predated by a third person's earlier invention, the challenger may also present witnesses, lab notebooks, product prototypes, and so forth to invalidate the patent under 35 U.S.C. § 102(g)(2) (2006).

[123] *See supra* note 36 and accompanying text.

[124] *See, e.g.,* Kimberly A. Moore, *Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation?,* 79 N.C. L. REV. 889 (2001).

particular jurisdiction? We have presented the claims confirmation and cancellation rates of early *inter partes* reexamination proceedings. A challenger should compare these rates to the success rates at the particular jurisdiction to reach an informed decision.

If the particular jurisdiction does not have enough patent litigation history to provide reliable statistics, the challenger should consider the presiding judge's tendency of granting summary judgment motions in other cases (assuming by way of example that there is strong prior art to support filing a summary judgment motion of invalidity). The challenger should consider the local jury pool's characteristics, such as its education level, understanding of and attitude toward technology, and willingness to trust government agencies like the PTO. A highly educated jury with a good understanding of technology is generally considered more likely to compare the patent to prior art and entertain an invalidity argument.[125] A jury with less education or less familiarity with technology, on the other hand, is generally considered more likely to ignore an invalidity argument because it does not understand the technology. Such a jury may prefer to rely on the PTO's allowance of the patent as evidence of validity.[126] A survey or mock trial in the jurisdiction may help uncover the local jury tendencies. One should be mindful, however, that regardless of the variations in local jury tendencies, juries in general tend to favor patent owners and uphold the validity of patents.[127]

One of the most popular patent plaintiff's jurisdictions in the nation has very few successful invalidity challenges and a jury pool with a low average education level.[128] If a defendant is sued in such a forum, it may be better to challenge the patent in a reexamination proceeding, even if the patent was filed before November 29, 1999, and therefore only subject to *ex parte* reexamination. Even the 10% all-cancellation rate of *ex parte* reexamination may be preferable to litigating patent validity in such a jurisdiction.

Another judge-and-jurisdiction dependent factor is the ability to stay litigation pending reexamination of some or all of the asserted patents. A district court judge

---

[125] For example, the Northern District of California is generally considered neutral to a defendant challenging a patent's validity. *See* Allison & Lemley, *supra* note 79, at 249 (finding 40% of patents held invalid in N.D. California). In Santa Clara County, which forms part of this district and Silicon Valley, 40.5% of adults over 25 years old have a Bachelor's or higher degree. *See* U.S. Census Bureau, State & County Quickfacts, http://quickfacts.census.gov/qfd/states/06/06085.html (last visited Sept. 23, 2006).

[126] *See generally* Joel C. Johnson, *Lay Jurors in Patent Litigation: Revising the Active, Inquisitorial Model for Juror Participation*, 5 MINN. INTELL. PROP. REV. 339, 356–57 (2004); Xenia Kobylarz, *The Best Little Courthouse in Texas*, THE RECORDER, May 9, 2006, *available at* http://www.law.com/jsp/article.jsp?id=1146819928267.

[127] *See, e.g.,* Moore, *supra* note 79, at 368; Allison & Lemley, *supra* note 79, at 212, 251.

[128] *See, e.g.,* M. Craig Tyler, *Patent Pirates Searching for Texas Treasure*, TEXAS LAWYER, Sept. 20, 2004, at 39 (discussing E.D. Texas); Kobylarz, *supra* note 126 (discussing E.D. Texas).

has the power to manage her docket and has the discretion to grant or deny a request to stay litigation.[129] Courts have identified the following factors in determining whether a request for stay should be granted: whether a stay would unduly prejudice or present a clear tactical advantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is complete, whether a trial date has been set, and whether the request for reexamination was filed relatively early.[130]

If a challenger is interested in staying litigation pending the completion of reexamination, the challenger must consider the judge's likelihood of granting a stay, taking into account the timeline for litigation and for reexamination, the docket load of the jurisdiction and the judge, the judge's willingness to hear patent cases (especially if the case involves complex technology and/or multiple patents), and other factors. The timing factor is discussed next.

### D. Timing and Stay

A defendant may request a stay of litigation pending the completion of reexamination.[131] A stay may allow the district court to benefit from the PTO's examination expertise, simplify issues for trial, and avoid wasting judicial resources on cancelled or amended claims.[132]

While a district court judge has the power to manage her docket, she may be more inclined to stay litigation if the reexamination request is filed early in litigation, for example, before the Case Management Conference or before the start of discovery.[133] For *inter partes* reexaminations, our empirical study shows that over half of post-Final Office Action proceedings resulted in all claims cancelled. The defendant may use this high possibility of cancellation as one factor that favors a stay—it would be a waste of resources for the court and the parties to go through discovery and trial only to have the patent cancelled by the PTO.[134]

Even if the defendant's first request for stay is denied, subsequent development of the reexamination proceeding may persuade the judge to grant a renewed request for stay. For example, the fact that the examiner issued an Office Action

---

[129] Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988).

[130] *See, e.g.*, Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); Xerox Corp. v. 3COM Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991).

[131] *See, e.g., United Sweetener*, 766 F. Supp. at 216 (noting that the court's authority "includ[es] the authority to order a stay pending conclusion of a PTO reexamination").

[132] *See id.*

[133] *Soverain Software*, 356 F. Supp. 2d at 663.

[134] *See, e.g., id.* at 662 (stating that the low likelihood of all claims being cancelled in *ex parte* reexamination favors not granting a stay).

rejecting claims, or the fact that the examiner issued a Final Office Action confirming the rejection, may persuade the judge to stay litigation. Even if discovery has completed and trial is near, the issuance of a Final Office Action rejection may persuade the judge to stay the trial.

Of course, the early filing of a reexamination request does not guarantee that the judge will stay the litigation. After all, the trial judge has the power and discretion to manage her own docket.[135] And since it typically takes at least two years to complete a reexamination (with three or more years being likely), it would not be surprising for trial to complete before reexamination. In a worst case scenario, all requests for stay are denied, trial completes with a verdict against the defendant, the trial judge enters a permanent injunction against the accused products, and the reexamination is still pending. In such a case, the reexamination still provides the defendant an opportunity to avoid ultimate liability. Assuming that the defendant appeals the trial verdict to the Federal Circuit, the trial judge stays the injunction pending the appeal, and reexamination including its appeal process completes with cancellation of the infringing claims, then the trial verdict and injunction should be vacated.[136]

If the defendant cannot finish the prior art analysis quickly enough to file an early request for reexamination, it may file the request during discovery after obtaining the plaintiff's claim construction position and infringement theory. This may improve the defendant's invalidity arguments in reexamination.[137]

In several recent high-profile patent infringement suits, the defendants lost at trial on both infringement and validity issues, and filed *inter partes* and *ex parte* reexamination requests only after trial.[138] It appears that filing these belated reexamination requests still provides some value.[139] Although the prevailing plaintiff holds most of the cards at this point, it cannot ignore the possibility that the patent claims may be cancelled in reexamination.

---

[135]  *See supra* note 129.

[136]  *See generally* 37 C.F.R. §§ 1.570, 1.997 (2005).

[137]  *See* MPEP § 2617 (2006) (requiring a party requesting *inter partes* reexamination to explain "how the cited patents or printed publications are applied to all claims").

[138]  *See* NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282 (Fed. Cir. 2005); PTO Control No. 95/000,020, http://portal.uspto.gov/external/portal/pair (under "Select Search Method:" click "Control Number"; then enter "95/000,020" in the box beneath "Enter Number:" and click "Submit") (last visited May 24, 2006); PTO Control No. 90/006,675; Eolas Tech., Inc. v. Microsoft Corp., 399 F.3d 1325 (Fed. Cir. 2005); PTO Control No. 90/006,831; MercExchange, LLC v. eBay, Inc., 401 F.3d 1323 (Fed. Cir. 2005), *vacated and remanded*, 126 S. Ct. 1837 (2006); PTO Control No. 90/006,956; PTO Control No. 90/006,957; PTO Control No. 90/006,984.

[139]  *See infra* Section V.F (regarding the settlement dynamics involving reexamination).

### E. The Estoppel Effect

For a challenger, the biggest drawback to *inter partes* reexamination is probably the estoppel effect. If a claim were found valid in reexamination, the requester cannot challenge in litigation the validity of that claim on grounds it raised or could have raised in reexamination.[140] Because there is little case law interpreting this clause, we foresee fact patterns that would allow creative counsel to make arguments (plausible or not) for and against estoppel. For example, suppose a defendant asserted invalidity based on anticipation and obviousness in an Answer to the Complaint, identified particular prior art references in early discovery, and then filed an *inter partes* request citing the same references. If reexamination confirmed the validity of the patent claims over these references, is the defendant estopped at trial from arguing invalidity based on these references? Also undefined by case law is the scope of the "could have raised" provision. If the defendant uncovered a prior art reference for the first time after reexamination is completed but before the start of trial, how does a court determine whether the defendant "could have raised" this reference in reexamination? Does the court look into how the defendant conducted a prior art search? And what is the implication of attorney-client privilege and work product immunity if the search is conducted by the defendant's attorneys?

These are significant issues, and the lack of case law certainly presents risk.[141] However, the advantages of *inter partes* reexamination, including the high success rate for a challenger and the ability to avoid a validity ruling from an unfavorable jurisdiction, may outweigh the risk.

Moreover, the loss of ability to challenge patent validity in litigation may not be a huge loss after all. In almost every patent litigation, the defendant must choose between two competing strategies: arguing for a narrow claim interpretation to avoid infringement, or arguing for a broad claim interpretation to invalidate the patent based on prior art. Seasoned patent litigators almost always prefer to focus on the noninfringement argument at trial, because, among other reasons, an argument of "we don't infringe" sounds more moral to a jury than an argument of "maybe we infringe but other people invented this first," and because juries give significant weight to the presumption of validity provided to patents issued by the PTO. Of course, a defendant does not want to surrender any arguments. Thus, it is often in the awkward position of emphasizing a narrow interpretation to avoid infringement, and yet retreating to a broad interpretation to argue for invalidity. At worst, the estoppel provision removes this dilemma and forces the defendant to commit to the noninfringement argument at trial (assuming there is a plausible noninfringement argument).

---

[140] *See supra* note 65.

[141] We do not express our opinions on these issues, for that would require another article.

### F. Other Factors

There are other factors that a challenger must take into account. For example, if the challenger locates a strong prior art reference, but the patent involves complex technology, the challenger may be better off asking a PTO examiner to compare the patent to the prior art. The examiner should understand the technology better than a judge or jury and may better appreciate the similarity between the prior art and the patent claims. The examiner may also better appreciate the inherent or implicit teachings of prior art references and the motivation to combine different references.

Another factor that favors filing an *inter partes* reexamination request is the ability to relate to an *ex parte* reexamination proceeding. Quite commonly, the asserted patent is a member of a patent family that includes an earlier filed parent patent and a later filed child patent with similar specifications and similar claims. Suppose the challenger is interested in invalidating the parent patent, but only *ex parte* reexamination is available for this patent because it was filed before November 29, 1999. In this case, the challenger may consider filing an *inter partes* reexamination request for the child patent, followed shortly by an *ex parte* reexamination request for the parent patent. With all reexaminations assigned to a small group of examiners at the Central Reexamination Unit, these two requests involving the same patent family may be assigned to the same examiner for the sake of efficiency.[142] Since the challenger can fully participate in the *inter partes* proceeding, the same examiner is less likely to be influenced by the patent owner's one-sided arguments in the *ex parte* proceeding.

If the challenger is interested in settling the lawsuit, it must consider the reexamination's effect on settlement negotiations. In litigation, one of the motivations for a plaintiff to settle is to prevent the defendant from challenging the patent's validity at trial. As long as the patent's validity is preserved, the plaintiff can use the patent to sue or license other parties. The dynamics are different in reexamination. Once a reexamination request is filed, the challenger cannot revoke it, and the PTO will examine the patent to the finish regardless of settlement status. Therefore, once the request is filed, the challenger's promise to stop participating in reexamination will have no settlement value for *ex parte* proceedings, and limited value for *inter partes* proceedings.[143] To maximize settlement value, the challenger may consider showing the patent owner a draft reexamination request and giving the patent owner a short time window to agree to a settlement before filing the request.

---

[142] MPEP § 2636 (2006). For example, *inter partes* proceedings 95/000,051 and 95/000,052 for related patents were assigned to the same examiner, and *inter partes* proceedings 95/000,093 and 95/000,094 for related patents were assigned to the same examiner.

