IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TRANSMETA CORPORATION,<br><br>　　　Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>INTEL CORPORATION,<br><br>　　　Defendant/Counterclaim Plaintiff. | Civil Action No. 06-633-GMS<br><br>REDACTED PUBLIC VERSION |

## INTEL CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY THIS ACTION PENDING REEXAMINATION OF TRANSMETA'S PATENTS-IN-SUIT

> John W. Shaw (No. 3362)
> Karen E. Keller (No. 4489)
> Monté T. Squire (No. 4764)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6600
> msquire@ycst.com
>
> *Attorneys for Defendant Intel Corporation*

OF COUNSEL:
Matthew D. Powers
Jared Bobrow
Steven S. Cherensky
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Kevin Kudlac
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway, Suite 1350
Austin, TX 78759
(512) 349-1930

Dated:  August 27, 2007

REDACTED PUBLIC VERSION

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.      A STAY WILL NOT UNDULY PREJUDICE TRANSMETA ...................................... 4

        A.     Transmeta Has Made No Credible Showing Of Prejudice .................................... 5

        B.     Granting A Stay Will Not Unduly Delay This Lawsuit ......................................... 8

        C.     Intel Filed This Motion In Good Faith .................................................................. 9

II.     INTEL EXPEDITIOUSLY FILED ITS REEXAMINATION REQUESTS AND
        MOVED FOR A STAY EARLY IN THIS LITIGATION ............................................ 12

III.    A STAY WILL PROMOTE EFFICIENCY AND JUSTICE .......................................... 13

        A.     The PTO Already Has Found Substantial Questions As To The Validity
               Of Most Of Transmeta's Asserted Claims ............................................................ 13

        B.     The Reexaminations Will Simplify The Issues In This Litigation ....................... 15

        C.     A Judgment Based Upon Patents Later Found To Be Invalid By The PTO
               Would Be Extremely "Untoward" And Highly Prejudicial To Intel .................... 17

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abbott Diabetes Care, Inc. v. DexCom, Inc.,*
C.A. No. 05-590, 2006 WL 2375035 (D. Del. Aug. 16, 2006) ........................................15

*Asplundh Mfg. Div. v. Benton Harbor Eng'g,*
57 F.3d 1190 (3d Cir. 1995).............................................................................................6

*Bausch & Lomb Inc. v. Alcon Labs., Inc.,*
914 F. Supp. 951 (W.D.N.Y. 1996)...............................................................................4, 18

*Broadcast Innovation, LLC v. Charter Comm., Inc.,*
C.A. No. 03-2223, 2006 WL 1897165 (D. Colo. July 11, 2006)...................................4, 18

*CVI/Beta Ventures, Inc. v. Tura LP,*
112 F.3d 1146 (Fed. Cir. 1997).........................................................................................15

*Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co., Ltd.,*
3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) ..............................................................................1, 6

*Ethicon, Inc. v. Quigg,*
849 F.2d 1422 (Fed. Cir. 1988).............................................................................17, 18, 19

*Gioello Enterprises Ltd. v. Mattel, Inc.,*
C.A. No. 99-375, 2001 WL 125340 (D. Del. Jan. 29, 2001) ......................................12, 18

*Gould v. Control Laser Corp.,*
705 F.2d 1340 (Fed. Cir. 1983)................................................................................... 15-16

*Landis v. North American Co.,*
299 U.S. 248 (1936)............................................................................................................17

*Middleton, Inc. v. Minnesota Mining & Mfg. Co.,*
No. 03-40493, 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004) .........................................12

*Motson v. Franklin Covey Co.,*
C.A. No. 03-1067, 2005 WL 3465664 (D.N.J. Dec. 16, 2005) .........................................12

*Pause Tech. LLC v. TiVo Inc.,*
419 F.3d 1326 (Fed. Cir. 2005)..........................................................................................16

*Pegasus Dev. Corp. v. DirecTV, Inc.,*
C.A. No. 00-1020, 2003 WL 21105073 (D. Del. May 14, 2003).....................6, 12, 13, 17

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sony Computer Entertain. Am. v. Dudas,*
    C.A. No. 05-1447, 2006 WL 1472462 (E.D. Va. May 22, 2006) ......................................17

*Spectrum Intern., Inc. v. Sterilite Corp.,*
    164 F.3d 1372 (Fed. Cir. 1998)..........................................................................................16

### FEDERAL STATUTES

35 U.S.C. § 317(b) ..............................................................................................................17

Fed. R. Evid. 701 ..................................................................................................................6

### MISCELLANEOUS

H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 (1980), reprinted in 1980
    U.S.C.C.A.N. 6460 ..........................................................................................................16

## INTRODUCTION

In its motion, Intel established that all eleven asserted Transmeta patents are invalid. Intel cited its detailed reexamination requests, which show that the prior art – most of it not cited during the prosecution of the patents – anticipates and renders obvious the asserted claims. As things stand today, the PTO has granted all nine of the reexamination requests it has considered, finding that Intel has raised substantial questions as to the validity of Transmeta's patents.[1]

In its opposition, Transmeta never rebuts Intel's showing of invalidity. It offers no evidence that its patents are valid or, for that matter, that there is any reason to believe that the asserted claims will survive reexamination. Nor has Transmeta offered any evidence that Intel infringes these patents. This failure of proof is fatal to Transmeta, because without making any showing that it is likely to prevail in this Court, Transmeta's claim that it will be prejudiced if the case does not proceed to trial rings hollow.