[143] *See generally* Bronwyn H. Hall & Dietmar Harhoff, *Post-Grant Reviews in the U.S. Patent System—Design Choices and Expected Impact*, 19 BERKELEY TECH. L.J. 989, 1008–09 (2004).

The challenger's promise to withdraw from the *inter partes* process has some settlement value, because without the challenger, the patent owner can present one-sided arguments to influence the examiner. Without the challenger, the *inter partes* proceeding effectively resembles an *ex parte* proceeding, where the all-claims-cancellation rate is only 10%.[144] If the parties are still discussing settlement during an *inter partes* reexamination proceeding, the challenger must be aware that its promise to withdraw from reexamination has some settlement value, but this settlement value decreases as time goes by and the challenger continues making arguments to the PTO examiner.

## VI. Post-Grant Review Proposals

Our empirical study of *inter partes* reexamination allows a more informed evaluation of recent post-grant review proposals. Since 2003, the PTO,[145] the National Academy of Sciences (NAS),[146] and the Federal Trade Commission (FTC)[147] separately proposed expanded post-grant review procedures to supplement or replace *inter partes* reexamination.[148] These proposals recommend expanding the scope of reexamination to examine the issues of the public use and on-sale bars for prior products and whether the claims satisfy the written description and enablement requirements under 35 U.S.C. § 112.[149] The proposals recommend conducting the post-grant reviews in front of administrative law judges and permitting live testimony.[150]

While the PTO proposal reflects a desire to shift the work load from examiners to administrative law judges,[151] the NAS and FTC proposals are based on the

---

[144] *See* Morgan & Stoner, *supra* note 29, at 461.

[145] *See* United States Patent & Trademark Office, Post-Grant Review of Patent Claims, http://www.uspto.gov/web/offices/com/strat21/action/sr2.htm (as part of PTO's 21st Century Strategic Plan (2003), http://www.uspto.gov/web/offices/com/strat21/index.htm (last visited September 23, 2006)).

[146] *See* NATIONAL ACADEMY OF SCIENCES, A PATENT SYSTEM FOR THE 21ST CENTURY 82 (Stephen A. Merrill et al. eds., 2004), *available at* http://newton.nap.edu/html/patentsystem/0309089107.pdf.

[147] *See* FEDERAL TRADE COMMISSION, TO PROMOTE INNOVATION: THE PROPER BALANCE OF COMPETITION AND PATENT LAW AND POLICY (2003), http://www.ftc.gov/os/2003/10/innovationrpt.pdf.

[148] *See* Hall & Harboff, *supra* note 143, at 1000–02 (summarizing PTO, NAS & FTC proposals).

[149] *See* United States Patent & Trademark Office, *supra* note 145; NATIONAL ACADEMY OF SCIENCES, *supra* note 146, at 6; FEDERAL TRADE COMMISSION, *supra* note 147, at 8.

[150] *See supra* note 149.

[151] *See* United States Patent & Trademark Office (PTO), *supra* note 145 ("[T]he present proposal would eliminate *inter partes* reexamination entirely . . . . This should alleviate the burden on the examiners of having to examine complex and lengthy reexamination proceedings, and thus free examiners to examine applications and reduce pendency thereof since the post-grant review proceedings will occur at the Board and be handled by [Administrative Patent Judges].").

premise that *inter partes* reexamination is unfavorable to challengers.[152]  The NAS and FTC proposals, published in 2004 and 2003, commented that *inter partes* reexamination was rarely used by challengers and relied on the lack of use as an indication that the *inter partes* procedure was unfavorable to challengers.[153]

We believe that the low number of early *inter partes* requests more likely reflected a tendency to avoid the unknown—attorneys do not want to advise clients to try a brand-new procedure.  However, recent data shows that *inter partes* reexamination may be gaining popularity.  In 2005, fifty-nine *inter partes* reexamination requests were filed, more than all previous years combined.[154]  In the first six months of 2006, thirty-two *inter partes* requests have already been filed.[155]

As our empirical study suggests, *inter partes* reexamination provides a realistic chance of success for challengers.  It is more favorable to challengers than the post-grant review proposal drafters expected.  While the post-grant review proposals contain insightful suggestions such as using administrative law judges and expanding the scope of review, it appears that PTO examiners are having no difficulty rejecting claims based on printed prior art references in *inter partes* reexamination.  This fact should be taken into account if and when an expanded post-grant review is indeed implemented.

**VII. Conclusion**

Our empirical study shows the early promise of *inter partes* reexamination.  Although its time pendency needs to be shortened further, it has satisfied the congressional intent of providing a realistic and low-cost alternative to challenging a patent's validity in court.  For defendants who have discovered strong printed prior art, especially for those who have to defend in an unfavorable jurisdiction, *inter partes* reexamination may be a good alternative to challenging a patent's validity through litigation.  Even for large corporate defendants who can afford complex patent litigation, *inter partes* reexamination may be a suitable mechanism for challenging a patent's validity.

---

[152]  *See* NATIONAL ACADEMY OF SCIENCES, *supra* note 146; FEDERAL TRADE COMMISSION, *supra* note 147, at 22–23.

[153]  *See* NATIONAL ACADEMY OF SCIENCES, *supra* note 146; FEDERAL TRADE COMMISSION, *supra* note 147, at 27.

[154]  *See* United States Patent & Trademark Office, *supra* note 14, at 131.

[155]  *See* PTO Control Nos. 95/000,118–95/000,147, http://portal.uspto.gov/external/portal/pair (under "Select Search Method:" click "Control Number"; then enter PTO Control No. in the box beneath "Enter Number:" and click "Submit") (last visited May 24, 2006); PTO Control No. 95/000,150; PTO Control No. 95/000,152.

# APPENDIX
## *INTER PARTES* REEXAMINATIONS
## THAT REACHED FINAL OFFICE ACTION

| PTO Control Number | Outcome | Request filed | Right of appeal notice/notice of intent to issue certificate issued |
|---|---|---|---|
| 95/000,001 | all claims rejected, some on § 102 and others on § 103; certificate issued | 7/01 | 11/03 (right of appeal notice) 3/04 (certificate issued) |
| 95/000,002 | all claims rejected, some on § 102 and others on § 103; certificate issued (patentee did not respond to the last office action) | 12/01 | 2/05 (right of appeal notice) 7/05 (certificate issued) |
| 95/000,004 | all claims rejected, some on § 102 and others on § 103; certificate issued (patentee defaulted) | 6/02 | 12/02 (right of appeal notice) 9/03 (certificate issued) |
| 95/000,005 | all claims rejected on § 103 | 7/02 | 8/05 (right of appeal notice) |
| 95/000,006 | all claims rejected; some on § 102 and others on § 103; awaiting BPAI decision | 12/02 | 3/04 (right of appeal notice) |
| 95/000,008 | all claims rejected on § 103 | 12/02 | 9/05 (right of appeal notice) |
| 95/000,009 | all claims confirmed; awaiting BPAI decision | 1/03 | 7/03 (right of appeal notice) |
| 95/000,010 | all claims rejected on § 103 | 3/03 | 10/05 (right of appeal notice) |
| 95/000,012 | all claims confirmed | 5/03 | 2/06 (right of appeal notice) |
| 95/000,013 | some claims rejected, some on § 102 and others on § 103; other claims confirmed | 5/03 | 2/06 (right of appeal notice) |
| 95/000,015 | all claims rejected on § 103 | 5/03 | 9/05 (right of appeal notice) |
| 95/000,017 | some claims rejected on § 103; another claim confirmed | 5/03 | 9/05 (right of appeal notice) |
| 95/000,018 | all claims rejected, some on § 102 and others on § 103 | 5/03 | 5/05 (right of appeal notice) |
| 95/000,024 | some claims confirmed; some claims rejected, some on § 102 and one on § 103 | 7/03 | 10/05 (right of appeal notice) |
| 95/000,026 | all claims cancelled on § 103 | 9/03 | 9/05 (right of appeal notice) 4/06 (notice of intent) |
| 95/000,028 | all claims rejected, one on § 102 and others on § 103 | 11/03 | 11/05 (right of appeal notice) |
| 95/000,030 | all claims rejected, some on § 102 and others on § 103 | 12/03 | 9/05 (right of appeal notice) |
| 95/000,037 | all claims rejected on § 103 | 2/04 | 3/06 (notice of intent) |
| 95/000,038 | some claims rejected, some on § 102 and others on § 103; other claims confirmed | 2/04 | 4/06 (right of appeal notice) |
| 95/000,041 | all claims rejected, some on § 102 and others on § 103 (patentee defaulted) | 5/04 | 1/06 (notice of intent) |
| 95/000,043 | all claims rejected, some on § 102 and others on § 103 | 5/04 | 1/06 (right of appeal notice) |
| 95/000,045 | some claims rejected on § 102; another claim confirmed | 6/04 | 5/06 (right of appeal notice) |
| 95/000,047 | all claims confirmed (neither party responded to right of appeal notice) | 6/04 | 11/05 (right of appeal notice) 3/06 (notice of intent) |
| 95/000,064 | some claims rejected, some on § 102 and others on § 103; other claims confirmed | 12/04 | 4/06 (right of appeal notice) |
| 95/000,075 | all claims rejected (one on § 102 and others on § 103) | 2/05 | 2/06 (right of appeal notice) |
| 95/000,087 | all claims confirmed | 4/05 | 3/06 (right of appeal notice) |
| 95/000,095 | all claims rejected on § 103 (patentee defaulted) | 5/05 | 10/05 (notice of intent) |
| 95/000,097 | all claims confirmed | 6/05 | 2/06 (right of appeal notice) |
| 95/000,098 | some claims confirmed; other claims rejected on § 103 | 6/05 | 2/06 (right of appeal notice) |
| 95/000,103 | all claims confirmed | 8/05 | 2/06 (right of appeal notice) |

# EXHIBIT 19

# What's Really Happening in *Inter Partes* Reexamination[1]

*Joseph D. Cohen*[2]

## 1    Introduction

*Inter partes* reexamination has been with us for almost four years.[3]  During that time, we've had many comments on *inter partes* procedures.[4]  Some say that the *inter partes*

---

[1] Copyright ©2004, 2005 Joseph D. Cohen, Stoel Rives LLP.

This paper is based on the article first published in the March 2005 issue of the JOURNAL OF THE PATENT AND TRADEMARK OFFICE SOCIETY, 87 J. PAT. & TRADEMARK OFF. SOC'Y 207 (2005).

[2] Partner in the Patent Law Group of Stoel Rives LLP, Portland, Oregon.  My direct dial number is 503.294.9452, and my email is jdcohen@stoel.com.

[3] This depends on how you count:  from the effective date of the legislation, or from the first *inter partes* proceeding.

The *inter partes* reexamination legislation became effective November 29, 1999.  The procedure is part of the American Inventors Protection Act of 1999, which is part of the Intellectual Property and Communications Omnibus Reform Act of 1999, **Pub. L. No. 106-113, 113 Stat. 1501.**

You can request *inter partes* reexam only for patents issued on applications filed on or after the effective date of the Act.  *See, e.g.,* 37 C.F.R. § 1.913 (2004); MANUAL OF PATENT EXAMINING PROCEDURE (Rev. 2, May 2004) ("MPEP") §§ 2610-2611.  The PTO issued the first such design patent, D422,822 ("Toothbrush holder") April 18, 2000, and the first such utility patent, 6,062,457 ("Stapler") May 16, 2000.

It took another 1 1/2 years before the first *inter partes* reexamination proceeding.  On July 26, 2001, Lance G. Johnson of Roylance, Abrams, Berdo & Goodman, Washington, DC, delivered the first *inter partes* reexam request: 95/000,001.  The PTO assigned the request a July 27, 2001, filing date.  Examiner Rabon Sergent examined the case.