Rather than addressing the real issues, Transmeta chooses instead to contest Intel's motion in the realm of speculation and groundless attack. Transmeta asserts – based solely on the inadmissible opinion of its CEO – that a stay pending reexamination will prevent Transmeta from obtaining the financing that it purportedly needs to continue in business. This argument, even if true, does not help Transmeta. The law is clear that this is not a cognizable prejudice, because this is a suit for money damages and there is no argument that Intel will not be in a position to pay money damages in the future. *See Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987). What's more, Transmeta's contention that a stay will deprive it of financing is groundless. AMD, the world's second largest microprocessor

---

[1] The period for the PTO to consider Intel's two remaining reexamination requests has not yet elapsed. Intel expects that the PTO will grant the remaining requests by mid-September.

manufacturer, just invested $7.5 million in Transmeta, becoming its largest shareholder. AMD made this investment *after* Intel filed its reexamination requests with the PTO and *after* Intel filed its motion to stay. Significantly, Transmeta's opposition does not include a single affidavit from AMD saying that it will not make future investments in Transmeta. This omission is not surprising: Transmeta knows that AMD will continue to bankroll it because AMD views Transmeta and its lawsuit as weapons in AMD's litigation campaign against Intel.[2]

Put simply, Transmeta's assertion that a stay "would threaten the company's very survival" is not credible. If the "threat" from this motion were so enormous, then surely Transmeta, a publicly traded company, would have informed its shareholders and potential investors through its SEC filings that this motion posed a grave risk. But it didn't. Transmeta's silence towards its shareholders speaks volumes about its fictional claims of prejudice.

On top of its hollow pleas of hardship, Transmeta argues that the stay should be denied because Intel "delayed" the filing of this lawsuit, allegedly **Redacted**
This is false and not supported by a single fact.

**Redacted**

What is clear, and what Transmeta cannot dispute, is that Transmeta – not Intel – controlled the timing of this lawsuit. Transmeta purchased the vast majority of the patents-in-suit in 2001. *Nothing* prevented Transmeta from filing this suit six years ago (at a time when Intel products now

---

[2] AMD and Intel have been involved in many legal proceedings over the years, including an antitrust lawsuit that is pending in the District of Delaware before Judge Farnan. *In re Intel Corp. Microprocessor Antitrust Litigation*, C.A. No. 05-485 (D. Del.).

accused of infringing each of the patents-in-suit were on sale). If Transmeta was unhappy with

**Redacted**          it was free to file suit. Transmeta, a sophisticated company

with in-house counsel,[3] made the strategic decision not to file suit until it did. The timing was

purely Transmeta's decision – not Intel's – and Transmeta's five-plus year delay in asserting its

patents is fatal to its sudden claimed need for urgency.

        Transmeta also argues that a stay would be unfair because Intel allegedly "forced

Transmeta out of the microprocessor manufacturing business" years ago and Transmeta should

have its day in Court. This allegation is baseless and Transmeta provides not one shred of

evidence to support its position. As demonstrated below, Transmeta failed because the

processors that it designed performed poorly and were rejected by the market. Although

Transmeta's papers tout the strength of "its" technology, the reality is that the market rejected

Transmeta's technology and, consistent with its weak position, ten of the eleven patents asserted

by Transmeta in this lawsuit were actually bought from others (and not developed by

Transmeta). But as the Court well knows, the allegation of unfair competition has nothing to do

with this case. This lawsuit is not an antitrust suit. There are no claims by Transmeta for unfair

business practices, monopolization, or unfair competition. If Transmeta truly believed the story

it spun, then surely it would have filed an antitrust lawsuit by now. Its decision not to do so

makes clear that no such claims exist.