[4] *E.g.,* Kenneth L. Cage & Lawrence T. Cullen, *An Overview of Inter Partes Reexamination Procedures,* 85 J. PAT. & TRADEMARK OFF. SOC'Y 931 (2003); Robert E. Cannuscio, *Optional Inter Partes Reexamination:  A Practitioner's Perspective,* SF84 A.L.I.-A.B.A. 75 (2000); Natalie M. Derzko & John W. Behringer, *Inter Partes Reexamination Starting In 2003 – A Potentially Useful Approach To Challenging Invalid Biotechnology Patents,* 21 NATURE BIOTECH. 823-825 (2003)  Michael L. Goldman & Alice Y. Choi, *The New Optional Inter Partes Reexamination Procedure and Its Strategic Use,* 28 AIPLA Q.J. 307 (2000); Mark D. Janis, *Inter Partes Patent Reexamination,* 10 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 481 (2000); Lance G. Johnson, *Inter Partes Reexamination:  The USPTO Alternative to Patent Litigation,* SCITECH LAWYER, Fall 2004, at 12; Sherry M. Knowles *et al., Inter Partes Reexamination in the United States,* 86 J. PAT. & TRADEMARK OFF. SOC'Y 611 (2004); Frederick C. Williams, *Giving Inter Partes Patent Reexamination a Chance to Work,* 32 AIPLA

procedures are a recipe for disaster: "It would be legal malpractice to recommend a client initiate an inter partes reexamination."[5]  Others maintain that the recipe is superior: "[I]n view of the many advantages of inter partes reexamination, it is not hard to envision it becoming the dominant forum for patent validity disputes . . . ."[6]

Evaluations of *inter partes* reexam have been largely theoretical and based on the recipe itself—the statute and regulations.  But the proof of the pudding is in the eating.[7]  With the advent of publicly available Image File Wrappers ("IFWs"), we can more readily taste the pudding; we can see what's actually happening in *inter partes* reexam, and how well it matches up with the theory.

## 2    Key Features and Benchmarks of *Inter Partes* Reexamination

I won't review all the reexam statutes, rules, and procedures.[8]  But to understand the data I'm presenting, you need a basic understanding of key features and benchmarks of *inter partes* reexamination.

---

Q.J. 265 (2004); David L. Stewart, *Inter Partes Reexam—On Steroids*, 85 J. PAT. & TRADEMARK OFF. SOC'Y 656 (2003); M. Patricia Thayer *et al.*, *Inter Partes Reexamination*, PATENT WORLD May 2001, at 1 (available at http://www.hewm.com/use/articles/interpartes.pdf); Robert T. Pous & Charles L. Gholz, *Will Inter Partes Reexamination Be Embraced by Third Parties as an Alternative to Litigation?*, INTELLECTUAL PROPERTY TODAY, vol. 7, no. 3, March 2000, at 37; Frank A. DeLucia, Jr., *Recent Developments in Inter Partes Reexamination Practice*, http://www.fitzpatrickcella.com/images/pub_attachment/attachment177.pdf; Richard L. Kaiser, *Inter Partes Reexamination as an Offensive Strategy for Invalidating Patents*, http://www.mbf-law.com/pubs/articles/1121.cfm; V. Bryan Medlock, Jr. & Russell Cass, *Inter Partes Reexamination*, in 2000 Intellectual Property Owners Association Annual Meeting Speakers Materials (2000);   *see also, e.g.*, 4 Donald S. Chisum, CHISUM ON PATENTS § 11.07[4][g] (2004); Stephen G. Kunin & Anton W. Fetting, *The Metamorphosis of Inter Partes Reexamination*, 19 BERKELEY TECH. L.J. 971 (2004); Paul Morgan & Bruce Stoner, *Reexamination vs. Litigation—Making Intelligent Decisions in Challenging Patent Validity*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 441 (2004); Qin Shi, *Reexamination, Opposition, or Litigation? Legislative Efforts to Create a Post-Grant Patent Quality Control System*, 31 AIPLA Q.J. 433 (2003).

[5] Knowles *et al.*, *supra* note 4, at 614, 627; *see* Kunin & Fetting, *supra* note 4, at 978; Stewart, *supra* note 4, at 656.

[6] Goldman & Choi, *supra* note 4, at 333.

[7] Miguel de Cervantes Saavedra, DON QUIXOTE pt. ii, ch. xxiv, *quoted in* John Bartlett, FAMILIAR QUOTATIONS (10th ed. 1919).

[8] For the statute, rules, or procedures, go to the source: 35 U.S.C. §§ 311-18 (2002); 37 C.F.R. §§ 1.902-.997 (2004); MPEP chapter 26.  For a summary, check the articles listed in note 4 above.

### 2.1     Key Features

#### 2.1.1     Continuing Requester Participation

The identifying feature of *inter partes* reexamination is that it involves not merely the patent owner and the PTO. In contrast to *ex parte* reexam, a third-party requester participates throughout an *inter partes* case: the requester initiates the proceeding, the patent owner may respond to any office action, and the requester may comment on any response by the owner.[9] In *ex parte* reexam, a non-owner *ex parte* requester's participation ends before the first office action.

#### 2.1.2     Statutory Estoppel

Another key feature of the current *inter partes* procedure is estoppel. If the PTO orders reexam and finally determines that a claim is valid, you can't defend an infringement suit on that claim on grounds that you could have raised in the reexam.[10] Likewise, if there's a final decision against you (a) in civil litigation that you didn't sustained your burden of proof on invalidity, or (b) in *inter partes* reexamination that a claim is valid, you can't request *inter partes* reexam based on issues you could have raised in the earlier proceeding.[11] I mention estoppel only because the estoppel created in *inter partes* reexam may be the greatest deterrent to filing *inter partes* requests.[12] I have no data about estoppel.

### 2.2     Key Benchmarks

This article considers four benchmarks: Reexamination Order; First Action on the Merits; Right of Appeal Notice; Reexamination Certificate.

---

[9] 35 U.S.C. § 314(b)(2).

[10] *See* 35 U.S.C. § 315(c).

[11] *See* 35 U.S.C. § 317(b).

[12] *See, e.g.,* Goldman & Choi, *supra* note 4, at 326-29; *see also, e.g.,* USPTO, *Round Table Meeting: The Equities of Inter Partes Reexamination Proceedings* (Feb. 17, 2004), http://www.uspto.gov/web/offices/pac/dapp/opla/comments/reexamproceed/round_tbl_transcript.pdf (last visited Nov. 30, 2004) ("*Inter Partes Round Table*"), at 13 ("[B]ecause of the estoppel that arises should the third-party requester lose, inter partes reexamination always puts the requester at a significant legal disadvantage.") (remarks of Michele Cimbala, Sterne, Kessler, Goldstein & Fox); *id.* at 15-19 (remarks of Collin Webb, chair, ABA Subcommittee for Patent Reexamination and Opposition).

### 2.2.1   Reexamination Order

Based on the request,[13] an examiner decides whether to order reexamination and enters an appropriate order.[14]   The test is whether the request (with any additional patents and publications found by the examiner) raises "a substantial new question of patentability."[15]

### 2.2.2   First Action on the Merits

The second significant benchmark is the first office action on the merits.   Normally, the PTO issues a nonfinal decision on the validity of every claim of the patent.[16]

### 2.2.3   Right of Appeal Notice

The case proceeds iteratively with owner comments and amendments, requester comments,[17] and subsequent office actions until the examiner decides to issue the *inter partes* equivalent of a final action:   an Action Closing Prosecution.[18]   The owner has one more chance to comment and amend (and if the owner does so, the requester may comment).[19]   After considering owner and requester comments on the Action Closing Prosecution, the examiner

---

[13] The examiner may also perform a search and consider patents and publications that were not part of the request.   MPEP § 2644.   This is supported by the statute, 35 U.S.C. § 312(a) ("[T]he Director shall determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, *with or without consideration of other patents or printed publications*." (emphasis added)), but seemingly contradicted by the regulations.   *See* 37 C.F.R. § 1.923 ("[T]he examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent *is raised by the request and the prior art citation*." (emphasis added)).

[14] *See* 35 U.S.C. § 312(a).   The examiner normally uses form PTOL-2063, "Order Granting/Denying Request for *Inter Partes* Reexamination." *See* MPEP § 2646.

[15] 35 U.S.C. § 312(a).

[16] Even if the request asks for reexamination of a limited number of claims, the PTO reexamines every live claim.   MPEP § 2658(IV)(B).

[17] *See* 35 U.S.C. § 314(b); 37 C.F.R. §§ 1.945, 1.947.

[18] *See* 37 C.F.R. § 1.949.

[19] *See* 37 C.F.R. § 1.951.

normally issues a Right of Appeal Notice.[20]  This notice triggers the deadline to appeal to the Board of Patent Appeals and Interferences ("BPAI").[21]

### 2.2.4    Reexamination Certificate

At the end of the case—including any appeals—the PTO issues a Reexamination Certificate.[22]  Obviously, there are proceedings between the Right of Appeal Notice (if any) and the Reexamination Certificate.  But I won't discuss those proceedings, because there simply aren't enough appeals.

## 3    Theoretical Advantages

*Inter partes* reexamination has theoretical and/or perceived advantages (and disadvantages) for the requester.  Only a third party —and not the owner—may file an *inter partes* request.[23]  Because only the third-party requester can act on these advantages, I'll discuss them only from the requester's viewpoint.

### 3.1    Speed

One theoretical advantage is speed.  The statute requires the PTO to enter a Reexamination Order within three months after the request.[24]  This isn't an advantage over *ex parte* reexamination, which has the same statutory deadline.[25]  And, by itself, the speed of the reexamination order offers little advantage over litigation; the test for ordering reexamination— "a substantial new question of patentability"[26]—is so broad; a reexamination order by itself has little substantive import.[27]

_____

[20] *See* 37 C.F.R. § 1.953(a).  The examiner may instead choose to reopen prosecution. *See id.*

[21] *See* 37 C.F.R. § 1.953(c).

[22] *See* 35 U.S.C. § 316; 37 C.F.R. § 1.997.

[23] *See* 35 U.S.C. § 311(a) ("Any *third-party requester* at any time may file a request for inter partes reexamination . . . ." (emphasis added)).

[24] *See* 35 U.S.C. § 312(a); 37 C.F.R. § 1.923.

[25] *See* 35 U.S.C. § 303(a).

[26] 35 U.S.C. § 312(a).  The test for *ex parte* reexamination is identical.  *Compare id. with* 35 U.S.C. § 303(a); *see also* MPEP § 2642(I).

[27] *See* MPEP § 2642; *see also, e.g., Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("We take notice that the grant by the examiner of a request for reexamination is not probative of unpatentability.  The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (*i.e.*, that a

The statute allows the PTO to take an initial action on the merits—the second benchmark—with the reexamination order.[28]  (This contrasts with *ex parte* reexamination, where the owner may file a statement—and the requester may reply to the owner's statement—after the reexamination order and before the initial action on the merits.[29])  The *inter partes* regulations go further; they say that an action on the merits will "usually" accompany a reexam order.[30]

The statute also says that *inter partes* reexamination—like *ex parte* reexamination—must be conducted with "special dispatch."[31]  Some people cite this as an advantage of *inter partes* reexam.[32]  Neither the statute nor regulations define "special dispatch."[33]  One notable feature of

---

'substantial new question of patentability' has been raised, 35 U.S.C. § 303), does not establish a likelihood of patent invalidity.").

[28] 35 U.S.C. § 313.

[29] *See* 35 U.S.C. § 304; 37 C.F.R. §§ 1.525-.535 (2004); *see also* 37 C.F.R. § 1.939(b) ("Unless otherwise authorized, no paper shall be filed prior to the initial Office action on the merits of the *inter partes* reexamination.").

[30] *See* 37 C.F.R. § 1.935 ("The order for *inter partes* reexamination will usually be accompanied by the initial Office action on the merits of the reexamination.").

[31] *See* 35 U.S.C. § 314(c) (*inter partes*); 35 U.S.C. § 305 (*ex parte*).

[32] *See, e.g.,* Johnson, *supra* note 4, at 13:

> **Fast.** The entire reexamination process is expedited and treated with "Special Dispatch": two months for the examiner to decide whether to proceed (one month if in litigation), two months for the Patentee to respond, and 30 days for Requester rebuttal comments. There are no extensions of time other than for "sufficient cause" and these are by no means automatically granted.

[33] *But cf. Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426 (Fed. Cir. 1988):

> "Special dispatch" is not defined in the statute. . . . According to *Webster's New World Dictionary,* special means distinctive, unique, exceptional, or extraordinary, and dispatch means to finish quickly or promptly. Consequently, the ordinary, contemporary, and common meaning of special dispatch envisions some type of unique, extraordinary, or accelerated movement. In fact, the PTO itself has interpreted special dispatch to require that "reexamination proceedings will be 'special' throughout their pendency" in the office, and provides for an accelerated schedule. MPEP § 2261. Whatever else special dispatch means, it does not admit of an indefinite suspension of reexamination proceedings pending conclusion of litigation.