        With all of these arguments falling by the wayside, Transmeta is left to argue that the

Court should not stay this case pending reexamination, but instead should allow Transmeta to

---

[3] Mr. Horsley, Transmeta's General Counsel who submitted a declaration in opposition to this motion (D.I. 59), did not disclose that he has a direct interest in the outcome of this lawsuit. Specifically, Mr. Horsley has an agreement with Transmeta pursuant to which he will receive a percentage of any judgment awarded to Transmeta in this litigation. Exhibit 1. Transmeta has not disclosed to Intel the percentage that Mr. Horsley will receive.

race to a judgment in this Court before the PTO declares its patents invalid. Transmeta has the temerity to suggest that there is nothing "untoward" about recovering (by its account) $1 billion from Intel based on patents that later are determined to be invalid by the agency that granted those patents in the first place. This unseemly request to use the Court's resources to gain leverage over Intel should be rejected. Reexamination of Transmeta's patents is well underway. Nine requests for reexamination already have been granted. The courts and Congress recognize that reexamination is a fair and efficient vehicle for determining patent validity and that duplicative proceedings in district court should be stayed while reexaminations are underway. If Transmeta gets its way and secures a money judgment before the PTO finalizes the patent reexaminations, Intel will be irreparably harmed, because it may not be able to recover monies paid on a patent judgment even if the patents are later declared invalid. This plainly would be unjust. *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996); *Broadcast Innovation, LLC v. Charter Comm., Inc.*, C.A. No. 03-2223, 2006 WL 1897165, at *10 (D. Colo. July 11, 2006). The Court can and should prevent this injustice.

## ARGUMENT

### I.     A STAY WILL NOT UNDULY PREJUDICE TRANSMETA

With ample invective and hyperbole, Transmeta asserts that a stay should be denied because it will unduly "delay" this lawsuit and thereby "cripple" Transmeta's efforts to get the funding it needs to stay in business. This position is factually and legally groundless. Transmeta has failed to show, as it must, that it has suffered or will suffer prejudice, that the reexamination proceedings will cause undue delay, or that Intel has brought this motion or the underlying reexamination proceedings in bad faith.

4

### A.    Transmeta Has Made No Credible Showing Of Prejudice

Transmeta's assertion that a delay would be prejudicial is belied by its failure to show that it has a credible case on the merits. After all, if Transmeta's claims are based on invalid patents, then postponing a claim on which Transmeta cannot and should not recover surely would not qualify as prejudice.

Here, Intel demonstrated in its opening papers that Transmeta's claims are critically defective. Through detailed reexamination requests, claim charts, and uncited prior art references, Intel has shown that the patents-in-suit are invalid. D.I. 39 at Exhibits 1-3 ['433, '449 and '687 Orders]; *id.* at Exhibits 4-13 [Intel's Reexamination Requests].[4] Since Intel filed this motion in May, the Patent Office has ordered six additional reexaminations. Exhibits 2-7 ['061, '986, '624, '503, '668 and '699 Reexamination Orders]. The PTO has now granted all nine of the eleven reexamination requests that it has considered to date, including reexaminations for every patent family-in-suit, and has found a substantial new question of patentability for every asserted claim on multiple grounds. *Cf.* D.I. 39 at Exhibits 1-3 ['433, '449 and '687 Orders]; Exhibits 2-7 ['061, '986, '624, '503, '668 and '699 Reexamination Orders] and Exhibit 8 [Transmeta's Supplemental Response to Interrogatory No. 1 identifying asserted claims].

For the '061 patent – the sole member of the "power management" family and the sole patent-in-suit that Transmeta filed itself (as opposed to buying from others) – the PTO issued a first office action rejecting each of the asserted claims, some rejections based on as many as fifteen different grounds. *Cf.* Exhibit 9 ['061 Office Action] and Exhibit 8 [Transmeta's Supplemental Response to Interrogatory No. 1 identifying asserted claims].

---

[4] Intel filed its request for reexamination of Transmeta's eleventh patent-in-suit (U.S. Patent No. 6,226,733) on June 21, 2007. *See* Exhibit 19.

Transmeta notably did not even attempt to rebut Intel's showing. Transmeta offered no declarations, claim charts, or other evidence to show that its patents are not invalid or that they will survive the reexaminations. It rings hollow for Transmeta to cry prejudice when, at the same time, it cannot even make a basic showing that it has a claim against Intel on the merits.

But cry prejudice it does. Transmeta asserts, based on the unsupported declaration of its CEO, that a stay would "severely undercut" its ability to attract the "additional investment capital" it needs to continue in business, thereby "jeopardiz[ing] Transmeta's very existence." D.I. 58 at 5, 16; *see also* D.I. 61 at ¶¶ 10-14. This unsupported contention, which is not admissible evidence, should be rejected.[5]

To begin with, Transmeta allegations simply do not amount to prejudice. The law is clear that any delay inherent in the reexamination process does not itself constitute undue prejudice. *See Pegasus Dev. Corp. v. DirecTV, Inc.*, C.A. No. 00-1020, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).