"special dispatch" is limits on extensions for the parties:  the owner may get a time extension only for good cause shown,[34] and the requester cannot get an extension.[35]

### 3.2    Cost

Another cited advantage of *inter partes* reexamination over litigation is cost.  One estimate is "less than $50,000 before experts in the technology and the law" and "3-10 percent of what a judicial proceeding costs."[36]

### 3.3    Greater Likelihood of Favorable Result for Requester

The most important advantage of *inter partes* reexam would be a better outcome than in other proceedings.  I haven't found an author who explicitly says that you're more likely to get better results in *inter partes* reexam.  But this is implicit in articles that recommend the procedure.[37]

## 4    What's Actually Happening?

The PTO recently made IFWs available on the Internet.[38]  Although publicly available IFWs are far from perfect,[39] they are a relatively easy way to see the details of *inter partes*

---

[34] 37 C.F.R. § 1.956.

[35] The requester's deadlines are fixed by statute.  35 U.S.C. § 314(b)(3); *see* MPEP § 2647.01 ("Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute.").

[36] Johnson, *supra* note 4, at 14.

[37] *E.g.,* Goldman & Choi, *supra* note 4, at 323-24 ("By removing the participation hurdle, inter partes reexamination is not merely a proceeding that is neutral to the parties, but rather it may decidedly benefit the patent challenger.").

[38] IFWs became available via Public PAIR around August 1, 2004.  *See, e.g.,* USPTO Press Release No. 04-13, "Internet Access to Patent Application Files Now Available" (Aug. 2, 2004), http://www.uspto.gov/web/offices/com/speeches/04-13.htm.

[39] The IFWs suffer from a host of problems including:  documents not yet scanned, missing documents, double scanning, and incorrect indexing.  *See also Inter Partes Round Table, supra* note 12, at 55 ("[A]s they get scanned in, the lowest GS-minus whatever level is scanning them in, and the papers get lost and skewed and filed.  We can check on the [PAIR] sites and find cases which are every which way but loose with half the papers filed in the last year not there, and no response in over a year on some of the most important reexams that we've seen.") (remarks of Harold C. Wegner, Foley & Lardner).

For a longer review of some problems with IFWs, see the article in the November 2004 newsletter of the PTO professional employees' union, "POPA Proposes Much-Needed IFW

reexams.[40] The data in this article are based on my review of IFWs available in Public PAIR through July 1, 2005.

I have been reviewing all available IFWs for *inter partes* cases. I generally look at each filing in the Public PAIR IFW[41] and at the original patent claims. I note (among other things): the claims for which reexam was requested, how long it took to issue the reexam order, whether the PTO issued an action on the merits with the reexam order, how the examiner ruled on the claims, and how far the case progressed. I also reviewed the PAIR "Transaction History." If there is a concurrent PTO proceeding (such as an *ex parte* request), I look at any available IFW for the concurrent proceeding. If there is concurrent litigation, I at least look at the electronic docket for that litigation.

Here's what I have found, based on the 100 *inter partes* requests filed so far:

## 4.1    Speed

*Inter partes* reexamination generally moves quickly to the earliest benchmarks—the Reexamination Order and the First Office Action. But later activity can be relatively slow.

### 4.1.1    Reexamination Order

So far, the PTO has been timely in meeting the three-month statutory deadline for the Reexamination Order.[42] Of the 100 requests filed so far, 85 are older than three months. In 2 cases, the PTO vacated the proceeding for procedural reasons before deciding whether to allow reexamination.[43] In the remaining 83, the PTO entered a Reexamination Order in a timely fashion. It typically takes about 80 days from request to the Reexamination Order.

---

Changes," POPA Newsletter, Nov. 2004, Vol. 4, No. 7, *available at* http://www.popa.org/newsletters/nov04.shtml.

[40] Before the PTO made IFWs publicly available, you could track the details of PTO proceedings only by ordering the file wrappers from the PTO or another source. You also could easily track the *contents* of a wrapper via the PAIR "Transaction History". *See, e.g.,* Johnson, *supra* note 4, at 13 (listing status of 20 reexams). But the contents often reveal next to nothing. For instance, the fact that there's an office action doesn't reveal whether the claims were rejected or confirmed. *See id.*

[41] Some papers in the IFW are not available via Public PAIR.

[42] There's one possible exception. The request in 95/000,067 was filed December 20, 2004, making the Reexamination Order due March 20, 2005 – a Sunday. The Public PAIR Transition History page shows the Order mailing date as Monday, March 21. But the Order itself, as well as the Public PAIR Image File Wrapper Page, show the mailing date as Tuesday, March 22. The MPEP says that when the 3-month period ends on a weekend or holiday, the order "must be mailed by the *preceding* business day." MPEP § 2641 (emphasis in original).

[43] In 95/000,011, the request was incomplete. In 95/000,019, the requester was estopped.

| time to reexam order | days |
|---|---|
| mean | 76 |
| median | 79 |
| maximum | 92 |
| minimum | 43 |

### 4.1.2    First Action on the Merits

The PTO has made good on its intent that an action on the merits "usually" accompany the Reexamination Order.  Indeed, of the 86 orders granting reexamination, 67 have been accompanied by an Action on the Merits.  In the remaining 19 cases, the Action on the Merits followed soon after the Reexamination Order, or there's usually an obvious (and good) reason why there was no simultaneous Action on the Merits.[44]

Getting a ruling on the merits – even an interim one – within three months is an advantage of *inter partes* reexam.  In contrast, after an *ex parte* reexam order the PTO must wait for (1) any owner's statement on the reexam order, and (2) any response to such a statement from the third-party requester.  Only then does the examiner rule on patentability.

The first *inter partes* office action does not merely give a ruling; it gives a reasoned response to each of the requester's invalidity arguments, and a reason for any new grounds of rejection.[45]  So far, the Office Actions on the merits have been long, thorough documents – much

---

[44] Here are some examples:

In 95/000,005, when the PTO ordered *inter partes* reexamination, there was a pending *ex parte* request (filed by a different third-party requester) awaiting an owner's statement and requester's response.

In 95/000,020, there is a pending Director-ordered *ex parte* reexamination.  The PTO decided to merge the proceedings.  Furthermore, the patent in reexamination has 665 claims.

In 95/000,025, a reissue application was pending when reexamination was ordered.  Instead of wasting time ruling on the merits of the original patent, the PTO ordered the reexam to proceed on the basis of the reissued claims.

In 95/000,031, the PTO said that the originally filed request papers lacked a detailed explanation why some of the claims were invalid.  The requester filed additional papers, and the PTO entered an action on the merits less than two months after the reexam order.

In 95/000,053, when the PTO ordered *inter partes* reexamination, there was a pending *ex parte* request (filed by the owner) awaiting an owner's statement and requester's response.

[45] See MPEP § 2660(III).

longer than the samples in the MPEP.[46]  You're unlikely to convince the examiner to change his mind about these decisions.

No patent owner has yet succeeded in changing an examiner's mind about a rejection.[47] Thus, in all the other *inter partes* with a second office action, the examiner has not had a change of heart from the position taken in the first action.  Thus the first action on the merits is a guide to the viability of the original claims.  It therefore also is a speedy and excellent predictor whether the requester will have mandatory intervening rights.

### 4.1.3    Later Benchmarks

In the 86 cases in which it ordered *inter partes* reexamination, the PTO has issued only 17 Actions Closing Prosecution which were not withdrawn and 3 Right of Appeal Notices.  The parties have appealed only 2 case to the BPAI, which hasn't ruled on either appeal.  The PTO has issued only 2 Reexamination Certificates; in those cases there was no appeal to the BPAI.  No case has made it as far as the Federal Circuit.

From this data, it's apparent that *inter partes* cases move more slowly after the initial office action, and that it may take years for the examiner to issue a final order.[48]  The time to a final order is longer than in *ex parte* reexamination.[49]  Indeed, in the time that the PTO (*i.e.,* both the examiner and BPAI) takes to reach a result on an *inter partes* reexamination, some courts could reach a judgment on the merits.[50]

### 4.2    Cost

The IFWs say nothing explicit about costs.  *Inter partes* reexam is doubtless less expensive than litigation.  One author says:

---

[46] *See* MPEP § 2660(IV).

[47] In 95/000,003, the examiner changed her mind in favor of the requester.  The initial Office Action confirmed 23 claims.  But a later Office Action rejected all live claims, including all the ones previously confirmed.  This is the only examiner change of position I've noticed.

[48] USPTO Director Jon Dudas recently laid out a plan for speeding up both *ex parte* and *inter partes* reexamination.  This plan includes establishing "firm processing time periods for all reexamination proceedings ordered (after the Office order for reexamination) on or after October 1, 2005, for both *ex parte* and *inter partes* reexamination proceedings."  Statement Of Jon W. Dudas Before The Subcommittee On Intellectual Property Committee On The Judiciary United States Senate, at 7 (Apr. 21, 2005) (available as http://www.uspto.gov/web/offices/com/speeches /2005apr21.pdf; last visited June 14, 2005).

[49] The average pendency of *ex parte* reexams (filing date to reexamination certificate) is 21.6 months and the median is 16.9 months.  USPTO, "*Ex Parte* Reexamination Filing Data – March 31, 2005" ¶ 7.

[50] Of course, there won't be an appeal in every appealable reexam.

*Inter partes* reexamination through the USPTO can address the issue of patentability, including the enhanced filing fee, for less than $50,000 before experts in the technology and the law. The 2001 AIPLA survey notes a median cost of patent infringement litigation in Texas to be $500,000 (less than $1 million at risk) and $1.5 million ($1-$25 million at risk). *Inter partes* reexamination costs 3-10 percent of what a judicial proceeding costs.[51]

Because that author prosecuted an *inter partes* reexamination to completion,[52] his comments are a good starting point for a cost estimate. In that reexam, the Request for Reexamination was only five pages long and included neither claim charts nor expert declarations. The patent owner disclaimed half of the patent before the reexamination order was entered.[53] The owner also abandoned its efforts after the second office action[54] (and, obviously, there was no appeal to the BPAI). So if the $50,000 estimate is based on the fees in this reexam, consider increasing the upper end of an estimate to account for a longer, more involved proceeding; a less compromising opponent; a more complex patent; a more important patent;

---

[51] Johnson, *supra* note 4, at 14.

[52] 95/000,001.

[53] The patent had 39 claims. The owner disclaimed 17 of them after the request was filed but before the PTO ordered reexamination.

[54] The second office action rejected amended claims filed by the owner. The owner didn't respond.

etc.[55] For instance, another lawyer suggests that at least $150,000 to $200,000 is a reasonable cost for a major reexam of a "company-buster" patent.[56]

Consider, for instance, the *inter partes* request in 95/000,053. This request is 79 pages long and cites 121 prior art references. The requester is a defendant in infringement litigation and also filed two other *inter partes* requests of similar complexity for two related patents.[57] And there are pending *ex parte* reexaminations filed by the owner.[58]

### 4.3    Results

There are at least preliminary results on validity in at least 83 *inter partes* cases. We can review those actual results. We can also compare them to historical *ex parte* data to get some feeling for which procedure works better for the requester.[59]

---

[55] Also note that a different (and probably earlier) version of Mr. Johnson's article uses slightly different language to discuss costs. *See* Lance G. Johnson, *United States: Inter Partes Reexamination: The USPTO Alternative to Patent Litigation* (Sept. 30, 2003), *at* http://www.mondaq.com/article.asp?article_id=22747 (last accessed Nov. 30, 2004); *see also* Lance G. Johnson, *Reexamination as a Limited Alternative to Litigation*, IP LITIGATOR Jan./Feb. 2005 at 19, for the latest version of this article.

Here is a marked-up comparison showing the differences between the first and second versions of this article:

> *Inter partes* reexamination <u>through the USPTO can address the issue of patentability, including the enhanced filing fee,</u> [should cost no more than] <u>for less than</u> $50,000 <u>before experts in technology and the law.</u> The 2001 AIPLA survey notes a median cost of patent infringement litigation <u>in Texas</u> to be [between $502,000] <u>$500,000</u> (less than $1 million at risk) and [$3.495 million (more than $25 million at risk)] <u>$1.5 million ($1-$25 million at risk).</u> *Inter partes* reexamination costs [much less than a judicial proceeding] <u>3-10 percent of what a judicial proceeding costs.</u>

[56] *Inter Partes Round Table*, *supra* note 12, at 95 ("[W]e did a major ex parte reexamination for a client a couple of years ago, and this brings me to comment on how authoritative your prior art search would have to be. When an opposing patent is potentially a company buster, you have to go all out, and $150,000 to $200,000 of expense for an ex parte or inter partes reexamination is—it makes people wince, but it's not a company buster.") (remarks of Frederick C. Williams, Burns & Levinson).