Moreover, Transmeta's claim that it will go out of business is not cognizable prejudice. The court in *Emhart* rejected the very argument that Transmeta makes here. There, the defendant filed a reexamination request and moved to stay the litigation pending reexamination. 3 U.S.P.Q.2d at 1890. In opposition, the patentee argued that a stay would result in the "loss of jobs and the possible destruction of its defrost timer business." *Id.* at 1891. The court rejected the patentee's claim of prejudice, and granted the stay, reasoning that "this is a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court." *Id.* Like the patentee in *Emhart*, Transmeta seeks money damages from Intel and has not sought

---

[5] To be admissible, Mr. Crudele's opinion must be substantiated by facts about which he has personal knowledge. *See* Fed. R. Evid. 701; *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201-02 (3d Cir. 1995). The declaration does not establish this foundation.

preliminary injunctive relief. Under these facts, the law does not recognize Transmeta's "loss of business" claim as prejudice.

Transmeta's claim of prejudice also is not credible. In fact, the evidence convincingly shows that Transmeta can and will continue to receive funding. AMD recently invested $7.5 million in Transmeta, making AMD the largest shareholder of Transmeta. Exhibit 10 [SEC filing by AMD on July 13, 2007]; Exhibit 11 ["AMD Now Owns Biggest Chunk of Transmeta" from TheStreet.com]. AMD made the investment on July 3, 2007 – *after* Intel filed its reexamination requests and *after* Intel moved to stay this lawsuit. Importantly, Transmeta did not submit any affidavits from AMD which state that AMD will not make any further investments in Transmeta if a stay is granted. Given that AMD made its investment knowing that a stay was a significant possibility, there is simply no basis to infer that funding from AMD will dry up if a stay is granted.

To the contrary, it is reasonable to infer that the investments from AMD will continue, because Transmeta has become a pawn in AMD's litigation campaign against Intel.

**Redacted**

**Redacted**                                Declaration of D. Bruce Sewell ("Sewell Decl.") at ¶ 5.

*Id.* Now that Transmeta and Intel are in litigation,

**Redacted**            Transmeta apparently has decided to join forces with AMD. Surely AMD did not "roll the dice" on the outcome of this motion, but instead plans to fund Transmeta, as necessary, to enable Transmeta to litigate against Intel.

In addition, Transmeta never demonstrates that a stay would prejudice its ability to acquire funding from its licensing and intellectual property business. To the contrary, *after* Intel

7

filed its reexamination requests and *after* it moved for a stay, Transmeta announced that NEC, a licensee of its "LongRun2" technology, was going to use that technology in NEC's M2 Mobile Phone Chip. Exhibit 12 [Transmeta Press Release dated July 5, 2007]. Transmeta offers no declaration from NEC that it would be unwilling to make further investments in Transmeta. Moreover, Transmeta claims that it has a large and growing portfolio of patents and technologies. D.I. 61 at ¶ 9; D.I. 58 at 7, 15. Intel has sought reexamination of only eleven Transmeta patents – a fraction of Transmeta's intellectual property portfolio. Transmeta never explains why a stay would prevent it from licensing, and collecting royalties on, the parts of its portfolio that are not in reexamination.

Transmeta's contention that its survival would be threatened if this motion is granted is nothing but hyperbole. Transmeta is a publicly traded company. It is required by law to file statements with the SEC that inform the investing public of material events. If the alleged threats to its existence were as dire as it claims here, one would have expected these same statements to appear in its SEC filings. However, the alleged threats to Transmeta's existence appear nowhere in its public reporting, under oath and the penalties of the Sarbanes-Oxley Act. *See, e.g.*, Exhibit 13 [10Q Statement dated August 14, 2007]. The reason Transmeta has not told the investing public what it tells this Court – that a stay "would jeopardize Transmeta's very existence" (D.I. 58 at 5) – is simple: this motion poses no significant threat to Transmeta or its workforce.

**B.    Granting A Stay Will Not Unduly Delay This Lawsuit**

Transmeta's prejudice argument is built on another false premise – that a stay will result in a lengthy delay of this lawsuit. Transmeta asserts that the *ex parte* reexaminations "will take three or more years" to complete and that *inter partes* reexaminations are "mired in delay." D.I. 58 at 19-21. This argument – based on outdated information – does not withstand scrutiny.

In 2005, the PTO implemented a program of new reexamination procedures designed to improve the quality and speed of reexaminations. D.I. 62 at Exhibit 23 [PTO Press Release] ("We have a duty to the American public to get reexaminations right and to conduct them with dispatch so they remain an effective tool."); *see also* Exhibit 14 [Statement of the PTO Director to Congress]. The new procedures require that a team of highly skilled primary examiners dedicated only to reexaminations complete each reexamination in less than two years. *Id.* Most of the reexaminations on which Transmeta relied to argue delay were pending before this change took effect in October 2005. *See* D.I. 62 at ¶¶ 20-21, 24.