[57] 95/000,057 and 95/000,058.

[58] 90/007,169, 90/007,170, and 90/007,171.

[59] There are weaknesses in these comparisons, including: the *inter partes* data is interim, whereas the *ex parte* data is final; the *ex parte* data is older than the *inter partes* data; the number of *inter partes* cases is orders of magnitude smaller than the number of *ex parte* cases; a

How many requests are denied?  From the start of *ex parte* reexam through March 2005, the PTO denied 9% of *ex parte* requests.[60]  In recent years the denial rate has been lower.  More recently, the PTO rejected about 4% of *ex parte* requests.[61]  The reason for rejection typically is lack of a substantial question of patentability.

So far, the *inter partes* Reexamination Orders have found a substantial new question of patentability and ordered reexamination in all but 2 cases.[62]  In those cases, the examiner did not compare the patent to the references.[63]  The numbers look like this:

| | | |
|---|---|---|
| Total Reexam Orders | 88 | 100% |
| Orders Granting Reexam | 86 | 98% |
| Orders Denying Reexam | 2 | 2% |

What happens on the merits?  In *inter partes* proceedings in which there's been an action on the merits, the PTO has allowed all the claims in 1 case – 2% of the cases in which it has issued an office action.  The PTO has so far rejected all claims in 71% of the cases in which there's been an office action.  In the remaining 29% of *inter partes* cases, there have been some claim changes–either new or amended claims.  This table shows this data and compares it to *ex parte* data:[64]

| | *inter partes* (interim) | *ex parte* (certificate) |
|---|---|---|
| all claims confirmed | 1% | 26% |
| all claims rejected / cancelled | 71% | 10% |
| some claim changes | 28% | 64% |

---

substantial number of *ex parte* requests are filed by owners; and each case is different, so comparing numbers may not be valid.

[60] *See*, USPTO, "*Ex Parte* Reexamination Filing Data – March 31, 2005" ¶ 5.b; *see also, e.g.,* FY 1999 USPTO ANNUAL REPORT ("CENTURY OF AMERICAN INNOVATION"), Table 13;

[61] *See* USPTO, 2003 PERFORMANCE AND ACCOUNTABILITY REPORT 119 Table 13A (about 4% of *ex parte* requests denied).  This data covers FY1999 to FY2003.  In earlier years, the PTO denied 5-10% of *ex parte* requests.

[62] The PTO also vacated two *inter partes* requests for procedural reasons.  *See* note 43 above.

[63] The cases denying reexam were companion cases, 95/000,082 and 95/000,08.  The same requester asked for reexamination of two closely related patents of the same inventor.  The same examiner ruled that the requester's references were not prior art.

[64] The *inter partes* data is from the 76 cases with an action on the merits.  The *ex parte* data is for issued reexamination certificates and is from USPTO, "*Ex Parte* Reexamination Filing Data -- March 31, 2005" ¶ 8.

Based on the first two rows, *inter partes* reexamination is, in fact, much more favorable to the third-party requester.

The information in the last row is almost useless. When the Reexamination Certificate includes some claims, the critical questions are whether (1) the issued claims cover the requester's product(s), and (2) the requester acquired intervening rights.[65] This depends on *which* claims issue. If the PTO confirms any claim (including a new or amended claim) that covers the requester's product, the requester's future path may be cut off. On the other hand, if the PTO cancels all *original* claims covering the requester's product, the requester will avoid back damages.

There's no easy way to compare all confirmed claims to the requester's product(s). Indeed, the IFW rarely reveals the requester's products. But we can make an educated guess about intervening rights: if the PTO rejects all the claims for which reexam was requested, then the requester will get intervening rights. The next table shows what is happening to the claims for which *inter partes* reexam was requested ("requested claims"). Unfortunately, nobody has yet compiled similar data for *ex parte* cases:

|  | *inter partes* (interim) |
|---|---|
| some requested claims confirmed | 16% |
| all requested claims rejected | 84% |

So *inter partes* requesters likely have gained at least intervening rights at least 84% of the time. It's hard to tell anything about most of the remaining cases—the requester may have asked for reexam of more claims than needed to obtain intervening rights.[66]

### 4.4    Popularity

I've seen contrasting statements about the actual or projected popularity of *inter partes* reexam—for instance, on the one hand that it will be "dominant"[67] or, on the other that it's hundreds of times less popular than *ex parte* reexamination.[68] At this moment, the truth is in between.

---

[65] Also in some cases, the requester could theoretically convince a court to grant equitable intervening rights. *See* 35 U.S.C. §§ 307(b), 252 (1999).

[66] But we can certainly say that the requester is striking out in the one case in which all claims were confirmed, 95/000,009. This is one of the cases now before the BPAI.

[67] Goldman & Choi, *supra* note 4, at 333 ("[I]n view of the many advantages of inter partes reexamination, it is not hard to envision it becoming the dominant forum for patent validity disputes . . . .").

[68] *See* Knowles *et al.*, *supra* note 4, at 614 ("In the years following its inception, less than forty only three [*sic*] requests for *inter partes* reexaminations were have been filed, as compared to hundreds of requests for *ex parte* reexaminations received each year.").

Only 100 *inter partes* requests have been filed in the four years from the first request. So *inter partes* reexam isn't dominant.

*Ex parte* requests do outnumber *inter partes* requests by one to two orders of magnitude (something like 15:1). But don't make the mistake of concluding that third parties choose *ex parte* reexam by a similar ratio. *Inter partes* reexam is not an option for most requesters: (1) many *ex parte* requesters are patent owners[69] (*inter partes* reexam is not an option for owners), and (2) so far, the vast majority of patents in *ex parte* requests issued from applications filed before November 29, 1999, so *inter partes* reexam is not an option for those requesters.[70]

It would be more useful to know how often requesters pick *inter partes* reexamination when they actually have a choice. To get a handle on this, I looked at the *ex parte* requests in the Electronic Official Gazettes from July 6 though November 30, 2004. These Gazettes covered requests filed May 21 through October 21, 2004. I identified and counted the requests that were eligible to be filed *inter partes*—*i.e.,* the requests filed by third parties on patents that issued from applications filed on or after November 29, 1999. Here's what I found, and how it compares to *inter partes* requests filed in the same period:

| May 21 – Oct. 21, 2004 | ex parte | inter partes | total |
|---|---|---|---|
| requests filed | 210 | 14 | 224 |
| % of requests filed | 94% | 6% | 100% |
| *inter partes* eligible requests filed | 33 | 14 | 47 |
| % of *inter partes* eligible requests | 70% | 30% | 100% |

So if this data is a fair sample, requesters who have a choice currently choose *ex parte* over *inter partes* reexam by a ratio of 2.3:1. *Ex parte* is still the procedure of choice, but not by an order of magnitude. Also, the pace of *inter partes* requests is gradually increasing, as shown by this table:

---

[69] From the inception of reexam through FY2003, patent owners filed 43% of *ex parte* requests. *See* USPTO, "Reexamination Filing Data—September 30, 1995" at 1, ¶ 1 (data from inception through FY1995); USPTO, 1998 Annual Report, Table 13 (FY1996-FY1998); USPTO, 2003 PERFORMANCE AND ACCOUNTABILITY REPORT, 119, Table 13A (1999-2003).

[70] *See Inter Partes Round Table, supra* note 12, at 92-93 ("I did a really back-of-the-envelope calculation of how many patents are subject to inter partes reexamination in comparison to how many patents are actually in force at the current time, with some very gross assumptions, and I came out with a figure like 6.25 percent. This leads to a ratio of patents available for [*inter partes*] reexamination to patents in force of something like a factor of 16. If you look at the numbers cited in the notes that were handed out to us, the ratio between ex parte reexamination requests during the time period cited and inter partes reexamination requests during the same time period is approximately 9 or 10 to one.") (remarks of Frederick C. Williams, Burns & Levinson).

| period | new *inter partes* requests |
|--------|------------------------------|
| 07/01/01-06/30/02 | 4 |
| 07/01/02-06/30/03 | 18 |
| 07/01/03-06/30/04 | 26 |
| 07/01/04-06/30/05 | 52 |

## 5    Conclusions

Review of the records in *inter partes* reexaminations shows that within three months, the PTO will actually rule on the reexamination request and – in almost all cases – issue an action on the merits. After the first office action, no patent owner has yet convinced an examiner to change his mind about how prior art applies to the original claims. After the first office action, the case likely will proceed more slowly than an *ex parte* reexam, and possibly as slow as infringement litigation in faster districts. Thus *inter partes* reexam is best suited (compared to litigation and to *ex parte* reexam) to requesters who need a fast interim result and are willing to live with lack of finality for years.

So far, requesters have achieved good results in *inter partes* reexamination. Even given the difficulty of comparing interim *inter partes* results to old, final *ex parte* data, third-party requesters are doing significantly better in *inter partes* cases than in *ex parte* cases. *Inter partes* requesters likely will gain mandatory intervening rights in about three-quarters of the cases. Thus third parties who decide to seek reexamination are significantly more likely to do better by filing *inter partes* as opposed to *ex parte*.

## 6    Data

Based on IFWs available through PAIR as of July 1, 2005.

| | | | |
|---|---|---|---|
| Filed *inter partes* requests | 100 | | |
| Number of requests at least 3 months old | 85 | | |
| Number of proceedings vacated prior to reexam order | 2 | 2% | of requests |
| Number of requests at least 3 months old, not vacated | 83 | | |
| Reexamination Orders | 88 | | |
| Reexam Orders within 3 months of filing date | 88 | | |
| Mean days to Reexamination Order | 76 | | |
| Median days to Reexamination Order | 79 | | |
| Minimum days to Reexamination Order | 43 | | |
| Maximum days to Reexamination Order | 92 | | |
| Orders Denying Reexamination | 2 | 2% | of reexam orders |
| Orders Granting Reexamination | 86 | 98% | of reexam orders |
| Reexam Orders accompanied by action on the merits | 67 | 78% | of orders granting reexam |
| Reexam Orders *not* accompanied by action on merits | 19 | 12% | of orders granting reexam |
| Cases with at least one action on merits | 76 | | |
| Cases with Action Closing Prosecution | 17 | | |
| Right of Appeal Notices | 3 | | |

| | | | |
|---|---|---|---|
| Appeals to BPAI | 2 | | |
| BPAI decisions | 0 | | |
| Appeals to Federal Circuit | 0 | | |
| Reexamination Certificates | 2 | | |
| Cases rejecting (so far) all claims | 54 | 71% | of cases with actions |
| Cases rejecting (so far) all original claims | 55 | 72% | of cases with actions |
| Cases rejecting (so far) all claims for which reexam was requested | 64 | 84% | of cases with actions |
| Cases allowing (so far) at least some claims for which reexam was requested | 12 | 16% | of cases with actions |
| Cases allowing (so far) some claims | 21 | 28% | of cases with actions |
| Cases allowing (so far) all claims | 1 | 1% | of cases with actions |
| Cases allowing (so far) some or all claims | 22 | 29% | of cases with actions |

# EXHIBIT 20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| MICROUNITY SYSTEMS ENGINEERING, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-04-CV-120 (TJW) |
| | § | |
| DELL, INC. AND INTEL CORP., | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Intel and Dell moved for a stay of the present litigation pending the results of *inter partes* reexamination before the UPSTO of certain patents-in-suit. For reasons more fully described below, the Court denies Defendants request for a stay of the litigation.

**I.    Introduction**

This present dispute was filed on March 26, 2004 wherein MicroUnity asserted eight patents against Dell and Intel. On November 9, 2004, this Court entered its Scheduling Order setting the trial date for November 7, 2005.

Defendants filed, on April 15, 2005, a request for *inter partes* reexamination with the USPTO for one of the eight patents-in-suit. Not long thereafter, Defendants filed additional requests for reexamination (both *inter partes* and *ex parte*) for the remaining seven patents-in-suit. As of July 22, 2005, the USPTO had agreed to reexamine six of the eight patents-in-suit.

**II.    This Court has the Power to Grant a Stay.**

This Court has broad discretionary powers that include the power to stay proceedings. *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In determining whether to

grant a stay, courts generally consider: (1) whether a stay would unduly prejudice or present a clear

tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question

and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*See Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471 (S.D.N.Y., Aug. 10,

2000); *see also Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340, *1 (D. Del., Jan. 29, 2001).