All eleven of Intel's reexamination requests were filed in 2007, after the PTO implemented its new rules. The reexaminations are proceeding expeditiously, with the PTO granting reexamination in some cases months earlier than required.[6] Transmeta has provided no evidence which shows that these reexaminations will take longer than the two years required by the new PTO procedures.

### C.    Intel Filed This Motion In Good Faith

There is no dispute that Intel was fully within its statutory rights to seek reexamination of Transmeta's patents. There can be no dispute that Intel's reexamination requests were well founded, as the PTO has granted all nine of the reexamination requests that it has considered. And there can be no dispute that patent litigants – both plaintiffs and defendants – frequently seek to stay lawsuits pending the outcome of reexamination proceedings. Nonetheless, Transmeta contends that this motion is a part of a bad faith effort by Intel "to destroy" Transmeta. Nothing could be further from the truth.

---

[6] For example, as Intel explained, the PTO granted its requests to reexamine the '449 and '443 patents on May 11, 2007, even though it was not required to respond to Intel's requests until June 26, 2007 and July 3, 2007, respectively. *See* D.I. 39 at 17 n. 7.

Transmeta begins by arguing that Intel's motion is a "delay tactic" because Intel allegedly had "every incentive" to seek reexamination years ago, but waited until now to do so. This argument makes no sense for at least two reasons. First, Transmeta claims to own many patents, so how was Intel supposed to divine which particular patents Transmeta might choose to assert after years of inactivity? Second,



When                                      Transmeta filed suit, Intel

prompty challenged the patents through reexamination.

Next, Transmeta suggests that Intel "delayed" Transmeta's filing of this lawsuit by

Transmeta not filing suit and then "leading on"

Transmeta                        This argument is flat-out wrong.  To begin with,



Moreover, Intel never misled Transmeta about this

litigation nor did it try to delay it.  From the outset,

Redacted

Redacted

Finally, despite Intel's statutory right to request reexamination, Transmeta argues that this motion is the "latest move" in Intel's "effort to destroy Transmeta." Citing to an old regulatory proceeding in Japan,[7] Transmeta suggests that Intel "forced Transmeta out of the microprocessor manufacturing business." Again, Transmeta's own conduct undermines its story: If Transmeta truly believed that charge, surely it would have brought antitrust claims before the Court. Yet Transmeta has never filed such a lawsuit against Intel, and it is not asserting a single antitrust claim here. This is a patent case, pure and simple. The Court should not give credence to Transmeta's groundless attacks when Transmeta has failed to assert a claim on the merits.

Moreover, the record is abundantly clear that Transmeta failed in the market because its processors offered poor performance, suffered from product defects, experienced manufacturing problems, and underwent delays in introduction. For example, a leading online technology journal noted that Transmeta's Crusoe processor offered performance that was comparable to a three-year old Intel processor. Exhibit 15 [AnandTech Journal article dated March 12, 2003]. The Microprocessor Report has described Transmeta as the "weakest link" among all microprocessor manufacturers and as "largely irrelevant to the market." Exhibit 16 [MicroProcessor Report article dated February 11, 2002]; *see also* Exhibit 17 [CNET article dated January 2, 2002] (describing recall resulting from product defect).

---

[7] Contrary to Transmeta's suggestion, Intel did not accept, but rather expressly disagreed with, the findings of the JFTC and the application of law in its recommendation. D.I. 59 at Exhibit 10.

11

## II.    INTEL EXPEDITIOUSLY FILED ITS REEXAMINATION REQUESTS AND MOVED FOR A STAY EARLY IN THIS LITIGATION

Transmeta's argument that Intel did not proceed "expeditiously with its requests for reexamination" (D.I. 58 at 27), is contradicted by the facts. Intel informed Transmeta and the Court – both before the Rule 16 scheduling conference (D.I. 20 at 8-9) and during the conference on April 4, 2007 – that it had begun filing reexamination requests, that further requests would be forthcoming, and that it intended to file a formal stay motion. At that point, this litigation was in its incipient phase, and remains so today. Not a single deposition has been taken, document production has only begun (millions of additional pages will likely be produced by the parties), and the parties have not yet even held their initial meet and confer regarding claim construction.

Many courts, this one included, have granted motions to stay even when the proceedings have advanced far beyond the very preliminary stage of this litigation. *See, e.g.*, *Pegasus*, 2003 WL 21105073, at *3 (granting stay more than two years after complaint was filed and after 576 pages of claim construction briefing); *Gioello Enterprises Ltd. v. Mattel, Inc.*, C.A. No. 99-375, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) (granting stay more than eighteen months after complaint was filed, after summary judgment motions, and when discovery was nearly complete); *Motson v. Franklin Covey Co.*, C.A. No. 03-1067, 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005) (granting stay despite discovery complete and summary judgment decided); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 03-40493, 2004 WL 1968669, at *5 (S.D. Iowa Aug. 24, 2004) (granting stay eight years after start of litigation and less than two months before trial).