Plaintiff has asserted that Section 318 of the Patent Act limits this Court's ability to grant a

stay in these proceedings, essentially arguing that Section 318 provides that *only* a plaintiff may

request a stay pending *inter partes* reexamination. The Court disagrees with Plaintiff's interpretation

of the Patent Act.

35 U.S.C. § 318 does not limit or otherwise change this Court's ability to grant a stay

requested by a defendant. Instead, 35 U.S.C. § 318 provides that a patent owner has a lower standard

to meet in order to obtain a stay pending *inter partes* reexamination than would a defendant. Rather

than requiring that the patent owner establish the factors set out above for granting a stay, Section

318 of the Patent Act provides that a plaintiff is ***entitled*** to a stay pending *inter partes* reexamination

"unless the court before which such litigation is pending determines that a stay would not serve the

interests of justice." *See* 35 U.S.C. § 318. Thus, Section 318 of the Patent Act does not absolve or

otherwise change this Court's discretionary powers to grant a stay to a defendant, but instead

provides a patent owner with a greater ability to obtain a stay if one is requested.[1] Thus, when

requested by a defendant, this Court's analysis of whether to grant a stay pending *inter partes*

---

[1] Under this construction of the statute, if a true question of invalidity arises, Section 318 would provide a patent owner the ability to obtain a stay to try and amend its claims rather than face the option of having a jury decide whether certain claims are, or are not, valid, without an opportunity to amend. In short, Section 318 provides an outlet whereby a patent owner has the opportunity to try and save an otherwise invalid patent.

reexamination is treated similarly to a request for a stay based on an *ex parte* reexam.

**III.    Analysis Regarding Whether to Grant the Stay.**

As shown above, the request for a stay in this case will be treated similarly to that of a request for a stay pending *ex parte* reexam. This Court will therefore examine various factors to determine whether it should exercise its discretionary powers in this case.

Overall, the Court believes that the factors weigh against granting a stay in this case. First, the parties are well into the discovery process and trial is less than three months away. Intel and Dell have combined to produce approximately 3,000,000 pages of documents (and more than 10,000,000 pages of code) and MicroUnity has produced an additional 400,000 pages of documents. All three parties have responded to written discovery and have taken numerous depositions.

At the time the issue was raised, the parties had filed claim construction briefs, produced technology tutorials, deposed claim construction experts, and completed discovery related to claim construction. In short, while there is certainly some discovery issues outstanding and the parties may still assert dispositive motions, this case is in an advanced stage of discovery.

Second, Defendants did not file the first request for *inter partes* reexamination until April 15, 2005 - or more than one year after this case was filed. Defendants assert that their failure to file the reexam earlier was because they had not yet received MicroUnity's claim construction positions. The Court finds this argument unpersuasive.

While Defendants were not in possession of MicroUnity's claim construction brief until April 11, 2005, Defendants were in possession of MicroUnity's infringement contentions as early as December of 2004. Even more importantly, Defendants completed and served their invalidity contentions in January of 2005. This Court believes that infringement and invalidity contentions put

a defendant on notice as to the general scope (albeit not specific definitions) of plaintiff's claim construction positions that would provide a reasonable basis for filing a request for *inter partes* reexamination. If Defendants had filed requests for reexamination in January or early February of 2005, this Court's decision might be different as this would have rebutted any suggestion of delay and would have raised the stay issue before large amounts of discovery and a *Markman* hearing had been imminent. Instead, Defendants waited until mid-April to file their first request for reexam and did not complete all of their requests as to all of the patents-in-suit until June of 2005.[2]

Finally, the Court is persuaded that a stay pending reexamination would unduly prejudice MicroUnity. Due to the inherent delay in reexamination proceedings, the opportunities for numerous appeals, and the apparent conflict between the parties, it appears likely that if a stay were granted, it could take more than four to five years before this case would be back before this Court.

The volume of discovery produced in this case, the advanced stage of the proceedings, the timing of Defendants' requests, and the inherent lengthy delay associated with reexaminations provide ample basis for denying Defendants' request.[3]

---

[2] Moreover, the Court notes that as of July 22, 2005, there are still two patents-in-suit that the USPTO has not yet agreed to reexam.

[3] The Court is mindful that based on the early Office Actions issued by the USPTO in the reexams, it is possible that some claims will eventually have different language than what is set out in the claims as they exist today. The possibility of new or different claims could result in additional litigation between the parties. This factor, while certainly weighing in favor of granting the stay, does not provide a strong enough basis for this Court to exercise its discretionary powers to grant the stay.

Page 4

SIGNED this 15th day of August, 2005.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARTHROCARE CORPORATION,           )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     C.A. No. 01-504-SLR
                                  )
SMITH & NEPHEW, INC.,             )
                                  )
          Defendant.              )

MEMORANDUM ORDER

At Wilmington this 27th day of November, 2002, having reviewed the papers submitted by the parties in connection with various motions filed by defendant;

IT IS ORDERED that defendant's motion to stay pending reexamination (D.I. 187) is denied, for the reasons that follow:

1. The United States Court of Appeals for the Federal Circuit recognizes that "[c]ourts have inherent power to manage their dockets and stay proceedings . . ., including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). Courts clearly have the authority to order their cases to trial.

2. The Federal Circuit also has recognized that patent litigation in a district court and reexamination proceedings

before the PTO do not implicate a "precise duplication of effort" because "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." Id. at 1427.

3. Given the court's view that its primary purpose is to manage litigation in an expeditious manner in order to create an appropriate record (through motion practice or trial) for review by the Federal Circuit, the court generally will not stay its cases pending reexamination proceedings absent extraordinary circumstances. In this case, where only one of the three patents is undergoing reexamination, where the patents at issue relate to an evolving and highly competitive market, and where the reexamination proceedings to date have not been conducted with what the court would consider "special dispatch", the court declines to find this an exceptional case warranting a stay. The court understands that, prior to trial, the PTO may issue rulings that will need to be considered, thus causing some inefficiencies in the pretrial and trial process. Nevertheless, the court concludes that such inefficiencies are an inherent byproduct of concurrent litigation and reexamination and, therefore, do not constitute exceptional circumstances justifying a stay of the litigation at bar.

IT IS FURTHER ORDERED that defendant's motion to bifurcate willfulness and damages and to stay discovery (D.I. 107) is granted.  Discovery on the issues of willfulness and damages will be stayed until after the verdict on infringement and invalidity has been returned; these issues will be tried to a new jury.

IT IS FURTHER ORDERED that defendant's claim of privilege pertaining to redactions in certain documents (D.I. 190) is denied.  The court finds that the information redacted is equivalent to the information required to be included in a privilege log, and thus not privileged information.

IT IS FURTHER ORDERED that defendant's second motion for leave to amend answer and counterclaim (D.I. 111) is granted. However, discovery and trial of defendant's newly added counterclaim for antitrust violations are stayed consistent with the above ruling on the issues of damages and willfulness.

IT IS FURTHER ORDERED that defendant's motion for reargument is denied, as is its motion to strike.  (D.I. 160, 172)

United States District Judge

3

# EXHIBIT 22

## 2215    Fee for Requesting *Ex Parte* Reexamination [R-5]

*37 CFR 1.510.  Request for ex parte reexamination.*

*****

\*\*>

(c) If the request does not include the fee for requesting *ex parte* reexamination required by paragraph (a) of this section and meet all the requirements by paragraph (b) of this section, then the person identified as requesting reexamination will be so notified and will generally be given an opportunity to complete the request within a specified time. Failure to comply with the notice will result in the *ex parte* reexamination request not being granted a filing date, and will result in placement of the request in the patent file as a citation if it complies with the requirements of § 1.501.

(d) The filing date of the request for *ex parte* reexamination is the date on which the request satisfies all the requirements of this section.

*****

In order for a request to be accepted, be given a filing date, and be published in the *Official Gazette*, >the request papers must satisfy all the requirements of 37 CFR 1.510(a) and (b) and< the entire fee required under 37 CFR 1.20(c)(1) for filing a request for reexamination must be paid. If the request was filed by the patent owner and includes a proposed amendment in accordance with 37 CFR 1.530, excess claims fees under 37 CFR 1.20(c)(3) and (c)(4) may also apply; see MPEP § 2250.03.

If the request for *ex parte* reexamination is subsequently denied >(see MPEP § 2247 and § 2248)<, or vacated >(see MPEP § 2227 and § 2246, subsection I)<, a refund in accordance with 37 CFR 1.26(c) will be made to the identified requester. >If the request for *ex parte* reexamination is found to be incomplete and the defect is not cured (see MPEP § 2227), a refund in accordance with 37 CFR 1.26(a) will be made to the identified requester.<

If the entire fee for *ex parte* reexamination is not paid>or all the requirements of 37 CFR 1.510(a) and (b) are not satisfied<, the request will be considered to be incomplete. See 37 CFR 1.510 (c) and (d) >and MPEP § 2227<.

Where the entire filing fee is not paid after the requester has been given an opportunity to do so, no determination on the request will be made. The request papers will ordinarily be placed in the patent file as a prior art citation, if they comply with the requirements for a citation of prior art under 37 CFR 1.501. See MPEP § 2206 for handling of prior art citations.

## 2216    Substantial New Question of Patentability [R-5]

Under 35 U.S.C. 304, the Office must determine whether "a substantial new question of patentability" affecting any claim of the patent has been raised. 37 CFR 1.510(b)(1) requires that a request for *ex parte* reexamination include "a statement pointing out each substantial new question of patentability based on prior patents and printed publications." If such a new question is found, an order for *ex parte* reexamination of the patent is issued. It is therefore important that the request clearly set forth in detail what the requester considers the "substantial new question of patentability" to be in view of prior patents and printed publications. The request should point out how any questions of patentability raised are substantially different from those raised in the previous examination of the patent before the Office. \*\* See \* MPEP § 2242.

Questions relating to grounds of rejection other than those based on prior art patents or printed publications should **not** be included in the request and will not be considered by the examiner if included. Examples of such questions that will not be considered are public use, on sale, and fraud.

Affidavits or declarations >or other written evidence< which explain the contents or pertinent dates of prior art patents or printed publications in more detail may be considered in reexamination. See MPEP § 2258.

## 2217    Statement in the Request Applying Prior Art [R-5]

The third sentence of 35 U.S.C. 302 indicates that the "request must set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." 37 CFR 1.510(b)(2) requires that the request include "[a]n identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited prior art to every claim for which reexamination is requested." If the request is filed by the patent owner, the request for reexamination may

**2217**                    MANUAL OF PATENT EXAMINING PROCEDURE

also point out how claims distinguish over cited prior art.

The prior art applied may only consist of prior art patents or printed publications. Substantial new questions of patentability may be based upon the following portions of 35 U.S.C. 102:

"(a)...patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or"

"(b) the invention was patented or described in a printed publication in this or a foreign country... more than one year prior to the date of the application for patent in the United States, or"

\*\*\*\*\*

"(d) the invention was first patented or caused to be patented, or was the subject of an inventor's certificate, by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application for patent or inventor's certificate filed more than twelve months before the filing of the application in the United States, or"

"(e) the invention was described in — (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language; or"

\*\*\*\*\*

"(g)(1) during the course of an interference conducted under section 135 or section 291, another inventor involved therein establishes, to the extent permitted in section 104, that before such person's invention thereof the invention was made by such other inventor and not abandoned, suppressed, or concealed, or (2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

Substantial new questions of patentability may also be presented under 35 U.S.C. 103 which are based on the above indicated portions of 35 U.S.C. 102. See

MPEP § 706.02(l)(1) for information pertaining to references which qualify as prior art under 35 U.S.C. 102(e)/103.

Substantial new questions of patentability must be based on patents or printed publications. Other matters, such as public use or on sale, inventorship, 35 U.S.C. 101, 35 U.S.C. 112, fraud, etc., will not be considered when making the determination on the request and should not be presented in the request. Further, a prior art patent or printed publication cannot be properly applied as a ground for reexamination if it is merely used as evidence of alleged prior public use or on sale, insufficiency of disclosure, etc. The prior art patent or printed publication must be applied directly to claims under 35 U.S.C. 103 and/or an appropriate portion of 35 U.S.C. 102 or relate to the application of other prior art patents or printed publications to claims on such grounds.