Moreover, Intel moved expeditiously to file its reexamination requests with the PTO and to request this stay. Transmeta complains that Intel did not file its first reexamination request until five months after Transmeta filed its complaint (D.I. 58 at 27-28), but that time frame was

12

in fact extremely fast given the scope of the task: preparing *eleven* reexamination requests,

which include 908 pages of briefing, 615 pages of claim charts, and the analysis of forty two

different prior art references. *See* D.I. 39 at Exhibits 4-13; Exhibit 19. Under the circumstances,

Intel plainly worked expeditiously.[8] *See Pegasus*, 2003 WL 21105073, at *3 (passage of some

time to accommodate the preparation of extensive reexamination requests does not necessarily

reflect undue delay).

## III.   A STAY WILL PROMOTE EFFICIENCY AND JUSTICE

Proceeding with this case while the PTO is reexamining the patents-in-suit would be both

inefficient and unjust. It is clearly inefficient to proceed with validity determinations in the PTO

and this Court at the same time. A stay will simplify discovery and motion practice, allow a trial

on a more complete record and permit a more orderly resolution of Transmeta's claims against

Intel. Proceeding with this litigation in parallel with the reexaminations might result in a

judgment in this Court before the reexaminations conclude (but might not, as discussed above),

but at substantial cost – two parallel proceedings that could reach very different results, and the

risk of a damages award based upon invalid patents.

### A.   The PTO Already Has Found Substantial Questions As To The Validity Of Most Of Transmeta's Asserted Claims

It is telling that not once in its nearly forty-page answering brief or any of its five

supporting declarations does Transmeta even attempt to deny the strength of the invalidity

arguments made by Intel and recognized by the PTO as substantial new questions of

patentability. D.I. 39 at Exhibits 1-3 ['433, '449 and '687 Orders]; *see also* Exhibits 2-7 ['061,

---

[8] In contrast, Transmeta requested – and Intel granted upon the condition that the request not be used by Transmeta in opposition to Intel's motion – four separate extensions, totaling roughly six weeks, to prepare its response to this straightforward motion. Under these circumstances, Transmeta is in no position to accuse Intel of delay. And, much of the discovery that Transmeta points to as having taken place occurred during that six week delay. *See* D.I. 58 at 35.

'986, '624, '503, '668 and '699 Orders]. Nor does Transmeta challenge the PTO statistics on

which Intel relied to demonstrate that it is highly unlikely that Transmeta's patent claims will

survive reexamination. D.I. 39 at 12.[9] In fact, the statistics show that the PTO has cancelled all

claims in seven of the eight *inter partes* reexaminations for which it has issued certificates, and

cancelled some or all claims, or required some claims to be amended, in 74 percent of the *ex*

*parte* reexaminations for which it has issued certificates. D.I. 62 at Exhibits 11 and 14.

Based on this empirical evidence, and based on the strength of Intel's reexamination

requests, it is highly likely that many of the asserted claims (and potentially entire patents and

families) will be eliminated or at least amended. This is especially true for the asserted claims of

the '061 power management patent. As explained above, the PTO already has rejected each of

the asserted claims in an office action, some based on as many as fifteen different grounds (and

no asserted claim was rejected on fewer than eight different grounds). *Cf.* Exhibit 9 ['061 Office

Action] and Exhibit 8 [Transmeta's Supplemental Response to Interrogatory No. 1 identifying

asserted claims]. Now that they have been rejected, it is highly unlikely that any of the asserted

claims in the '061 patent will survive reexamination in their original form. *See* Cohen, "What's

Really Happening in *Inter Partes* Reexamination" (article relied on by Transmeta) (D.I. 62 at

Exhibit 19). There is no reason to believe (and Transmeta does not offer any) that the examiner

will reverse course here.

---

[9] Counsel for Transmeta merely asserts that he does not believe there have been enough *inter partes* reexamination certificates to provide "reliable" statistics. D.I. 62 at ¶ 27.

**B.    The Reexaminations Will Simplify The Issues In This Litigation**

Transmeta's assertion that it is "highly unlikely that the reexaminations will dispose of, or significantly limit, the issues present in this litigation" (D.I. 58 at 29) is without merit. This Court has recognized on several occasions that no matter what happens in reexamination, it is "beyond dispute" that a stay will simplify issues and best promote judicial economy. *See, e.g.*, *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 05-590, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006). Transmeta does not deny that the issues would be simplified – and there is likely to be no need for a trial at all – if Transmeta's claims do not survive reexamination. However, Transmeta argues that a stay will not otherwise simplify issues. Transmeta's argument is premised on the incorrect assumption that the cancellation and amendment of claims during reexamination will require "at most some supplemental discovery." D.I. 58 at 30-33.