The statement applying the prior art may, where appropriate, point out that claims in the patent for which reexamination is requested are entitled only to the filing date of the patent and are not supported by an earlier foreign or United States patent application whose filing date is claimed. For example, the effective date of some of the claims in a patent which resulted from a continuing application under 35 U.S.C. 120 could be the filing date of the continuing application since those claims were not supported in the parent application. Therefore, intervening patents or printed publications are available as prior art. See *In re Ruscetta*, 255 F.2d 687, 118 USPQ 101 (CCPA 1958), *In re van Langenhoven*, 458 F.2d 132, 173 USPQ 426 (CCPA 1972). See also MPEP § 201.11.

Double patenting is normally proper for consideration in reexamination. See *In re Lonardo*, 119 F.3d 960, 43 USPQ2d 1262 (Fed. Cir. 1997). See also the discussion as to double patenting in MPEP § 2258.

>

## I.    EXPLANATION MUST BE COMPLETE<

The mere citation of new patents or printed publications without an explanation does not comply with 37 CFR 1.510(b)(2). Requester must present an explanation of how the cited patents or printed publications are applied to all claims which requester considers to merit reexamination. This not only sets forth the requester's position to the Office, but also to the

# EXHIBIT 23



**United States Patent and Trademark Office**

Press Releases > USPTO Improves Process for Reviewing Patents

**PRESS RELEASE**                                          July 29, 2005
Contact:                                                  #05-38
Ruth Nyblod
571-272-8400
ruth.nyblod@uspto.gov

## USPTO IMPROVES PROCESS FOR REVIEWING PATENTS

The U.S. Department of Commerce's United States Patent and Trademark Office (USPTO) has implemented new processes for handling reexamination proceedings to improve timeliness and quality. Patent reexamination is a valuable, low-cost alternative to litigation for determining the patentability of the claims in an issued patent. Requests for the USPTO to reexamine a patent can be made as long as written evidence is presented that raises a substantial new question of patentability.

"Timeliness and correctness of decisions in reexamination proceedings are important to providing certainty for all users of the patent system," noted Under Secretary of Commerce for Intellectual Property and Director of the USPTO Jon Dudas. "We have a duty to the American public to get reexaminations right and to conduct them with dispatch so they remain an effective tool."

The USPTO's goal is that reexaminations that have been pending with an examiner more than two years now will be resolved by October 1, 2005. In addition, all future reexamination proceedings will be completed within a specific timeframe, which is expected to be less than two years. In March 2005 there were over 420 reexaminations that had been pending more than two years and that number would have grown to over 600 by the end of September 2005. Today, fewer than 360 cases remain, with nearly half in the final stages. To ensure the quality of these proceedings, all reexamination decisions now require a thorough review by a panel of supervisors and senior patent examiners. Reexaminations where an initial decision has been made will remain with the examiner originally assigned to the reexamination. All other reexaminations will be reassigned to a newly formed central reexamination unit.

Prior to the new initiative, reexamination cases were assigned to examiners according to technology. Under the new initiative, 20 highly skilled primary examiners who have a full understanding of reexamination practice and relevant case law will concentrate solely on reexamination. The 20-examiner unit began operation earlier this week and all new requests for reexamination will be assigned to them. Using skilled examiners assigned to a single unit will enhance the quality and reduce the time of reexaminations by allowing the USPTO to monitor more effectively the reexamination operations.

### # # #

---

Last Modified: 04/14/2007 16:20:57

EXHIBIT 24

1980 U.S.C.C.A.N. (96th Cong., 2d Sess.)

LEGISLATIVE HISTORY
P.L. 96–517

## PATENT AND TRADEMARK LAWS

*P.L. 96–517, see page 94 Stat. 3015*

House Report (Judiciary Committee) No. 96–1307(I),
Sept. 9, 1980 [To accompany H.R. 6933]

House Report (Government Operations Committee) No. 96–1307(II),
Sept. 23, 1980 [To accompany H.R. 6933]

Cong. Record Vol. 126 (1980)

### DATES OF CONSIDERATION AND PASSAGE

House November 17, 21, 1980

Senate November 20, 1980

No Senate Report was submitted with this legislation.

### HOUSE REPORT NO. 96–1307, PART 1

[page 1]

The Committee on the Judiciary to whom was referred the bill
(H.R. 6933) entitled: "To amend the patent and trademark laws",
having considered the same, report favorably thereon with amend-
ments and recommend that the bill as amended do pass.

\*   \*   \*   \*   \*   \*   \*   \*   \*

### STATEMENT

#### THE NEED FOR THE LEGISLATION

Many analysts of the U.S. economy have warned that the roots
of the current recession lie in a longer term economic malaise
which arises out of a failure of American industry to keep pace
with the increased productivity of foreign competitors.[1]

According to the Committee for Economic Development, "the
slowing of productivity improvement during the past few years par-
allels the discouraging decline in the rate of investment in plant
and equipment."[2] The rate of investment as a proportion of GNP
has averaged about one half the rate for France and Germany and
about one third the rate for Japan. Further, the situation does not

[1] Report of the President's advisory Committee on Industrial Innovation, Sept. 1979.
[2] *Stimulating Technological Progress.* A statement by the Research and Policy Committee of
the Committee for Economic Development, Jan. 1980. pp. 2–7.

[page 2]

appear to be improving. There has been an especially significant
decline in total U.S. expenditures for research and development, as

6460

## PATENT AND TRADEMARK LAWS
P.L. 96–517

measured in constant dollars since 1970.[3] Since the primary means
of improving productivity lies in the creation of new technologies,
the decline in expenditures for research and development is espe-
cially significant to the health of the overall economy.

Testimony presented to the Subcommittee on Courts, Civil Liber-
ties and the Administration of Justice also indicates that the Fed-
eral Government is bearing an ever increasing share of the burden
of financing basic research and development.[4] This means that the
effective commercialization of government financed research is be-
coming an ever more important issue for those who are concerned
with industrial innovation. The patent policies governing the utili-
zation of government funded reseach will become even more impor-
tant when the research expected to flow out of recent Congression-
al enactments such as the Energy Security Act of 1980[5] begins to
produce usable new technologies. It is highly likely that the fuel
which powers our automobiles and the boilers which heat our
homes will owe part of their chemical composition or mechanical
operation to patented research developed in part by government
funds. At the present time U.S. companies desiring to use govern-
ment funded research to develop new products and processes must
confront a bewildering array of 26 different sets of agency regula-
tions governing their rights to use such research. This bureaucratic
confusion discourages efficient use of taxpayer financed research
and development.

### HISTORY OF THE BILL

The crisis in U.S. productivity and the governmental role in it
has not gone unnoticed, however. In May of 1978 the President
called for a major policy review of industrial innovation as the key
to increased productivity in the United States. This White House
call to action resulted in the creation of an advisory Committee of
more than 150 senior representatives from the industrial, public in-
terest, labor, scientific, and academic communities. The work of the
Advisory Committee was overseen by a cabinet level coordinating
committee chaired by the Secretary of Commerce. The Committee
studied all the areas in which federal government policy impacts
on productivity and innovation in the private sector. These fields of
inquiry included: economic and trade policy; environmental, health
and safety regulations; anti-trust enforcement; federal procurement
policies, and federal patent and information policies.

When the advisory committee issued its 300 page report last
year, a key segment contained recommendations on government
patent policy. These recommendations, in turn, were received by
the President, and formed the basis of a major legislative proposal
which was conveyed to the Congress. Special emphasis was placed
on the role of the patent system and the patent policy regarding
government funded research in promoting industrial innovation.
These patent related recommendations were forwarded to the Com-

[3] *Science Indicators*, National Science Board, 1976, pp. 108–115.
[4] Testimony of Pindaros Roy Vagelos, M.D., before the subcommittee on Courts, Civil Liberties and the Administration of Justice April 15, 1980, transcript p. 14.
[5] P.L. 96–294.

LEGISLATIVE HISTORY
P.L. 96–517
[page 3]

mittee on the Judiciary and are embodied in H.R. 6933 and H.R. 3806.

H.R. 6933 has three major thrusts. First, it strengthens investor confidence in the certainty of patent rights by creating a system of administrative reexamination of doubtful patents. Secondly, it strengthens the financial resources of the Patent Office to provide fast and accurate processing of patent applications by revising the fee structure of the Office. Finally, the existing melange of 26 different agency policies on vesting of patent rights in government funded research is replaced by a single, uniform national policy designed to cut down on bureaucracy and encourage private industry to utilize government funded inventions through the commitment of the risk capital necessary to develop such inventions to the point of commercial application.

H.R. 3806 embodies another recommendation of the Advisory Committee and the President. It grants jurisdiction over appeals in patent cases to a single court of appeals—ending the current legal confusion created by 11 different appellate forums, all generating different interpretations of the patent law. The new court will do a great deal to improve investors' confidence in patented technology.

In addition to the three broad areas already outlined, H.R. 6933 addresses the special needs of Universities and small businesses when they attempt to deal with patent issues arising out of government contracts. Both of these groups lack the resources to cope with the bewildering regulatory and bureaucratic problems associated with transfer of patent rights pursuant to government contracts; and the university sector in particular is an important link to the private sector.

The Subcommittee on Courts, Civil Liberties and the Administration of Justice held seven days of hearings on H.R. 6933 and related patent law proposals. In all, over thirty witnesses from Government, the private Bar, industry, education, small business, and the judiciary offered testimony on the various legislative proposals before the subcommittee. Hearings were followed by four days of markup, during which H.R. 3806, creating a new Court of Appeals for the Federal Circuit, H.R. 6933, containing reforms in patent policy and procedures, and H.R. 6934, clarifying the law of copyright of computer programs, were reported favorably. Each bill was reported unanimously. The unanimous votes, particularly on H.R. 6933, were cast only after careful examination of the legislation in light of the criticisms made during the hearings and after consultation with members of the Committee on Science and Technology, which shares jurisdictional interest. During the course of markup H.R. 6933 was amended substantially to respond to criticisms raised during the hearing.

### SUMMARY OF THE BILL

H.R. 6933, as amended, addresses four major issues. Section 1 provides for a system of administrative reexamination of patents within the patent office. This new procedure will permit any party to petition the patent office to review the efficacy of a patent, subsequent to its issuance, on the basis of new information about preexisting technology which may have escaped review at the time of the initial examination of the patent application. Reexamination

6462

## PATENT AND TRADEMARK LAWS
### P.L. 96–517
[page 4]

will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation. This, in turn, will promote industrial innovation by assuring the kind of certainty about patent validity which is a necessary ingredient of sound investment decisions.

The cost incurred in defensive patent litigation sometimes reaches $250,000 for each party, an impossible burden for many smaller firms. The result is a chilling effect on those businesses and independent inventors who have repeatedly demonstrated their ability to successfully innovate and develop new products. A new patent reexamination procedure is needed to permit the owner of a patent to have the validity of his patent tested in the Patent office where the most expert opinions exist and at a much reduced cost. Patent office reexamination will greatly reduce, if not end, the threat of legal costs being used to "blackmail" such holders into allowing patent infringements or being forced to license their patents for nominal fees.

The reexamination of issued patents could be conducted with a fraction of the time and cost of formal legal proceedings and would help restore confidence in the effectiveness of our patent system.

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

Sections 2 through 5 of H.R. 6933 provide for a new fee structure for the patent office. At the present time patent examination fees are established by statute, last revised in 1967. When enacted, the present fee structure provided revenues which met 67 percent of the costs of operating the Patent Office. Inflation has now reduced the impact of those fees to the point where they generate only 27 percent of the funding necessary to the operation of the office.

At the present time patent fees average about $239 per application.[6]

H.R. 6933 would entirely revise the fee structure. It grants the Commissioner the power to establish fees. As introduced, the bill provided that the fee level would be revised yearly to generate 60 percent of the revenue needed to operate the office. However, the subcommittee amended the bill to reduce that level to 50 percent. This was in response particularly to criticism from small business and individual inventors that the fees would place too great a burden on those groups.

In order further to soften the impact on small business and individual inventors, the fees are to be paid in four installments over the life of the patent. This system, known as maintenance fees, is in use in most advanced industrial nations and has the advantage of deferring payment until the invention begins to return revenue to the inventor.

---

[6] Testimony of Honorable Sidney Diamond, Commissioner of Patents, April 24, 1980—p. 50.

## LEGISLATIVE HISTORY
### P.L. 96–517
[page 5]

Should the invention prove to have no commercial value, the inventor has the option of permitting the patent to lapse, thus avoiding all further fees.