As Intel established, no matter what the result, the reexaminations necessarily will create additional "intrinsic evidence" that must be considered as part of the claim construction process. Transmeta's assertion that the reexamination record will merely allow Intel to conduct a "fishing expedition for admissions against interest" is directly contrary to the Federal Circuit's opinion in *CVI/Beta Ventures, Inc. v. Tura LP*, where it recognized the relevance of statements made during reexamination to claim construction. 112 F.3d 1146, 1158 (Fed. Cir. 1997). As a result, the intrinsic record and scope of the claims will be moving targets as the reexaminations proceed.

Moreover, the reexamination record will provide the Court with the benefit of the PTO's expert analysis. Transmeta's unsupported assertion that the reexamination will not "yield an expert technical analysis" and thus be "hardly of much benefit to this Court" (D.I. 58 at 33) is not only factually incorrect, but also contrary to *Gould v. Control Laser Corp.*, in which the Federal Circuit held that one purpose of reexamination is "to facilitate trial of [validity] by providing the

district court with the *expert view* of the PTO." 705 F.2d 1340, 1342 (Fed. Cir. 1983) (emphasis added); *see also* D.I. 62 at 23 (reexamination examiners are "highly skilled").

Transmeta also misrepresents the reexamination process by asserting that any amended claim will be identical to the original claim except for an additional term, and that additional term would be the only term the Court would have to construe. D.I. 58 at 31 & n.16. That is not the case. As the reexamination records develop, the Court will likely need to re-visit many of its claim constructions. Not only may original claim terms change during reexamination, but old terms also may need to be reconstrued where the claim language surrounding those terms has changed. *See Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) ("[P]roper claim construction demands interpretation of the entire claim in context, not a single element in isolation.") (citation omitted). Arguments made during reexamination also may be important in construing both original and new claim terms. *See, e.g., Spectrum Intern., Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). Because of this, Intel also would need to re-depose the inventors and prosecutors as the reexamination records develop, and the experts too would need to amend their reports on a rolling basis and be re-deposed.[10]

---

[10] Contrary to Transmeta's assertion that Congress's "primary concern" in enacting the reexamination statutes was to allow only the patent holder the option of pursuing reexamination (D.I. 58 at 36-37), the Congressional record clearly states that Congress's intent was to "provide a useful and necessary alternative for *challengers and for patent owners* to test the validity of United States patents in an efficient and relatively inexpensive manner." H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460; *see also* D.I. 62 at Exhibit 25 (*inter partes* statute enacted to protect an "individual or company that wishes to test the validity of an issued U.S. patent" and "an independent inventor.").

**C.    A Judgment Based Upon Patents Later Found To Be Invalid By The PTO
Would Be Extremely "Untoward" And Highly Prejudicial To Intel**

Transmeta's position that, under *Landis v. North American Co.*, 299 U.S. 248, 255

(1936), the Court cannot grant a stay unless Intel shows a "clear case of hardship or inequity in

being required to go forward, if there is even a fair possibility that the stay for which he prays

will work damage to someone else," is off the mark.  D.I. 58 at 23.  The *Landis* decision does not

set forth the relevant standard here, given its very different posture.  The issue in *Landis* was

whether a single court could stay numerous other lawsuits in diverse jurisdictions around the

country that involved different parties in favor of the case before it.  Here, in contrast, the parties

to this lawsuit are the same as the parties involved in the reexamination proceedings.  Not

surprisingly, this Court regularly applies the established three-factor test that is not based on

whether the failure to grant a stay would work hardship or inequity on the moving party.

*Pegasus*, 2003 WL 21105073, at *1.  Nonetheless, Intel satisfies *Landis*, even if it were

applicable, because it would impose extreme hardship and be grossly inequitable to Intel to

permit Transmeta to proceed to judgment in this Court.

Transmeta's assertion that there would be "nothing untoward about this Court finding a

patent not invalid [and awarding substantial damages to Transmeta] and the Patent Office

subsequently finding it invalid" (D.I. 58 at 34) is bizarre and perverse.  It would be both

"untoward" and extremely prejudicial if Intel had to pay the "more than $1 billion" Transmeta

may seek in this litigation (*see* D.I. 59 at ¶ 43) for patents that likely will be invalidated by the

PTO.[11]  If the jury were to find the asserted patents valid and infringed and award damages,

---

[11]  Trial here will not terminate the reexaminations.  Only a final judgment of validity, including
post-judgment motions and appeals, which is not likely until 2010 at the earliest, would end the
*inter partes* reexaminations.  *See* 35 U.S.C. § 317(b); *see also Sony Computer Entertain. Am. v.
Dudas*, C.A. No. 05-1447, 2006 WL 1472462, at *7-8 (E.D. Va. May 22, 2006).  And not even

17

Transmeta acknowledges (and no doubt hopes) that Intel may not be able to recoup those damages after final judgment even if the PTO later finds the claims invalid. D.I. 58 at 34. In fact, proceeding with this litigation would be highly prejudicial to Intel even before final judgment, because, as AMD (Transmeta's largest shareholder) recently argued in a motion to stay pending reexamination of its own, an accused infringer "should not be required to expend resources defending allegations of infringement based on patent claims whose content and validity is unknown and in flux." Exhibit 18 [AMD Motion to Stay, *MicroUnity Sys. Eng., Inc. v. Advanced Micro Devices, Inc.*, C.A. No. 06-486] at 2.