Section 6 of H.R. 6933 provides for a uniform policy governing the disposition of patent rights in government funded research. This would replace the 26 different agency policies now in effect. There are two patent policies provided in this section. Non-profit research institutions and small businesses are given preferential treatment. The legislation establishes a presumption that ownership of all patent rights in government funded research will vest in any contractor who is a non-profit research institution or a small business. This portion of H.R. 6933 substantially incorporates legislation separately introduced, H.R. 2414 (S. 414), entitled the University, Small Business Patent Policy Act.

Large businesses are governed by a separate policy. They receive exclusive licenses for specific uses they intend to commercialize. As with small business and universities, here too the presumption lies with the granting of exclusive rights to the Contractor.

Critics of the bill testified that it would be impossible for a contractor to determine in good faith his ability to commercialize in a particular field of use at the time of disclosure of the invention.

As a result and for the purposes of foreign patent rights, the subcommittee approved an amendment which grants temporary title to a contractor for up to four and one half years before requiring him to specify his fields of use. This provides for more flexibility for the contractor while at the same time protecting the taxpaying public because:

1. The government, not the contractor, will obtain ownership of patent rights to contract inventions.

2. The government will permit contractors to obtain exclusive licenses but only for fields of use in which they intend to commercialize a patented invention.

3. The government has the right to deny the transfer of exclusive rights for any field of use within 90 days of the contractor's disclosure of a field or fields of use he intends to commercialize.

4. Public interest antitrust and national security standards are to be applied by the government in making such determination whether to deny an exclusive license.

From a contractor point of view, the amendment offers many of the advantages of patent ownership, including full title abroad and the right to sublicense domestically.

From an innovation point of view, the requirement that exclusive licenses be limited to specified fields of use that the contractor intends to commercialize should prevent sitting on technology, and spur innovation.

Some contractors, particularly in the defense area, will lose some rights which they presently receive through full waiver. However, the overwhelming number of contractors will receive faster, more efficient treatment under these provisions. For example, delays in acting on patent right waiver requests, which now take on the average a year and a half in agencies like the Department of Energy, will be eliminated. Contractors will know their rights with certainty within 90 days of identifying a specific field of use under a patent to a government financed invention.

6464

## PATENT AND TRADEMARK LAWS
### P.L. 96–517
[page 6]

In developing the amendment to this section, it should be noted that the subcommittee worked closely with the Science and Technology Committee, and it is particularly grateful to members of that Committee for their contributions.

Finally, sections 9 and 10 of the bill, as reported by the subcommittee, reflect amendments which are designed to respond to the criticism of witnesses who argued both that the Patent Office ought to be independent of the Department of Commerce and that the present search files of the Office fail to effectively utilize modern computer technology.

### SECTION-BY-SECTION ANALYSIS

#### REEXAMINATION

Section 1 of the bill would add seven new sections to the patent laws to establish a patent reexamination system. These seven new sections would constitute chapter 30 of title 35 of the United States Code.

### Section 301. Citation of prior art

Section 301 provides statutory authority for the citation to the Patent and Trademark Office (PTO) of prior art consisting of patents or printed publications which a person believes to have a bearing on the patentability of any claim of a particular patent. Section 301 would make clear that a citation of prior art is not to be included in the official file on a patent unless the citer submits a written statement as to the pertinency and applicability to the patent. Section 301 also would require the PTO to keep the identity of the citer of prior art confidential if the citer so requests in writing. Without the confidentiality provision, competitors of a patent owner might be reluctant to cite prior art to the PTO.

### Section 302. Request for reexamination

Section 302 provides authority for any person to seek reexamination by the PTO on the basis of the patents and printed publications cited under section 301. Such a person need not be the one who cited prior art under section 301. The person could even be the patentee.

Section 302 requires that the person seeking reexamination pay a fee established by the Secretary. Under section 2 of this bill, the Secretary would be required to establish a fee to recover the estimated average cost of a reexamination proceeding. Thus, those who request reexamination would pay for it.

Section 302 requires the Commissioner to send a copy of the request promptly to the patent owner, as shown by the records of the Office. The patent owner would have to see that his ownership and current address are recorded properly so that the request is not sent to a previous owner.

### Section 303. Determination of issue by Commissioner

Subsection 303(a) requires the Commissioner to determine if a "substantial new question of patentability" is raised in connection with any claims of the patent against which a patent or printed publication is cited and to order reexamination upon a positive de-

LEGISLATIVE HISTORY
P.L. 96–517
[page 7]

termination. Further, it would permit the Commissioner to initiate reexamination without a request upon a determination that a substantial new question of patentability is raised by patents or publications discovered by him or cited under the provisions of section 301. This authority to initiate reexamination without a request is not intended to abrogate in any way the right of the United States to sue to cancel a patent obtained by fraudulent means.

This "substantial new question" requirement would protect patentees from having to respond to, or participate in unjustified reexaminations. Further, it would act to bar reconsideration of any argument already decided by the Office, whether during the original examination or an earlier reexamination.

Subsection 303(b) requires that the Commissioner's determination be recorded in the file of the patent and a copy promptly sent to the patent owner and the person requesting the reexamination.

Subsection 303(c) makes final and nonappealable a decision by the Commissioner not to conduct reexamination. In such a case, however, a portion of the reexamination fee could be returned.

No one would be deprived of any legal right by a denial by the Commissioner of a request for reexamination. A party to a reexamination proceeding could still argue in any subsequent litigation that the PTO erred and that the patent is invalid on the basis of the cited prior art.

*Section 304. Reexamination order by Commissioner*

Section 304 specifies the initial steps to be taken where the Commissioner determines that reexamination should be ordered. Upon issuance of a determination ordering reexamination, the patent owner would be given the opportunity to file a statement with the Office and, if he wishes, to propose an amendment to the specification or claims of his patent as well as a new claim or claims in response to the Commissioner's determination. The patent owner would be required to serve a copy of any such statement and any proposed amendment on the person requesting reexamination, who would be permitted to file a reply with the Office, with service required on the patent owner.

*Section 305. Conduct of reexamination proceedings*

Section 305 governs the conduct of the actual reexamination proceeding. Section 305 specifies that after the initial exchange permitted under section 304, the PTO will utilize the same procedures it uses for the initial examination of patent applications under patent law sections 132 and 133. The patent owner could propose an amendment to his patent specification or claims, as well as propose a new claim or claims, to distinguish his invention from the prior art cited under section 301. However, the bill would prohibit the Commissioner from granting during reexamination any amended or new claim that enlarges the scope of a claim of the original patent. Also, the bill would require reexamination to be promptly handled, so as to make it as helpful as possible.

*Section 306. Appeal*

Section 306 grants a patent owner the right to pursue the same appeal routes available to patent applicants. An adverse decision on reexamination by the primary examiner could be appealed to

6466

## PATENT AND TRADEMARK LAWS
P.L. 96–517

[page 8]

the Board of Appeals. Adverse final decisions on reexamination by the Board of Appeals or by the Commissioner could be appealed to the U.S. Court of Customs and Patent Appeals or de novo review of the reexamination decision could be sought in the United States District Court for the District of Columbia.

*Section 307. Certificate of patentability, unpatentability, and claim cancellation*

Section 307(a) requires the Commissioner at the conclusion of reexamination to cancel any patent claim found to be unpatentable, confirm any patent claim found to be patentable, and add any amended or new claims found to be patentable.

Subsection 307(b) provides intervening rights similar to those provided by patent law section 252 with respect to reissued patents. Thus, a person practicing a patented invention would not be considered an infringer for the period between issuance of an invalid patent and its conversion through reexamination to a valid patent.

It ordinarily is in the interests of both parties to expedite the disposition of patent litigation. A party discovering new prior art on which reexamination might be conducted ordinarily will reveal it promptly to the patent owner. If he does not, the court may exercise its equity power by allowing the patent owner to request reexamination later in the trial, or precluding the party from relying on such prior art or by other appropriate measures.

### ADMINSTRATIVE FEE SETTING

Section 2 of the bill would restructure and modernize completely section 41 of title 35, United States Code—the basic fee provision of the patent laws.

The committee recognizes that the PTO, in issuing patents and registering trademarks, performs a significant public service in implementing the Federal patent and trademark laws and also confers benefit on private persons who seek to protect their intellectual property. The Committee, therefore, supports the premise that patent applicants and those seeking to register trademarks should bear a significant share of the cost of operating the PTO by the payment of fees. However, the Committee has made certain amendments to the formula which empowers the Commissioner to set these fees. Certain costs of operating the PTO confer no direct benefit on applicants but rather go to meet the responsibility of the Federal Government to have a PTO in order to execute the law. For example, the cost of executive direction and administration of the office, including the Office of the Commissioner and certain agency offices involved with public information, legislation, international affairs and technology assessment. Maintaining the public search room confers a general public benefit, as does the maintenance of the patent files in depository libraries. The contribution to the World Intellectual Property Organization relative to the Patent Cooperation Treaty is a treaty obligation. These costs should be paid for entirely from appropriated funds.

The committee inserted the word "actual" in this legislation to describe those costs which should be assumed 50 percent by applicants. Patent applicants should bear through the payment of fees, 25 percent in processing of fees, and 25 percent in maintenance

6467

# EXHIBIT 25

<table>
<tr><td>106TH CONGRESS<br>1st Session</td><td>HOUSE OF REPRESENTATIVES</td><td>REPT. 106–287<br>Part 1</td></tr>
</table>

# AMERICAN INVENTORS PROTECTION ACT OF 1999

AUGUST 3, 1999.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. COBLE, from the Committee on the Judiciary,
submitted the following

# R E P O R T

[To accompany H.R. 1907]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1907) to amend title 35, United States Code, to provide enhanced protection for inventors and innovators, protect patent terms, reduce patent litigation, and for other purposes, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.Table of Contents for Reports:

## TABLE OF CONTENTS

| | Page |
|---|---|
| The Amendment | 2 |
| Purpose and Summary | 30 |
| Background and Need for the Legislation | 31 |
| Hearings | 33 |
| Committee Consideration | 33 |
| Committee Oversight Findings | 33 |
| Committee on Government Reform Findings | 34 |
| New Budget Authority and Tax Expenditures | 34 |
| Congressional Budget Office Cost Estimate | 34 |
| Constitutional Authority Statement | 39 |
| Section-by-Section Analysis | 39 |
| Changes in Existing Law Made by the Bill, as Reported | 70 |

The amendment is as follows:

33

and patents issued on inventions previously considered to be unpatentable subject matter. Our foreign competitors, who obtain nearly 50% of the U.S. patents issued each year, protect their companies and workers from the disruptions caused by such late-issuing patents.

Notwithstanding how diligent a patent applicant might be, there are circumstances where such an applicant can nonetheless lose years of effective patent term due to delays in the PTO and other circumstances beyond her control. While our foreign competitors are able to see the latest U.S. patent technology in their native languages barely six months after a U.S. inventor files a patent application in their country, the reverse is not true. U.S. researchers and investors are denied the opportunity to learn what their foreign competitors are working on until a U.S. patent issues. This causes duplicative research and wasted developmental expenditures, putting U.S. inventors at a serious disadvantage *vis-a-vis* their foreign counterparts and competitors.

An individual or company that wishes to test the validity of an issued U.S. patent that is believed to be too broad in scope has no effective alternative to simply waiting and challenging the patent in an expensive district court proceeding. Further, an independent inventor, when challenged on the validity of her patent, is potentially subject to suit anywhere in the country at great litigious expense. The ability of the PTO to recruit and train highly qualified engineers to become patent examiners and to give them the resources they need to avoid issuing patents on such questionable inventions is hampered by the maze of red tape in which the Office must function, a situation frequently worsened by excessive regulation.

H.R. 1907 will alleviate these concerns and improve the American intellectual property system.

### HEARINGS

The Committee's Subcommittee on Courts and Intellectual Property held a hearing on the Committee Print of the "American Inventors Protection Act" (later introduced as H.R. 1907) on March 25, 1999. Testimony was received from seven witnesses representing seven organizations, along with two Members of Congress.

### COMMITTEE CONSIDERATION

On May 20, 1999, the Subcommittee on Courts and Intellectual Property met in open session and ordered reported the Committee Print on the "American Inventors Protection Act" by voice vote, a quorum being present. On May 26, 1999, the Committee met in open session and ordered reported favorably the bill H.R. 1907 with amendment by voice vote, a quorum being present.

### COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 2(1)(3)(A) of rule XI of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Rep-