Courts have not surprisingly found this scenario not just "untoward," but "unacceptable" because it would pose a "significant risk" of "irreparable harm" to the accused infringer:

> Alcon [represented by the Fish & Neave firm, which has since merged with the Ropes & Gray firm representing Transmeta] asserts that this Court should stay the trial pending outcome of the reexamination because not doing so would be a waste of resources and also pose a significant risk to Alcon. Not only could the Court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to Alcon: if this Court finds that the '607 patent is not invalid and that Alcon has infringed it, and orders Alcon to pay damages to B&L for such infringement, then Alcon would have *no ability to recover those damages if at a later date the PTO determined that the '607 patent is invalid.*

*Bausch & Lomb*, 914 F. Supp. at 952 (granting stay) (emphasis added); *see also Broadcast Innovation*, 2006 WL 1897165, at *10. This Court too has recognized that the "issuance of a stay is the *only way* to avoid the potential for conflict" with the results of a reexamination because "[n]ot staying the [litigation] runs the risk of inconsistent adjudications or issuance of advisory opinions." *Gioello Enterprises*, 2001 WL 125340, at *1-2.

Transmeta's reliance on *Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988), in this regard is misleading. There, the Federal Circuit was considering whether the PTO had the

---

final judgment would end the *ex parte* reexaminations unless Transmeta's patents are invalidated. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988).

authority to stay a reexamination while a district court litigation was pending (in contrast to a district court, the PTO has no such authority). In doing so, the Federal Circuit found that there would be "nothing untoward about the PTO upholding the validity of a reexamined patent which the district court *later* finds invalid." 849 F.2d at 1428 (emphasis added). This, of course, is very different from what Transmeta asserts is not "untoward" – a district court finding infringement and no invalidity followed by a PTO finding of invalidity – because in the *Ethicon* scenario, no damages were erroneously awarded to an undeserving plaintiff. Indeed, as the Federal Circuit noted, the *Ethicon* scenario "is essentially what occurs when a court finds a patent invalid after the PTO has granted it." *Id.*

The Federal Circuit in no way suggested in *Ethicon* that it would be appropriate for a district court to expend its resources trying the validity of patents while they are undergoing reexamination, especially where, as here, it is likely that many of the claims will not survive. To the contrary, *Ethicon* recognized that the district courts, unlike the PTO, do have the "inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Id.* at 1426-27 (citations omitted). In short, proceeding with this litigation while the validity of Transmeta's patent claims is being reexamined by the PTO would be an inefficient use of the Court's and the parties' resources. The risk that Intel might have to pay significant damages for patents later found invalid by the PTO would be highly prejudicial to Intel. That risk is unnecessary and can easily be avoided by staying this case. A stay would not prejudice Transmeta and would be the most just and efficient course.

19

## CONCLUSION

For the foregoing reasons, Intel respectfully requests that the Court grant its

motion to stay pending final resolution of the reexaminations of Transmeta's patents-in-suit.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Defendant Intel Corporation*

OF COUNSEL:

Matthew D. Powers
Jared Bobrow
Steven S. Cherensky
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Kevin Kudlac
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway, Suite 1350
Austin, TX 78759
(512) 349-1930

Dated:  August 27, 2007

## CERTIFICATE OF SERVICE

I, Monté T. Squire, hereby certify that on August 27, 2007, I caused to be served a true

and correct copy of the foregoing document on the following counsel of record:

**BY HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Karen Jacobs Louden, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

**BY E-MAIL**

Robert C. Morgan, Esquire
Laurence S. Rogers, Esquire
Steven Pepe, Esquire
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036

Norman H. Beamer, Esquire
ROPES & GRAY LLP
525 University Avenue
Palo Alto, CA 94301

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on August 31, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Karen Jacobs Louden, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on August 31, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL**
>
> Robert C. Morgan, Esquire
> Laurence S. Rogers, Esquire
> Steven Pepe, Esquire
> ROPES & GRAY LLP
> 1211 Avenue of the Americas
> New York, NY 10036
>
> Norman H. Beamer, Esquire
> ROPES & GRAY LLP
> 525 University Avenue
> Palo Alto, CA 94301

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
jshaw@ycst.com
Monté T. Squire (No. 4764)
msquire@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Intel Corporation*